# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MORTON S. BOUCHARD, III, INDIVIDUALLY AND AS CO-TRUSTEE FOR THE MORTON S. BOUCHARD 2017 FAMILY TRUST | § § § § | |
| PLAINTIFFS | § § | |
| V. | § § | CIVIL ACTION NO. 4:24-CV-00693 |
| DAVID R. JONES, ELIZABETH CAROL FREEMAN, JACKSON & WALKER, LLP, KIRKLAND & ELLIS, LLP, KIRKLAND & ELLIS INTERNATIONAL, LLP, PORTAGE POINT PARTNERS, LLC, AND MATTHEW RAY | § § § § § § § § | |
| DEFENDANTS | § § | |

## DEFENDANT ELIZABETH CAROL FREEMAN's
## MOTION TO DISMISS UNDER FED.R.CIV.P. 12(b)(6)

TO THE HONORABLE ALIA MOSES,
CHIEF U.S. DISTRICT JUDGE:

Defendant Elizabeth Carol Freeman ("Freeman") requests that the Court dismiss the

Complaint (the "Complaint") of Morton S. Bouchard, III, Individually and as Co-Trustee for

the Morton S. Bouchard 2017 Family Trust ("Plaintiff") in the above-captioned civil action

under FED. R. CIV. P. 12(b)(6).

1

<u>**OVERVIEW**</u>

1.     The same law firm that filed the dubious First Amended Complaint in the recent *Van Deelen* case in this Court has filed a similarly defective Complaint in this civil action.[1] Again seizing upon non-disclosure in a chapter 11 case of a personal relationship between Freeman and co-defendant (and former U.S. Bankruptcy Judge) David Jones, Plaintiff's Complaint asserts claims without explaining how Freeman or the other Defendants proximately caused his alleged damages. From the public record, it is indisputable that Plaintiff's damages were caused by Plaintiff's failed management of chapter 11 debtors Bouchard Transportation Co., Inc. and Tug Ralph E. Bouchard Corp. (collectively "<u>BTC</u>"), and a chapter 11 plan for BTC that was confirmed in accordance with applicable bankruptcy reorganization law. Freeman and the other Defendants merely fulfilled their duties to administer (and in the case of Judge Jones, adjudicate) the chapter 11 case in accordance with the plan's terms and applicable bankruptcy law. Plaintiff's disagreement with the Bankruptcy Court orders is why the U.S. civil justice system provides for appeals. But Plaintiff's disagreement cannot serve as a basis for a lawsuit in this Court that collaterally attacks final orders of another federal court.

---

[1] The *Van Deelen* civil action number is 23-cv-3729.

<u>**STATEMENT OF FACTS**</u>

2.      The genesis of the Plaintiff's damage claims in the Complaint was his close ownership of a barge business that provided ocean and waterway transport, primarily for the oil and gas industry.[2] Plaintiff was chief executive officer and chairman of the board of the BTC. Over several years, the business had severe financial problems that culminated in the filing of chapter 11 cases on September 28-29, 2020.[3]

3.      At Plaintiff's direction, BTC requested and obtained Bankruptcy Court approval of the retention of Defendants Kirkland & Ellis, LLP ("Kirkland") and Jackson & Walker, LLP ("JW") as co-debtor-in-possession counsel for BTC.[4] Also at Plaintiff's direction, BTC requested and obtained Court approval of Defendants Portage Point Partners, LLC ("PPP") as restructuring advisor and PPP's employee, Defendant Matthew Ray ("Ray"), as chief restructuring officer.[5] Plaintiff remained chief executive officer of BTC after commencement of the chapter 11 cases.

---

[2] On September 28-29, 2020, fifty-two Plaintiff-owned debtors that comprised the Plaintiff-owned barge business filed chapter 11 cases in the Bankruptcy Court for the Southern District of Texas, Houston Division. The cases were jointly administered under the Bouchard Transportation Co., Inc. case (collectively "BTC"), which is chapter 11 case number 20-34682. After confirmation of the chapter 11 plan in the jointly administered case, certain relevant pleadings to this civil action were also filed in the Tug Ralph E. Bouchard Corp. ("TugREB") chapter 11 case, case number 20-34758. The fifty-two BTC-related debtors are listed here.

[3] The Disclosure Statement filed in the BTC case provides background information on BTC's financial problems. BTC case no. 20-34682 Dkt # 1048, pp 1-2, 24-26.

[4] BTC case no. 20-34682 Dkt ## 242 (KE) and 245 (JW).

[5] BTC case no. 20-34682 Dkt # 243.

4.     At the time of the BTC case, Freeman was a partner in JW. Freeman and Judge Jones had a close personal relationship when she joined JW in May, 2018. When JW appeared as co-debtor-in-possession counsel in the BTC chapter 11 case, Judge Jones elected not to disclose the relationship with Freeman in the BTC case. Neither Kirkland nor JW knew about the Freeman-Jones relationship at the time, and Bankruptcy Rule of Procedure 2014 does not require disclosure of such a relationship in connection with being approved as co-counsel for the debtor-in-possession.[6] In addition to approving without opposition Kirkland and JW as co-debtor-in-possession counsel for BTC, Judge Jones subsequently approved without opposition several interim fee applications of Kirkland and JW in the BTC case, as well as the interim fee applications of several other professionals that BTC retained under Plaintiff's management.

5.     Plaintiff's management of BTC in the chapter 11 case was disastrous. Five months into the case, BTC had insufficient funds to meet its payroll obligations to employees. As a result, BTC was forced to file an emergency motion with the Bankruptcy Court on February 24, 2021 to amend BTC's debtor-in-possession financing agreement to borrow funds to make payroll.[7] This emergency motion triggered two emergency hearings –

---

[6] FED. R. BANKR. P. 2014 requires that a law firm requesting approval to be a debtor-in-possession's lawyer must disclose the firm's "connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." In other words, except for the U.S. Trustee and its employees, Bankruptcy Rule 2014 requires disclosure of connections to parties in interest that hold or represent an economic interest or stake in the bankruptcy estate. Judge Jones was not a party in interest in the case and held no economic interest or stake in the case.

[7] BTC case no. 20-34682 Dkt # 550.

4

one on February 24, 2021 and the second two days later on February 26th – that revealed, among other things, the following:[8]

- BTC had insufficient funds to make its immediate payroll and future payrolls.

- After five months in chapter 11, the financial records of BTW remained in such disarray that PPP had not been able to produce accurate financial information to share with BTC's lenders and Creditors' Committee.

- BTC's debtor-in-possession lender was unwilling to make further advances to BTC because Plaintiff had categorically refused the lender's condition that BTC sell assets to reduce debt before further advances were made.

- BTC had incurred over $10 million of administrative debt during the chapter 11 case to vendors, employees, and bankruptcy professionals that it had not paid and had no funds to pay.

- BTW had not filed any monthly operating reports during its five months in chapter 11.

Despite being BTO's CEO, Plaintiff did not attend either emergency hearing. If he monitored the hearings through the Bankruptcy Court's remote hearing portal, Plaintiff made no statement on the record of either hearing.

6. Judge Jones was understandably troubled by what he learned from the hearings. In short, BTC was close to being forced to convert its chapter 11 case to a liquidation under chapter 7 of the Bankruptcy Code. Given the adverse consequences to creditors and employees from a sudden conversion of the case to chapter 7, Judge Jones attempted to salvage the chapter 11 case by removing Plaintiff as BTC's CEO during the

---

[8] The Bankruptcy Court's courtroom recording system preserved an audio recording of each of these hearings. They audio files are an attachment to the following pdf files: BTC case no. 20-34682 Dkt ## 553 & 568. The hearings are worth a listen.

February 24th hearing and appointing Defendant Ray to assume the CEO duties. Judge Jones sternly directed Defendant Ray to ensure that BTC fulfilled its duties as a debtor-in-possession under chapter 11, and to move BTC through the chapter 11 process with alacrity. Judge Jones followed his oral order with written orders on February 26, 2021 and March 5, 2021 (collectively "the Removal Order").[9] As noted above, Plaintiff did not object to the Removal Order during the hearings of February 24th and February 26th. He also never requested relief from the Bankruptcy Court under the Removal Order[10] or appealed the Removal Order.

7.      Once Plaintiff was removed as CEO, BTC moved quickly to propose and obtain Court approval of asset sales[11] on August 5, 2021 and to obtain confirmation on August 23, 2021 of a plan of reorganization[12] that provided for the sale of BTC's assets and distribution of the sales proceeds to BTC's creditors. Plaintiff objected to the asset sales,[13] asserted $40 million of claims in the chapter 11 case,[14] and objected to confirmation of the BTC plan on a limited basis.[15] But the only order that Plaintiff appealed was the BTC

---

[9] BTC case no. 20-34682 Dkt ## 569 & 608.

[10] BTC case no. 20-34682 Dkt # 569 at ¶ 1.

[11] BTC case no. 20-34682 Dkt ## 1193, 1194, 907,959,1042,1068,1076,1077,1114.

[12] BTC case no. 20-34682 Dkt # 1319 ("BTC confirmation order") and Dkt ## 1293 & 1294 (First Amended Plan and First Amended Plan Supplement) (collectively ("the BTC plan").

[13] Plaintiff's objections to the asset sales are summarized in BTC case no. 20-34682 Dkt ## 1171 & 1171-1.

[14] BTC case no. 20-34682 Claims Dkt ## 269 and 401; *See also*: Dkt 496 Schedule E/F at 95.

[15] BTC case no. 20-34682 Dkt # 1225.

confirmation order, and that appeal was limited to the issue of proper scope of the plan's exculpation provision and the plan injunction relating to the exculpation provision.[16]

8.     BTC and the BTC Creditors Committee objected to Plaintiff's proofs of claim[17] and, after confirmation of the plan, BTC sued Plaintiff and his wife in the Bankruptcy Court seeking damages for breach of fiduciary duty and equitable subordination of their claims against BTC.[18] On March 2, 2023, the Plan Administrator under the BTC plan filed a motion[19] requesting Bankruptcy Court approval of a global settlement between BTC and Plaintiff that would dismiss the lawsuit against the Plaintiff and his wife, and the Bankruptcy Court conducted a hearing on the proposed settlement on March 28, 2023.[20] After hearing testimony in support of the proposed settlement, Judge Jones continued the settlement hearing to a future date so that Defendant Ray, who is the Plan Administrator, could attend the hearing. The continued settlement hearing was scheduled on two occasions but both scheduled hearings were postponed by agreement of counsel.[21]

---

[16] Dkt. # 52, *Morton S. Bouchard, III, v. Bouchard Transport. Co., Inc.*, 4:21-cv-02937 (S.D. Tex. Feb. 7, 2023). Judge Rosenthal affirmed the BTC confirmation order, but reversed and remanded to the Bankruptcy Court to modify the confirmation order to provide the proper scope of the exculpation clause and plan injunction pending the U.S. Supreme Court's decision in *NexPoint Advisors, L.P. v. Highland Capital Management*, 48 F.4th 419 (5th Cir. 2022), *petition for cert. filed and granted*, No. 22-631 (U.S. Jan. 5, 2023).

[17] BTC case no. 20-34682 Dkt ## 1023, 1024 & 1150.

[18] *Tug Robert J. Bouchard Corporation, et al v. Morton S. Bouchard III, et al,* adv. pro. no. 22-03276, Dkt 1.

[19] TugREB case no. 20-34758 Dkt # 311.

[20] TugREB case no. 20-34758 Dkt # 327 (audio file of the hearing is an attachment to the pdf). The massive damages asserted in the Complaint are in stark contrast to what Plaintiff would receive under the proposed settlement, which is a essentially a heavily discounted dividend on his $40MM in unsecured claims that Plaintiff filed in the BTC case.

[21] TugREB case no. 20-34758 Dkt ## 330 & 332.

9.     Bouchard filed the Complaint in this civil action on February 26, 2024 after his lawyers had filed the similar First Amended Complaint in the *Van Deelen* case on January 11, 2024.[22]

### STANDARD OF REVIEW

10.     A complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) if a plaintiff fails to "state a claim upon which relief can be granted." To satisfy the requirements of Rule 8, and to survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[23]. A complaint that offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do."[24] Instead, to survive a motion to dismiss, the complaint must contain more than "conclusory allegations or legal conclusions masquerading as factual conclusions[.]"[25] Moreover, in considering a motion to dismiss, the court is not bound to accept as true a legal conclusion couched as a factual allegation.[26] Likewise, "when the allegations in a complaint, however true, could not raise a claim or

---

[22] *Van Deelan* civil action no. 23-cv-3729, Dkt # 1.

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007))

[24] *Twombly*, 550 U.S. at 555.

[25] *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1250 (5th Cir. 1997). *See also Iqbal*, 556 U.S. 662, 663 (2009) (holding that "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are insufficient); *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995) (holding that, to survive a motion to dismiss, a complaint must contain direct factual allegations "on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.").

[26] *Iqbal*, 566 U.S. at 678-79 (holding that Rule 8 "does not unlock the doors for discovery for a plaintiff armed with nothing more than conclusions.")

entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."[27]

11.     Furthermore, fraud and RICO claims trigger a heightened pleading standard under which a plaintiff must state "with particularity the circumstances constituting the fraud." FED. R. CIV. P. 9(b). A motion to dismiss for failure to plead fraud with particularity under Rule 9(b) is treated the same as a Rule 12(b)(6) motion[.]"[28]And the heightened pleading standard requires, at a minimum, "the who, what, when, where, and how to be laid out with respect to a fraud claim."[29] A fraud claim must be dismissed for failure to set forth "specific facts" in support of those fundamental elements, and reliance on solely conclusory allegations and "unwarranted deductions of fact[.]"[30] Similarly, RICO claims that are based on mail or wire fraud also must satisfy FED. R. CIV. P. 9(b) by stating the circumstances constituting fraud with particularity by identifying the time, place, and content of the fraudulent communications, as well as the parties to the communications. The heightened pleading standards under *Twombly* and *Iqbal* are particularly important in RICO cases to

---

[27] *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558).

[28] *Futrell v. JPMorgan Chase Bank, NA*, No. 3:19-cv-054-S-BH, 2019 WL 3948222, at 4 (N.D. Tex. July 19, 2019) (Ramirez, Mag. J.), adopted by 2019 WL 3947713, at *1 (N.D. Tex. Aug. 21, 2019) (Scholer, J.).

[29] *Id.* (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).

[30] *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994); *Futrell*, 2019 WL 3948222, at *4 (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)).

protect defendants against baseless charges of racketeering that are serious, harmful, and expensive to defend.[31]

12.     All of Plaintiff's ten claims against Freeman are either barred as a matter of law or are alleged in a conclusory and speculative fashion, and otherwise fail "to state a claim to relief that is plausible on its face."[32] Because Plaintiff's claims are barred as a matter of law, there is "no set of facts" they can plead to overcome these fatal defects.[33]

## ARGUMENT

### A. THE COMPLAINT DOES NOT ADEQUATELY PLEAD CAUSATION OF DAMAGES.

13.     As with the First Amended Complaint in *Van Deelen*, all of Plaintiff's ten claims against Freeman in the Complaint are based upon the non-sequitur that the non-disclosure of Judge Jones's relationship with Freemen caused damages to the Plaintiff. In fact, non-disclosure of Judge Jones's relationship with Freeman had nothing to do with the damages that Plaintiff alleges.[34] Rather, Plaintiff's alleged damages were caused by his

---

[31] *Id. See also*: *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008) (affirmed dismissal of RICO claims and warned against permitting a plaintiff "with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence."); *Williams v. WMX Technologies, Inc.*, 112 F.3d 175 (5th Cir. 1997) and *Allstate Ins. Co. v. Donovan*, No. CIV.A. H-12-0432, 2012 WL 2577546 (S.D. Tex. July 3, 2012 – Judge Lake).

[32] *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570); *In re Great Lakes Dredge & Dock Co., LLC*, 624 F.3d 201, 210 (5th Cir. 2010); *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

[33] *Search Int'l., Inc. v. Snelling & Snelling, Inc.*, 31 F. App'x 151 (5th Cir. 2001) (per curiam); *Epie v. Neiman Marcus Direct*, 2001 WL 585766, at *1 (N.D. Tex. May 29, 2001).

[34] Alleged non-disclosure under FED. R. BANK. P. 2014 is not grounds for a private cause of action. *In re Steed*, 614 B.R. 395, 411 n. 13 (Bankr. N.D. Ga. 2020) ("The Federal Rules of Bankruptcy Procedure are

mismanagement of BTC and one of the consequences of that mismanagement – that is, the liquidation of BTC's assets under a chapter 11 plan that BTC creditors overwhelmingly approved. The Bankruptcy Court orders that approved and enforced the BTC plan were demonstrably correct under applicable bankruptcy reorganization law. Plaintiff's decision not to appeal the BTC confirmation order (other than on the narrow issue of the scope of the exculpation clause) is a tacit admission that such order was approved in accordance with applicable law and that further litigation to reverse Plaintiff's loss resulting from that order was futile. Consequently, on a threshold basis, all the Plaintiff's claims should be dismissed under Rule 12(b)(6) because he has failed to state a claim on how the Defendants – rather than his mismanagement leading to the BTC liquidation plan – caused damages to him. In cases of alleged fraud-based claims, the Fifth Circuit has stated that "Rule 9(b) has long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later. We apply Rule 9(b) to fraud complaints with 'bite' and 'without apology,'. . . which after *Twombly* must make relief plausible, not merely conceivable, when taken as true."[35] Plaintiff's Complaint does not make a plausible case that the non-disclosure of the Jones-Freeman relationship or any action of the Defendants caused damages to Plaintiff or prevented him from exercising his rights in opposing the BTC plan.

---

designed and maintained to aid in the just and efficient resolution of matters pending before the Court . . . [and] do not allow for a private cause of action for damages from violating a rule of procedure.")

[35] *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) (citing *Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

## B. PLAINTIFF LACKS STANDING TO ASSERT THE CLAIMS IN THE COMPLAINT.

14.     Plaintiff's ten claims against Freeman – RICO and RICO conspiracy, professional negligence and breach of fiduciary duty,[36] common law fraud, negligent misrepresentation, common law civil conspiracy, and unjust enrichment – should be dismissed for the additional reason that Plaintiff has failed to plead how he has standing to assert those BTC estate-owned claims against Freeman and the other Defendants, much less standing to assert those estate-owned claims from *other* chapter 11 cases. All of Plaintiff's claims require that Freeman's actions caused Plaintiff damages, but Plaintiff cannot fulfill that requirement because he asserts only derivative claims that belong to the BTC estate. To assert claims against the Defendants that have been reserved to the BTC estate under the confirmed BTC plan,[37] even a creditor, much less an equity security holder such as Plaintiff, lacks "prudential standing to assert derivative claims arising from injuries to the debtor or its estate, including claims base on fraud on the court."[38] In *SunEdison*, the court found that the alleged actions harmed the debtors and the estates, not the individual creditor and certainly

---

[36] On a threshold basis, Plaintiff's claims for malpractice and breach of fiduciary duty are defective because Plaintiff was not the client of the Defendant law firms, which owed no duty to him. *In re Am. Int'l Refinery, Inc.*, 436 B.R. 364, 376 (Bankr. W.D. La. 2010), aff'd, 676 F.3d 455 (5th Cir. 2012) (concluded that debtor's counsel's "duty to the estate does not . . . extend to individual creditors and equity holders."); *See also: In re TOCFHBI, Inc.*, 413 B.R. 523, 538-39 (Bankr. N.D. Tex. 2009).

[37] BTC case no. 20-34682 Dkt # 1293, Article I.A.20 & Article IV.E.

[38] *In re SunEdison, Inc.*, Case No. 16-10992 (SMB), 2019 WL 2572250 (Bankr. S.D.N.Y. June 21, 2019) at *6. *See also: In re Radner Holdings Corp.* 564 B.R. 467, 471,480-484 (D. Del), *aff'd*, 706 F.App'x 94 (3d Cir. 2017) (affirmed dismissal of fraud-based claims because shareholder lacked standing and debtor is the proper plaintiff to assert the claims); *In re NC12, Inc.*, 604 B.R. 478 B.R. 820, 836 (Bank. S.D. Tex. 2012); ); *In re Old ANR, LLC*, Case No. 19-00302-KRH, 2019 WL 2179717, at *1 (Bankr. E.D. Va. May 17, 2019); *In re SRC Liquidation LLC*, Case No. 15-10541 (BLS), 2019 WL 4386373, at *1 (Bankr. D. Del. Sept. 12, 2019).

not an equity security holder. The creditor could not "identif[y] a particularized injury that it suffered distinct from the injuries, if any, that all unsecured creditors suffered and [thus,] it lack[ed] standing to assert a fraud on the court claim based on a secondary effect of an injury to the debtors (pre-petition) or their estates (post-petition)."[39] Plaintiff stands in even worse shoes than the creditor in *SunEdison*. He is seeking redress from Bankruptcy Court orders on grounds that the Freeman-Jones relationship was not disclosed, and he makes that request without ownership or entitlement under the BTC plan to any disgorgement proceeds or damages that might be awarded. Thus, Plaintiff cannot meet any element of the necessary constitutional standing,[40] prudential standing,[41] or even section 1109(b) of the Bankruptcy Code standing[42] necessary to assert these claims in either the BTC case or any other chapter 11case, for that matter. Stated simply, because the alleged injury that Plaintiff asserts was suffered by BTC rather than Plaintiff, the Complaint's claims against Freeman and the other Defendants are derivative claims, not direct ones that Plaintiff owns. Even if Plaintiff is eventually characterized as one of hundreds of creditors whose claims were affected by the

---

[39] *Id.*

[40] *In re Fieldwood Energy LLC*, No. 20-33948, 2021 WL 4839321, at *6 (Bankr. S.D. Tex. Oct. 15, 2021) (internal citations omitted). Plaintiff cannot establish constitutional standing, either. His loss of equity value in BTC resulted from Plaintiff's mismanagement of BTC both before its chapter 11 case and for the first five months of the case. It had nothing to do with the non-disclosure of the Jones-Freeman relationship.

[41] *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473-74 (5th Cir. 2013).

[42] See *Friede Goldman Halter Inc.*, 600 B.R. at 532 (found that a creditor, much less an equity security holder such as Plaintiff, lacked standing to move to reopen the case where it could not assert any stake in reopening the case premised on the relief to which it would be entitled as a creditor).

BTC plan, Plaintiff still lacks a particularized and individualized harm required for prudential standing.

15.     Finally, Plaintiff's lack of standing highlights that the Complaint is an improper collateral attack on the BTC plan. Plaintiff's limited objection to confirmation of the BTC plan did not challenge the confirmation order's prohibition against litigation involving the administration of the BTC plan or the plan release,[43] which pertains to each Defendant in this civil acation. As noted earlier, Plaintiff's objection to the BTC plan was limited to the scope of the exculpation clause and the plan injunction as it relates to the exculpation clause.[44] However, that appeal does not authorize Plaintiff to file claims in the Complaint in violation of the plan release of the BTC confirmation order and Section 1141 of the Bankruptcy Code, which precludes parties from pursuing claims that they could or should have raised in connection with confirmation of the plan.[45] Accordingly, the Complaint should be dismissed as a collateral attack on the BTC plan and confirmation order.

## C. PLAINTIFF'S PLEADING OF RICO CLAIMS IS DEFICIENT.

16.     In addition to the defects of lack of causation for alleged damages and standing, Plaintiff's RICO claims are deficient under Fifth Circuit precedent, Rule 12(b)(6) and Rule 9(b) in multiple ways.

---

[43] BTC case no. 20-34682 Dkt # 1293 Article X.D and Article X.G.

[44] *See*: Footnote 16 above and related text.

[45] *Matter of LaHaye*, 17 F.4th 513, 519 (5th Cir. 2021).

17.     For example, reflecting a problem that Plaintiff has with all claims in the Complaint, Plaintiff fails to plead the injury and causation necessary to establish his standing to assert the RICO claims.[46] Speculative damages are insufficient to establish standing to maintain a RICO claim.[47] Plaintiff suggests that his financial recovery in the BTC case was reduced by the allegedly improper allowance of Kirkland and JW fees. But that alleged injury derives from BTC, not Plaintiff. The alleged RICO claims are not direct claims that Plaintiff owns. Rather, they are owned by the BTC estate and Plaintiff has no standing to assert them.[48]

18.     Moreover, in the Fifth Circuit, RICO claims require pleading of "specific facts, not mere conclusory allegations, which establish the existence of an enterprise."[49] A RICO enterprise must "exist separate and apart from the pattern of racketeering activity in which it engages."[50] In the Complaint, Plaintiff asserts that the only purpose of the alleged Jones-Freeman-Kirkland-JW enterprise was to engage in the alleged RICO predicate acts of committing "bankruptcy fraud, mail fraud, wire fraud and theft of honest services/wire fraud." Thus, Plaintiff asserts that the Defendants formed the alleged enterprise to commit the same criminal acts that Plaintiff alleges as predicate acts, which is insufficient to plead the

---

[46] *Price v. Pinnacle Brands, Inc.* 138 F3d 518,521 (5th Cir.); *Jackson v. Nat'l Ass'n for Advancement of Colored People*, 546 F. App'x 438, 442 (5th Cir. 2013).

[47] *In re Taxable Mun. Bond Sec. Litig*, 51 F.3d 290, 297 (5th Cir. 2005).

[48] *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 744 (5th Cir. 1989).; *See also Joffroin v. Tufaro*, 606 F.3d 235, 238 (5th Cir. 2010) (found no shareholder standing where plaintiff's "claims are for monies diverted from the [company's] treasury").

[49] *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).

[50] *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003).

existence of an enterprise that is separate from the alleged racketeering activity in which it engages.[51] Given that no enterprise existed, the Complaint fails to explain how the enterprise made decisions or coordinated its internal affairs.[52] The Complaint simply alleges that Judge Jones' orders constituted "hierarchical decision[s]," but that conclusory allegation fails to identify "the additional organizational characteristics necessary" to fulfill RICO's pleading requirement of an enterprise's hierarchical decision-making structure.[53]

19.     Plaintiff's RICO conspiracy claim is similarly defective. Inasmuch as a requirement of a RICO conspiracy claim is an agreement to commit predicate acts, a RICO conspiracy claim must specifically allege such an agreement.[54] In fact, in defending a RICO claim against Plaintiff's law firm, the firm contended that "the conspiracy claim utterly fails to demonstrate that the parties ever reached any agreement that they would commit any specific acts that would constitute a RICO violation."[55] The Plaintiff's allegations in the Complaint regarding an agreement to commit predicate acts are conclusory and fail to provide the Court and the Defendants with any coherent agreement regarding Plaintiff.

20.     While the Complaint includes conclusory references to alleged misrepresentations and an alleged conspiracy relative to the BTC chapter 11 case, Plaintiff

---

[51] *Fernandez-Lopez v. Hernandez*, 2020 WL 9396487, at *12 (W.D. Tex. Nov. 20, 2020) (Moses, J.).

[52] *Manax v. McNamara*, 660 F. Supp. 657, 662 (W.D. Tex. 1987), aff'd, 842 F.2d 808 (5th Cir. 1988) (there is no enterprise where there is "no . . . indication of a decision-making structure" other than "a loose analogy to a Mafia family"). *See also Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989) (RICO claims were dismissed where plaintiff did "not allege the additional organizational characteristics necessary" for an enterprise).

[53] *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).

[54] *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995).

[55] *Edelson PC v. Bandas L. Firm PC*, Case No. 1:16-cv-11057, Dkt. 64 at 29 (N.D. Ill. April 10, 2017).

fails to set forth sufficient allegations to state violations of any of the particularized federal fraud, theft, or property crimes, constituting "racketeering activity" as defined in the RICO statute. Moreover, the Complaint fails to allege any specific facts, dates, names, communications, or events to support the conclusory allegations of criminal activity by Defendants, nor does the Complaint explain how these acts constitute racketeering activity or are related to a continued threat of criminal activity. Finally, to the extent that Plaintiff alleges that the Defendants' actions in closing the sale of BTC assets and confirming the BTC plan over his objections form the basis for RICO predicate acts, it's clear that fulfilling litigation duties cannot form the basis of a RICO claim.[56] Stated simply, Plaintiff fails to plausibly allege the necessary elements of a RICO claim.[57]

### D. PLAINTIFF'S BIVINS CONSPIRACY CLAIM LACKS SUFFICIENT CONTEXT.

21.     Likewise, the conspiracy to interfere with Constitutional rights under *Bivens*[58]not only lacks the pleading specificity required for conspiracy claims, but the claim also asserts a new context – i.e., alleged interference with rights of an equity security holder in a chapter 11 case – that the U.S. Supreme Court has never endorsed. For decades, the Supreme Court has consistently refused to extend *Bivens* liability to any new context or new

---

[56] *Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018) ("[i]f litigation activity were adequate to state a claim under RICO, every unsuccessful lawsuit could spawn a retaliatory action" that "would inundate the federal courts with procedurally complex RICO pleadings").

[57] *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009); see also *Crawford's Auto Ctr. v. State Farm Mut. Auto. Ins. Co*, 945 F.3d 1150 (11th Cir. 2019).

[58] *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

category of defendants.[59] The Supreme Court has not extended a *Bivens* conspiracy claim to the context that Plaintiff asserts in the Complaint (i.e., actions of private actors rather than federal officers) and is unlikely to do so in the future.[60] As such, the claim should be dismissed.

### E. THE COMPLAINT'S OTHER DEFECTS COMPEL DISMISSAL.

22.     In addition to the foregoing, all of the claims that Plaintiff asserts against Freeman in the Complaint that are based on Texas common law[61] are barred under Texas' attorney immunity doctrine and the Texas judicial-proceedings privilege.[62] These are affirmative defenses that are intended to ensure that lawyers provide aggressive advocacy and representation to clients,[63] and attorney immunity has been "properly characterized as a true immunity from suit, not as a defense to liability."[64] Although attorney immunity and the

---

[59] *Oliva v. Nivar*, 973 F.3d 438, 443 (5th Cir. 2020), *cert. denied*, 210 L.Ed.2d 832 (2021) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)).

[60] *Escobar v. Gaines*, No. 3-11-0994, 2013 WL 1344900, *3 (M.D. Tenn. Apr. 1, 2013) ("The Federal Defendants argue that there cannot be a *Bivens* conspiracy because *Bivens* applies only to individual officers. It is true that *Bivens* does not confer a right of action for damages against federal agencies or private entities acting under color of federal law. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001). Plaintiffs' allegation of a conspiracy among individuals to violate federal law, however, is still a claim against the individual officers.").

[61] Counts 2-6 and 7-9.

[62] *Landry's, Inc. v. Animal Legal Def. Fund,* 631 S.W.3d 40, 46 (Tex. 2021); *Haynes and Boone, LLP v. NFTD, LLC,* 631 S.W.3d 65 (Tex. 2021).

[63] *Cantey Hanger, LLP v. Byrd,* 467 S.W.3d 477, 481 (Tex. 2015).

[64] *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 346 (5th Cir. 2016).

judicial proceedings privilege are affirmative defenses, the Fifth Circuit supports dismissal of a complaint under Rule 12(b)(6) where the defense appears on the face of the complaint.[65]

23.     On its face, the Complaint fails to assert a foundation of the foregoing claims that could survive in the face of attorney immunity and the judicial proceedings privilege. Freeman, JW, and Kirkland's actions in representing BTC were performed while discharging JW and Kirkland's duties as co-debtor-in-possession counsel in the BTC chapter 11 case. Preparing and prosecuting bankruptcy pleadings, appearing at hearings to represent BTC's interests, seeking court approval of the asset sales and a reorganization plan, and seeking court approval of professional fees are well "within the ambit of client representation and requires the office, professional training, skill, and authority of an attorney."[66] Accordingly, the conduct is protected by the attorney immunity doctrine and judicial proceedings privilege and cannot serve as the basis for claims asserted by a non-client such as Plaintiff.

24.     Similarly, a lawyer owes a duty of care only to those with whom the lawyer has an attorney-client relationship. The parties must explicitly agree to that relationship (or by their conduct, have manifested an intention to create this relationship).[67] An attorney does not owe a duty to a non-client and is not liable to the non-client for damages that result from the lawyer's allegedly negligent performance of legal services for the lawyer's client.[68]

---

[65] *Kelly v. Nichamoff*, 868 F.3d 371, 375 (5th Cir. 2017).

[66] *Haynes and Boone,* 631 S.W.3d at 76 (Tex. 2021); *See also*: *Bethel v. Quiling, Selander, Lownds, Winslett & Moster, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020)

[67] *Span Enterprises v. Wood*, 274 S.W.3d 854, 858 (Tex. App.—Hous. [1 Dist.] 2008, no pet.).

[68] *Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex. 1996).

Inasmuch as Freeman, JW, and Kirkland represented BTC and not Plaintiff, the lawyers did not owe Plaintiff a legal duty that gives rise to a valid professional negligence claim. The same holds true for Plaintiff's negligent misrepresentation claim. Plaintiff was individually represented in the BTC chapter 11 case, so his reliance on any alleged false representations of BTC's lawyers was not justified and he did not act in reliance on any of those alleged representations, anyway.[69] Given that Plaintiff cannot establish justifiable or detrimental reliance, nor pecuniary harm, the Complaint's negligent misrepresentation, common law fraud, and fraudulent conspiracy claims fail to state claims upon which relief can be granted.

25.     Finally, the Complaint's unjust enrichment claim fails to explain how funds that JW received as compensation for representing BTC as debtor-in-possession belonged to Plaintiff. Inasmuch as it is indisputable that BTC paid JW for valuable services performed in the chapter 11 case, Plaintiff has failed to state a claim for unjust enrichment.

## CONCLUSION

26.     The Complaint is a convoluted product of a Plaintiff who refuses to accept the consequences of his mismanagement of his family business. Plaintiff exercised his rights to object to the BTC plan that BTC creditors overwhelming approved, and Defendants did nothing to prevent Plaintiff from exercising those rights. The non-disclosure of the Freeman-Jones relationship did not cause and had nothing to do with Plaintiff's damages, and Plaintiff has no standing to pursue possible bankruptcy estate claims based on that non-

---

[69] *Haynes and Boone*, 631 S.W.3d at 78; *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 794 (Tex. 1999).

disclosure in either the BTC chapter 11 case or any other chapter 11 case. Accordingly, Freeman requests that the FAC be dismissed under Fed. R. Civ. 12(b)(6), and for such other and further relief as is just.

Respectfully submitted,

Tom Kirkendall
Texas State Bar No. 11517300
LAW OFFICE OF TOM KIRKENDALL
2 Violetta Ct
The Woodlands, TX 77381
713.703.3536 (mobile & text)
bigtkirk@gmail.com

CO-COUNSEL FOR ELIZABETH CAROL FREEMAN, DEFENDANT

## CERTIFICATE OF SERVICE

The foregoing pleading was transmitted via electronic transmission on April 29, 2024

to respective counsel for the parties in this civil action:

Mikell A. West
Robert W. Clore
Bandas Law Firm, P.C.
802 Carancahua Street, Suite 1400
Corpus Christi, Texas 78401
mwest@bandaslawfirm.com
rclore@bandaslawfirm.com

*Counsel for Plaintiff*

David Jones
(addresses private)

David Beck
Jacqueline M. Furlow
Beck Redden
1221 McKinney St, Suite 4500
Houston, TX 77010
dbeck@beckredden.com
jfurlow@beckredden.com

John Hueston
Michael Todisco
Karen Ding
Hueston Hennigan LLP
523 West 6th St., Unit 400
Los Angeles, CA 90014
jhueston@hueston.com
mtodisco@hueston.com
kding@hueston.com

*Counsel for Kirkland & Ellis LLP and Kirkland & Ellis International LLP*

Rusty Hardin
Leah Graham
Jennifer E. Brevorka
Emily Smith
Rusty Hardin & Associates LLP
1401 McKinney, Suite 2250
Houston, TX 77010
rhardin@rustyhardin.com
lgraham@rustyhardin.com
jbrevorka@rustyhardin.com

*Counsel for Jackson & Walker LLP*


_____
Tom Kirkendall