| | |
|---|---|
| Morton S. Bouchard, III, Individually and as Co-Trustee for the Morton S. Bouchard III 2017 Family Trust, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 4:24-cv-00693 |
| David R. Jones, Elizabeth Carol Freeman, Jackson Walker, LLP, Kirkland & Ellis, LLP, Kirkland & Ellis International, LLP, Portage Point Partners, LLC, and Matthew Ray, | ) ) ) ) ) |
| Defendants. | |

## DEFENDANTS KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP'S MOTION TO DISMISS

Defendants Kirkland & Ellis LLP and Kirkland & Ellis International LLP ("Kirkland") file this motion to dismiss the complaint of Plaintiff Morton S. Bouchard, individually and as co-trustee for the Morton S. Bouchard III 2017 Family Trust (collectively, "Bouchard" or "Plaintiff"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................... 1

II. FACTUAL ALLEGATIONS ..................................................................................... 3

III. LEGAL STANDARD ................................................................................................ 8

IV. ARGUMENT............................................................................................................. 8

    A. All of Plaintiff's Claims Must be Dismissed for Multiple Threshold Reasons ........................................................................................................ 9

        1. Plaintiff's core factual allegations are not sufficiently alleged ............. 9

        2. Plaintiff lacks standing to sue ........................................................... 12

        3. Plaintiff fails to plausibly plead proximate causation as to Kirkland .. 15

        4. Plaintiff fails to establish any materially false statement ................... 17

    B. Plaintiff's Claims Must Independently Be Dismissed for Additional Reasons ...................................................................................................... 23

        1. Plaintiff has failed to allege RICO claims (Counts I, II) .................... 24

        2. The conspiracy claims fail for lack of agreement (Counts II, VIII, XI) .................................................................................................. 31

        3. The alleged Bivens conspiracy exceeds the bounds of Bivens (Count XI).................................................................................................. 32

        4. Plaintiff's state law claims fail for lack of reliance ............................ 34

        5. Plaintiff's state law claims are preempted ........................................... 34

        6. Plaintiff's state law claims are barred by Texas's "attorney immunity" and "judicial-proceedings privilege."............................... 35

        7. Counts VI, VII, IX, and XI are time barred........................................ 37

        8. Plaintiff cannot assert fiduciary duty or malpractice claims (Counts IV & VII) .............................................................................. 38

        9. Counts V and XII assert claims that do not exist................................. 39

    C. Plaintiff's Claims Should Be Dismissed With Prejudice ................................ 39

V. CONCLUSION........................................................................................................ 40

Page(s)

**Cases**

*Agar Corp.,Inc. v. Electro Circuits. Int'l, LLC*,
    580 S.W.3d 136 (Tex. 2019) ...................................................................................37, 38

*Alegre v. United States*,
    2019 WL 3322382 (S.D. Cal. July 24, 2019) ...................................................................33

*Alix v. McKinsey & Co*,
    2023 WL 5344892 (S.D.N.Y. Aug. 18, 2023) .............................................................19, 21

*Allgood v. R.J. Reynolds Tobacco Co.*,
    80 F.3d 168 (5th Cir. 1996) ..........................................................................................34

*Allstate Ins. Co. v. Benhamou*,
    190 F. Supp. 3d 631 (S.D. Tex. 2016) .......................................................................27, 28

*Allstate Ins. Co. v. Plambeck*,
    802 F.3d 665 (5th Cir. 2015) ........................................................................................27

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................................8

*Associated Builders, Inc. v. Alabama Power Co.*,
    505 F.2d 97 (5th Cir. 1974) ..........................................................................................20

*Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*,
    976 F.3d 585 (5th Cir. 2020) ..........................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................................8

*Blankinship v. Brown*,
    399 S.W.3d 303 (Tex. App. 2013) ...............................................................................34

*Bradford v. Apollo Educ. Grp. Inc.*,
    2019 WL 13193884 (N.D. Tex. July 23, 2019) .............................................................39

*Brown v. Bilek*,
    401 F. App'x 889 (5th Cir. 2010)....................................................................................9

*Brunson v. Nichols*,
    2018 WL 7286410 (W.D. La. Dec. 7, 2018) .................................................................33

*Burback v. Oblon*,
    2022 WL 2841482 (E.D. Tex. July 20, 2022) ...............................................................18

*Butler v. S. Porter*,
    999 F.3d 287 (5th Cir. 2021) ........................................................................................32

*Cantey Hanger, LLP v. Byrd*,
    467 S.W.3d 477 (Tex. 2015) .........................................................................................36

*Chapman & Cole v. Itel Container Int'l B.V.*,
　865 F.2d 676 (5th Cir. 1989) ............................................................................................9

*Cledera v. United States*,
　834 F. App'x 969 (5th Cir. 2021) .....................................................................................39

*Collins v. Zolnier*,
　2019 WL 2292333 (Tex. App.—Beaumont May 30, 2019, pet. denied) ..........................36

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
　140 S. Ct. 1009, 206 L. Ed. 2d 356 (2020) ......................................................................15

*Compass Bank v. Villarreal*,
　2011 WL 1740270 (S.D. Tex. May 5, 2011) ....................................................................28

*Crowe v. Henry*,
　43 F.3d 198 (5th Cir. 1995) .............................................................................................27

*Daniels v. Aetc II Privatized Hous., LLC*,
　2023 WL 2562714 (W.D. Tex. Jan. 18, 2023) ..................................................................18

*Digene Corp. v. Ventana Med. Sys., Inc.*,
　476 F. Supp. 2d 444 (D. Del. 2007) .................................................................................19

*Egbert v. Boule*,
　596 U.S. 482 (2022) ........................................................................................32, 33, 34

*Erikson v. Renda*,
　590 S.W.3d 557 (Tex. 2019) ............................................................................................37

*Erwin v. Russ*,
　2010 WL 11506838 (W.D. Tex. July 19, 2010) ...............................................................31

*Falkenhorst v. Sepolio*,
　2023 WL 2466398 (S.D. Tex. Feb. 21, 2023) ..................................................................36

*Fisher v. Bureau of Alcohol, Tobacco & Firearms*,
　2023 WL 2082552 (W.D.N.Y. Feb. 17, 2023) .................................................................10

*Fisher v. Halliburton*,
　2009 WL 5170280 (S.D. Tex. Dec. 17, 2009) ..................................................................26

*Fringe Benefit Grp. Inc. v. FCE Benefit Administrators Inc.*,
　No. 1:18-CV-369-LY, 2019 WL 2563833 (W.D. Tex. Mar. 19, 2019) ............................40

*Galindo v. City of Del Rio*,
　2021 WL 2763033 (W.D. Tex. Mar. 26, 2021) ................................................................14

*Gamboa v. Shaw*,
　956 S.W.2d 662 (Tex. App. 1997) ...................................................................................39

*Good v. Khosrowshahi*,
　296 F. App'x 676 (10th Cir. 2008) ...................................................................................19

*Haskett v. Capital Land Services, Inc.*,
　2015 WL 12556307 n.2 (S.D. Tex. Dec. 9, 2015) ............................................................39

KIRKLAND'S MOTION TO DISMISS

*Haynes & Boone, LLP v. NFTD, LLC,*
  631 S.W.3d 65 (Tex. 2021) ............................................................... 36

*HCB Fin. Corp. v. McPherson,*
  8 F.4th 335 (5th Cir. 2021) ............................................................... 25

*Hemi Grp., LLC v. City of New York, N.Y.,*
  559 U.S. 1 (2010) ............................................................................. 15

*Hernández v. Mesa,*
  885 F.3d 811 (5th Cir. 2018) ............................................................ 33

*Hobbs v. Stanley,*
  2023 WL 7027994 (W.D. Tex. Oct. 23, 2023) ................................... 33

*In re Am. Int'l Refinery, Inc.,*
  676 F.3d 455 (5th Cir. 2012) ............................................................ 38

*In re Am. Int'l Refinery, Inc.,*
  436 B.R. 364 (Bankr. W.D. La. 2010) ............................................... 39

*In re Brentwood Lexford Partners, LLC,*
  292 B.R. 255 (Bankr. N.D. Tex. 2003) .............................................. 35

*In re Chaussee,*
  399 B.R. 225 (B.A.P. 9th Cir. 2008) .................................................. 35

*In re Citric Acid Litig.,*
  191 F.3d 1090 (9th Cir. 1999) .......................................................... 11

*In re Enron Corp.,*
  2002 WL 32034346 (Bankr. S.D.N.Y. May 23, 2002) ....................... 21

*In re Enron Corp.,*
  2006 WL 1662596 (S.D. Tex. June 7, 2006) ..................................... 34

*In re Eon Enterprises Corp.,*
  59 F.3d 174 (9th Cir. 1995) ..................................................... 1, 21, 22

*In re Fundamental Long Term Care,*
  614 B.R. 753 (Bankr. M.D. Fla. 2020) .............................................. 21

*In re Ganas,*
  513 B.R. 394 (Bankr. E.D. Cal. 2014) ............................................... 35

*In re GSC Grp., Inc.,*
  502 B.R. 673 (Bankr. S.D.N.Y. 2013) ............................................... 21

*In re Loggins,*
  513 B.R. 682 (Bankr. E.D. Tex. 2014) .............................................. 16

*In re MasterCard Intern. Inc.,*
  313 F.3d 257 (5th Cir.2002) ................................................. 18, 27, 29

*In re NC12, Inc.,*
  478 B.R. 820 (Bankr. S.D. Tex. 2012) .............................................. 13

*In re Radnor Holdings Corp.*,
  564 B.R. 467 (D. Del.) ......................................................................................... 14

*In re SBMC Healthcare, LLC*,
  2017 WL 2062992 (S.D. Tex. May 11, 2017) ...................................................... 40

*In re Shirley*,
  134 B.R. 940 (B.A.P. 9th Cir. 1992) ...................................................................... 35

*In re Sims*,
  278 B.R. 457 (Bankr. E.D. Tenn. 2002) ................................................................. 35

*Inorio v. Wells Fargo Bank, N.A.*,
  522 F. Supp. 3d 417 (N.D. Ill. 2021) ..................................................................... 34

*Jackson v. Nat'l Ass'n for Advancement of Colored People*,
  546 F. App'x 438 (5th Cir. 2013) ........................................................................... 24

*Jackson v. Small Bus. Admin.*,
  2023 WL 375351 (N.D. Tex. Jan. 24, 2023) .......................................................... 12

*Jackson v. Small Bus. Admin.*,
  2022 WL 18456351 (N.D. Tex. Dec. 16, 2022) ..................................................... 12

*Jackson v. Varono*,
  2018 WL 5046227 (W.D. La. Oct. 17, 2018) ......................................................... 33

*Jackson v. Wray*,
  2023 WL 7029378 (N.D. Tex. Sept. 27, 2023) ...................................................... 31

*Joe N. Pratt Ins. v. Doane*,
  2008 WL 819011 (S.D. Tex. Mar. 20, 2008) .......................................................... 18

*Joffroin v. Tufaro*,
  606 F.3d 235 (5th Cir. 2010) .................................................................................. 25

*Jones v. Alcoa, Inc.*,
  339 F.3d 359 (5th Cir. 2003) .................................................................................. 38

*Jones v. Herrman & Herrman, PLLC*,
  2023 WL 6064790 (S.D. Tex. Mar. 28, 2023) ....................................................... 29

*Kariem v. United Parcel Serv., Inc.*,
  2006 WL 8437577 (N.D. Tex. Sept. 18, 2006) ...................................................... 28

*Kashelkar v. Rubin & Rothman*,
  97 F. Supp. 2d 383 (S.D.N.Y. 2000) ...................................................................... 29

*Kearey v. Collier*,
  2019 WL 3470759 (S.D. Tex. June 17, 2019) ........................................................ 16

*KRW Sales, Inc. v. Kristel Corp.*,
  154 F.R.D. 186 (N.D. Ill. 1994) ............................................................................. 19

*L. Funder, L.L.C. v. Munoz*,
  924 F.3d 753 (5th Cir. 2019) .................................................................................. 16

KIRKLAND'S MOTION TO DISMISS

*Landry's, Inc. v. Animal Legal Def. Fund*,
631 S.W.3d 40 (Tex. 2021) ......................................................................36

*Laster v. Boyle*,
2022 WL 4086782 (N.D. Tex. Aug. 4, 2022) ............................................33

*LCS Grp., LLC v. Shire LLC*,
2019 WL 1234848 (S.D.N.Y. Mar. 8, 2019)..............................................40

*Leamon v. KBR, Inc.*,
2011 WL 13340587 (S.D. Tex. Aug. 29, 2011) .........................................40

*Lemmer v. Nu-Kote Holding, Inc.*,
71 F. App'x 356 (5th Cir. 2003).................................................................40

*Lemmer v. Nu-Kote Holding, Inc.*,
2001 WL 1112577 (N.D. Tex. Sept. 6, 2001) ...........................................40

*Liberty Sackets Harbor LLC v. Village of Sackets Harbor*,
776 F. App'x 1 (2d Cir. 2019)....................................................................14

*Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*,
257 F. Supp. 2d 819 (M.D. La. 2002) .......................................................29

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010)...............................................................8, 20

*Madison v. Health Care Servs. Corp.*,
2022 WL 14225447 (W.D. Tex. Oct. 24, 2022) ........................................12

*Malone v. Safety-Guard Mfg. Co., Inc.*,
748 F.2d 312 (5th Cir. 1984)......................................................................23

*Marriott Bros. v. Gage*,
704 F. Supp. 731 (N.D. Tex. 1988)............................................................30

*Matter of Banks*,
2020 WL 5807520 (Bankr. N.D. Ga. Sept. 29, 2020)................................31

*Matter of Burch*,
818 F. App'x 367 (5th Cir. 2020)...............................................................22

*Matter of S.I. Acquisition, Inc.*,
817 F.2d 1142 (5th Cir. 1987)....................................................................13

*McCracken v. Blei*,
2022 WL 226070 n.11 (E.D. Pa. Jan. 26, 2022) .......................................11

*McDill v. McDill*,
2020 WL 4726634 (Tex. App.—Austin July 30, 2020, pet. denied) ............36

*McLean v. Int'l Harvester Co.*,
817 F.2d 1214 (5th Cir. 1987)....................................................................36

*Merkle v. Gragg*,
2020 WL 5209538 (W.D. Tex. Aug. 31, 2020) .........................................37

KIRKLAND'S MOTION TO DISMISS

*Miller Glob. Properties, LLC v. Marriott Int'l*, Inc.,
     418 S.W.3d 342 (Tex. App. 2013) ...................................................................................34

*Nocula v. UGS Corp.*,
     520 F.3d 719 (7th Cir. 2008) .........................................................................................12

*Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*,
     868 F.2d 740 (5th Cir. 1989) .........................................................................................25

*Oceanic Exploration Co. v. Phillips Petroleum Co.*,
     352 F. App'x 945 (5th Cir. 2009).....................................................................................17

*Oliva v. Nivar*,
     973 F.3d 438 (5th Cir. 2020) .........................................................................................32

*Price v. Pinnacle Brands, Inc.*,
     138 F.3d 602 (5th Cir. 1998) .........................................................................................26

*Rangel v. Adtalem Global Educ., Inc.*,
     2019 WL 13150012 (W.D. Tex. Apr. 23, 2019) ............................................................34

*Robinson v. Standard Mortg. Corp.*,
     191 F. Supp. 3d 630 (E.D. La. 2016) .............................................................................29

*Rodriguez v. Blaine Larsen Farms, Inc.*,
     2022 WL 484924 (N.D. Tex. Feb. 15, 2022) .................................................................15

*Rodriguez v. Xerox Bus. Servs., LLC*,
     2017 WL 3023213 (W.D. Tex. Mar. 27, 2017)...............................................................40

*Rote v. Comm. on Jud. Conduct & Disability of Jud. Conf. of United States*,
     577 F. Supp. 3d 1106 (D. Or. 2021)...............................................................................33

*Rynearson v. United States*,
     2013 WL 11309342 (W.D. Tex. Sept. 30, 2013) ...........................................................31

*Savoia-McHugh v. McCrary*,
     2022 WL 1997191 (S.D. Tex. June 6, 2022) .................................................................37

*Schertz–Cibolo–Universal City, Indep. Sch. Dist. (In re Educators Grp. Health Trust)*,
     25 F.3d 1281 (5th Cir. 1994) .........................................................................................13

*Sciortino Bankr. Est. v. Shapiro Pentergast & Hasty LLP*,
     2018 WL 7075244 (N.D. Ga. Nov. 21, 2018)................................................................19

*Sheller v. Corral Tran Singh, LLP*,
     551 S.W.3d 357 (Tex. App.—Houston [14th Dist.] 2018, pet. denied ............................37

*Sherwood Partners, Inc. v. Lycos, Inc.*,
     394 F.3d 1198 (9th Cir. 2005)........................................................................................35

*Sheshtawy v. Gray*,
     697 F. App'x 380 (5th Cir. 2017)....................................................................................26

- vii -

*Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*,
    17 F. Supp. 3d 207 (E.D.N.Y. 2014) ................................................................24

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
    833 F.3d 512 (5th Cir. 2016) ............................................................................28

*Stevenson v. Thornburgh*,
    2024 WL 645187 (S.D.N.Y. Feb. 14, 2024) ......................................11, 27, 31

*Stockman v. Flotek Indus., Inc.*,
    2010 WL 3785586 (S.D. Tex. Sept. 29, 2010) ..................................................9

*Strates Shows, Inc. v. Amusements of Am., Inc.*,
    379 F. Supp. 2d 817 (E.D.N.C. 2005) ............................................................16

*Tampico v. Martinez*,
    987 F.3d 387 (5th Cir. 2021) ............................................................................37

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
    975 F.2d 1134 (5th Cir. 1992) ..........................................................................18

*Tenamee v. Schmukler*,
    438 F. Supp. 2d 438 (S.D.N.Y. 2006) ..............................................................29

*Troice v. Proskauer Rose, L.L.P.*,
    816 F.3d 341 (5th Cir. 2016) ............................................................................37

*Turk v. Pershing LLC*,
    No. 3:09-CV-2199-N, 2023 WL 36080 (N.D. Tex. Jan. 3, 2023) ...................39

*U.S. ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) ..............................................................................9

*U.S. ex rel. Lam v. Tenet Healthcare Corp.*,
    481 F. Supp. 2d 673 (W.D. Tex. 2006) ..............................................................4

*United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*,
    816 F. App'x 892 (5th Cir. 2020) ...........................................................9, 11, 22

*United States v. Dental Health Programs, Inc.*,
    2020 WL 3064712 (N.D. Tex. June 8, 2020) ..................................................18

*United States v. Greenlaw*,
    84 F.4th 325 (5th Cir. 2023) ............................................................................29

*United States v. Kaster*,
    139 F.3d 902 (7th Cir. 1998) ............................................................................31

*United States v. Kirkham*,
    129 F. App'x 61 (5th Cir. 2005) ......................................................................29

*United States v. Pettis*,
    720 F. App'x 306 (7th Cir. 2017) ....................................................................10

*United States v. Richardson*,
    676 F.3d 491 (5th Cir. 2012) ............................................................................28

*United States v. Teel*,
    691 F.3d 578 (5th Cir. 2012) ..................................................................... 30

*United States v. Vasquez*,
    2023 WL 7381427 (5th Cir. Nov. 7, 2023) ...................................... 30, 31

*United States v. Wright*,
    665 F.3d 560 (3d Cir. 2012) ....................................................................... 31

*Varco LP v. Bohnsack*,
    2009 WL 10698303 (S.D. Tex. Oct. 1, 2009) ........................................ 39

*Varela v. Gonzales*,
    2014 WL 1284985 (N.D. Tex. Mar. 31, 2014) ...................................... 27

*Varela v. Gonzales*,
    773 F.3d 704 (5th Cir. 2014) ............................................................. 25, 26

*von Falkenhorst v. Hunter*,
    2023 WL 6878911 (5th Cir. Oct. 18, 2023) .......................................... 37

*Warnock v. State Farm Mut. Auto. Ins. Co.*,
    833 F. Supp. 2d 604 (S.D. Miss. 2011) ................................................. 29

*Whalen v. Carter*,
    954 F.2d 1087 (5th Cir. 1992) .................................................................. 26

*Wilkinson v. USAA Fed. Sav. Bank Tr. Servs.*,
    2014 WL 3002400 ......................................................................................... 36

*Williams v. WMX Techs.*,
    112 F.3d 175 (5th Cir. 1997) .............................................................. 8, 28

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017) ..................................................................................... 32

**Statutes**

11 U.S.C. § 105(a) ..................................................................................................... 35

11 U.S.C. § 328(c) ..................................................................................................... 35

18 U.S.C. § 152(6) ..................................................................................................... 31

**Rules**

Fed. R. Bankr. P. 9011 ............................................................................................ 35

Federal Rule of Civil Procedure 9(b) ............................................................. 8, 9

Federal Rule of Civil Procedure 12(b)(6) ........................................................... 1

# I.     **INTRODUCTION**

In October 2023, then-Chief Bankruptcy Judge David Jones revealed that he had been concealing a long-term romantic relationship with Elizabeth Freeman, a partner at Jackson Walker. (Dkt. 1 ("Compl.") ¶ 101.)  Following that revelation, and a similar lawsuit filed by serial litigant Michael Van Deelen (*Van Deelen v. Jones, et al.*, 4:23-CV-03729 (S.D. Tex.)), Plaintiff Morton Bouchard filed this lawsuit accusing Kirkland & Ellis of engaging in a systematic pattern of criminal activity, based on Kirkland's alleged failure to disclose the Jones-Freeman relationship. But that relationship has nothing to do with Kirkland.  Bouchard's allegations to the contrary— which he pulls near-verbatim from *Van Deelen* (4:23-CV-03729, Dkt. 10)—fall far short of stating a claim.  Like Van Deelen, Bouchard brings serious claims against Kirkland on what amounts to a tortured theory of bystander liability.  Even accepted as true, Plaintiff's allegations against Kirkland establish at most that: (1) certain unnamed "Kirkland partners" knew that Jones and Freeman had, at some point, been romantically involved, but "did not know how advanced [their relationship] was" and, in any event, "assumed the pair had received clearance" (Compl. ¶ 109); and (2) in bankruptcy cases where Jackson Walker served as Kirkland's co-counsel, Kirkland's conflict disclosures—which were explicitly limited to identifying *Kirkland*'s potential conflicts— did not disclose this *Jackson Walker* conflict on *Jackson Walker's* behalf.  (*Id.* ¶¶ 40-42.)

These allegations are plainly insufficient to support any of Plaintiff's claims.  Contrary to Plaintiff's repeated assertions, the bankruptcy rules did not require Kirkland to disclose potential conflicts of "its local counsel's partner." (*Id.* ¶ 160.)  Indeed, similar arguments based on these same bankruptcy rules have been rejected as not only incorrect, but sanctionable.  *See In re Eon Enterprises Corp.*, 59 F.3d 174, at *1 (9th Cir. 1995) (affirming sanctions against "clear[ly] frivolous[]" argument that bankruptcy firm should have been "disqualified because of local counsel's conflict of interest" or "should be required to disgorge its fees because it failed to disclose another law firm's conflict of interest").  Despite being clearly wrong, Plaintiff uses this purported violation of procedural bankruptcy rules as the legal foundation for his theory that Kirkland engaged in widespread and far-reaching criminal activity.  (*E.g.*, Compl. ¶¶ 147, 150.)

The inadequacy of Plaintiff's allegations against Kirkland is compounded by the flimsy

facts Plaintiff cites to support them. Recognizing the lack of any factual basis to allege that Kirkland was aware of the secret Jones-Freeman relationship before the issue surfaced in court filings in March 2021, Plaintiff leans on the misleading allegation that Kirkland "has not even disputed . . . that the relationship was disclosed to the firm in March 2021." (*Id.* ¶ 136.) But all that could have been "disclosed" at that time was that Van Deelen had *accused* Jones and Freeman of a romantic relationship while seeking Jones's recusal in a different bankruptcy case. (*Id.* ¶ 108.) And Van Deelen's only evidence was an anonymous letter he claimed to have received. (Bk. No. 20-03309, Dkt. 39 at 3 [sealed].) Even setting aside the inherent unreliability of anonymous allegations in an unauthenticated letter, Van Deelen himself was a particularly unreliable messenger. Van Deelen had a history of sanctionable litigation conduct, including for "fabricating evidence" and for lying in under-oath statements. *Van Deelen v. City of Kansas City*, 2006 WL 2077640, at *14 (W.D. Mo. July 24, 2006), *aff'd*, 262 F. App'x 723 (8th Cir. 2007); *see, e.g.*, *In re McDermott International, Inc. et al.*, Bk. No. 20-30336 (S.D. Tex.), Dkt. 719 at 1–2. In addition, Van Deelen himself acknowledged that his March 2021 allegations involved mere "*possible* inappropriate behavior by [Jackson Walker]." *In re McDermott International, Inc. et al.* (S.D. Tex.), Bk. No. 20-03309, Dkt. 44 at 2 (emphasis added). For its part, Jackson Walker initially described the allegations as "defamatory"—i.e., damaging and *false*. *Id.*, Dkt. 36 at 2.

Despite these facially suspect circumstances around the allegations, Bankruptcy Judge Marvin Isgur nonetheless held an evidentiary hearing in March 2021 to assess them. (Compl. Ex. 1 at 2–3); *see also In re McDermott International, Inc. et al.* (S.D. Tex.), Bk. No. 20-03309, Dkt. 40. After allowing Van Deelen to testify, Judge Isgur found the allegations about Jones and Freeman had not been credibly substantiated and denied Van Deelen's motion to recuse. *See id.*, Dkts. 42, 47. Later, Judge Jones ordered Van Deelen's accusations sealed. (*Id.*, Dkt. No. 78 at 2.) And just months ago, Chief Bankruptcy Judge Eduardo Rodriguez affirmed that "all evidentiary and legal matters were properly considered and ruled on appropriately [by Judge Isgur] in light of what was presented at the time." *In re 4E Brands Northamerica LLC*, 655 B.R. 331, 338 (Bankr. S.D. Tex. 2023).

This context is critical. Properly framed, Plaintiff's allegations rest on an assertion that

Kirkland was not only required to uncritically accept as true Van Deelen's accusations of "possible" misconduct (notwithstanding Judge Isgur's order deeming them unsubstantiated), but that Kirkland also broke the law by failing to broadcast those then-rejected allegations in other matters (notwithstanding the order sealing the accusation and Jackson Walker's assertion that it was defamatory). (*See* Compl. ¶ 53.) This theory defies common sense and the law. *See, e.g.*, *Berda v. CBS Inc.*, 800 F. Supp. 1272, 1279 (W.D. Pa.), *aff'd*, 975 F.2d 1548 (3d Cir. 1992) ("[P]laintiffs assert that because [defendant's employees] acknowledged hearing rumors . . . they had a duty to investigate and disclose those rumors. . . . This is absurd, without more.").

Kirkland should not be named as a defendant, and all of Plaintiff's eleven causes of action against Kirkland fail many times over. As a threshold matter, Plaintiff fails to allege misconduct by Kirkland with the particularity and plausibility required by Rule 9(b) for at least four independent reasons. (*Infra* section IV.A.1.) In addition, as a shareholder and purported creditor of Bouchard Transportation Co., Inc. (collectively, with affiliated entities, "BTC"), Plaintiff lacks standing to assert claims based on injury to the estate. (*Infra* section IV.A.2.) On top of that, Plaintiff's theory that Kirkland proximately caused him harm, which is wrong on many levels, adds three more fatal deficiencies. (*Infra* section IV.A.3.) And for multiple additional reasons, Plaintiff's claims against Kirkland fail for lack of any materially false statement. (*Infra* section IV.A.4.) While these threshold deficiencies defeat all of Plaintiff's claims, each of Plaintiff's claims must also be dismissed for at least eight independent reasons. (*See infra* section IV.B (table summarizing arguments).) These pervasive errors are not mere technical pleading deficiencies. They show that Plaintiff has carelessly accused Kirkland of engaging in serious misconduct without doing the basic due diligence required to file in federal court. For the following reasons, Kirkland respectfully requests that Plaintiff's complaint be dismissed with prejudice.

## II.    FACTUAL ALLEGATIONS

This lawsuit arises from the Chapter 11 bankruptcy of BTC. (Compl. ¶ 2.) Plaintiff was the owner and sole shareholder of BTC, and served as Chief Executive Officer and sole director before and during the early stages of the BTC bankruptcy. (*Id*. ¶¶ 64, 147(g), 282.)

Like many companies that file for Chapter 11, BTC did so given its insurmountable debt.

Bouchard approached Kirkland in 2020 about these "financial concerns" and, soon thereafter, BTC filed for bankruptcy in the Southern District of Texas. (*Id.* ¶ 62.) The case was assigned to Judge Jones. (*Id.* ¶ 43.) Kirkland was retained as counsel for the debtors and debtors in possession (collectively, "Debtors"). (*Id.* ¶ 46.) Jackson Walker was separately retained as "local and conflicts counsel" to "assist" Kirkland. (*Id.* ¶ 44.)

Though Debtors entered bankruptcy optimistic they could turn the company's fortunes around, "[t]he bankruptcy proceedings got off to a rocky start." *In re Bouchard Transportation Co., Inc.*, 639 B.R. 697, 702 (S.D. Tex. 2022), *aff'd sub nom. Matter of Bouchard Transportation Co., Inc.*, 74 F.4th 743 (5th Cir. 2023). By the time BTC entered bankruptcy in September 2020, their operations "had ground to a halt" and they "lacked the liquidity and human capital necessary to perform repairs on their fleet, obtain or reobtain required regulatory and other certifications, and otherwise place vessels back in service." (*Id.*) Critically, Debtors "quickly defaulted" on a key credit facility meant to fund BTC through the Chapter 11 process. (*Id.*)

Many of the challenges in the BTC bankruptcy were attributed to Plaintiff's poor leadership before and after filing for Chapter 11. For instance, the proceedings were hindered by the fact that BTC's "books and records ha[d] not been kept up as one would have expected for a long period of time." (Bk. 20-34682, Dkt. 557 at 8:13-15.)[1] Plaintiff also refused to engage in critical efforts to help ease Debtors' liquidity crunch, including the proposed sale of certain BTC assets. (*See id.*, Dkt. 591 at 6.) All the while, as Debtors later alleged in an adversary proceeding, Plaintiff "used the Debtor's finite resources to lead a lifestyle of luxury, including purchasing and using a private jet for which the Debtors had no facially valid business purpose." (Bk. 22-03276, Dkt. 1 ¶ 2.)

---

[1] "[C]ourts may take judicial notice of court filings to establish the fact of litigation and related filings." *U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006). Many of the court filings relied upon in this motion were cited in Plaintiff's complaint, (*e.g.*, Compl. ¶¶ 46, 54, 89, 93), and Plaintiff has expressly sought judicial notice of them. (*See* Compl. ¶ 40 n.38.) While Plaintiff has not expressly sought judicial notice of other documents related to the BTC bankruptcy proceedings, he characterizes them at length in his description of his removal as CEO and his (unresolved) status as a creditor. (*E.g.*, Compl. ¶¶ 62-100.) "[W]hen reviewing a motion to dismiss, a district court must consider . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (cleaned up).

These problems came to a head in February 2021, when Debtors missed payroll for their employees. (Bk. 20-34682, Dkt. 557 at 28.) At that time, Judge Jones expressed his frustration with Debtors' continued inability to make progress and improve their financial position. (*Id.* at 9, 13-14.) He indicated that while he was "reluctant" to take any drastic measures and had "hop[ed] that progress would be made," "we're not going to have unpaid employees even for a day." (*Id.*) Judge Jones then indicated he was contemplating removing Plaintiff from his leadership role at BTC. (*Id.* at 24-26.) In a colloquy with Kirkland partner Ryan Bennett, Judge Jones made clear that he alone would make this decision. (*Id.* at 24 ("I will take this out of all of your hands because I have waited and I've given everybody a chance and I've given hints along the way."); *see also* Compl. ¶ 71 (acknowledging that Kirkland did not move to remove Bouchard).) Bennett responded by stating he would "want to talk to [his] client." (Bk. 20-34682, Dkt. 557 at 25.) Judge Jones concluded the exchange by telling Bennett, "I know what's going on. No one wants to say it. Eventually, if I don't get movement, I will." (*Id.* at 27.)

Days later, Judge Jones decided that Plaintiff's removal was necessary. After Plaintiff continued to refuse to engage with lenders regarding a sale of BTC assets to fund payroll, Judge Jones removed Plaintiff as CEO. (Bk. 20-34682, Dkt. 591 at 7.) Significantly, other interested parties expressed their approval, including BTC lender Wells Fargo, which stated "[w]e appreciate the direction that things are going." (*Id.* at 12.) Far from the abrupt "coup" Plaintiff describes in his complaint, his removal was anticipated and, ultimately, a turning point in the bankruptcy. Plaintiff, perhaps recognizing as much, did not even object to his removal. In fact, Plaintiff initially provided Debtors with consultation regarding business operations. (*See* Bk. 20-34682, Dkt. 883.)

After Plaintiff's removal from his BTC post, additional concerns arose about his conduct in the bankruptcy. Plaintiff claimed to be one of BTC's creditors by virtue of alleged "loans" of more than $40 million he and other related individuals and entities made to BTC in the years leading up to the bankruptcy. (Compl. ¶ 65.) But both Debtors and the Unsecured Creditors Committee (the "Committee") objected to Plaintiff's creditor claims, asserting that Plaintiff's attempt to classify the transfers as "loans" was improper. (*E.g.*, Bk. 20-34682, Dkt. 1024; *id.*, Dkt. 1150.) According to the Committee, Plaintiff had "represented to his personal lawyer and the

company's outside auditors that such amounts were not loans, but instead equity contributions" and, moreover, Plaintiff "was prohibited from lending any amounts to BTC under BTC's loan agreement with Wells Fargo." (*Id.*, Dkt. 1150 ¶ 1.) Only once bankruptcy appeared imminent did Plaintiff change course and create "promissory notes that were then backdated to reflect the $40 million of purported 'advances' that he previously made for BTC's benefit." (*Id.*) Debtors challenged Plaintiff's "loans" because they were made "on terms that no bona fide, arms-length lender would entertain"; "BTC never repaid any principal or paid any interest"; "[a]ccrued interest . . . [was] not included as indebtedness in [BTC's financial records]"; and any such "loans" would have violated the Wells Fargo credit facility. (*Id.*, Dkt. 1023 ¶¶ 15-21.)

The BTC bankruptcy thereafter made swift progress and Debtors submitted an Amended Chapter 11 Plan in late August 2021. (Bk. 20-34682, Dkt. 1293.) Plaintiff had filed limited objections, which the Plan accommodated in every way except with respect to Plaintiff's contention that the Plan's exculpation clause and related injunction clause were overbroad. (*See* Bk. 20-34682, Dkt. 1304, Ex. A at 1.)[2] Notably, none of these objections centered on alleged excessive professional fees or anything related to the Plan's substantive disposition (other than deferring resolution of Plaintiff's purported "loan" claims). (*Id.*) Judge Jones ultimately confirmed the Plan and overruled Plaintiff's two unresolved objections regarding exculpation. (Bk. 20-34682, Dkt. 1319 at 12.) Plaintiff successfully appealed the Confirmation Order on that narrow ground. *In re Bouchard Transportation Co., Inc.*, 2023 WL 1797907, at *1 (S.D. Tex. Feb. 7, 2023). Post-confirmation proceedings remain pending under the name *In Re: Tug Robert J Bouchard Corporation*, Bk. 20-34758, which include the unresolved dispute regarding Plaintiff's "loans" and Debtors' adversary claim against Plaintiff.

Jones, however, no longer presides over the BTC proceedings. On October 13, 2023, Jones's involvement was terminated and Bankruptcy Judge Christopher M. Lopez was assigned to

---

[2] Whether Plaintiff was in fact a proper "creditor" was never resolved. When Judge Jones ultimately approved the BTC Chapter 11 Plan, he carved out Plaintiff's claims to be resolved post-confirmation. (*Id.*, Dkt. 1319 at ¶¶ 38-40.) While Debtor and Plaintiff proposed a settlement on the issue to avoid litigation and incurring further professional fees (Bk. 20-34758, Dkt. 323 at ¶¶ 3, 10), the resolution was never approved by the Court.

the matter. (Bk. 20-34682, Dkt. 1418.) This re-assignment came less than one week after Jones publicly admitted for the first time that he was "in a relationship and has shared a home for years with" Freeman. (Compl. ¶ 101 & n.96.) In that interview, Jones defended the decision not to disclose the relationship—which he admits "[he] and [he] alone made"—by explaining he "believe[d] the relationship didn't need to be disclosed because he and Freeman aren't married." (Declaration of Karen Ding ("Ding Decl."), Ex. 1 at 3.) Shortly thereafter, on October 15, 2023, Jones resigned. (Compl. ¶ 106.)

In the wake of these revelations, the U.S. Trustee—who has the statutory role of protecting the integrity of the bankruptcy system—sought to reopen bankruptcy cases heard by Jones and vacate the fees he awarded to Jackson Walker, including in the BTC bankruptcy. (*Id.* ¶ 107; Bk. 20-34758, Dkt. 354 at 1–4.) In its filings, the U.S. Trustee repeatedly describes the relationship between Freeman and Jones as "secret" and observes that information about the "relationship became publicly known when reported by Business Insider on October 6, 2023, and confirmed by Judge Jones the next day." (Bk. 20-34758, Dkt. 354 at 3.)

In response to the U.S. Trustee's filings, Jackson Walker attested it first learned of an alleged relationship between Freeman and Jones in March 2021, when it received a copy of the anonymous letter that Van Deelen filed in the McDermott bankruptcy. (Compl. ¶ 108; Bk. 20-34758, Dkt. 356.) Jackson Walker further attested that, after learning of this allegation in March 2021, it conducted an investigation and subsequently confirmed the existence of a past relationship, but Freeman (falsely) told Jackson Walker that the romantic relationship had ended prior to March 2020, and that she and Judge Jones "do not and have not lived together." (Bk. 20-34758, Dkt. 356-1 at 4.) Thus, though the complaint alleges that Jackson Walker notified Kirkland of unspecified "matters" concerning the Jones-Freeman relationship in March 2021 upon receipt of the anonymous letter from Van Deelen (Compl. ¶ 108), there was no indication at that time of any relationship, or that Freeman and Jones lived together. Instead, Jackson Walker asserted that it only learned "that Ms. Freeman's [March 2021] denial was possibly false or at least no longer true" a year later when, "in 2022, a credible third party volunteered new information" that led Freeman to "admit[] that the relationship had resumed." (Bk. 20-34758, Dkt. 356 at 2, 5.)

On February 26, 2024, Plaintiff filed this complaint against Jones, Freeman, Jackson Walker, Kirkland, Portage Point Partners LLC, and Portage Point's managing partner Matthew Ray. (Compl. at 1.) The complaint alleges that Kirkland conspired with Jones, Freeman, and Jackson Walker "to bolster prestige and collect tens of millions of dollars or more in fees at the expense of those affected by the bankruptcies." (*Id.* ¶ 2.) Plaintiff's theory is that Kirkland allegedly furthered the conspiracy by filing numerous "federal court papers" that did not disclose the relationship in violation of "the rules governing bankruptcy proceedings." (*Id.* ¶¶ 6, 42.) Plaintiff claims he was harmed because the defendants collectively "dismantled [BTC]," holding a "fire sale of the company's assets" that led Plaintiff to lose "tens of millions of dollars which he had invested personally to help keep the company afloat." (*Id.* ¶¶ 2, 3.)

## III.  LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") further requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this heightened pleading standard, the plaintiff must allege "the who, what, when, and where" of the alleged fraud. *Williams v. WMX Techs.*, 112 F.3d 175, 178 (5th Cir. 1997). Rule 9(b) applies here to all of Plaintiff's claims—even those not overtly framed in terms of fraud—because each is expressly "based on the same set of alleged facts" related to Kirkland's claimed fraudulent conduct in failing to disclose the Jones-Freeman relationship. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 n.3 (5th Cir. 2010).

## IV.  ARGUMENT

Kirkland's arguments in support of dismissal are organized as follows: Section A sets forth four cross-cutting reasons why all of Plaintiff's claims must be dismissed; Section B identifies additional deficiencies in individual claims and subsets of claims; and Section C explains why

leave to amend should not be granted.

### A.      All of Plaintiff's Claims Must be Dismissed for Multiple Threshold Reasons

All of Plaintiff's claims fail under Rule 12(b)(6) for four threshold reasons: (1) Plaintiff's core factual allegations are not alleged with sufficient particularity or plausibility; (2) Plaintiff lacks standing to pursue the estate's claims; (3) Plaintiff has not and cannot plead any injury proximately caused by Kirkland's conduct; and (4) Plaintiff has not plausibly alleged any materially false statement by Kirkland.

### 1.      Plaintiff's core factual allegations are not sufficiently alleged.

Plaintiff's essential factual theory underlying all of his claims is that Kirkland knew of the relationship between Jones and Freeman long before it became public, and conspired with Jones, Freeman, and Jackson Walker to conceal the relationship in order to enrich themselves.  (Compl. ¶ 2.)  For three independent reasons, Plaintiff fails to plead this "alleged misbehavior" by Kirkland "with the particularity required by Rule 9(b)," *Brown v. Bilek*, 401 F. App'x 889, 894-95 (5th Cir. 2010), or the plausibility required by *Iqbal* and *Twombly*.  *See United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 898 (5th Cir. 2020) ("Rule 9(b)'s particularity requirement supplements Rule 8(a)'s demand that a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." (cleaned up)); *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) ("Rule 9(b) has long played [a] screening function . . . to weed out meritless fraud claims sooner than later.").

*First,* Plaintiff's claim that Kirkland knew about the Jones-Freeman relationship prior to Van Deelen's recusal filing in March 2021 lacks any factual support.  Plaintiff's allegations of Kirkland's knowledge are based on a misreading of two sparse sentences in a November 2023 Financial Times ("FT") article.  (*See* Compl. ¶ 109.)  But this "unverified hearsay" in the FT article is not sufficiently reliable or specific to meet Plaintiff's pleading burden on this critical threshold fact.  *Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676, 685 (5th Cir. 1989); *see also Stockman v. Flotek Indus., Inc.*, 2010 WL 3785586, at *15 (S.D. Tex. Sept. 29, 2010) (statements attributed to confidential witness were insufficient to support fraud claims because "they are hearsay" and "lack indicia of reliability required by case law").

The FT article is doubly inadequate to prove Kirkland's knowledge prior to March 2021 since it contradicts contemporaneous documents showing that Kirkland was not informed of the relationship.  (*See* Bk. No. 20-03309, Dkt. 36 at 2 (Jackson Walker describing the allegations as "defamatory"); Compl. ¶ 112 (alleging that Freeman was "dishonest" when first asked about the relationship).)  Recognizing this, Plaintiff appears to pivot to an inquiry-notice theory—alleging that because Freeman was "dishonest with them about [the] relationship," Kirkland should have conducted a "check of real property records" to see if Jones and Freeman co-owned property. (Compl. ¶ 112.)  Similar arguments have been rejected as "absurd."  *Berda*, 800 F. Supp. at 1279.

But even taking the FT's statement about Kirkland's "knowledge" as true, the remainder of the two sentences about Kirkland provides an innocent—and understandable—explanation for Kirkland's decision not to report the Jones-Freeman relationship: Kirkland "did not know how advanced" the Freeman-Jones relationship was and "assumed the pair had received clearance" for whatever relationship they may have had.  (Compl. ¶ 109.)  In short, Plaintiff's allegations establish at most that Kirkland mistakenly presumed a federal judge was complying with his statutory and ethical obligations.  Though Kirkland was in hindsight incorrect, the notion that a party may assume a federal judge is acting properly—and certainly is not required to assume that a federal judge is acting improperly—is well-ingrained in the law.  *See, e.g.*, *United States v. Pettis*, 720 F. App'x 306, 310 (7th Cir. 2017) (plaintiff's "[s]peculation" was "insufficient to overcome the presumption that judges are neutral decision-makers"); *Fisher v. Bureau of Alcohol, Tobacco & Firearms*, 2023 WL 2082552, at *10 (W.D.N.Y. Feb. 17, 2023) (plaintiff "compounded th[e] implausibility" of his allegations by alleging that "three federal judges" were co-conspirators).

As noted above, Plaintiff's new explanation that Kirkland "has not even disputed" that it learned of the Freeman-Jones relationship in March 2021 is not only false but also misses the point. (Compl. ¶ 136.)  Even according to Plaintiff's own allegations, Jackson Walker only disclosed a *past* relationship that had long ended, and never included co-habitation.  (*Id.* ¶ 108.)  And the only allegation of a then-existing relationship had been made by a pro se plaintiff with a reputation for misconduct, rejected by Judge Isgur after "properly consider[ing]" "all evidentiary and legal matters," *In re 4E Brands*, 655 B.R. at 338, and later sealed by Judge Jones.  (*See id.* ¶¶ 103–04.)

It would not have been appropriate—let alone required by law—for Kirkland to later disclose this unverified, rejected, and sealed allegation in subsequent cases. *See State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 846, 850 (2d Cir. 1981) (party had no obligation "to correct or verify rumors in the marketplace" where the party was not responsible for starting those rumors, particularly given "publicity embargo" related to underlying information); *Berda*, 800 F. Supp. at 1279 (rejecting "duty to investigate and disclose [a] rumor[]").

*Second*, Plaintiff's contradictory and inconsistent allegations against Kirkland "are indicative of a failure to plead a plausible claim." *Stevenson v. Thornburgh*, 2024 WL 645187, at *13 (S.D.N.Y. Feb. 14, 2024). In particular, Plaintiff alleges that Kirkland worked with Jackson Walker as co-counsel in order to exploit the "Jones-Freeman conduit." (Compl. ¶ 5.) But Kirkland worked with Jackson Walker years *before* Freeman joined the firm and continued doing so *after* she left the firm in 2022. *See* Ding Decl. ¶ 2 (compiling cases where the firms worked together both before and after Freeman's tenure at Jackson Walker). Thus, "the timing of [Kirkland's] decision [to work with Jackson Walker] does not fit with [plaintiff's] theory of conspiracy." *In re Citric Acid Litig.*, 191 F.3d 1090, 1101 (9th Cir. 1999); *see McCracken v. Blei*, 2022 WL 226070, at *5 n.11 (E.D. Pa. Jan. 26, 2022) (conspiracy was not plausibly alleged where some "allegations are wholly inconsistent with others and defy common sense," including "with respect to the . . . timing of this alleged conspiracy").

*Third*, setting Plaintiff's conspiracy theory aside, every fact alleged is "consistent with a legal and obvious alternative explanation." *Integra Med Analytics*, 816 F. App'x at 898. Plaintiff's allegations of wrongdoing are not merely *consistent* with innocent alternative explanations, they are exclusively sourced from an article describing them. (*See* Compl. ¶¶ 108–109.) Kirkland was approved as debtor's counsel not due to "intimate relationships and self-interest" (*id.* ¶ 131), but because it is a "dominant US debtor law firm" that is routinely approved for high-profile matters throughout the country. (*Id.* ¶ 37.) Likewise, Kirkland had good reason to use Jackson Walker as local counsel irrespective of Freeman's (then-secret) romance with Jones because of Jackson Walker's substantial local knowledge. (*Id.* ¶ 39 (alleging that Jackson Walker partners had clerked for Judges Jones and Isgur).) And Plaintiff's allegation that Kirkland recommended filing in

Houston because of a "friendly judge"—even accepted as true—merely shows that Kirkland was fulfilling its duty to BTC to find the best venue. *See, e.g.*, *McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1261–64 (5th Cir. 1983) ("The existence of [jurisdiction and venue] choices not only permits but indeed invites counsel . . . to select the forum that he considers most receptive to his cause."). This is particularly true in bankruptcy cases, as the venue statute deliberately "provide[s] broad flexibility in the choices for proper venue." *In re Segno Commc'ns, Inc.*, 264 B.R. 501, 511 (Bankr. N.D. Ill. 2001). As Plaintiff acknowledges, these flexible bankruptcy venue rules led debtors across the country to file in Houston given Judges Jones and Isgur's talents for managing "high-dollar complex Chapter 11 bankruptcies." (Compl. ¶¶ 28–30.)

For these three reasons—both separately and collectively—Plaintiff fails to plausibly plead the key facts necessary for his claims as required by Rule 9(b) and Rule 12(b)(6).

### 2. Plaintiff lacks standing to sue.

Plaintiff lacks standing to bring his claims because the injury he alleges as BTC's sole shareholder and purported creditor are derivative of harms allegedly suffered by BTC. (*E.g.*, Compl. ¶ 3 (alleging that "Plaintiff lost tens of millions of dollars which he had invested" in BTC through "a fire sale of the company's assets"); *id.* ¶ 137 (alleging "the bankruptcy estate . . . was diminished by the fees improperly awarded" to debtors' counsel).) Such injuries "derive[] from harm to the debtor" and must be pursued, if at all, through claims that "belong exclusively to the estate."[3] *Matter of Educators Grp. Health Tr.*, 25 F.3d 1281, 1284–85 (5th Cir. 1994). This doctrine is rooted in bankruptcy's unique and fundamental equitable principles: when an individual plaintiff's allegations would benefit a broader class of creditors or shareholders, but a plaintiff

---

[3] Many cases, including those cited here, frame this principle as "standing" to sue; this brief follows suit. *See Jackson v. Small Bus. Admin.*, 2022 WL 18456351, at *3 (N.D. Tex. Dec. 16, 2022) ("The argument that a shareholder or principal lacks standing to bring suit to enforce the rights of the corporation is a matter of prudential standing."), *report and recommendation adopted*, 2023 WL 375351 (N.D. Tex. Jan. 24, 2023); *Nocula v. UGS Corp.*, 520 F.3d 719, 726-27 (7th Cir. 2008) ("[T]he prudential rule against shareholder suits for injuries to the corporation precludes him from bringing these claims because they belong to the corporation"). Other courts have treated it as a matter of "capacity" to sue instead. *See, e.g.*, *Madison v. Health Care Serv. Corp.*, 2022 WL 14225447, at *3 (W.D. Tex. Oct. 24, 2022), *report and recommendation adopted*, 2022 WL 17732718 (W.D. Tex. Dec. 9, 2022).

pursues them alone, "to allow the plaintiff's actions to proceed would undercut the general bankruptcy policy of ensuring that all similarly-situated [individuals] are treated fairly." *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1153 (5th Cir. 1987). Thus, the estate "has *exclusive* standing to assert" such claims. *Matter of Educators Grp. Health Tr.*, 25 F.3d at 1284; *see also In re E.F. Hutton Southwest Properties II, Ltd.,* 103 B.R. 808, 812 (Bankr. N.D. Tex. 1989) ("If an action belongs to the estate, the trustee has the power and duty to prosecute the action for the benefit of all creditors and shareholders[.]").

Even if Plaintiff had any viable claims against Kirkland—and he does not—those claims would belong to the BTC estate, not Plaintiff directly. Indeed, Plaintiff explicitly acknowledges his alleged injuries are entirely based on alleged harm suffered by the bankruptcy estate. For example, with respect to his RICO claims and unjust enrichment claim, Plaintiff asserts his "financial recovery . . . was reduced because *the bankruptcy estate* . . . was diminished by the fees improperly awarded" to Kirkland. (Compl. ¶¶ 137, 171, 246 (emphasis added).) Plaintiff's common law fraud and negligent misrepresentation claims similarly assert he suffered injury "when . . . [Kirkland was] appointed and awarded attorneys' fees *from the bankruptcy estate* by Judge Jones . . . without disclosure of the intimate relationship." (*Id.* ¶¶ 178, 180, 181, 182, 227 (emphasis added).) His breach of fiduciary duty claims likewise frame the duty as running from Kirkland "*to the bankruptcy estate*" and complain that Kirkland's breaches "thereby reduc[ed] *the estate* that was available to pay . . . Plaintiff." (*Id.* ¶¶ 187, 191, 203 (emphasis added).) His other claims are likewise predicated on the notion that Kirkland wrongfully "enrich[ed] [itself]" at the estate's expense or breached some duty to the estate. (*See id.* ¶¶ 233 (professional negligence), 241 (civil conspiracy), 266 (Bivens conspiracy).) In short, there is "no indication of any harm to [Plaintiff] *other than* the harm to [BTC]," meaning he lacks standing to recover individually for them. *In re NC12, Inc.*, 478 B.R. 820, 836 (Bankr. S.D. Tex. 2012).

Courts have uniformly rejected such derivative claims brought individually by creditors and shareholders of a debtor. In one analogous case, a shareholder brought a host of claims including for breach of fiduciary duty, fraud, conspiracy, and malpractice, based on an alleged "conspiracy . . . to hide conflicts of interest [and] retain Skadden as [debtor's] bankruptcy

counsel." *In re Radnor Holdings Corp.*, 564 B.R. 467, 471, 480 (D. Del.), *aff'd*, 706 F. App'x 94 (3d Cir. 2017). The court affirmed dismissal of these claims in part because plaintiff lacked standing: he was "affected *through* [the debtor], by virtue of his ownership of equity," and "[the debtor] would be the only proper plaintiff to assert such derivative claims." *Id.* at 484; *see also In re Acis Cap. Mgmt., L.P.*, 604 B.R. 484, 509-10 (N.D. Tex. 2019) (shareholder claim that debtor was "being decimated by administrative expenses" was "quintessentially derivative"), *aff'd sub nom. Matter of Acis Cap. Mgmt., L.P.*, 850 F. App'x 302 (5th Cir. 2021); *In re NC12*, 478 B.R. at 836 (similar). Likewise, in *In re Lothian Oil, Inc.*, the Fifth Circuit applied that same reasoning to a creditor suit against third parties who allegedly deprived the debtor of its assets. 531 F. App'x 428, 439 (5th Cir. 2013). The creditors' injury (reduced bankruptcy recovery) derived from injury to the debtor (the loss of estate assets), so only the estate could sue the third parties. *Id.* at 439-40.

Plaintiff's attempt to end-run these rules with claims of "mental anguish" and "emotional distress" does not change this result. (Compl. ¶¶ 6, 121, 270.) Given the facts alleged, even these supposed damages "are derivative injuries that indirectly stem from the alleged harm" to BTC. *Galindo v. City of Del Rio*, 2021 WL 2763033, at *4 (W.D. Tex. Mar. 26, 2021) (internal quotations omitted). In *Galindo*, plaintiff operated a business that had a contract with another party and alleged the other party's misconduct caused "harm to his reputation . . . [and] mental anguish and humiliation." *Id.* But the *Galindo* plaintiff had no standing because his business was the "contracting entity" "and the one who was directly injured" by defendant's alleged wrongdoing. *Id.* So too here. It was Debtors, not Plaintiff individually, who employed Kirkland. (Compl. ¶ 46.) Any alleged emotional or reputational harms to Plaintiff are therefore derivative and Plaintiff lacks standing to sue for them. *See, e.g.*, *Liberty Sackets Harbor LLC v. Village of Sackets Harbor*, 776 F. App'x 1, 3 (2d Cir. 2019) (LLC member lacked standing to recover for emotional distress because it "indirectly stem[med] from the alleged harm to [the LLC]").[4]

---

[4] The claim that Plaintiff lost his position as BTC CEO due to Defendants' alleged conduct does not change this calculus. *See, e.g.*, *Willis v. Lipton*, 947 F.2d 998, 1000–01 (1st Cir. 1991) (employee cannot assert RICO violation for corporate injury even though employee lost employment as a result of the conspiracy); *Warren v. Mfrs. Nat'l Bank*, 759 F.2d 542, 545 (6th (Continued...)

In sum, the law is clear that "only a corporation and not its shareholders, not even sole shareholders, can complain of an injury sustained by, or a wrong done to, the corporation."[5] *In re Acis Cap. Mgmt.*, 604 B.R. at 507. The same goes for creditors. *Matter of Educators Grp. Health Tr.*, 25 F.3d at 1284. The Court's analysis can end there. Plaintiff's claims should be dismissed.

### 3. Plaintiff fails to plausibly plead proximate causation as to Kirkland.

"It is a bedrock rule of tort that a defendant is only liable for harms he proximately caused." *Rodriguez v. Blaine Larsen Farms, Inc.*, 2022 WL 484924, at *5 (N.D. Tex. Feb. 15, 2022) (cleaned up); *see also Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) ("[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well."). Plaintiff attempts to meet this standard by alleging that his potential "financial recovery" in the bankruptcy "was reduced because the bankruptcy estate available to pay creditors . . . was diminished by the fees improperly awarded to [Defendants] by Judge Jones." (Compl. ¶ 137; *see also id.* (alleging that "the Bouchard Parties have been denied any recovery on their claims against BTC").) But this theory of harm is speculative, counterfactual, and fails for at least three independent reasons.

*First*, Plaintiff fails to plausibly allege a causal chain connecting his alleged injury to Kirkland. Plaintiff has not even attempted to plead facts showing Kirkland did not squarely earn the fees it was awarded. (*See id.* ¶¶ 48, 49.)[6] What portion of the $3.2 million in fees awarded to

---

Cir. 1985) (employee of corporation does not have standing to pursue fraud or RICO claim; lost employment was "merely incidental to the corporation's injury").

[5] Debtors also released the claims that Plaintiff purports to assert. Specifically, in their Chapter 11 Plan, Debtors released Kirkland and other "related parties" of the Debtors and other entities from "any and all claims, interests, obligations, rights, suits, damages, [and] Causes of Action . . . including any derivative claims" that Debtors could assert "based on or relating to, or in any matter arising from," among other things, the Debtors' Chapter 11 cases. (*See* Bk. 20-34682, Dkt. 1293 at 41.) The related Plan injunction also bars, among other things, Plaintiff (as an equityholder and purported claim holder), from "commencing . . . any action . . . in connection with" released claims. (*Id.* at 43); *see also Matter of LaHaye*, 17 F.4th 513, 519 (5th Cir. 2021) (Bankruptcy Code § 1141 bars collateral attacks on Chapter 11 plan).

[6] Nor could he. When Debtors entered bankruptcy, they were unable to sustain even idle operations, had no revenue, had not paid crew, and were at risk of losing their insurance. (*See* Bk. 20-34682, Dkt. 1304 at 2-3.) With Kirkland at the helm, Debtors managed to steady the ship—for example, obtaining capital, paying crew, maintaining insurance, and funding repairs and
(Continued...)

Kirkland should not have been? By which lawyers? For which tasks? What amount should have been awarded instead? Plaintiff leaves these essential questions unanswered. (*See id.* ¶¶ 48, 49.) And tellingly, Plaintiff did not object to *any* of Kirkland's requested fees during the underlying proceeding. (*See* Bk. 20-34682, Dkt. 1304, Ex. A at 1.) Regardless, even if Plaintiff could somehow establish that Kirkland should not have been awarded fees for its work as debtor's counsel, Plaintiff's claim still "stumbles on cause in fact" because BTC "in all likelihood would have found another attorney to take [Kirkland's] place" and still "incurred the contested fees and expenses." *L. Funder, L.L.C. v. Munoz*, 924 F.3d 753, 761 (5th Cir. 2019); *see also Strates Shows, Inc. v. Amusements of Am., Inc.*, 379 F. Supp. 2d 817, 832 (E.D.N.C. 2005) (no "cause-in-fact" because "such costs would have been incurred either with or without the defendants' illegal acts").

*Second*, Plaintiff alleges no facts to support the naked assertion that his potential "financial recovery" as an individual shareholder was in fact "reduced" by any fees awarded to Kirkland.[7] (Compl. ¶ 137.) Plaintiff did not plead any of the information necessary to even begin this inquiry, such as: the size of the bankruptcy estate; the scale of BTC's debts; the total assets available at the time of plan confirmation available to creditors; the size and number of claims by other creditors (all of which would have to be satisfied before Plaintiff's "equity stake"); or where Plaintiff's purported "secured and unsecured claims" ranked in priority amongst those creditors. (*Id.* ¶¶ 9, 90; *see also id.* ¶¶ 78–79.) In short, Plaintiff's purported damages rest on multiple levels of impermissible speculation. *See In re Loggins*, 513 B.R. 682, 703 (Bankr. E.D. Tex. 2014)

---

maintenance—while winding down Debtors' affairs in an orderly and cost-effective fashion. (*Id.*) The eventual Chapter 11 Plan was accepted by over 90% of creditors. (*Id.* at 7.) And while Plaintiff objected to the Plan and was the sole affected party to ultimately appeal it, he did so on the narrow grounds that the Plan's exculpation and injunction provisions were overbroad. *See In re Bouchard Transportation Co., Inc.*, 2023 WL 1797907, at *2 (S.D. Tex. Feb. 7, 2023). Nothing in Plaintiff's objection or eventual appeal related to Kirkland's conduct. The Unsecured Creditors Committee similarly did not challenge Kirkland's fees, despite challenging others' expense reimbursements. *See In re Bouchard Transportation Co., Inc.*, 639 B.R. 697, 702 (S.D. Tex. 2022), *aff'd sub nom. Matter of Bouchard Transportation Co., Inc.*, 74 F.4th 743 (5th Cir. 2023).

[7] Plaintiff has not even attempted to allege he was injured by bankruptcies other than the BTC bankruptcy. Without such "personalized" injury, he has no standing to assert claims as to those bankruptcies. *See Kearey v. Collier*, 2019 WL 3470759, at *4 (S.D. Tex. June 17, 2019), *report and recommendation adopted*, 2019 WL 3457646 (S.D. Tex. July 31, 2019) ("Swift ordered the book and video, not Kearey, and any injury resulting from their denial belongs to Swift.").

(observing that creditors may have "no reasonable expectation of payment" depending on "the size of the debt owed" to other, higher priority creditors); *Oceanic Exploration Co. v. Phillips Petroleum Co.*, 352 F. App'x 945, 952 (5th Cir. 2009) (complaint failed where plaintiff offered "no reason to believe" it would have won the contract absent defendant's alleged bribery).

*Third*, even if Plaintiff could plausibly connect Kirkland to his alleged injuries, his complaint establishes an independent and superseding cause. Despite conclusory assertions depicting BTC as an "extremely diversified" company with a "fleet that was the envy of the industry" (Compl. ¶¶ 73–74), Plaintiff ignores the elephant in the room: that BTC was in such financial ruin that it needed to file for bankruptcy in the first place. (*See e.g.*, Bk. No. 20-34682, Dkt. 79 at 2–3 (describing BTC's "insurmountable" "crescendo" of financial challenges, including an explosion that killed two crew members, the loss of its regulatory certifications, its complete inability to "service customers or generate positive cash flow," and the imminent "foreclosure sales" of "multiple [BTC's] vessels" being pursued by a range of parties to whom BTC owed payment, including "crewmembers, suppliers, trade vendors, and other core business partners").) Because "[n]othing in [Plaintiff's] Complaint even endeavors to explain why [Kirkland] is a more likely, let alone proximate, cause" of his alleged harms, it is "insufficient to survive a motion to dismiss." *Rincon v. Covidien*, 2017 WL 2242969, at *1 (S.D.N.Y. May 22, 2017); *see also Flynn v. Wells Fargo Bank, N.A*., 2019 WL 2249600, at *15 (E.D. Cal. May 24, 2019) (no proximate because "the allegations in the complaint tend to show that the proximate cause of plaintiff's injuries was her inability to meet her obligations under the loan").

### 4.    Plaintiff fails to establish any materially false statement.

Each of Plaintiff's claims hinges on an allegation that Kirkland made material, false statements. (*See* Compl. ¶ 155 (RICO claims); *id.* ¶ 178 (common law fraud); *id.* ¶ 149 (breach of fiduciary duty); *id.* ¶ 211-212 (negligent misrepresentation); *id.* ¶ 232 (professional negligence); *id.* ¶ 252 (unjust enrichment); *id.* ¶ 269 (*Bivens* conspiracy).)[8]  Therefore, all of Plaintiff's claims

---

[8] Plaintiff's related conspiracy claims (Counts II, VIII), respondeat superior claim (Count XII), and aiding and abetting claim (Count V) are expressly based on the same theories.

against Kirkland require a material false statement to survive dismissal.[9]  But the complaint lacks the particular facts demanded by Rule 9(b) to show that Kirkland made *any* statement that was false—much less one that was materially so.

### (a)    *Kirkland did not make any "false" statements.*

Plaintiff's claims of "falsity" fail for at least three independent reasons. (Compl. ¶ 183.)

*First*, despite referring repeatedly to Kirkland's "false representations," Plaintiff fails to specifically identify a single actual statement by Kirkland.  (*E.g.*, *id.* ¶ 180-182.)  Instead, Plaintiff cites to purportedly fraudulent Kirkland court submissions—some of which span hundreds of pages—and broadly casts the documents as fraudulent because they failed to "disclos[e] the Jones-Freeman relationship."  (*Id.* ¶ 49 (referencing 400-page fee applications and accompanying declarations).)  These conclusory characterizations of voluminous filings fail to meet Plaintiff's burden to "specify the content of any misrepresentation." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).   The complaint should be dismissed for this reason alone. *See United States v. Dental Health Programs, Inc.*, 2020 WL 3064712, at *6 (N.D. Tex. June 8, 2020) (claim dismissed where plaintiff did not "identify the particular false statements with respect to" allegedly false "certification of grant terms and conditions").

*Second*, Plaintiff cannot establish falsity merely by asserting that Kirkland violated "the rules governing bankruptcy proceedings."  (Compl. ¶ 42.)  Instead of alleging any false statement, Plaintiff attempts to shortcut his pleading burden by asserting that Kirkland's filings violated Rule 2014 of the Bankruptcy Rules of Procedure ("Rule 2014"), which requires debtor's counsel to be "disinterested."  (*id.* ¶¶ 42, 53-54, 56, 160, 177-180, 191, 211-212, 216.)  But it is well-settled that the "rules governing procedure in the federal courts do not give rise to private causes of action."

---

[9] *See, e.g.*, *In re MasterCard Intern. Inc.*, 313 F.3d 257, 263 (5th Cir. 2002) (failure to show a false or fraudulent misrepresentation was a "particularly compelling" reason to dismiss RICO claim); *Joe N. Pratt Ins. v. Doane*, 2008 WL 819011, at *6 (S.D. Tex. Mar. 20, 2008) (no wire or mail fraud where plaintiff failed to allege that defendant "made a false or fraudulent misrepresentation"); *Daniels v. Aetc II Privatized Hous., LLC*, 2023 WL 2562714, at *2 (W.D. Tex. Jan. 18, 2023) (same as to common law fraud and unjust enrichment); *Burback v. Oblon*, 2022 WL 2841482, at *7 (E.D. Tex. July 20, 2022), *aff'd sub nom. Burback v. Brock*, 2023 WL 4532803 (5th Cir. July 13, 2023) (same as to breach of fiduciary duty claim).

*Good v. Khosrowshahi*, 296 F. App'x 676, 680 (10th Cir. 2008).  Thus, Plaintiff "cannot assert a grievance about [Kirkland's] purported non-compliance with . . . procedural rules in the bankruptcy court by way of his civil action in this district court." *Sciortino Bankr. Est. v. Shapiro Pentergast & Hasty LLP*, 2018 WL 7075244, at *18 (N.D. Ga. Nov. 21, 2018).

To be clear, Kirkland is not arguing that fraud would be insulated from liability simply because it appears in a Rule 2014 disclosure.  But Plaintiff repeatedly and explicitly alleges that Kirkland's statements were fraudulent *because* Kirkland supposedly violated Rule 2014.  (*See, e.g.*, Compl. ¶ 147(g); *id.* ¶¶ 179-180.)  The recent case of *Alix v. McKinsey & Co.* helpfully demonstrates this distinction.  2023 WL 5344892 (S.D.N.Y. Aug. 18, 2023).  Like Plaintiff here, the *Alix* plaintiff brought RICO claims alleging that defendant McKinsey's Rule 2014 disclosures were fraudulent.  *See id.* at *13.  In assessing these allegations, the court explained that "the relevant question" was "not whether [the defendant] complied with Rule 2014," *id.* *17 n.13, but whether "the declarations were . . . themselves misleading," *id.* at *14.  The court thus dismissed allegations that the defendant "violated Rule 2014," while allowing the case to proceed as to statements that were plausibly false or misleading.  *Id.* at **13-16, 17 nn.10 &13.[10]  But unlike in *Alix*—and as explained both above and in the next paragraph—Plaintiff does not plausibly allege that Kirkland's Rule 2014 disclosures were facially fraudulent.  Without a showing of fraud, Plaintiff "has not identified anything other than [procedural violations] as the basis for [his] claim[s]," meaning his claims "necessarily fail[.]"  *Digene Corp. v. Ventana Med. Sys., Inc.*, 476 F. Supp. 2d 444, 451-52 (D. Del. 2007); *KRW Sales, Inc. v. Kristel Corp.*, 154 F.R.D. 186, 188 (N.D. Ill. 1994) (dismissing claims because they "simply seek[] to hold KRW accountable for its violation of [a procedural rule]").

*Third*, Plaintiff's theory that it was misleading for Kirkland to not disclose the conflict of a "Jackson Walker partner" is disproven by the content of the disclosures themselves.  (Compl.

---

[10] For instance, on one occasion, "[where] the debtor allegedly hired McKinsey to investigate its parent company, NRG," McKinsey did not disclose that NRG was "an existing McKinsey client"—even though McKinsey disclosed its relationship with NRG in other bankruptcies.  *Alix*, 2023 WL 5344892 at **10, 15.  On another, McKinsey said its disclosure reflected all McKinsey "affiliates," but failed to disclose that its "investment arm" had a potential conflict.  *Id.* at *15.

¶ 147(a)-(b).)   Far from making any misrepresentation about "its local counsel's partner" (*id.*), Kirkland's disclosure does not *even mention* Jackson Walker.  Instead, Kirkland's disclosures very clearly list the firm's *own* conflicts and potential conflicts, not those of Jackson Walker.  (*See, e.g.*, Bk. No. 20-34682, Dkt. 167, Ex. A ¶¶ 38-41 (identifying all "***Kirkland*** employees [who] had clerkships in the United States Bankruptcy Court for the Southern District of Texas during the last three years"); *id.* ¶ 19 & Schedule 2 (identifying instances in which "***Kirkland*** has been retained within the last three years to represent any of the Potential Parties in Interest") (emphases added).)  Plaintiff's own allegations confirm, moreover, that Kirkland diligently updated its disclosures, such as when Kirkland partner Ryan Bennett sold a vacation home to Portage Point's Matthew Ray.  (Compl. ¶ 89; Bk. No. 20-34682, Dkt. 778 ¶ 10.)  Though Plaintiff cites that transaction as a "serious red flag[]," Compl. ¶ 89, its prompt disclosure days after the sale proves the opposite— that Kirkland ensured all of its potential conflicts were transparently disclosed.  Additionally, Kirkland's disclosures describe its conflict-check process at length—making clear it searched for potential connections within ***Kirkland***'s "electronic database" and further surveyed "all ***Kirkland*** attorneys who billed 10 or more hours" on any potentially adverse matter.  (Bk. No. 20-34682, Dkt. 167, Ex. A ¶¶ 19-20 (emphasis added).)  And Kirkland qualified its disclosures as being "based on" and subject to that "conflicts search."  (*Id.* ¶ 45.)

While Plaintiff attempts to ignore the actual content of Kirkland's allegedly fraudulent disclosures, the devil is in the details of the documents themselves.  *See Roth v. Jennings*, 489 F.3d 499, 511 (2d Cir. 2007) ("[T]he contents of the document are controlling where a plaintiff has alleged that the document contains, or does not contain, certain statements.").  Kirkland's statements of disinterestedness must be read "as a whole" and "in light of the circumstances in which [they were] made." *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 101 (5th Cir. 1974).   Even if Plaintiff was confused about the meaning of a "declaration of disinterestedness," the substance of the declaration would have dispelled any confusion and definitively disprove the theories Plaintiff asserts in his complaint.  *See id.* at 101-102 ("prospectus was not misleading, as a matter of law" where "incomplete" statement on page 1 was adequately explained by "disclosures made . . . on page 27"); *Lone Star Fund V*, 594 F.3d at 388-89 (no

"actionable misrepresentation" when document was "read in [its] entirety").

*Fourth,* Plaintiff has not even attempted to show that the challenged "statements of disinterestedness" were false within "the declarant's own knowledge." *Alix*, 2023 WL 5344892, at *16. Plaintiff pleads no facts—let alone the particular facts required under Rule 9(b)—to show that Kirkland declarant Ryan Bennett had actual knowledge about the alleged Freeman-Jones relationship. (*E.g.*, Compl. ¶¶ 46, 49.) Moreover, Bennett made clear that his conclusions were based on the results of Kirkland's conflict check process. (Bk. No. 20-34682, Dkt. 167, Ex. A ¶ 45.) Plaintiff does not plead any facts to show that Bennett concealed information revealed during that conflict-check process or misleadingly manipulated the conflict check. *See In re Fundamental Long Term Care*, 614 B.R. 753, 762 (Bankr. M.D. Fla. 2020) ("There is nothing in the record to show that Shumaker disregarded flags that should have alerted it to the connections, that Shumaker's conflict check system is inherently flawed, or that Shumaker maintains the system in a manner that reflects poor intra-firm communication and data input.").

*Fifth,* even if mere procedural violations could amount to fraud, Plaintiff's attempt to hold Kirkland liable for "fail[ing] to disclose another law firm's conflict of interest" is precisely the sort of "clear[ly] frivolous[]" and "improper" theory that courts have not only rejected but deemed sanctionable. *In re Eon Enterprises Corp.*, 59 F.3d at *1. Courts around the country have further confirmed that bankruptcy "professionals are required to be retained separately and *are required to submit separate* disclosures." *In re GSC Grp., Inc.*, 502 B.R. 673, 738 (Bankr. S.D.N.Y. 2013) (emphasis added); *see also In re Enron Corp.*, 2002 WL 32034346, at *5 (Bankr. S.D.N.Y. May 23, 2002) (Rule 2014 does not impose duty to "disclose every conceivable interpretation of [a firm's] connections and possible consequence resulting from the connections").

Plaintiff's complaint solidifies this analysis by admitting there was no direct relationship between Kirkland and Judge Jones that required disclosure. Plaintiff repeatedly alleges that Jones was required only to disclose his *connections* to *Jackson Walker*—not any connections to Kirkland. (*See, e.g.*, Compl. ¶ 147(f) ("Judge Jones did not disclose that he was awarding fees to his intimate partner, Freeman, and to his intimate partner's firm, Jackson Walker."); *id.* ¶ 147(c) (similar).) Plaintiff offers no explanation—and there is none—for his attempt to hold Kirkland to

a higher disclosure standard than the federal judiciary. *See Matter of Burch*, 818 F. App'x 367, 368 (5th Cir. 2020) (noting that federal judges must recuse when there could be even "the general *appearance* of impartiality" (emphasis added)).

(b)     ***None of Kirkland's allegedly false statements are "material."***

Even if Plaintiff could establish falsity, Kirkland's alleged misrepresentations are not "material" as a matter of law. (*E.g.*, Compl. ¶¶ 150, 155, 175-178; *see also supra* section IV.A.4.)

*First*, Kirkland's alleged non-disclosure of Jackson Walker's conflict was not material because it could not have impacted Kirkland's ongoing representation of BTC. As noted above, there is no "legal support" for the claim that a firm like Kirkland would be disqualified for or denied fees because of "local counsel's conflict." *In re Eon Enterprises Corp.*, 59 F.3d 174 at *1; *United States v. Schanzle*, 2021 WL 1566454, at *4 (W.D. Tex. Apr. 21, 2021) ("Representations of fact are material if they are 'important to' and have 'the tendency to affect the decision-makers to whom they are directed.'").

*Second*, while Plaintiff conclusorily alleges that Kirkland would not have been awarded fees had it disclosed the Freeman-Jones relationship, there is an "alternative explanation" that is far more plausible. *Integra Med Analytics*, 816 F. App'x at 898 (dismissing claim that defendant's Medicare claims were fraudulent based on "legal and obvious alternative explanation" that defendant "was simply ahead of the healthcare industry at implementing the Medicare reimbursement guidelines"). Kirkland has been appointed debtor's counsel and awarded its fees because it is a preeminent bankruptcy firm with a proven track record. (*See* Bk. No. 20-30336, Dkt. 428 at ¶¶ 7-8 ("The Debtors seek to retain Kirkland because of Kirkland's recognized expertise and extensive experience and knowledge.").)

*Third*, Plaintiff's efforts to meet the materiality standard are actually an attempt to rewrite it. Plaintiff asserts that Kirkland's statements were "material representations in that the disclosure was required to secure appointment under the Bankruptcy Code." (Compl. ¶ 178.) But a statement does not become material merely because it is contained in a document that is "required to secure" some result. (*Id.*) Otherwise, a harmless error in a mortgage application (*e.g.*, forgetting to list a prior residence) or a typo on a tax return (*e.g.*, misspelling an employer's name) would be

"material" simply because they were contained on "required" forms.  Courts have squarely rejected this type of reasoning.  *See United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 490 (3d Cir. 2017) ("[A] misrepresentation is not material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment.").  "Not every technical violation of the disclosure regulations meets th[e] requirement of materiality."  *Malone v. Safety-Guard Mfg. Co., Inc.*, 748 F.2d 312, 314-15 (5th Cir. 1984).

### B.  <u>Plaintiff's Claims Must Independently Be Dismissed for Additional Reasons</u>

In addition to these four cross-cutting grounds for dismissal, Plaintiff's individual claims each fail for multiple independent reasons.  Those arguments are detailed in sections IV.B.1 through B.9 and, in the below table, mapped onto each applicable count.

| Count | Independent Grounds for Dismissal |
|---|---|
| I (violation of RICO Act) | • Lack of RICO standing (Section IV.B.1.a) <br> • Failure to plead RICO enterprise (Section IV.B.1.b) <br> • Failure to plead "operation" or "management" (Section IV.B.1.c) <br> • Failure to plead predicate acts (Section IV.B.1.d) |
| II (RICO conspiracy) | • Lack of RICO standing (Section IV.B.1.a) <br> • Failure to plead RICO enterprise (Section IV.B.1.b) <br> • Failure to plead "operation" or "management" (Section IV.B.1.c) <br> • Failure to plead predicate acts (Section IV.B.1.d) <br> • Failure to plead an agreement (Section IV.B.2) |
| III (common law fraud) | • Lack of reliance (Section IV.B.4) <br> • Preemption (Section IV.B.5) <br> • Judicial-proceedings privilege (Section IV.B.6) <br> • Attorney immunity (Section IV.B.6) |
| IV (breach of fiduciary duty) | • Lack of reliance (Section IV.B.4) <br> • Preemption (Section IV.B.5) <br> • Judicial-proceedings privilege (Section IV.B.6) <br> • Attorney immunity (Section IV.B.6) <br> • Lack of fiduciary duty (Section IV.B.8) |
| V (aiding and abetting breach of fiduciary duty) | • Lack of reliance (Section IV.B.4) <br> • Preemption (Section IV.B.5) <br> • Judicial-proceedings privilege (Section IV.B.6) <br> • Attorney immunity (Section IV.B.6) <br> • Lack of fiduciary duty (Section IV.B.8) <br> • No independent cause of action (Section IV.B.9) |
| VI (negligent misrepresentation) | • Lack of reliance (Section IV.B.4) <br> • Preemption (Section IV.B.5) |

| | |
|---|---|
| | • Judicial-proceedings privilege (Section IV.B.6)<br>• Attorney immunity (Section IV.B.6)<br>• Time-barred (Section IV.B.7) |
| VII (professional negligence) | • Lack of reliance (Section IV.B.4)<br>• Preemption (Section IV.B.5)<br>• Judicial-proceedings privilege (Section IV.B.6)<br>• Attorney immunity (Section IV.B.6)<br>• Time-barred (Section IV.B.7)<br>• Lack of duty (Section IV.B.8) |
| VIII (common law conspiracy) | • Failure to plead an agreement (Section IV.B.2)<br>• Lack of reliance (Section IV.B.4)<br>• Preemption (Section IV.B.5)<br>• Judicial-proceedings privilege (Section IV.B.6)<br>• Attorney immunity (Section IV.B.6) |
| IX (unjust enrichment) | • Lack of reliance (Section IV.B.4)<br>• Preemption (Section IV.B.5)<br>• Judicial-proceedings privilege (Section IV.B.6)<br>• Attorney immunity (Section IV.B.6)<br>• Time-barred (Section IV.B.7) |
| XI (*Bivens* conspiracy) | • Failure to plead an agreement (Section IV.B.2)<br>• No cognizable *Bivens* claim (Section IV.B.3)<br>• Lack of reliance (Section IV.B.4)<br>• Preemption (Section IV.B.5)<br>• Judicial-proceedings privilege (Section IV.B.6)<br>• Attorney immunity (Section IV.B.6)<br>• Time-barred (Section IV.B.7) |
| XII (respondeat superior) | • Lack of reliance (Section IV.B.4)<br>• Preemption (Section IV.B.5)<br>• Judicial-proceedings privilege (Section IV.B.6)<br>• Attorney immunity (Section IV.B.6)<br>• No independent cause of action (Section IV.B.9) |

**1.      Plaintiff has failed to allege RICO claims (Counts I, II).**

"[P]laintiffs wielding RICO almost always miss the mark." *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 220 (E.D.N.Y. 2014). Plaintiff's complaint is no different—he fails to plead facts substantiating: (1) standing; (2) a RICO enterprise; (3) Kirkland's operation or management of the enterprise; or (4) any predicate criminal acts.

**(a)      *Plaintiff lacks standing to bring RICO claims.***

"[A] plaintiff must satisfy two elements to establish RICO standing: injury and causation." *Jackson v. Nat'l Ass'n for Advancement of Colored People*, 546 F. App'x 438, 442 (5th Cir. 2013). Specifically, "a plaintiff must prove a concrete financial loss"—i.e., "an actual loss of their own

money, and not mere injury to a valuable intangible property interest." *HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 344 (5th Cir. 2021) (cleaned up). And that loss must be "directly caused by the alleged predicate acts." *Lewis v. Danos*, 83 F.4th 948, 956-57 (5th Cir. 2023) ("The causation requirement consists of both but-for and proximate causation."). Although Plaintiff lists a litany of purported injuries,[11] the only purportedly "financial" injury that Plaintiff identifies is that his "financial recovery as a bankruptcy creditor was reduced because the bankruptcy estate available to pay creditors . . . was diminished by the fees improperly awarded to" Defendant law firms. (Compl. ¶ 137; *see also id.* (alleging that "the Bouchard Parties have been denied any recovery on their claims against BTC").) This alleged injury does not qualify as a concrete financial loss, nor was it proximately caused by Kirkland's alleged conduct.

*First*, as to Plaintiff's claim that he was injured "because the bankruptcy estate available to pay creditors . . . was diminished," that alleged injury is not a loss of Plaintiff's "own money," but that of the estate. *McPherson*, 8. F.4th at 344. Because his injury "merely derive[s] from and thus [is] not distinct from the injury to the corporation," he has no RICO standing. *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 744 (5th Cir. 1989); *see also Nygard v. Bacon*, 2021 WL 3721347, at *4 (S.D.N.Y. Aug. 20, 2021) ("An individual cannot bring a RICO action on behalf of a business, even if he is a shareholder of an injured corporation."). Indeed, the Fifth Circuit held that "only the trustee in bankruptcy has standing to bring a RICO claim for monies owed to the bankruptcy estate." *Ocean Energy II*, 868 F.2d at 746. Thus, even accepting Plaintiff's

---

[11] Plaintiff alleges several non-financial injuries, including that he was "deprived of the opportunity to have bankruptcy proceedings determined on the merits free from the influence of interested parties." (Compl. ¶ 137). But "the deprivation of honest services alone does not constitute concrete financial loss for purposes of pleading RICO's statutory standing requirement." *Portfolio Invs. LLC v. First Sav. Bank Nw.*, 583 F. App'x 814, 816 (9th Cir. 2014) (cleaned up); *see also Breslin v. Brainard*, 128 F. App'x 237, 240 (3d Cir. 2005) (injury to intangible property right to a corruption-free and democratic union "is not a cognizable injury that can create RICO standing"). Plaintiff also alleges that he suffered "mental anguish" and "emotional trauma," neither of which qualify as "concrete" or "financial." (Compl. ¶ 137); *see Scheppegrell v. Hicks*, 2016 WL 3020884, at *4 (E.D. La. May 26, 2016) ("RICO does not protect against personal injuries [or] emotional distress . . . ."). And Plaintiff's allegation of "reputational harm" is a "nebulous injur[y]" that is "insufficient to sustain [his] civil RICO claims." (Compl. ¶ 137); *Blacks in Tech. Int'l v. Blacks in Tech. LLC*, 2022 WL 1689310, at *5 (N.D. Tex. May 26, 2022).

characterization of himself as a creditor of BTC, "creditors against a bankrupt corporation" do not have standing to seek damages for funds that allegedly "belong in the bankruptcy estate." *Whalen v. Carter*, 954 F.2d 1087, 1092–93 (5th Cir. 1992) (cleaned up).

Moreover, courts have made clear that "[i]njury to mere expectancy interests or to an intangible property interest is not sufficient to confer RICO standing." *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) (cleaned up). Plaintiff's theory of bankruptcy recovery is purely speculative—particularly since the complaint contains no allegations about why Kirkland's fees were in fact "improper," the value of any assets allegedly available to satisfy his claims, or the purported priority of his claims. (*See supra* section IV.A.3.) In fact, as Debtors and the Committee argued during the bankruptcy proceedings, the "loans" upon which Plaintiff's claims against BTC are based were actually "capital contributions and not [] loans," and therefore should be classified as equity interests instead. (Bk. 20-34682, Dkt. 1023 ¶ 15; *see also* Bk. 20-34758, Dkt. 316 ¶ 8.) And even if Kirkland did not serve as Debtors' counsel, BTC would simply have paid attorney's fees to a different law firm. (*See supra* section IV.A.3.). Thus, any injury to Plaintiff's potential recovery in the BTC bankruptcy proceedings is "too speculative to confer RICO standing." *Fisher v. Halliburton*, 2009 WL 5170280, at *5 (S.D. Tex. Dec. 17, 2009) ("The disparity between plaintiffs' actual compensation and the theoretical compensation that they would have received . . . is similarly too speculative to confer RICO standing."); *Sheshtawy v. Gray*, 697 F. App'x 380, 382 (5th Cir. 2017) ("[T]he alleged injury to their share of the estate or trust is merely an expectancy interest that is too speculative and indirect to satisfy RICO standing.").

*Second*, even if Plaintiff's hypothetical decrease in recovery could be considered "concrete," it was not "proximately caused" by Kirkland's conduct. *Varela v. Gonzales*, 773 F.3d 704, 706 (5th Cir. 2014). Plaintiff's theory that the RICO Defendants' nondisclosure of the Jones-Freeman relationship caused an increase in attorney's fees awarded, which caused a reduction in the bankruptcy estate, which caused a reduction in payment to creditors and shareholders, is "beyond the pale of rational causation." *Nat'l Enterprises, Inc. v. Mellon Fin. Servs. Corp. No. 7*, 847 F.2d 251, 254 (5th Cir. 1988) (no RICO standing where plaintiff argued that "bribery . . . caused depleted funds that caused the bankruptcy of G & N, and that this bankruptcy caused

nonpayment to creditors, including [Plaintiff]"); *see also Varela v. Gonzales*, 2014 WL 1284985, at *5 (N.D. Tex. Mar. 31, 2014), *aff'd*, 773 F.3d 704 (5th Cir. 2014) ("a two-step chain of causation" was "too indirect or attenuated"). Indeed, as explained above, Plaintiff cannot show proximate cause for multiple independent reasons. (*See supra* section IV.A.3.)

### (b) *Plaintiff cannot show a RICO "enterprise."*

"A plaintiff asserting a RICO claim must allege the existence of an enterprise." *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995). To meet this element, a plaintiff must plead particular facts about the "decision making structure" of an enterprise to show that it "function[s] as a continuing unit." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015); *Stevenson*, 2024 WL 645187 at *13 ("Plaintiffs' conclusory allegations are far from 'concrete factual assertions as to the mechanics of the interactions among defendants.'") (citation omitted).

Plaintiff's complaint lacks any specific allegations substantiating this critical element. Instead, he offers rote allegations "[u]pon information and belief" that: (a) "Judge Jones, Jackson Walker, Freeman and Kirkland & Ellis, were in regular contact with one another via email, phone and in-person communications"; and (b) "[t]he enterprise was organized in a manner amenable to consensual decision-making between the Defendants and hierarchical decisions handed down by Judge Jones." (Compl. ¶ 128.) These allegations are facially inadequate. *See Margetis v. Furgeson*, 2015 WL 6688063, at *8 (E.D. Tex. Sept. 29, 2015), *aff'd*, 666 F. App'x 328 (5th Cir. 2016) (dismissing RICO claims where "Plaintiffs merely offer[ed] that their contentions are 'on information and belief' but put forth no facts to support their belief"); *Shannon v. Ham*, 2015 WL 13185992, at *2 (N.D. Tex. May 5, 2015), *aff'd*, 639 F. App'x 1001 (5th Cir. 2016) (similar).

### (c) *Kirkland did not "operate" or "manage" the Enterprise.*

Plaintiff must also allege that Kirkland "participated in the operation or management of the enterprise itself." *In re MasterCard Int'l Inc.*, 313 F.3d 257, 261 (5th Cir. 2002); *see also Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 655 (S.D. Tex. 2016) ("[A] defendant must have some supervisory involvement in an enterprise in order to satisfy § 1962(c)'s conduct or participate requirement."). To survive a motion to dismiss, a plaintiff must plead specific facts showing that a RICO defendant "actually operated the scheme." *Benhamou*, 190 F. Supp. 3d at 655.

Plaintiff has not done so. Plaintiff simply parrots a high-level description of the element, alleging that "[e]ach Defendant participated in the operation and management of the enterprise." (Compl. ¶ 127.) Nor does Plaintiff's assertion that Kirkland "benefit[ted] from the Jones-Freeman relationship" suffice. (*Id.* ¶ 55.) While Kirkland will prove that insinuation false, the law is clear that "[h]aving a business relationship with a RICO enterprise does not constitute operation and management of the enterprise's affairs necessary for RICO liability." *Compass Bank v. Villarreal*, 2011 WL 1740270, at *13 (S.D. Tex. May 5, 2011) (collecting cases). Critically, this would be true even if Plaintiff had pleaded facts showing that Kirkland had prior knowledge of the Freeman-Jones relationship (he has not). *See Benhamou*, 190 F. Supp. 3d at 655 ("[S]imply contributing to the enterprise with the knowledge of or willful disregard for the other defendants' supposed criminal activity" "will not subject one to liability.").

### (d) *Plaintiff fails to adequately plead predicate acts.*

Plaintiff must plead "two or more predicate criminal acts" to sustain a RICO action. *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 524-25 (5th Cir. 2016). The complaint attempts to plead criminal acts based on theories of (i) obstruction of justice and (ii) fraud, including mail fraud, wire fraud, bankruptcy fraud, and honest services fraud. (*See* Compl. ¶ 124.) Both fail.

(i) <u>Obstruction of Justice</u>: Obstruction of justice requires a showing that "the defendant acted corruptly with the specific intent to influence, obstruct, or impede the judicial proceeding in its due administration of justice." *United States v. Richardson*, 676 F.3d 491, 506 (5th Cir. 2012) (cleaned up). In attempt to plead that element, Plaintiff alleges that "Defendants Jackson Walker and Kirkland & Ellis used their knowledge of the relationship between Freeman and Judge Jones to influence Judge Jones to issue favorable rulings." (Compl. ¶ 142(b).) But Plaintiff identifies no specific instance of Kirkland supposedly "influenc[ing]" Jones, let alone any facts supporting such a claim. *See, e.g.*, *Kariem v. United Parcel Serv., Inc.*, 2006 WL 8437577, at *3 (N.D. Tex. Sept. 18, 2006) (dismissing RICO claim where plaintiff failed to "describe the alleged predicate acts with sufficient detail").

(ii) <u>Fraud</u>: Plaintiff's predicate acts of fraud—which must be pleaded with particularity, *see Williams*, 112 F.3d at 177—cannot sustain his RICO claims for three independent reasons:

*First*, as already explained, Plaintiff has not alleged any actionable false representation, which is necessary for mail fraud, wire fraud, honest services fraud, and bankruptcy fraud. *See In re MasterCard Int'l Inc.*, 313 F.3d 257, 263 (5th Cir. 2002) (mail or wire fraud elements); Compl. ¶ 159 (bankruptcy fraud requirements); *Robinson v. Standard Mortg. Corp.*, 191 F. Supp. 3d 630, 643 (E.D. La. 2016) (honest services fraud elements).

*Second*, filing "allegedly false litigation materials" cannot qualify as predicate acts of fraud. *Warnock v. State Farm Mut. Auto. Ins. Co.*, 833 F. Supp. 2d 604, 609 (S.D. Miss. 2011); *see also Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 257 F. Supp. 2d 819, 832 (M.D. La. 2002) ("[C]ourts have rejected the theory that legal filings may constitute mail fraud."). Nor, as another Southern District of Texas court recently admonished Plaintiff's counsel, can Kirkland's receipt of allegedly improper "attorney's fees or expenses" constitute "a criminal act for purposes of RICO." *Jones v. Herrman & Herrman, PLLC*, 2023 WL 6064790, at *5 (S.D. Tex. Mar. 28, 2023). Each of the predicate acts of fraud are based on allegedly misleading court filings during various bankruptcy proceedings. (*See* Compl. ¶ 155 ("honest services fraud,"); *see also id.* ¶ 159 ("bankruptcy fraud"); *id.* ¶ 151 ("mail and wire fraud").) Thus, even if Kirkland's failure to disclose Jackson Walker's conflict of interest technically violated Rule 2014 (it did not), that omission does not constitute fraud. *See Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383, 392 (S.D.N.Y. 2000), *aff'd*. 1 F. App'x 7 (2d Cir. 2001) ("Garden-variety pleading errors and the filing of routine motions do not constitute RICO predicate acts."); *Tenamee v. Schmukler*, 438 F. Supp. 2d 438, 448 (S.D.N.Y. 2006) (rejecting RICO claim because "[t]here is no indication in the complaint that [the attorney's] alleged conflict of interest constitutes criminal conduct").

*Third,* Plaintiff has not alleged the fraudulent intent required for any of the varieties of fraud he alleges. For mail and wire fraud, Plaintiff must allege "the specific intent to deceive for the purpose of causing financial loss to another or bringing about some financial gain to himself." *United States v. Greenlaw*, 84 F.4th 325, 352 (5th Cir. 2023). (*See also* Compl. ¶ 153 (alleging, as to honest services mail and wire fraud, that Defendants "intended to deprive Plaintiff and the public of the intangible right of honest services").) Bankruptcy fraud likewise requires "specific intent to defraud." *United States v. Kirkham*, 129 F. App'x 61, 71 (5th Cir. 2005). But Plaintiff

has not even plausibly alleged that Kirkland was aware of the truth about the Jones-Freeman relationship (*see supra* section IV.A.1)—much less that Kirkland failed to disclose it in order to "secur[e] large awards of attorneys' fees" or for any other purpose.  (Compl. ¶ 132(m).)  In any event, since the March 2021 allegations were rejected by Judge Isgur—a decision later deemed "proper" and "appropriate," *In re 4E Brands*, 655 B.R. at 338—and sealed by Judge Jones, Plaintiff cannot show that Kirkland had any culpable "intent" in not disclosing them.  *See State Tchrs. Ret. Bd.*, 654 F.2d at 850 (no "scienter" where defendant's non-disclosure was part of its "good faith effort to comply with [a] publicity embargo").  The complaint's conclusory allegations of intent do not suffice.  *See Ranieri v. Advocare Int'l, L.P.*, 336 F. Supp. 3d 701, 716 (N.D. Tex. 2018) ("RICO mail fraud averment must . . . provide some factual basis for conclusory allegations of intent, which must, in turn, give rise to a strong inference of fraudulent intent." (cleaned up)).

In addition to these global deficiencies, Plaintiff's allegations of mail fraud, honest services fraud, and bankruptcy fraud also fail for additional claim-specific reasons:

As to <u>mail fraud</u>, Plaintiff has not sufficiently alleged "the use of the mails" "for the purpose of executing the scheme."  *Marriott Bros. v. Gage*, 704 F. Supp. 731, 737-740 (N.D. Tex. 1988), *aff'd*, 911 F.2d 1105 (5th Cir. 1990).  Plaintiff alleges that various unspecified "matters" were sent via mail, without plausibly alleging that any such matters even existed.  (Compl. ¶ 146 (speculating that Kirkland used the mails "to communicate with clients and potential clients regarding the favorable outcomes Defendants . . . have and would be able to obtain").)  Plaintiff also lists the exact same legal filings that form the basis for its wire fraud theory, without alleging that such filings were sent by mail.  (*Compare* Compl. ¶ 151 (wire fraud predicate statements), *with id.* ¶ 147 (same mail fraud predicate statements).)

As to <u>honest services</u> fraud, the complaint's allegations are insufficient because honest services fraud "is limited to bribery and kickback schemes, not other conduct, such as conflict-of-interest schemes."  *United States v. Teel*, 691 F.3d 578, 582 (5th Cir. 2012).  Honest-services fraud based on bribery or kickbacks require "that payments were made with the intent of securing a specific type of official action in return."  *United States v. Vasquez*, 2023 WL 7381427, at *2 (5th Cir. Nov. 7, 2023).  Plaintiff has not alleged any such "quid pro quo."  *Id.*  The complaint asserts

generally that Defendants "benefitt[ed] from the secret intimate relationship between Freeman and Jones" (Compl. ¶ 154)—but not that Kirkland made any "offer" or "solicitation" of anything of value to Jones, much less that Kirkland had the specific intent of securing any particular "official action" by Jones. *Vasquez*, 2023 WL 7381427 at *2. In short, the complaint contains no allegations of bribery or kickbacks, just "nondisclosure of a financial interest," which does not suffice. *United States v. Wright*, 665 F.3d 560, 571 (3d Cir. 2012).

Plaintiff's <u>bankruptcy fraud</u> theory under 18 U.S.C. § 152(6) is similarly flawed. Section 152(6) makes it a crime to "fraudulently giv[e] or receiv[e] property for acting or forbearing to act in any Chapter 11 case (i.e. giving or receiving a bribe)." *United States v. Kaster*, 139 F.3d 902, 902 (7th Cir. 1998). But Plaintiff gets this requirement backwards, alleging that Jones was the *giver* of such property ("attorney's fees . . . and other advantageous appointments") and that the other Defendants were the recipients. (*See* Compl. ¶ 164.) This theory inexplicably reverses the roles in Plaintiff's honest services fraud theory, under which Jones allegedly would have been the bribe recipient. *See Stevenson*, 2024 WL 645187 at *13 ("Contradictory factual allegations of this sort are indicative of a failure to plead a plausible claim."). In any event, the complaint is silent as to why Jones supposedly gave this bribe, or what Kirkland supposedly did in exchange. *See, e.g.*, *Matter of Banks*, 2020 WL 5807520, at *9 (Bankr. N.D. Ga. Sept. 29, 2020) (complaint failed to allege that an "incentive fee" Wells Fargo received was "in exchange for some action or non-action taken by Wells Fargo in Debtor's bankruptcy case").

### 2. The conspiracy claims fail for lack of agreement (Counts II, VIII, XI).

All of Plaintiff's conspiracy claims require Plaintiff to plausibly allege an agreement to commit an illegal act. *See Galindo*, 2021 WL 2763033 at *6 (Moses, J.) (RICO civil conspiracy); *Erwin v. Russ*, 2010 WL 11506838, at *2 (W.D. Tex. July 19, 2010), *aff'd*, 481 F. App'x 128 (5th Cir. 2012) (civil conspiracy); *Jackson v. Wray*, 2023 WL 7029378, at *4 (N.D. Tex. Sept. 27, 2023) (*Bivens* conspiracy). "To survive a motion to dismiss, the plaintiff must allege specific facts to show an agreement"; "[c]onclusory allegations . . . will not suffice." *Rynearson v. United States*, 2013 WL 11309342, at *12 (W.D. Tex. Sept. 30, 2013), *aff'd*, 601 F. App'x 302 (5th Cir. 2015) (Moses, J.) (cleaned up).

Here, Plaintiff's theory is that Defendants "agreed to collect profit through the Jones-Freeman relationship by securing lucrative appointments before Judge Jones and millions of dollars in attorneys' fees," including by "failing to disclose the Jones-Freeman intimate relationship and affirmatively representing disinterestedness." (Compl. ¶ 241; *see also id.* ¶ 243.) But the only support for this theory is Plaintiff's equally conclusory allegation that, "[u]pon information and belief, [the RICO Defendants] were in regular contact with one another . . . for the purposes of securing appointments in and making decision regarding bankruptcy cases, getting cases filed in the 'friendly' court of Judge Jones, and obtaining favorable decisions and lucrative fee awards from Judge Jones in those cases." (*Id.* ¶ 170.) Plaintiff does not identify a single such communication or otherwise describe the basis for his "belief." Where, as here, a plaintiff "merely offer[s] that [his] contentions are 'on information and belief' but put[s] forth no facts to support [his] belief," such contentions "are not entitled to a presumption of truth" and must be dismissed. *Margetis*, 2015 WL 6688063 at *8 (rejecting conclusory allegation that "Defendants had a meeting of the minds to" *inter alia*, "intimidate witnesses, informants and victims"); *Luter v. U.S. Bank Nat'l Ass'n*, 2017 WL 11698640, at *3 (E.D. Tex. Sept. 7, 2017) (rejecting allegations "on information and belief, that Disanti 'had discussions' with Burch about" the alleged fraud).

### 3. The alleged *Bivens* conspiracy exceeds the bounds of *Bivens* (Count XI).

Plaintiff's claim for conspiracy to interfere with constitutional rights under *Bivens* also fails because his claim requires an improper extension of *Bivens*. As the Supreme Court has reiterated, "extending *Bivens* to new contexts is a 'disfavored judicial activity.'" *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (quoting *Ziglar v. Abbasi*, 582 U.S. 120 (2017)). "[I]n recent decades, the Supreme Court has consistently refused to extend Bivens to *any* new context." *Butler v. S. Porter*, 999 F.3d 287, 293 (5th Cir. 2021). When considering a proposed *Bivens* claim, courts apply a two-part test: (1) "whether the case presents a new *Bivens* context—i.e., is it meaningfully different from the three cases in which the [Supreme] Court has implied a damages action," and (2) if so, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (cleaned up).

(1) "New" *Bivens* Context: Plaintiff's claim presents a new *Bivens* context for several reasons. As an initial matter, Plaintiff brings his claim against Jones based on conduct he undertook as federal judge.[12] (*See* Compl. ¶ 259 ("Judge Jones was a federal officer acting under color of federal authority . . . .").) But "[n]one of the *Bivens* trilogy involved claims against a federal judge." *Laster v. Boyle*, 2022 WL 4086782, at *2 (N.D. Tex. Aug. 4, 2022). "Plaintiff's claims present a new context because they . . . involve a new category of defendants, namely, federal judges." *Rote v. Comm. on Jud. Conduct & Disability of Jud. Conf. of United States*, 577 F. Supp. 3d 1106, 1137 (D. Or. 2021), *aff'd*, 2023 WL 6875413 (9th Cir. Oct. 18, 2023). Moreover, "[t]he Supreme Court has never recognized a *Bivens* action under the Due Process Clause outside of the context of gender discrimination." *Jackson v. Varono*, 2018 WL 5046227, at *5 (W.D. La. Oct. 17, 2018). Plaintiff alleges a violation of his Due Process rights based not on gender discrimination, but rather on allegedly biased judicial decisions. (Compl. ¶ 258). Finally, the "conspiracy" aspect of Plaintiff's *Bivens* conspiracy claim itself renders Plaintiff's theory novel. *See Alegre v. United States*, 2019 WL 3322382, at *5 (S.D. Cal. July 24, 2019) ("Plaintiffs' claim for conspiracy presents a 'new *Bivens* context' not encompassed by the Supreme Court's three *Bivens* cases."); *Wray*, 2023 WL 7029378 at *4 (collecting cases).

(2) "Special Factors": Several "special factors" counsel against expansion of *Bivens* here. "If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492. As an initial matter, the "uncertainty" created by recognizing a cause of action under *Bivens* is itself "a special factor that forecloses relief." *Id.* at 493; *see also Hernández v. Mesa*, 885 F.3d 811, 818 (5th Cir. 2018) (en banc) ("The newness of this 'new context' should alone require dismissal"). That uncertainty is particularly acute for Plaintiff's *Bivens* conspiracy claim, which seeks to expand *Bivens* beyond federal officers to private non-governmental actors like Kirkland. Finally, the U.S. Trustee's power and duty to seek relief to protect the integrity of the bankruptcy system—a power that it is exercising by

---

[12] "A *Bivens* action may only be brought against a federal officer or agent in his individual or personal capacity." *Hobbs v. Stanley*, 2023 WL 7027994, at *4 (W.D. Tex. Oct. 23, 2023).

seeking to vacate Jackson Walker's fees (*see* Bk. 20-34758, Dkt. 354)—serves as an "alternative remedial structure" militating against expanding *Bivens* here. *Egbert*, 596 U.S. at 483.

### 4. Plaintiff's state law claims fail for lack of reliance.

Because all of Plaintiff's state law claims against Kirkland are based on alleged misrepresentations (*see, e.g.*, Compl. ¶¶ 149, 155, 178, 211-212), Plaintiff must plausibly plead that he relied on those misrepresentations. *See In re Enron Corp.*, 2006 WL 1662596, at *17 (S.D. Tex. June 7, 2006) ("[B]reach of fiduciary duty for misrepresentation" requires a showing that "plaintiff detrimentally relied on the misrepresentation."); *Miller Glob. Properties, LLC v. Marriott Int'l, Inc.*, 418 S.W.3d 342, 351 (Tex. App. 2013) (same as to professional negligence claim); *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App. 2013) (same as to common law fraud and negligent misrepresentation).

Here, Plaintiff has not even alleged that he saw or read any of the allegedly misleading documents Kirkland filed, such as Kirkland's declaration of disinterestedness. (*See* Compl. ¶¶ 177, 178 (alleging that Kirkland made material misrepresentations by submitting a declaration of disinterestedness).) But a "plaintiff cannot assert reliance on a written representation he did not read." *Lafrentz v. Lockheed Martin Corp.*, 2021 WL 4350175, at *3 (S.D. Tex. Sept. 10, 2021); *see also Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 168, 171 (5th Cir. 1996) (plaintiff "falls far short of proving" reliance where he failed to "prove that he read the misrepresentations"). And Plaintiff's general allegation that he "relied on the false representations of Defendants Freeman, Jackson Walker, and Kirkland & Ellis as being disinterested parties in the bankruptcy proceedings before Judge Jones" (Compl. ¶ 191) does not satisfy Rule 9(b)'s particularity standard. *See, e.g.*, *Rangel v. Adtalem Global Educ., Inc.*, 2019 WL 13150012, at *4 (W.D. Tex. Apr. 23, 2019) ("Plaintiffs must state with specificity what representations they relied upon[.]").

### 5. Plaintiff's state law claims are preempted.

Plaintiff's state law claims must be dismissed because they fall within the "[t]he expansive reach of the [Bankruptcy] Code," which "preempts virtually all claims related to alleged misconduct in the bankruptcy courts." *Inorio v. Wells Fargo Bank, N.A.*, 522 F. Supp. 3d 417, 423 (N.D. Ill. 2021). Courts have long held that "[t]here can be no doubt that federal bankruptcy law

is pervasive and involves a federal interest so dominant as to preclude enforcement of state laws on the same subject." *Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198, 1201 (9th Cir. 2005) (cleaned up). And courts have found claims preempted where, as here, "the factual predicate for the state law claim hinged upon the alleged wrongful conduct of a party in a bankruptcy case." *In re Chaussee*, 399 B.R. 225, 233-40 (B.A.P. 9th Cir. 2008).

Because Plaintiff's state law causes of action center on Kirkland's purported misrepresentations made pursuant to and in violation of Rule 2014, they fit neatly within this preemption jurisprudence. (*See, e.g.*, Compl. ¶¶ 42, 53-54, 56, 160, 177-180, 191, 211-212, 216.) *See also In re Sims*, 278 B.R. 457, 479-80 (Bankr. E.D. Tenn. 2002) (state law claims for "material misrepresentation" preempted). The Bankruptcy Code and the Federal Rules of Bankruptcy Procedure together outline out a comprehensive set of remedies and procedures for dealing with the sort of wrongdoing Plaintiff describes, including (1) penalties for when a firm is "not a disinterested person," 11 U.S.C. § 328(c), (2) a sanctions scheme for false representations, *see* Fed. R. Bankr. P. 9011, and (3) broad provisions granting the bankruptcy court the power to "issue any order . . . that is necessary or appropriate to carry out the provisions of this title," 11 U.S.C. § 105(a). Against this backdrop, courts have explained that Rule 2014 and its remedial framework preempt claims that, like Plaintiff's, would "circumvent the operation of provisions of the Code and Rules concerning the employment of professionals and the payment of fees in connection with bankruptcy cases." *In re Shirley*, 134 B.R. 940, 944 (B.A.P. 9th Cir. 1992); *see also In re Brentwood Lexford Partners, LLC*, 292 B.R. 255, 275 (Bankr. N.D. Tex. 2003) ("The court cannot undermine or circumvent a specific Code remedy."). Because Plaintiff's grievance with Kirkland centers on the Firm's compliance with Rule 2014, "[t]he various state law claims by which Plaintiffs now seek remedy are preempted by the bankruptcy claims process and relief which Plaintiff may obtain thereto." *In re Ganas*, 513 B.R. 394 (Bankr. E.D. Cal. 2014) (bankruptcy code preempted claims based on defendant's alleged false statements in a bankruptcy court filing).

6.      **Plaintiff's state law claims are barred by Texas's "attorney immunity" and "judicial-proceedings privilege."**

Plaintiff's state law claims against Kirkland fail for yet another reason: Texas's "judicial-

proceedings privilege" and "attorney immunity" forbid claims based on allegedly "misleading and dishonest federal court papers" (Compl. ¶ 6). *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 46 (Tex. 2021).

Judicial-proceedings privilege: "As a matter of law, communications made during a court's proceedings are absolutely privileged." *McLean v. Int'l Harvester Co.*, 817 F.2d 1214, 1220 (5th Cir. 1987). The privilege covers "any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including . . . affidavits and any of the pleadings or other papers in the case." *Landry's*, 631 S.W.3d at 46. "The privilege prohibits any tort litigation based on the content of the communication at issue." *Id.* (cleaned up); *see also*, *e.g.*, *Wilkinson v. USAA Fed. Sav. Bank Tr. Servs.*, 2014 WL 3002400, at *7 (Tex. App. July 1, 2014) (privilege barred defamation, fraud, and breach-of-fiduciary-duty claims). Each of Kirkland's allegedly misleading statements were documents filed "in the due course of a judicial proceeding" (i.e., the BTC bankruptcy), so they are absolutely privileged from tort litigation. *See Collins v. Zolnier*, 2019 WL 2292333, at *2 (Tex. App May 30, 2019) (applying privilege to statements made during bankruptcy).

Attorney immunity: "[A]s a general rule, attorneys are immune from civil liability to non-clients for actions taken in connection with representing a client in litigation." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). Attorney immunity bars claims "based on conduct that (1) constitutes the provision of 'legal' services involving the unique office, professional skill, training, and authority of an attorney and (2) the attorney engages in to fulfill the attorney's duties in representing the client within an adversarial context in which the client and the non-client do not share the same interests and therefore the non-client's reliance on the attorney's conduct is not justifiable." *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 78 (Tex. 2021).

Both requirements are met here. First, Plaintiff's claims are based on allegedly false court filings, which are classic "legal services." *See, e.g.*, *McDill v. McDill*, 2020 WL 4726634, at *9 (Tex. App. July 30, 2020) (finding that "filings" are "legal services"). Second, Kirkland made the allegedly false filings as "part of the discharge of [its] duties in representing a party"—specifically, the BTC Debtors. *Falkenhorst v. Sepolio*, 2023 WL 2466398, at *2 (S.D. Tex. Feb. 21, 2023),

*aff'd sub nom. von Falkenhorst v. Hunter*, 2023 WL 6878911 (5th Cir. Oct. 18, 2023). Each of the filings was made in the BTC bankruptcy, in Kirkland's capacity as counsel for the Debtors. *See, e.g.*, *Merkle v. Gragg*, 2020 WL 5209538, at *4 (W.D. Tex. Aug. 31, 2020) (applying attorney immunity where attorney's "actions were taken in the scope of representing his client Janie in the bankruptcy litigation"); *Sheller v. Corral Tran Singh, LLP*, 551 S.W.3d 357, 364 (Tex. App. 2018) (applying immunity to attorney's conduct representing debtor-in-possession in chapter 11 bankruptcy proceedings). Indeed, the complaint specifically alleges that Kirkland failed to disclose the Freeman-Jones relationship in purported violation of its obligation to establish "disinterestedness" and disclose potential conflicts. (*E.g.*, Compl. ¶¶ 54, 147, 151, 212-13.) Even "seeking an award of attorneys' fees" qualifies as "conduct that an attorney takes as a part of their representation of a client." *Yan v. State Bar of Texas*, 2023 WL 9659175, at *7 (N.D. Tex. Dec. 28, 2023) (dismissing RICO and antitrust claims against attorneys).

Plaintiff's conclusory assertions that Kirkland's statements were "false" or "fraudulent"—while baseless (*see supra* Section IV.A.4)—are ultimately irrelevant to this analysis. As the Fifth Circuit has explained, so long as the alleged conduct arises out of "an attorney's conduct in representing his client," the fact that such conduct "was allegedly wrongful" or conducted "in a fraudulent manner . . . is no matter." *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 343, 348 (5th Cir. 2016); *accord Cantey Hanger*, 467 S.W.3d at 481 ("Even conduct that is wrongful in the context of the underlying suit is not actionable" if covered by immunity.).

### 7. Counts VI, VII, IX, and XI are time barred.

Plaintiff's claims for negligent misrepresentation, professional negligence, unjust enrichment, and *Bivens* conspiracy are subject to a now-expired two-year statute of limitations. *See Savoia-McHugh v. McCrary*, 2022 WL 1997191, at *7 (S.D. Tex. June 6, 2022) (unjust enrichment and negligent misrepresentation); *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019) (professional negligence); *Tampico v. Martinez*, 987 F.3d 387, 392 (5th Cir. 2021) (*Bivens* claim).

Each of these claims accrued more than two years before Plaintiff filed this suit. The general rule is that a claim accrues "when a wrongful act causes an injury," *i.e.*, "when facts come into existence that permit a plaintiff to recover." *Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580

S.W.3d 136, 144 (Tex. 2019). The complaint makes clear that all of the acts that Plaintiff alleges caused his injuries occurred prior to February 26, 2022—that is, more than two years before Plaintiff filed his February 26, 2024 complaint. (*See, e.g.*, Compl. ¶¶ 48, 54 (alleging that "Judge Jones entered orders confirming the firm amended joint plan of organization" on August 26, 2021 and "a final decree closing the affiliate Chapter 11 cases on September 28, 2021"); *id.* ¶ 50 (alleging that Kirkland's fees were awarded in orders dated March 15 and June 10, 2021); *id.* ¶ 147(g) (alleging that Plaintiff was removed as CEO on February 26, 2021).) Nor do these claims meet the requirements for tolling, which is limited to situations where "the injury is by its nature inherently undiscoverable." *Agar Corp., Inc.*, 580 S.W.3d at 146. Plaintiff specifically alleges the opposite—that the truth about Jones's relationship with Freeman was obtainable through "a cursory check of real property records" and with "minimal investigation." (Compl. ¶ 112.)

In sum, Plaintiff's pleadings contain all the information needed to definitively establish that these claims are barred by the applicable two-year statutes of limitations. Plaintiff admits that: (1) his injury occurred more than two years ago (Compl. ¶¶ 48, 50, 54, 147(g)); and (2) any injury could have been discovered through "cursory" research of publicly available records (Compl. ¶ 112). Plaintiff's sixth, seventh, ninth, and eleventh causes of action should be therefore dismissed. *See Jones v. Alcoa, Inc.*, 339 F.3d 359, 366, 368 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.").

### 8. Plaintiff cannot assert fiduciary duty or malpractice claims (Counts IV & VII).

Plaintiff's claims for malpractice and breach of fiduciary duty fail because Plaintiff was owed no duty by Kirkland. Plaintiff asserts that Kirkland "owed a fiduciary duty . . . to Plaintiff as a creditor of the bankruptcy estate." (Compl. ¶ 187.) He is incorrect. Although counsel for the debtor owes a duty to the estate, such duty "does not, however, extend to individual creditors and equity holders." *In re Am. Int'l Refinery, Inc.*, 436 B.R. 364, 376 (Bankr. W.D. La. 2010), *aff'd*, 676 F.3d 455 (5th Cir. 2012); *see also In re Kuykendahl Place Assocs., Ltd.*, 112 B.R. 847, 851 (Bankr. S.D. Tex. 1989) ("Where a corporation is the debtor, the attorney's duties and loyalties

are to the corporation, not to individual employees, officers or directors of the corporation."). Kirkland thus owed Plaintiff no duty, regardless of his status as a shareholder, creditor, or CEO.

Likewise, "it is well-settled law in Texas that a legal malpractice claim requires proof of an attorney-client relationship between the plaintiff and the defendant attorney," because "an attorney owes no professional duty to a third party or non-client." *Varco LP v. Bohnsack*, 2009 WL 10698303, at \*5-6 (S.D. Tex. Oct. 1, 2009); *see also Barcelo v. Elliott*, 923 S.W.2d 575, 577, 579 (Tex. 1996) (affirming that "an attorney owes a duty of care only to his or her client, not to third parties"—even if the client "intends for the lawyer's work to benefit [third-party] beneficiaries"). Plaintiff was not a client of Kirkland's, and "a law firm owes no independent duty to creditors of its client." *In re TOCFHBI, Inc.*, 413 B.R. 523, 538-39 (Bankr. N.D. Tex. 2009); *see also Gamboa v. Shaw*, 956 S.W.2d 662, 665 (Tex. App. 1997) (same, for shareholders).

Lacking any duty owed by Kirkland, Plaintiff's claims for breach of fiduciary duty and malpractice must be dismissed. *See In re Keck, Mahin & Cate*, 253 B.R. 530, 534 (N.D. Ill. 2000) (breach of fiduciary duty claim requires "an underlying attorney-client relationship"); *Varco*, 2009 WL 10698303, at \*6 (legal malpractice claim requires "the existence of a duty owed to [plaintiff] by the attorney").

**9. Counts V and XII assert claims that do not exist.**

Plaintiff's claims for aiding and abetting a breach of fiduciary duty and "respondeat superior" should also be dismissed because there are no such causes of action. *See Turk v. Pershing LLC*, 2023 WL 36080, at \*2 (N.D. Tex. Jan. 3, 2023) ("[T]he Fifth Circuit recently clarified that federal courts may not recognize aiding and abetting breach of fiduciary duty claims . . . ."); *Haskett v. Capital Land Services, Inc.*, 2015 WL 12556307, at \*6 n.2 (S.D. Tex. Dec. 9, 2015) (respondeat superior "is not an independent cause of action").

**C. Plaintiff's Claims Should Be Dismissed With Prejudice**

 "[L]eave to amend is not required when an amendment would be futile." *Cledera v. United States*, 834 F. App'x 969, 972 (5th Cir. 2021). Here, any amendment would also be futile for multiple reasons. Among other things, Plaintiff cannot:

1. Rewrite the challenged statements, which on their face are not misleading, *see Bradford*

*v. Apollo Educ. Grp. Inc.*, 2019 WL 13193884, at *1 (N.D. Tex. July 23, 2019) (dismissing claims with prejudice where "no conceivable creditor could be misled" by allegedly misleading document, such that "the Court does not believe she could change the analysis with an Amended Complaint");

2. Plead around his lack of standing, *see, e.g.*, *In re SBMC Healthcare, LLC*, 2017 WL 2062992, at *20 (S.D. Tex. May 11, 2017) (affirming dismissal with prejudice because shareholders' claims "belong exclusively to SBMC's estate");

3. Avoid the attorney-immunity or judicial-proceedings privileges, *see Fringe Benefit Grp. Inc. v. FCE Benefit Administrators Inc.*, 2019 WL 2563833, at *2 (W.D. Tex. Mar. 19, 2019) (dismissing claims "with prejudice as barred by the judicial-proceedings privilege"); or

4. Identify any non-speculative injury proximately caused by Kirkland's alleged misconduct, *see, e.g.*, *Rodriguez v. Xerox Bus. Servs., LLC,* 2017 WL 3023213, at *4 (W.D. Tex. Mar. 27, 2017) (dismissing claim with prejudice where Plaintiff failed to plead proximate causation); *Leamon v. KBR, Inc.*, 2011 WL 13340587, at *2 (S.D. Tex. Aug. 29, 2011) (dismissing RICO claims with prejudice).

Because Plaintiff cannot cure all of the deficiencies in his claims, they should be dismissed with prejudice. *See Lemmer v. Nu-Kote Holding, Inc.*, 2001 WL 1112577, at *12 (N.D. Tex. Sept. 6, 2001) (dismissing complaint with prejudice in part because "there are multiple deficiencies with the Complaint" and "the extent of the deficiencies in the Complaint is a strong indication that amendment would be futile"), *aff'd*, 71 F. App'x 356 (5th Cir. 2003).

## V.   <u>CONCLUSION</u>

Plaintiff's allegations of "criminal activity" directly attack Kirkland's integrity—the consequences of which "are nothing short disastrous" for law firms. *LCS Grp., LLC v. Shire LLC*, 2019 WL 1234848, at *15 (S.D.N.Y. Mar. 8, 2019). This baseless and inflammatory suit should end now. Kirkland respectfully requests that the Court grant its motion to dismiss with prejudice.

DATED: April 30, 2024   Respectfully submitted:

*/s/ John Hueston*
John Hueston
California Bar No. 164921 (*Pro Hac Vice*)
jhueston@hueston.com
HUESTON HENNIGAN LLP
523 West 6th St., Unit 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 866-4825

*Attorney-in-Charge for Defendants Kirkland &*
*Ellis LLP and Kirkland & Ellis International LLP*

*Of Counsel:*

BECK REDDEN LLP
David J. Beck
Texas Bar No. 00000070
Federal I.D. No. 16605
dbeck@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

GREGORY D. TORRES
ATTORNEY AT LAW, P.L.L.C.
Texas Bar No. 00791802
g_torres_law@hotmail.com
457 Jefferson Street
Eagle Pass, Texas 78852
Telephone: (830) 773-6811
Facsimile: (830) 773-6469

## CERTIFICATE OF SERVICE

I hereby certify that, on April 30, 2024, a true and correct copy of this document was served on the following counsel of record via the Court's CM/ECF system and by e-mail in compliance with the Federal Rules of Civil Procedure and Southern District of Texas Local Rule 5.3:

Mikell Alan West
Robert W. Clore
Bandas Law Firm, PC
802 N. Carancahua Street, Suite 1400
Corpus Christi, Texas 78401
Telephone: (361) 698-5200
mwest@bandaslawfirm.com
rclore@bandaslawfirm.com

*Counsel for Plaintiff Morton S. Bouchard*

John J. Sparacino
MCKOOL SMITH, PC
600 Travis Street, Suite 7000
Houston, Texas 77002
Telephone: (713) 485-7300
Facsimile (713) 485-7344
jsparacino@mckoolsmith.com

Tom Kirkendall
2 Violetta Ct
The Woodlands, TX 77381
(713) 703-3536
bigtkirk@gmail.com

*Counsel for Elizabeth C. Freeman*

Russell Hardin, Jr.
Jennifer Elizabeth Brevorka
Leah Graham
Emily Smith
Rusty Hardin & Associates, LLP
1401 McKinney Street, Ste. 2250
Houston, TX 77010
Telephone: (713) 652-9000
rhardin@rustyhardin.com
jbrevorka@rustyhardin.com
lgrahm@rustyhardin.com
esmith@rustyhardin.com

*Counsel for Jackson Walker LLP*

By: */s/ Sonia Gaeta*
    Sonia Gaeta