IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Morton S. Bouchard, III, Individually and as Co-Trustee for the Morton S. Bouchard III 2017 Family Trust | § § § § | Civil Action No. 4:24-cv-00693 |
| Plaintiff, | § § | |
| v. | § § | Jury Trial Demanded |
| David R. Jones, Elizabeth Carol Freeman, Jackson Walker, LLP, Kirkland & Ellis, LLP, and Kirkland & Ellis International, LLP, Portage Point Partners, LLC, and Matthew Ray | § § § § § | |
| Defendants. | § § | |

**DEFENDANT JACKSON WALKER LLP'S**
**MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11**

**Russell Hardin, Jr.**
State Bar No. 08972800
Federal ID 19424
**RUSTY HARDIN & ASSOCIATES, LLP**
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800
Email: rhardin@rustyhardin.com
**ATTORNEY-IN-CHARGE FOR DEFENDANT**
**JACKSON WALKER LLP**

**OF COUNSEL**:
**Leah M. Graham**
State Bar No. 24073454
Federal ID 2192848
**Jennifer E. Brevorka**
State Bar No. 24082727
Federal ID 1725400
**Emily Smith**
State Bar No. 24083876
Federal ID 1890677

1

**RUSTY HARDIN & ASSOCIATES, LLP**
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile:  (713) 652-9800
lgraham@rustyhardin.com
jbrevorka@rustyhardin.com
esmith@rustyhardin.com
**ATTORNEYS FOR DEFENDANT**
**JACKSON WALKER LLP**

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................. 2

 A. The litigant and his lawyers. ................................................................ 3

 B. BTC files for bankruptcy. ..................................................................... 4

 C. "Mr. Bouchard's improper and inequitable conduct" while serving as a
  CEO.......................................................................................................... 6

 D. The Confirmation Order expressly prohibits litigation such as this lawsuit........... 7

 E. The Bandas Law Firm is retained to pursue baseless RICO claims. ..................... 9

 F. Undeterred by warnings, the Bandas Law Firm pursues this lawsuit.................... 9

III. LEGAL STANDARDS.................................................................................... 10

IV. LEGAL ANALYSIS ....................................................................................... 12

 A. Plaintiff's RICO theories are recycled from Mr. Van Deelen's pleading
  and, as in that case, the claims are legally foreclosed by Fifth Circuit
  precedent................................................................................................. 12

  1. The Complaint is legally frivolous as Fifth Circuit precedent bars
   RICO enterprises such as the one described here. .................................... 13

  2. Without evidence of corruption, Fifth Circuit law does not allow
   for litigation activity alone to serve as the predicate RICO crimes. ......... 16

 B. The Plan's uncontested bar upon collateral attacks and Fifth Circuit
  precedent make Mr. Bouchard's Complaint legally frivolous. ............................. 19

 C. Mr. Bouchard and the Bandas Law Firm filed this meritless Complaint for
  an improper purpose. ............................................................................... 21

V. CONCLUSION AND PRAYER ...................................................................... 23

## TABLE OF AUTHORITIES

**CASES**

*Allstate Ins. Co. v. Benhamou*,
190 F. Supp. 3d 631 (S.D. Tex. 2016) ............................................................................. 14

*Allstate Ins. Co. v. Planbeck*,
802 F.3d 665 (5th Cir. 2015) ........................................................................................... 14

*Annamalai v. Moon Credit Corp.*,
2017 WL 5646925 (S.D. Tex. Apr. 21, 2017) ............................................................ 21, 22

*Atkinson v. Anadarko Bank & Trust Co.*,
808 F.2d 438 (5th Cir. 1987), *cert. denied*, 483 U.S. 1032 (1987) ................................... 14

*Bruno v. Starr*,
2006 WL 2631861 (E.D. La. Sept. 12, 2006), aff'd, 247 F. App'x 509 (5th Cir.
2007) .................................................................................................................................. 19

*Chapman & Cole v. Itel Container Int'l B.V.*,
865 F.2d 676 (5th Cir. 1989) ........................................................................................... 13

*Cordova v. Univ. Hosp. & Clinics, Inc.*,
92 F.4th 266 (5th Cir. 2024) ............................................................................................ 10

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*,
758 F.Supp.2d 153 (E.D.N.Y. 2010) ................................................................................ 19

*Daddona v. Gaudio*,
156 F. Supp. 2d 153 (D. Conn. 2000) ............................................................................... 19

*Edelson PC v. Bandas Law Firm PC*,
2018 WL 7719209 (N. D. Ill. May 15, 2017) .................................................................... 23

*Edelson PC v. Bandas Law Firm PC*,
No. 1:16-cv-11057, 2018 WL 723287 (N.D. Ill. Feb. 6, 2018) ................................. 3, 4, 23

*Elliott v. Foufas*,
867 F.2d 877 (5th Cir. 1989) ........................................................................................... 16

*Erwin v. Russ*,
2010 WL 11506635 (July 19, 2010), *aff'd,* 481 Fed. App'x 128 (5th Cir. June
1, 2012) .............................................................................................................................. 16

*F.D.I.C. v. Maxxam, Inc.*,
523 F.3d 566 (5th Cir. 2008) ........................................................................................... 21

*Fernandez-Lopez v. Hernandez*,
No. DR-19-CV-46-AM, 2020 WL 9396487 (W.D. Tex. Nov. 20, 2020).......................... 15

*Garber v. Office of Comm'r of Baseball*,
No. 12-CV03704, 2017 WL 752183 (S.D.N.Y. Feb. 27, 2017) ......................................... 1

*H.J. Inc. v. Nw. Bell Tel., Co.*,
492 U.S. 229 (1989).......................................................................................................... 14

*In re Bouchard Transp. Co., Inc.*,
  Dkt. 1 (Bankr. S.D. Tex. Sept. 28, 2020) .......................................................... 4

*In Re Sun Edison, Inc.*,
  No. 16-10992 (SMB), 2019 WL 2572250 (Bankr. S.D.N.Y. June 21, 2019) ................. 23

*In re T-Mobile Customer Data Sec. Breach Litig.*,
  No. 4:21-MD-03019-BCW, 2023 WL 4882903 (M.D. Mo. June 29, 2023) ................. 1, 4

*In re Valeant Pharms. Int'l Sec Litig.*,
  No. 157658, 2020 WL 758741 (D.N.J. Dec. 21, 2020) reconsideration denied,
  2021 WL 3140029 (D.N.J. July 2, 2021) .......................................................... 4

*Jones v. Herrman & Herrman, PLLC*,
  No. 2:22-CV-00079, 2023 WL 6064790 (March 28, 2023)........................................... 18

*Kim v. Kimm*,
  884 F.3d 98 (2d Cir. 2018) ................................................................. 17, 18, 19

*Luther v. Am. Nat. Bank of Minn*,
  No. 12-1085, 2012 WL 5471123 (D. Minn. Oct. 11, 2012)........................................... 19

*Matter of LaHaye*,
  17 F.4th 513 (5th Cir. 2021) .................................................................. 20, 21

*Segal v. Lynch*,
  No. H-07-083, 2007 WL 9753726 (S.D. Tex. June 29, 2007) ......................................... 16

*Shaffer v. Williams*,
  794 F.2d 1030 (5th Cir. 1986). ......................................................................... 16

*Sheets v. Yamaha Motors Corp., U.S.A.*,
  891 F.2d 533 (5th Cir. 1990)........................................................................... 11

*Skidmore Energy, Inc. v. KPMG*,
  455 F.3d 564 (5th Cir. 2006) ................................................................ 10, 12, 23

*Smith v. Our Lady of the Lake Hosp., Inc.*,
  960 F.2d 439 (5th Cir. 1992)........................................................................11, 12, 13

*Snow Ingredients, Inc. v. SnowWizard, Inc.*,
  833 F.3d 512 (5th Cir. 2016) ................................................................... passim

*St. Germain v. Howard*,
  556 F.3d 261 (5th Cir. 2009) .......................................................................... 18

*Thomas v. Capital Sec. Services, Inc.*,
  836 F.2d 866 (5th Cir. 1988)......................................................................11, 24

*United States v. Delgado*,
  401 F.3d 290 (5th Cir. 2005) .......................................................................... 14

*United States v. Turkette*,
  452 U.S. 576 (1981)................................................................................... 14

*Whelan v. Winchester Prod. Co.*,
  319 F.3d 225 (5th Cir. 2003) ..................................................................... 13, 14

iii

*Whitehead v. Food Max of Miss., Inc.*,
  332 F.3d 796 (5th Cir. 2003) ........................................................................ 10

*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*,
  90 F.3d 118 (5th Cir. 1996) .......................................................................... 14

## STATUTES

11 U.S.C. § 1141 ........................................................................................... 20
18 U.S.C. § 1961(5) ...................................................................................... 14

## RULES

Fed. R. Civ. P. 11(b) ..................................................................................... 10
Fed. R. Civ. P. 11(b)(2) ................................................................................ 13
Fed. R. Civ. P. 11(c) ..................................................................................... 10
Fed. R. Civ. P. 11(c)(3) ................................................................................ 12
Fed. R. Civ. P. 11(c)(4) ............................................................................ 12, 24

## TREATISES

8 COLLIER ON BANKRUPTCY § 1141.02 (16th ed. 2021) ................................ 20

# I.       INTRODUCTION

For a second time, the Bandas Law Firm has opted to consume this Court's limited judicial resources with a lawsuit that has no valid basis and omits material facts from the Court's consideration. This time around the firm's client, Plaintiff Morton S. Bouchard, III, is a disgruntled millionaire with an ax to grind about how bankruptcy proceedings unfolded for his family company, Bouchard Transportation Company ("BTC").

As BTC's corporate leader Mr. Bouchard opted to pay for his country club membership instead of making payroll.[1] He spent $68 Million on a corporate jet when BTC "became unable to pay their employees and meet critical expenses."[2] Mr. Bouchard's conduct as BTC's CEO before and during bankruptcy proceedings led to a lawsuit in which he was sued for breaching his fiduciary duties. That lawsuit is on-going.

His counsel here, the Bandas Law Firm, appears cut from similar cloth. The firm has engaged in "unethical, improper, and misleading conduct" in various courts across the country.[3] Examples include the unauthorized practice of law in Illinois;[4] the repeated filing of last-minute objections to class-action settlements to extort fee payments;[5] and the failure (just last year) to fully disclose past court orders that had sanctioned the firm.[6]

As part of his post-bankruptcy revenge, Mr. Bouchard, like the Bandas Law Firm's other

---

[1] Dkt. 1 ¶ 25, *Tug Robert J. Bouchard, Corp. v. Bouchard*, 22-03276 (Bankr. S.D. Tex. Sept. 27, 2022).

[2] Dkt. 1 ¶ 2, *Tug Robert J. Bouchard, Corp. v. Bouchard*, 22-03276 (Bankr. S.D. Tex. Sept. 27, 2022).

[3] *In re T-Mobile Customer Data Sec. Breach Litig.*, No. 4:21-MD-03019-BCW, 2023 WL 4882903 at *2–*3. (M.D. Mo. June 29, 2023).

[4] *Id.* at *3.

[5] *Garber v. Office of Comm'r of Baseball*, No. 12-CV03704, 2017 WL 752183, at *4 n.9 (S.D.N.Y. Feb. 27, 2017).

[6] *In re T-Mobile Customer Data Sec. Breach Litig.*, No. 4:21-MD-03019-BCW, 2023 WL 4882903 at *5–*6 (M.D. Mo. June 29, 2023) ("Even now, compelled by a permanent injunction entered by a federal court, Clore and West misleadingly certified that they submitted the Bandas Injunction with their motions for admission pro hac vice 'out of an abundance of caution,' see Doc. #190-1 at 4; Doc. #191 at 2, knowing that as representatives of the Bandas Firm they were legally obligated to do so pursuant to a permanent injunction.").

client, Michael Van Deelen, has sued law firms and individuals that participated as counsel in underlying bankruptcy proceedings.[7] Mr. Bouchard's suit alleges a variety of frivolous claims such as RICO and RICO conspiracy. This lawsuit, much like Mr. Van Deelen's, advances RICO claims that fail to offer any nonfrivolous argument for extending, modifying, or reversing existing law. What's worse is that the claims advanced here directly controvert the legal posture and theories advanced by the Bandas Law Firm when they faced similar RICO claims as a defendant in a lawsuit filed against the firm. The Complaint also omits key details about underlying bankruptcy proceedings which are important for any factfinder considering the present claims.

But this litigation and Mr. Van Deelen's lawsuit are just the start of the Bandas Law Firm's harassing and abusive tactics. The Bandas Law Firm filed a pleading in bankruptcy court on April 17, 2024, indicating that they will advance the **same** claims against Defendant Jackson Walker LLP ("Defendant" or "Jackson Walker") for at least *seven* additional plaintiffs in yet another unrelated bankruptcy case.[8]

One express purpose of Rule 11 sanctions is to deter repetition of inappropriate and offensive conduct or comparable conduct by others similarly situated. The Court has the chance to deter such conduct with this motion. The facts and the law show that the Court has a sound basis to issue sanctions that will prevent Mr. Bouchard and the Bandas Law Firm from engaging in any further frivolous and harassing litigation against Jackson Walker.

## II.     FACTUAL BACKGROUND

Plaintiff Morton Bouchard III, individually and on behalf of his family trust, commenced this lawsuit, which is nothing more than an extension of Mr. Bouchard's prior bullying and abusive

---

[7] *See* Dkt. 17, Notice of Related Cases.

[8] Dkt. 1416, *In re: J.C. Penney Direct Mktg., Srvs.*, LLC, No. 20-20184 (Bankr. S.D. Tex. Apr. 15, 2024).

tactics that began in the bankruptcy court. For the Bandas Law Firm, this dispute represents a continuation of conduct that various courts have concluded "has no genuine social value."[9]

## A.  **The litigant and his lawyers.**

Plaintiff Bouchard's family company, BTC, provided barge transportation for oil and petroleum. Mr. Bouchard ascended to the role of CEO in 1992. He had worked at the company for more than 45 years[10] before the Bankruptcy Court removed him as CEO due to his interference with the administration of the Chapter 11 proceedings for BTC, which commenced in 2020.

Prior to his removal as CEO, Mr. Bouchard lived a lavish lifestyle.[11] In a lawsuit suing him for breach of his fiduciary duty, the plaintiffs alleged that he used "the Debtors' finite resources" to purchase a $68 Million private jet (BTC's second private plane) "for which the Debtors had no facially valid business purpose."[12] Mr. Bouchard held onto the jet when his former companies "missed payroll on multiple occasions and fell behind on critical expenses (including rent, health insurance, fuel costs, and senior secured loan payments)."[13] He also prioritized paying his country club membership over payroll.[14] And, "investigations and regulatory actions related to Mr. Bouchard's" CEO tenure evidenced his "knowing discrimination, retaliation, non-payment, and/or purposeful underpayment of the Debtors' employees" who had cooperated with federal workplace investigators.[15]

Some of those investigators were examining a 2017 BTC barge explosion near Port

---

[9] *Edelson PC v. Bandas Law Firm PC*, No. 1:16-cv-11057, 2018 WL 723287, at *2 (N.D. Ill. Feb. 6, 2018).

[10] Compl. at ¶ 64.

[11] Dkt. 1 ¶ 2, *Tug Robert J. Bouchard, Corp. v. Bouchard*, 22-03276 (Bankr. S.D. Tex. Sept. 27, 2022).

[12] *Id*.

[13] *Id*. at ¶ 22.

[14] *Id*. at ¶ 25.

[15] *Id*. at ¶ 27.

Aransas, Texas, which had killed two crew members. After the explosion, BTC faced litigation, stiff fines, and negative publicity. The pandemic worsened BTC's economic picture. In September 2020, BTC filed for bankruptcy to stave off foreclosure sales of various BTC vessels.[16]

Mr. Bouchard's counsel, the Bandas Law Firm, is known among class action attorneys as "serial objector[s]," relying upon last-minute legal objections to class action settlements as leverage to extract higher legal fees.[17] Because of this, courts have denied or revoked *pro hac vice* admission to federal courts for the firm's lawyers,[18] including those involved here.[19] The firm's brass-knuckle tactics have resulted in courts admonishing, excoriating, and sanctioning the firm. One court described the Bandas Law Firm as an organization that "pursues personal financial gain by routinely filing frivolous, bad-faith objections to proposed class settlements and generally engaging in behavior unfitting for any member of the legal profession."[20]

**B.      BTC files for bankruptcy.**

Jackson Walker and Kirkland & Ellis, LLP ("Kirkland") represented BTC and its affiliates in the related bankruptcy proceedings. Other lawyers represented Mr. Bouchard and his family trust, as self-proclaimed creditors. Soon after the Chapter 11 proceedings commenced, the Bankruptcy Court appointed Defendant Matthew Ray, of the firm Portage Point Partners (also a defendant here) as the chief restructuring officer. The Bankruptcy Court did this after removing Mr. Bouchard as CEO due to Mr. Bouchard's continued interference with Mr. Ray's management

---

[16] *In re Bouchard Transp. Co., Inc.*, Dkt. 1 (Bankr. S.D. Tex. Sept. 28, 2020).

[17] *Edelson PC v. Bandas Law Firm PC*, No. 1:16-cv-11057, 2018 WL 723287 (N.D. Ill. Feb. 6, 2018).

[18] *In re Valeant Pharms. Int'l Sec Litig.*, No. 157658, 2020 WL 758741 (D. N.J. Dec. 21, 2020) reconsideration denied, 2021 WL 3140029 (D. N.J. July 2, 2021); *In re T-Mobile Customer Data Sec. Breach Litig.*, No. 4:21-MD-03019-BCW, 2023 WL 4882903 at *5–*6 (M.D. Mo. June 29, 2023).

[19] *In re Valeant Pharms. Int'l Sec. Litig.*, No. 157658, 2020 WL 7585741 (D. N.J. Dec. 21, 2020); *In re T-Mobile Customer Data Sec. Breach Litig.*, No. 4:21-MD-03019-BCW, 2023 WL 4882903 at *5–*6 (M.D. Mo. June 29, 2023).

[20] *Edelson PC v. Bandas Law Firm PC*, No. 1:16-cv-11057, 2018 WL 723287 at n.1 (N.D. Ill. Feb. 6, 2018) (internal citations and quotations omitted).

of BTC during Chapter 11 proceedings.[21] As the chief restructuring officer, Mr. Ray had the "exclusive and complete authority to act for and on behalf of Debtors with respect to matters arising out of or relating to the Debtors and/or" the Chapter 11 cases.[22]

Despite his bitter complaints in this litigation, Mr. Bouchard never objected to the order removing him as CEO; he never appealed the order; and he never sought relief from the Bankruptcy Court as the order allowed.[23] Instead, Mr. Bouchard sought to challenge all aspects of the proceedings, including Mr. Ray's general management and administration of the Chapter 11 cases. For example, Mr. Bouchard:

- objected to the sale of five BTC vessels notwithstanding that the estate lacked cash to operate and the sale plan was fully marketed and the best option to generate cash and maximize value for the estate;[24]

- demanded payment as a creditor for $40 Million, asserting the dubious ground that his payment constituted a secured "loan" to BTC;[25]

- objected to treatment of his claims and objected to the proposed Confirmation Order and the Chapter 11 reorganization plan;[26] and

- appealed a narrow aspect of the Plan—namely, the scope of the exculpation clause in the Plan and the Bankruptcy Court's related Confirmation Order.[27]

Throughout the bankruptcy proceedings, Mr. Bouchard demonstrated "that he [was] incapable of rebuilding [BTC] back into the company his ancestors built."[28]

---

[21] Dkt. 52, p.1, *Morton S. Bouchard, III, v. Bouchard Transport. Co., Inc.*, 4:21-cv-02937 (S.D. Tex. Feb. 7, 2023); *see also* Dkt. 1171-1 ¶¶ 20, 21 *In re Bouchard Transport. Co., Inc.*, 20-34682.

[22] Dkt. 569 at ¶ 2, *In re Bouchard Transport. Co., Inc.*, 20-34682.

[23] Dkt. 569 at ¶ 1, *In re Bouchard Transport. Co., Inc.*, 20-34682 ("For the avoidance of doubt, this Order shall be without prejudice to Mr. Bouchard's right to seek appropriate relief from the Court.")

[24] Dkt. 1171 and 1171-1; *In re Bouchard Transport. Co., Inc.*, 20-34682.

[25] Dkt. 1066, *In re Bouchard Transport. Co., Inc.*, 20-34682.

[26] Dkt. 1225, *In re Bouchard Transport. Co., Inc.*, 20-34682.

[27] Dkt. 52, *Morton S. Bouchard, III, v. Bouchard Transport. Co., Inc.*, 4:21-cv-02937 (S.D. Tex. Feb. 7, 2023).

[28] Dkt. 1171-1 ¶ 17, *In re Bouchard Transport. Co., Inc.*, 20-34682.

C.    <u>**"Mr. Bouchard's improper and inequitable conduct"**[29] while serving as a CEO.</u>

Mr. Bouchard's and his family trust's claims as creditors are still pending before the Bankruptcy Court[30] as both the Debtors and Unsecured Creditors Committee ("<u>Committee</u>") disputed them. In addition, Mr. Bouchard, his wife, and his family trust are defendants in Bankruptcy Court litigation commenced by the Post-Effective Date Debtors, represented by Jackson Walker and Kirkland & Ellis. In that litigation, the Post-Effective Date Debtors sued Mr. Bouchard alleging he had breached his fiduciary duties as CEO and company director.[31]

The claims dispute evidences how certain damages complained of here[32] are still at issue before another court. The claims dispute and on-going adversarial lawsuit also paint a telling portrait of Mr. Bouchard.

When Mr. Bouchard and his family trust first filed claims in the bankruptcy case, they claimed that the estate owed them $40 Million as **unsecured** creditors.[33] But when it became apparent that the estate could not pay all unsecured creditors, Mr. Bouchard and his family trust amended the claims, asserting they were **secured** with valid, enforceable maritime liens.[34] Having a secured claim, according to the Plan, meant payment from the Debtor and that Mr. Bouchard's claims had priority over dozens of unsecured creditors. [35]

The Debtors and the Committee disputed this claim classification, and for good reason. According to their pleadings, Mr. Bouchard had "explicitly told auditors" that the money he

---

[29] Dkt. 1 ¶ 1, *Tug Robert J. Bouchard, Corp. v. Bouchard*, 22-03276 (Bankr. S.D. Tex. Sept. 27, 2022).

[30] Dkts. 1024, 1225, *In re Bouchard Transport. Co., Inc.*, 20-34682.

[31] Dkt. 1, *Tug Robert J. Bouchard, Corp. v. Bouchard*, 22-03276 (Bankr. S.D. Tex. Sept. 27, 2022).

[32] Comp. ¶¶ 9, 65.

[33] Dkt. 1 ¶¶ 29-33, *Tug Robert J. Bouchard, Corp. v. Bouchard*, 22-03276 (Bankr. S.D. Tex. Sept. 27, 2022).

[34] Dkt. 1 ¶¶ 29-40, *Tug Robert J. Bouchard, Corp. v. Bouchard*, 22-03276 (Bankr. S.D. Tex. Sept. 27, 2022).

[35] Dkt. 1293 *In re Bouchard Transport. Co., Inc.*, 20-34682.

provided BTC was not a loan.[36] Mr. Bouchard did not "execute promissory notes on which his purported loans are based" until February 2020, when "the Debtors were clearly insolvent or fast approaching it."[37] And "several of the promissory notes were backdated in a belated effort to create the impression of a loan."[38] Plus, "Mr. Bouchard stood on both sides of the transactions and" had executed "the promissory notes as both 'lender' and 'borrower.'"[39]

If the Debtor and Committee succeed with their objections, the $40 Million will be classified as a section 510(c) claim subordinate to secured, priority, unsecured, and other claims. In short, if subordinated pursuant to section 510(c), Mr. Bouchard will recover nothing.

Mr. Bouchard's conduct during the claims process was so offensive that it formed a part of the basis for the breach of fiduciary duty lawsuit commenced against him in September 2022.[40] In that lawsuit Mr. Bouchard has not yet filed an Answer.[41] The litigation appears to be yet another part of the bankruptcy proceeding that motivated Mr. Bouchard to sue Jackson Walker.

**D.**    **The Confirmation Order expressly prohibits litigation such as this lawsuit.**

In the BTC bankruptcy proceedings, the Confirmation Order contained a broad provision prohibiting collateral attacks on the Plan or the Order:

> [N]o Entity may commence or pursue a claim or cause of action of *any kind* against the Debtor . . . any Professional, the Chief Restructuring Officer . . . or any Related Party (each a "Protected Party" . . . that arose from or is related to the Chapter 11 Cases, the Sale Transactions, the formulation or negotiation of the Plan, the administration and implementation of the Plan, including property to be distributed under the Plan, the Wind Down, or any act or omission, transaction, agreement, event or other occurrence in furtherance of the foregoing, in each case without the Bankruptcy Court (a) first determining, after notice, that such claim or cause of

---

[36] Dkt. 1 ¶ 34, *Tug Robert J. Bouchard, Corp. v. Bouchard*, 22-03276 (Bankr. S.D. Tex. Sept. 27, 2022).

[37] Dkt. 1 ¶ 35, *Tug Robert J. Bouchard, Corp. v. Bouchard*, 22-03276 (Bankr. S.D. Tex. Sept. 27, 2022).

[38] Dkt. 316 ¶ 8, *In re Bouchard Transport. Co., Inc* 20-34758.

[39] *Id.*

[40] Dkt. 1 ¶¶ 29 –42, *Tug Robert J. Bouchard, Corp. v. Bouchard*, 22-03276 (Bankr. S.D. Tex. Sept. 27, 2022).

[41] Dkt. 13, *Tug Robert J. Bouchard, Corp. v. Bouchard*, 22-03276 (Bankr. S.D. Tex. Jan. 10, 2023).

action represents a colorable claim of willful misconduct, actual fraud, or gross negligence against a Protected Party and (b) specifically authorizing such Entity to bring such claim against such Protected Party. The Bankruptcy Court will have sole jurisdiction to adjudicate any claim described in the foregoing sentence for which approval of the Bankruptcy Court to commence or pursue has been granted.[42]

Mr. Bouchard did not object to this provision. It is valid and uncontested. The Plan (as in Mr. Van Deelen's case) also contained a broad Release in which BTC released Jackson Walker and other professional firms from liability due to their professional services in the bankruptcy proceedings. That provision, like the release clause, remains unchallenged and enforceable.

The Confirmation Order, Plan, and Bankruptcy Court record demonstrate that Mr. Bouchard and his counsel participated in bankruptcy proceedings and that Mr. Bouchard had succeeded in challenging a select aspect of the Plan on appeal.[43]

In April 2024, Mr. Bouchard inserted himself into proceedings involving the U.S. Trustee's attempts to claw back fees and expenses from Jackson Walker.[44] That proceeding commenced after Michael Van Deelen, then a pro-se litigant, sued Judge David R. Jones in October 2023. Mr. Van Deelen alleged that former Judge Jones had engaged in a romantic relationship with a Jackson Walker partner while overseeing cases in which Jackson Walker had appeared as counsel.[45]

Mr. Van Deelen's litigation warrants consideration because Mr. Bouchard's accusations against Jackson Walker are nearly identical to Mr. Van Deelen's. The claims in this suit mimic the baseless legal theories advanced in Mr. Van Deelen's lawsuit. The Bandas Law Firm represents both Messrs. Van Deelen and Bouchard in their lawsuits against Jackson Walker and others.

---

[42] Dkt. 1319, ¶ 13, *In re Bouchard Transport. Co., Inc.*, 20-34682.

[43] Dkt. 52, *Morton S. Bouchard, III, v. Bouchard Transport. Co., Inc.*, 4:21-cv-02937 (S.D. Tex. Feb. 7, 2023).

[44] Dkt. 86, *In Re Prof'l Fee Matters Concerning the Jackson Walker Firm*, No. 23-00645 (Bankr. S.D. Tex. Apr. 15, 2024).

[45] Dkt. 1, *Van Deelen v. Jones*, No. 4:23-cv-3729. (S.D. Tex. Oct. 4, 2023).

**E.**     **The Bandas Law Firm is retained to pursue baseless RICO claims.**

After retaining the Bandas Law Firm, the scope of Mr. Van Deelen's lawsuit ballooned to include three other defendants (Ms. Freeman, Jackson Walker, and Kirkland) and a dozen more claims. On January 11, 2024, the Bandas Law Firm filed a First Amended Complaint ("Amended Complaint") with thirteen (13) claims that alleged, just as in Mr. Bouchard's Complaint, that a RICO enterprise existed among Judge Jones, Ms. Freeman, Jackson Walker, and Kirkland.

On February 23, 2024, Kirkland served a motion for sanctions upon Mr. Van Deelen and the Bandas Law Firm. The motion warned that Mr. Van Deelen and his counsel had advanced RICO claims completely unfounded by law or fact; and detailed how Mr. Van Deelen and the Bandas Law Firm had filed the pleading for an improper purpose. The motion provided the Bandas Law Firm with three weeks to amend the pleading. [46]

**F.**     **Undeterred by warnings, the Bandas Law Firm pursues this lawsuit.**

Three days after receipt of Kirkland's motion, the Bandas Law Firm doubled down on its baseless approach and filed this Complaint against Jackson Walker. Mr. Bouchard's Complaint asserts a near-identical RICO legal theory as asserted in Mr. Van Deelen's litigation. That lawsuit now faces four separate dismissal motions,[47] which detail how the RICO claims are untenable for at least 10 different legal reasons. Identical flaws exist in Mr. Bouchard's Complaint.

Mr. Bouchard, like Mr. Van Deelen, uses his litigation to air grievances against perceived enemies, such as BTC's chief restructuring officer, Matthew Ray, and his firm, Portage Point Partners, LLC. While those defendants face several of the same Texas tort claims as Jackson Walker, neither are alleged to be part of the RICO enterprise. Instead, Mr. Bouchard limits his

---

[46] Dkt. 41, *Van Deelen v. Jones*, 4:23-cv-03729 (S.D. Tex. Mar. 18, 2024).

[47] Dkts. 39, 42, 45, 46, *Van Deelen v. Jones*, 4:23-cv-03729.

RICO and RICO conspiracy claims to Defendants Jones, Freeman, Jackson Walker, and Kirkland.

## III.   LEGAL STANDARDS

Federal Rule of Civil Procedure 11(b) requires the attorney filing litigation documents, such as a Complaint or motion, to certify that the filing is: not being presented for any improper purpose; the claims, defenses, and other legal contentions are warranted by existing law or are nonfrivolous; the factual contentions have or will have evidentiary support; and the denials of factual contentions are warranted on the evidence or reasonable belief.[48]

When a filing violates Rule 11, a court may impose sanctions on the attorney, law firm, or client responsible for the violation, provided each party had notice and a reasonable opportunity to respond.[49] When a court finds a Rule 11 violation "an appropriate sanction is an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation."[50]

The Fifth Circuit has held that Rule 11 "[s]ubsections (b)(1) and (b)(2) provide independent grounds for sanctions, either because a filing is made for an improper purpose regardless of its merits or because a filing, even made in good faith, is legally indefensible."[51] A district court may sanction a law firm or party for filing a pleading for *any* improper purpose, such as to harass.[52] For Rule 11 sanctions, an objective standard of reasonableness is used to evaluate a lawyer or law

---

[48] Fed. R. Civ. P. 11(b).

[49] Fed. R. Civ. P. 11(c); *see also Cordova v. Univ. Hosp. & Clinics, Inc.*, 92 F.4th 266, 273 (5th Cir. 2024); *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 567 (5th Cir. 2006).

[50] *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 568 (5th Cir. 2006).

[51] *Snow Ingredients, Inc. v. SnowWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016).

[52] *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 805 (5th Cir. 2003) (quoting Fed. R. Civ. P. 11(b)(1)) (emphasis in original).

firm's conduct.[53] "Reasonableness is reviewed according to the 'snapshot' rule, focusing upon the instant the attorney affixes his signature to the document."[54]

To decide whether a lawyer made a reasonable factual inquiry, courts "consider factors such as the time available to the signer for investigation; the extent of the attorney's reliance upon his client for the factual support of the document; the feasibility of a prefiling investigation; whether the signing attorney accepted the case from another member of the bar; the complexity of the factual and legal issues; and the extent to which development of the factual circumstances underlying the claim requires discovery."[55]

To comply with Rule 11, a lawyer does not need to "provide an absolute guarantee of the correctness of the legal theory advanced."[56] But a lawyer must certify that he or she has conducted a "reasonable inquiry into the relevant law."[57] For the reasonableness of a lawyer's legal inquiry, "a court may consider the time available to the attorney; the plausibility of the legal view contained in the document; the *pro se* status of a litigant; and the complexity of the legal and factual issues raised."[58] Sanctions may not be imposed where the signing attorney has conducted such reasonable inquiry and has made legal assertions based on "a good faith argument for the extension, modification, or reversal of existing law."[59]

Rule 11 provides a district court with discretion regarding what evidence is submitted in

---

[53] *Snow Ingredients, Inc. v. SnowWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016); *Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 538 (5th Cir. 1990).

[54] *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992).

[55] *Thomas v. Capital Sec. Services, Inc.*, 836 F.2d 866, 875 (5th Cir. 1988).

[56] *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992).

[57] *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992).

[58] *Thomas v. Capital Sec. Services, Inc.*, 836 F.2d 866, 876–77 (5th Cir. 1988).

[59] *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992).

support or opposition to the motion, and such evidence may include testimony.[60] Sanctions imposed may include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."[61]

In this case the Court may reasonably conclude sanctions are warranted because of the uncontested terms of the Plan and Confirmation Order; Fifth Circuit precedent governing RICO claims; and, the prior notice provided to the Bandas Law Firm about its baseless RICO assertions.

## IV.    <u>LEGAL ANALYSIS</u>

The Complaint here falls within Rule 11's sanctionable conduct because it advances legal theories foreclosed by Fifth Circuit precedent, which the Bandas Law Firm embraced and adopted when defending itself against RICO claims brought against the firm in other litigation. Additionally, sanctions are warranted against Mr. Bouchard and his counsel because the Complaint, which omits key details for this Court's consideration, is brought for an improper purpose and to harass Jackson Walker.

### A.    <u>Plaintiff's RICO theories are recycled from Mr. Van Deelen's pleading and, as in that case, the claims are legally foreclosed by Fifth Circuit precedent.</u>

When a complaint asserts a RICO claim, the Fifth Circuit has held that a lawyer's Rule 11 duty is "particularly important."[62] This is because:

> Given the resulting proliferation of civil RICO claims and the potential for frivolous suits in search of treble damages, greater responsibility will be placed on the bar to inquire into the factual and legal bases of potential claims or defenses prior to

---

[60] Fed. R. Civ. P. 11(c)(3); *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 566 (5th Cir. 2006) ("Two hearings on the [Rule 11] motion were conducted in February 2005. The district court heard the testimony of several witnesses, including corporate representatives of both Appellants, and the court itself questioned their counsel, Gary Sullivan.").

[61] Fed. R. Civ. P. 11(c)(4).

[62] *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992).

bringing such suit or risk sanctions for failing to do so.[63]

Thus, the Fifth Circuit has upheld sanctions awards when RICO allegations are unsupported by "concrete" and "solid" evidence of criminal conduct.[64] Under this precedent, if no such evidence exists in a complaint, lawyers risk sanctions for filing such claims.

Had the Bandas Law Firm engaged in a reasonable inquiry into RICO law, the lawyers filing Mr. Bouchard's Complaint would understand that the RICO claims advanced here are legally frivolous for at least two reasons. First, the Fifth Circuit has repeatedly held that a RICO enterprise cannot be founded by conclusory allegations, and that the enterprise must be separate and apart from "the pattern of racketeering activity in which it engages."[65] Second, the Fifth Circuit and district courts within it have expressly concluded that litigation activity, without evidence of "corruption", "cannot act as a predicate offense for a civil-RICO claim."[66]

The Fifth Circuit's position on both issues makes the Complaint's legal assertions frivolous. There exists no basis to conclude that the Complaint's recycled RICO claims—first advanced in Mr. Van Deelen's suit—now provide a good-faith argument for "the extension, modification, or reversal of existing law."[67]

1.   **The Complaint is legally frivolous as Fifth Circuit precedent bars RICO enterprises such as the one described here.**

The Bandas Law Firm has filed a second Complaint in which the enterprise alleged is supported by conclusory allegations, not factual assertions, which is legally unpermitted.

To establish a claim under § 1962(c), a plaintiff must show: "(1) the existence of an

---

[63] *Id*. (internal citations and quotations omitted).

[64] *Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676, 684–85 (5th Cir. 1989).

[65] *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003).

[66] *Snow Ingredients, Inc. v. SnowWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016).

[67] Fed. R. Civ. P. 11(b)(2).

enterprise that affects interstate or foreign commerce, (2) that the defendant was employed by or associated with the enterprise, (3) that the defendant participated in the conduct of the enterprise's affairs, and (4) that the participation was through a pattern of racketeering activity."[68] For the existence of a pattern of racketeering activity the plaintiff must show two or more related predicate offenses that amount to or pose a threat of continued criminal activity.[69]

A valid RICO claim must establish an enterprise that is an "entity separate and apart" from the pattern of activity in which it engages."[70] An enterprise is a group of persons or entities associating together for the common purpose of engaging in a course of conduct.[71] The plaintiff alleging an association-in-fact enterprise must adduce evidence demonstrating "an ongoing organization, formal or informal, and . . . evidence that the various associates function as a continuing unit."[72] The enterprise is not the pattern of racketeering activity alleged, but must exist separate and apart from the racketeering activity in which it purportedly engages.[73]

Section 1962(c) expressly prohibits the conduct of an enterprise's affairs through a pattern of racketeering activity. A plaintiff "must plead specific facts which establish that the association exists for purposes other than simply to commit the predicate acts."[74] Over time, a RICO enterprise also "must function as a continuing unit as shown by a hierarchical or consensual decision-making structure."[75]

---

[68] *United States v. Delgado*, 401 F.3d 290, 297 (5th Cir. 2005) (internal quotations omitted).

[69] *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (citing *H.J. Inc. v. Nw. Bell Tel., Co.*, 492 U.S. 229, 239 (1989)); 18 U.S.C. § 1961(5).

[70] *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir. 1987), *cert. denied*, 483 U.S. 1032 (1987); *see also Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003).

[71] *United States v. Turkette,* 452 U.S. 576, 583 (1981).

[72] *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 439–40 (5th Cir. 1987) (quoting *Turkette,* 452 U.S. at 583).

[73] *Id.* at 441.

[74] *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 650 (S.D. Tex. 2016).

[75] *Allstate Ins. Co. v. Planbeck*, 802 F.3d 665, 673 (5th Cir. 2015).

Mr. Bouchard's Complaint, akin to Mr. Van Deelen's, articulates an enterprise[76] that allegedly exists among Judge Jones, Ms. Freeman, Jackson Walker, and Kirkland. The enterprise exists <u>solely</u> to engage in the predicate acts that the Complaint alleges. That is: utilizing "the intimate relationship between" Judge Jones and Ms. Freeman to "enrich themselves at the expense of the bankruptcy estate and creditors."[77] The existence of the alleged enterprise—2018 to October 2023—also matches the period of alleged pattern of racketeering activities.[78]

The Complaint's theory is that the enterprise existed "for the purpose of securing appointments in" and "obtaining favorable decisions and lucrative fee awards from Judge Jones in those cases."[79] This assertion fails as a matter of law because it alleges that Defendants Jones, Freeman, Jackson Walker, and Kirkland formed the enterprise solely to commit the crimes listed as predicate RICO acts. This is insufficient to plead the existence of an enterprise separate and apart from the pattern of racketeering activity in which it engages.[80]

In similarly vague language, the Complaint alleges Defendants "organized" the enterprise "in a manner amenable to consensual decision-making between Defendants and hierarchical decisions handed down by Judge Jones" to other enterprise members.[81] But these conclusory allegations about the enterprise's hierarchy and organization—the only such ones made in the 131-page Complaint—fail to explain *what* constituted "consensual" decisions or *how* the purported enterprise made "consensual" decisions. An allegation that parrots language in section 1962 without other facts does not constitute a plausible factual allegation of consensual decision

---

[76] The "Jones-Freeman-Jackson Walker-Kirkland & Ellis Enterprise". Compl. ¶ 2.

[77] Compl. ¶ 137; *see also* Compl. at ¶ 126.

[78] *Id*. ¶ 124.

[79] Compl. ¶ 128.

[80] *Fernandez-Lopez v. Hernandez*, No. DR-19-CV-46-AM, 2020 WL 9396487 at *12 (W.D. Tex. Nov. 20, 2020).

[81] Compl. ¶ 128.

making.[82] Merely alleging that Judge Jones' orders constituted "hierarchical decision[s]", as the Complaint does, fails to "allege the additional organizational characteristics necessary"[83] for RICO's pleading requirement of an enterprise's hierarchical decision-making structure.

District Courts within the Fifth Circuit have sanctioned parties or lawyers for RICO pleadings with this type of baseless assertion for an enterprise.[84] This Court should do the same with the Bandas Law Firm because they have (yet again) asserted an untenable legal theory, recycling a baseless legal claim for which they received prior notice of its frivolous nature.

**2.** **Without evidence of corruption, Fifth Circuit law does not allow for litigation activity alone to serve as the predicate RICO crimes.**

Here the acts purportedly constituting wire and mail fraud, and obstruction of justice only involve litigation activity. For example, the wire fraud allegations hinge on Jackson Walker's application as co-counsel for Debtors; Judge Jones' order appointing Jackson Walker as counsel; interim fee applications; Judge Jones' order awarding fees; the Court's order removing Mr. Bouchard as CEO of BTC; a motion for final decree, and the final decree.[85] The Complaint asserts: "these wire communications were part and parcel of Defendants' scheme to defraud Plaintiff and benefit themselves through the issuance of improper rulings."[86]

Such allegations do not, and cannot, constitute predicate RICO crimes under unambiguous and controlling Fifth Circuit precedent. This is something Bandas Law Firm knows from its own experience as a civil defendant and from recent court decisions in which the firm represented

---

[82] *Shaffer v. Williams*, 794 F.2d 1030, 1032–33 (5th Cir. 1986).

[83] *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).

[84] *Erwin v. Russ*, W:09-CA-127, W:10-CA_005, 2010 WL 11506635 (July 19, 2010), *aff'd,* 481 Fed. App'x 128, 132 (5th Cir. June 1, 2012); *Segal v. Lynch*, No. H-07-083, 2007 WL 9753726 at *8 (S.D. Tex. June 29, 2007).

[85] Comp. ¶ 151.

[86] Comp. ¶ 152.

parties with RICO claims. Despite this, they opted to advance a baseless RICO theory.

In *Edelson PC v. Bandas L. Firm PC*, a firm that frequently faced last-minute settlement objections by the Bandas Law Firm sued the firm and its founder, Christopher Bandas, alleging that the firm's practice had constituted criminal racketeering.[87]

In defending against the RICO claim, the Bandas Law Firm asserted that "the litigation activities" they had used to obtain attorney's fees "cannot constitute predicate acts of racketeering activity."[88] Instead, the firm countered that, the alleged bad-faith litigation conduct to obtain fees "may be sanctionable under Rule 11."[89] But "no court in the country has ever held that the alleged litigation conduct" (using class action settlement objections to extort payment) constitutes "criminal behavior for RICO".[90] Instead, the **Bandas Law Firm argued, RICO "only punishes criminal conduct; not ethical violations, sanctionable conduct, or state law torts."**[91] The Bandas Law Firm is right**.**

In advancing this argument, the firm's motion relied upon *Snow Ingredients, Inc. v. SnoWizard, Inc.*,[92] a 2016 case in which the Fifth Circuit held that "[i]n the absence of corruption," such litigation activity "cannot act as a predicate offense for a civil-RICO claim."[93] Other circuits[94] have interpreted *Snow Ingredients*' reasoning as holding that "allegations of frivolous, fraudulent,

---

[87] *Edelson PC v. The Bandas Law Firm PC*, No. 1:16-cv-11057 (N.D. Ill.).

[88] Dkt. 63 at p.1, *Edelson PC v. The Bandas Law Firm PC*, No. 1:16-cv-11057 (N.D. Ill. Apr. 10, 2017); *see also* Dkt. 64 at pp. 10, 13, 14 of 44, *Edelson PC v. The Bandas Law Firm PC*, No. 1:16-cv-11057 (N.D. Ill. Apr. 10, 2017); Dkt. 30 p. 13 of 28, *Edelson PC v. The Bandas Law Firm PC*, No. 1:16-cv-11057 (N.D. Ill. Jan. 25, 2017); Dkt. 84 at p. 10 of 38, *Edelson PC v. The Bandas Law Firm PC*, No. 1:16-cv-11057 (N.D. Ill. June 9, 2017).

[89] Dkt. 84 at p. 10 of 38, *Edelson PC v. The Bandas Law Firm PC*, No. 1:16-cv-11057 (N.D. Ill. June 9, 2017).

[90] Dkt. 84 p. 10 of 38, *Edelson PC v. The Bandas Law Firm PC*, No. 1:16-cv-11057 (N.D. Ill. June 9, 2017).

[90] *Id*.

[91] *Id.* (emphasis added).

[92] 833 F.3d 512, 525 (5th Cir. 2016).

[93] *Id*. at 525.

[94] *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018).

or baseless litigation activities—without more—cannot constitute a RICO predicate act."[95]

The *Snow Ingredients* court examined and endorsed the holding of *St. Germain v. Howard*,[96] a case in which the Fifth Circuit refused to find that bad-faith litigation—lawyers allegedly over-charging clients—satisfied the criminal standards for mail or wire fraud in a civil RICO case. As the *Snow Ingredients* court opined, "civil-RICO liability should not exist unless the pleadings allege actual criminal activity."[97] This is because "prosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system. Moreover, allowing such charges would arguably turn many state-law actions for malicious prosecutions into federal RICO actions."[98]

In *Jones v. Herrman & Herrman, PLLC*,[99] Bandas Law Firm filed a lawsuit for clients who had sued their former lawyers, defendants Herrman & Herrman, PLLC, alleging claims under RICO and Texas law. Bandas Law Firm's complaint asserted "that Herrman & Herrman 'willfully and intentionally' engaged in 'multiple acts of Wire Fraud' by charging a $195 administrative fee to their personal-injury clients whose cases settled before filing suit."[100] When evaluating defendants' Rule 12(b)(6) motion to dismiss, the court explained that:

> as in *St. Germain*, the Court is reviewing whether certain attorneys' fees or expenses charged to a client constitute a "criminal act" for purposes of RICO liability. Plaintiffs assert that Defendants engaged in fraudulent misrepresentations and violations of the rules of professional conduct, and that this conduct provides a basis for RICO liability. But none of these allegations rise to the level of a criminal act for RICO purposes.[101]

---

[95] *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018).

[96] 556 F.3d 261 (5th Cir. 2009).

[97] *Snow Ingredients*, 833 F.3d. 512, 524–25 (5th Cir. 2016).

[98] *Snow Ingredients*, 833 F.3d at 525 (cleaned up).

[99] *Jones v. Herrman & Herrman, PLLC*, No. 2:22-CV-00079, 2023 WL 6064790 at *4 (March 28, 2023).

[100] No. 2:22-CV-00079, 2023 WL 6064790 at *4 (March 28, 2023).

[101] *Id*. at *5.

A survey of RICO litigation involving similar accusations (*e.g.*, whether litigation activity alone constitutes the basis for wire or mail fraud crimes in RICO suits) demonstrate that courts routinely conclude that without details of actual criminal activity, litigation conduct alone cannot constitute RICO's predicate criminal acts.[102]

The Bandas Law Firm's firsthand experiences serve as evidence from which this Court may objectively conclude that the firm knows the claims advanced are legally frivolous.[103]

**B.** **The Plan's uncontested bar upon collateral attacks and Fifth Circuit precedent make Mr. Bouchard's Complaint legally frivolous.**

The claims asserted in this Complaint violate Rule 11(b)(2) because they are frivolous and demonstrate an utter lack of "reasonable inquiry into relevant law."[104] Mr. Bouchard, represented by counsel, actively participated in BTC's Chapter 11 proceedings. He, or his counsel, read the Plan, objected to specific aspects of it,[105] and appealed the Confirmation Order, contesting the injunction and exculpation clauses. What Mr. Bouchard and his counsel did not contest, however, is the Confirmation Order's broad prohibition against litigation relating to, or stemming from, involving the Plan, the administration and implementation of the Plan, and any act or omission in

---

[102] *Kim*, 884 F.3d at 103–104 (holding that signing and filing purportedly false declarations in litigation cannot provide a basis for predicate RICO crimes and listing cases from other circuit courts with similar holdings)*; Luther v. Am. Nat. Bank of Minn*, No. 12-1085, 2012 WL 5471123 at *6 (D. Minn. Oct. 11, 2012) (listing cases in which courts found no RICO predicate crimes for litigation activities or filings); *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 171–72 (E.D.N.Y. 2010) (collecting cases from district courts in Second Circuit); *Daddona v. Gaudio,* 156 F. Supp. 2d 153, 162 (D. Conn. 2000) (concluding that allegations of defendants filing false documents and affidavits as pattern to "infect" the extensive litigation proceedings "at best amount to a vague abuse of process or malicious prosecution claim" and citing to courts that have held the allegations of false statements in litigation a proceeding were not a basis for a RICO claim).

[103] In defending against the RICO claims, the Bandas Law Firm also asserted that no enterprise existed, demonstrating the firm's familiarity with RICO's other elements prior to this litigation. Dkt. 30 p. 19 of 28, *Edelson PC v. The Bandas Law Firm PC*, No. 1:16-cv-11057 (N.D. Ill. Jan. 25, 2017).

[104] *Bruno v. Starr*, 2006 WL 2631861, at *4 (E.D. La. Sept. 12, 2006), *aff'd*, 247 F. App'x 509 (5th Cir. 2007).

[105] Dkts. 1095, 1120, 1225, *In re Bouchard Transport. Co., Inc.*, 20-34682.

furtherance of the Plan.[106] Similarly, Mr. Bouchard did not object to or contest the Plan's Release in which the Debtor, BTC, released all claims against a variety of entities including Jackson Walker. Yet these are all things complained of in this lawsuit.

Fifth Circuit law is clear that a final confirmation order is *res judicata* as to all justiciable issues which were or could have been decided at the confirmation hearing.[107] In providing that "the provisions of a confirmed plan bind the debtor, any creditor, and any equity security holder," section 1141 "is a statutory bar on relitigation akin to common law preclusion doctrines."[108] Section 1114(a), "like traditional *res judicata*, provides that 'a confirmed plan precludes parties from raising claims or issues that they could have or should have raised before confirmation.'"[109]

Here, Mr. Bouchard raised several issues before confirmation.[110] None, however, pertained to Jackson Walker's performance as counsel or the prohibition on collateral attacks of the Confirmation Order or Plan. The issue Mr. Bouchard appealed to the District Court was the exculpation clause's reach and the injunction provision's scope.[111] After Mr. Bouchard successfully appealed the Confirmation Order, the District Court's order reversed the "Confirmation Order **only to the extent** that it approved the exculpation provision releasing a broad range of third parties and entered the related injunction provision."[112] That ruling does not allow for RICO, conspiracy, fraud, and breach of duty claims such as the ones asserted by Mr. Bouchard in this collateral attack on the Plan.

---

[106] Dkt. 1319, ¶ 38, *In re Bouchard Transport. Co., Inc.*, 20-34682.

[107] *See* 11 U.S.C. § 1141.

[108] *Matter of LaHaye*, 17 F.4th 513, 519 (5th Cir. 2021).

[109] *Matter of LaHaye*, 17 F.4th at 519 (quoting 8 COLLIER ON BANKRUPTCY § 1141.02 (16th ed. 2021)).

[110] Dkts. 1095, 1120, 1225, *In re Bouchard Transport. Co., Inc.*, 20-34682.

[111] Dkt. 52, p. 5, *Morton S. Bouchard, III, v. Bouchard Transport. Co., Inc.*, 4:21-cv-02937 (S.D. Tex. Feb. 7, 2023).

[112] Dkt. 52, p. 6, *Morton S. Bouchard, III, v. Bouchard Transport. Co., Inc.*, 4:21-cv-02937 (S.D. Tex. Feb. 7, 2023).

Similarly, the Plan's Releases, to which neither Debtor BTC nor Mr. Bouchard objected, bars litigation such as this against Jackson Walker.[113] Such enforceable provisions are routinely upheld by the Fifth Circuit as binding "every entity that holds a claim or interest in the planned reorganization, regardless of whether they assert those interests before the bankruptcy court."[114]

Under the unambiguous and uncontested language of the Confirmation Order's collateral attack provision, even if Mr. Bouchard believes he has a claim based in gross negligence or fraud he must seek the Bankruptcy Court's approval to bring such claims in the Bankruptcy Court. But he did not do so. Instead, he filed this lawsuit, in violation of a valid and binding court order, adding another meritless case to this Court's heavy docket.

**C.    Mr. Bouchard and the Bandas Law Firm filed this meritless Complaint for an improper purpose.**

When considering a Rule 11 sanctions motion alleging an improper purpose, courts "look to objectively ascertainable circumstances rather than subjective intent."[115] When a complaint lacks merit and is unsupported by precedent and authority, that in and of itself intimates an improper purpose.[116] But a pleading that is not legally baseless can still be found to violate Rule 11 when filed to delay legal proceedings or increase costs. For example, in *Maxxam*, the Fifth Circuit found that while the FDIC's claims were not baseless or asserted for an improper purpose, the claims were still sanctionable because the FDIC had advanced them to increase "the costs of litigation and forcing settlement."[117]

In his Complaint, Mr. Bouchard harps about the bankruptcy court order removing him as

---

[113] Dkt. 1293, p. 46, ¶¶ X.A – X.E, *In re Bouchard Transport. Co., Inc.*, 20-34682.

[114] *Matter of LaHaye*, 17 F.4th 513, 518 (5th Cir. 2021).

[115] *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566 (5th Cir. 2008).

[116] *Annamalai v. Moon Credit Corp.*, 2017 WL 5646925, at *3 (S.D. Tex. Apr. 21, 2017).

[117] *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 587 (5th Cir. 2008).

BTC's CEO. Yet Mr. Bouchard neglects to mention that he never contested nor appealed for relief from the order as allowed. And he never tells the Court that the district court's order found the Bankruptcy Court had effectuated this removal because he had impeded bankruptcy proceedings.[118] Nor does he mention the lawsuit alleging his breach of fiduciary duties.

Neither does the Complaint detail how the Bouchard parties' claims for the $40 Million provided to BTC—one of his purported injuries for which he now seeks relief—are *still pending* before the Bankruptcy Court. Most telling is Mr. Bouchard's failure to mention the Plan's Release clause and the Confirmation Order's ban upon a collateral attack such as this lawsuit.

The Complaint's omissions of such material information serve as indicia of how the lawsuit is little more than a vehicle for Mr. Bouchard to harass Jackson Walker.

If Mr. Bouchard's assertions about Jackson Walker and BTC's Chapter 11 proceedings are in fact justiciable, they belong in Bankruptcy Court, if in any court at all. This is something Mr. Bouchard knows well as he was, and is, represented by counsel in the BTC bankruptcy proceedings. That counsel has actively litigated matters on Mr. Bouchard's behalf and Mr. Bouchard is *still* litigating on-going matters in Bankruptcy Court that involve the *same* issues asserted here. The Complaint's claims, particularly the RICO claims, lack any substance and fail to satisfy the statutory elements, allowing for the plausible inference that Mr. Bouchard filed this Complaint for an improper purpose or to increase defense costs.[119]

One can reach the same (correct) conclusion about the Bandas Law Firm's conduct. The firm knows that bad-faith litigation conduct alone cannot constitute predicate acts for a RICO claim. Yet, when on the other side of the v., they advanced this baseless theory not once, but twice.

---

[118] Dkt 52, pp. 5–6, *Morton S. Bouchard, III, v. Bouchard Transport. Co., Inc.*, 4:21-cv-02937 (S.D. Tex. Feb. 7, 2023).
[119] *See e.g.*, *Annamalai*, 2017 WL 5646925 at *3.

Moreover, to support this theory, the firm omitted material facts when discussing Mr. Bouchard's ongoing litigation before the Bankruptcy Court and how his creditor claims truly relate to this suit.

The Complaint, just as in Mr. Van Deelen's case, alleges that money paid to Jackson Walker could have, absent Judge Jones's purported bias, gone to a self-proclaimed creditor such as Mr. Bouchard. But this argument ignores the same flaw apparent in Mr. Van Deelen's Amended Complaint. Legal claims about Jackson Walker's performance in the Chapter 11 proceeding belong to the Debtors, not a self-proclaimed creditor such as Mr. Bouchard or his family trusts.[120] And the claims fail from a logical perspective. If Jackson Walker had not served as Debtors' counsel, another firm would have, and the Court would have ordered payment of that firm's fees.

The Bandas Law Firm's exploitation of litigation to needlessly increase litigation costs is not novel for that firm.[121] Such tactics are the norm. In cases across America, the firm has pursued financial gain "by routinely filing frivolous, bad-faith objections to proposed class settlements and generally engaging in behavior 'unfitting for any member of the legal profession.'"[122]

The Fifth Circuit has concluded that a sanction of an opposing party's attorney's fees is an appropriate punishment to deter repeat conduct when a defendant must defend against frivolous litigation.[123] Because this litigation is legally frivolous and filed for an improper purpose, Jackson Walker seeks sanctions against Mr. Bouchard and the Bandas Law Firm.

## V.   CONCLUSION AND PRAYER

This Court's docket is "uniquely busy" with more than 3,000 active criminal cases,[124]

---

[120] *In Re Sun Edison, Inc.*, No. 16-10992 (SMB), 2019 WL 2572250 (Bankr. S.D.N.Y. June 21, 2019).

[121] *Edelson PC v. Bandas Law Firm PC*, 2018 WL 7719209 (N. D. Ill. May 15, 2017).

[122] *Edelson PC v. Bandas Law Firm PC*, No. 1:16-cv-11057, 2018 WL 723287 at n.1 (N. D. Ill. Feb. 6, 2018) (internal citations and quotations omitted).

[123] *Skidmore Energy, Inc. v. KPMG*, 455 F. 3d 564, 570 (5th Cir. 2006).

[124] Dkt. 56, *Van Deelen v. Jones*, 4:23-cv-03729.

making judicial resources valuable. Yet, the Bandas Law Firm filed a second frivolous lawsuit involving Jackson Walker without considering the obvious problems with their legal theories that now face other sanction and dismissal motions. The Bandas Law Firm has broadcast there are more RICO claims to come, with new plaintiffs they signed up to sue Jackson Walker and the other Defendants here. The firm won't stop. The very purpose of Rule 11 is to deter repetition of the "conduct or comparable conduct by others similarly situated."[125] Given this, Mr. Bouchard's Complaint calls out for the need to sanction Mr. Bouchard and his lawyers under Rule 11.

Appropriate sanctions include: 1) an order requiring that the Bandas Law Firm must first move for this Court's permission before filing any further complaints, in any federal district court, alleging RICO or Texas state torts based on allegations of bias and improper conduct by Judge Jones and Jackson Walker (*e.g.*, the facts as alleged in Messrs. Bouchard and Van Deelen's litigation);[126] 2) an award of attorneys' fees and costs incurred by Jackson Walker in asserting this motion; and 3) an award of attorneys' fees and costs incurred by Jackson Walker in asserting its forthcoming motion to dismiss. Further, Jackson Walker requests that this Court hold an evidentiary hearing in which Jackson Walker may cross examine Mr. Bouchard or his counsel on any evidence upon which they rely in defending against the motion. Such a hearing is reasonable because "the imposition or denial of sanctions of necessity involves a fact-intensive inquiry into the circumstances surrounding the activity alleged" to violate Rule 11.[127]

Jackson Walker also asks that the Court provide any appropriate additional relief the Court deems appropriate.

---

[125] Fed. R. Civ. P. 11(c)(4).

[126] The order may also require that if Bandas Law Firm files complaints before this Court has issued an opinion for this motion, the Bandas Law Firm must seek court permission to continue litigation proceedings under the complaint.

[127] *Thomas v. Capital Sec. Services, Inc.*, 836 F.2d 866, 872 (5th Cir. 1988).

Respectfully submitted,

   _/s/ Russell Hardin, Jr._
**Russell Hardin, Jr.**
  State Bar No. 08972800
  Federal ID 19424

**RUSTY HARDIN & ASSOCIATES, LLP**
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas  77010
Telephone: (713) 652-9000
Facsimile:  (713) 652-9800
Email: rhardin@rustyhardin.com
**ATTORNEYS FOR DEFENDANT**
**JACKSON WALKER LLP**

**OF COUNSEL**:
**Leah M. Graham**
  State Bar No. 24073454
  Federal ID 2192848
**Jennifer E. Brevorka**
  State Bar No. 24082727
  Federal ID 1725400
**Emily Smith**
  State Bar No. 24083876
  Federal ID 1890677

**RUSTY HARDIN & ASSOCIATES, LLP**
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile:  (713) 652-9800
lgraham@rustyhardin.com
jbrevorka@rustyhardin.com
esmith@rustyhardin.com
**ATTORNEYS FOR DEFENDANT**
**JACKSON WALKER LLP**

25

## **CERTIFICATE OF CONFERENCE**

I hereby certify that on May 6 and 9, 2024, I attempted to confer in good faith with Plaintiff's counsel, Mikell West and Rob Clore of the Bandas Law Firm, via email, concerning the matters addressed in Defendant Jackson Walker LLP's Motion for Sanctions Under Federal Rule of Civil Procedure 11. On May 13, 2024, I received an email from Mr. West. He advised Plaintiff and the Bandas Law Firm stand by their pleadings, and are therefore opposed to the relief requested in the Motion for Sanctions.

_/s/ Jennifer E. Brevorka_
Jennifer E. Brevorka

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2024, I electronically served via electronic mail all counsel of record for with the foregoing Defendant Jackson Walker LLP's Motion for Sanctions Under Federal Rule of Civil Procedure 11. I also hereby certify that on May 13, 2024, I electronically filed the foregoing Defendant Jackson Walker LLP's Motion for Sanctions Under Federal Rule of Civil Procedure 11 with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record.

_/s/ Russell Hardin, Jr._
Russell Hardin, Jr.