IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Martin S. Bouchard, III, Ind. and as Co-Trustee for the Morton S. Bouchard, III 2017 Family Trust,<br><br>    Plaintiffs,<br><br>v.<br><br>David R. Jones, Elizabeth Carol Freeman, Jackson Walker, LLP, Kirkland & Ellis, LLP, and Kirkland & Ellis International, LLP, Portage Point Partners, LLC, and Matthew Ray,<br><br>    Defendants. | Civil Action<br>No. 4:24-cv-693 |

**DEFENDANT DAVID R. JONES'S MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(b)(6)**

To the Honorable Alia Moses, Chief United States District Judge:

Defendant David R. Jones ("Jones") moves to dismiss with prejudice the Original Complaint (the "Complaint") of Martin S. Bouchard, III, individually and as co-trustee for the Morton S. Bouchard, III 2017 Family Trust (the "Plaintiff").

**INTRODUCTION**

1.    "As early as 1872, the [Supreme] Court recognized that it was 'a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (alteration in original) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1872)). Those concerns underly the well-established judicial immunity doctrine, which "provides absolute immunity from

suits for damages." *Scott v. Jackson Cnty., Miss.*, No. 23-60405, 2024 WL 1465387, at *1 (5th Cir. Apr. 4, 2024) (citing *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 221 (5th Cir. 2009)). Judicial immunity is immunity from suit itself, not just from the assessment of damages. *See Moore v. City of Dall., Tex.*, No. 23-10566, 2024 WL 913368, at *2 (5th Cir. Mar. 4, 2024) (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991)). Pursuant to Federal Rule of Civil Procedure 12(b)(6), the application of the doctrine of judicial immunity requires the dismissal with prejudice of this civil action against Jones, whom Plaintiff has sued for issuing court orders and conducting bankruptcy proceedings pursuant to the statutory jurisdiction vested in him as a judicial officer.

## STANDARD OF REVIEW

2.      "A complaint that fails to state a facially plausible claim must be dismissed." *Moore*, 2024 WL 913368, at *2. "'Facial plausibility' means 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And although, in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, well-pled facts must be liberally construed in favor of the plaintiff, a court must disregard "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.*

3.      "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages," *Mireles*, 502 U.S. at 11, and "is a threshold question 'to be resolved as early in the proceedings as possible.'" *Hulsey v. Owens*, 63 F.3d 354, 356 (5th Cir. 1995) (quoting *Boyd v. Biggers,* 31 F.3d 279, 284 (5th Cir.1994)). Thus, judicial immunity is appropriately decided under Rule 12(b)(6), which requires dismissal of a case for failure to state a claim "if it appears that no

relief could be granted under any set of facts that could be proven consistent with the allegations."

*Ballard v. Wall*, 413 F.3d 510, 514–15 (5th Cir. 2005).[1]

## PROCEDURAL HISTORY

4.      On February 26, 2024, Plaintiff filed the Complaint against Jones and the other defendants in this case. Docket No. 1 ("Compl."). The complaint is largely duplicative of another proceeding pending before this Court, *Deelen v. Jones*, No. 23-cv-03729 (S.D. Tex. filed Oct. 4, 2023).

5.      Jones was served with the Complaint and summons on or about May 28, 2024.

6.      Other defendants have filed motions to dismiss as well as a motion for sanctions against the Plaintiff and his counsel.

## RELEVANT INCONTROVERTIBLE FACTS

7.      Bouchard Transportation Co., Inc. and fifty-five affiliates (collectively, the "Bouchard Debtors") filed chapter 11 bankruptcy cases in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") on September 28, 2020, and September 29, 2020 (together, the "Petition Date"), initiating procedural consolidation and joint administration pursuant to Bankruptcy Rule 1015(b) under the caption *In re: Bouchard Transportation Co. Inc. et al.*, No. 20-bk-34682 (Bnkr. S.D. Tex. Sept. 28, 2020) (hereinafter "Bouchard Bankruptcy"). *See id.*, ECF No. 1.[2] The bankruptcy petitions were signed by the

---

[1] Because Jones is entitled to threshold consideration and application of judicial immunity, Jones has not included in this Motion any additional Rule 12 dismissal grounds. *See, e.g.*, *Holloway v. Walker*, 765 F.2d 517, 521 (5th Cir. 1985) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)) ("Orders denying absolute immunity are automatically appealable."); *see also, e.g.*, *McCullough v. Finley*, 907 F.3d 1324, 1330 (11th Cir. 2018) ("[A] defendant may immediately appeal a denial of absolute judicial immunity."). Jones reserves all rights to assert additional grounds in the future.

[2] "In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *see also Anderson v. Wells*

Plaintiff in his capacity as chief executive officer and Plaintiff listed himself as the ultimate 100% owner and sole director of the Bouchard Debtors. *Id.*[3]

8.       On the Petition Date, the Bouchard Bankruptcy cases were randomly assigned by the Clerk's Office to Jones.

9.       On October 27, 2020, as required by § 327(a) of the Bankruptcy Code and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule 2014(a)"), the Bouchard Debtors selected and filed their application for court approval to employ Portage Point Partners, LLC ("Portage Partners") as their restructuring advisor and to appoint Matthew Ray as the Bouchard Debtors' chief restructuring officer. Bankruptcy Docket No. 165. The application and engagement letter are signed by the Plaintiff. *Id.*

10.       Also on October 27, 2020, pursuant to § 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a), the Bouchard Debtors selected and filed their application for court approval to employ Kirkland & Ellis LLP and Kirkland & Ellis International LLP (together, "Kirkland") as lead counsel in the Bouchard Bankruptcy cases. Bankruptcy Docket No. 167. The application and engagement letter are signed by the Plaintiff. *Id.*

11.       The next day, on October 28, 2020, pursuant to § 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a), the Bouchard Debtors selected and filed their application to employ

---

*Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020) (affirming the district court's grant of a motion to dismiss under Rule 12(b)(6) and taking "judicial notice of the previous judgments and opinions, matters of public record that were attached to the motion to dismiss"); *Brown v. Lippard*, 350 F. App'x 879, 882 n.2 (5th Cir. 2009) (citing *Marine Elec. Co. v. United Jersey Bank*, 959 F.2d 1194 (3d Cir. 1992)) (noting that a court may take judicial notice of a bankruptcy court's docket entries). Notably, Plaintiff expressly asks this Court to take judicial notice of many filings from the docket of the Bankruptcy litigation, *see* Compl. ¶ 40 n.38, and characterizes others at length in his pleading, *see, e.g.,* Compl. ¶¶ 46, 54, 89, 93.

[3] Unless otherwise noted, Docket entries in Case No. 20-34682 will be referred to as the "Bankruptcy Docket No. ___."

Jackson Walker LLP ("Jackson Walker") as co-counsel and conflicts counsel in the Bouchard Bankruptcy cases. Bankruptcy Docket No. 173. The engagement letter is signed by the Plaintiff. *Id*.

12.     On November 23, 2020, Jones entered orders approving each of the Bouchard Debtors' unopposed requests to employ counsel and other estate professionals (the "Employment Orders"). *Id.*, ECF Nos. 242, 243, 245. Jones also approved the Bouchard Debtors' motion for an interim compensation process for professionals during the Bouchard Bankruptcy (the "Interim Compensation Order"). *Id.*, ECF No. 241.

13.     From the beginning, the Bankruptcy Cases did not go well for the Bouchard Debtors. Immediately prior to the Petition Date, the Bouchard Debtors suffered the loss of their vessel certification. Unable to obtain a document of compliance from the Coast Guard due to ongoing safety regulation disputes and a tenuous working relationship, the Bouchard Debtors faced significant liquidity issues, requested numerous emergency hearings, and initiated litigation against the Coast Guard and others. *E.g.*, *Bouchard Transp. Co. v. Am. Bureau of Shipping*, Ch. 11 Case No. 20-bk-34682, Adv. No. 20-ap-03501 (S.D. Tex. Dec. 17, 2020); Bankruptcy Docket Nos. 102, 178, 263. Without appropriate certifications, the Bouchard Debtors could not meet insurance requirements, nor could the fleet generate revenue to sustain ongoing operations. As a result, creditors filed multiple motions to terminate the automatic stay imposed by § 362 of the Bankruptcy Code, seeking to foreclose various liens and take other actions against the Bouchard Debtors' fleet under applicable law. Bankruptcy Docket Nos. 244, 265, 280, 281, 400, 536, 748, 753. At the core of these issues was the Plaintiff's conduct.

14.     During multiple hearings on February 24 and February 26, 2021 (*see id.*, ECF Nos. 557 and 591), Jones learned that vendors and employees of the Bouchard Debtors were not being

paid, financial statements were not being produced or shared, and defaults existed under the debtor-in-possession financing agreement. As a result, pursuant to section 105(a) of the Bankruptcy Code, Jones removed Plaintiff as a director and chief executive officer of the Bouchard Debtors (the "Governance Order"). *Id.*, ECF No. 569.[4] Further, at the Bouchard Debtors' request as an alternative to appointing a trustee, Jones vested Mr. Ray, the chief restructuring officer, with complete decision-making authority over the Bouchard Debtors, subject to oversight by two independent directors. *Id*. The removal of the Plaintiff under the Governance Order was expressly made without prejudice to his right to seek subsequent relief. *Id*. The Plaintiff did not appeal the Governance Order or seek any further relief.

15.     On May 25, 2021, the Bouchard Debtors filed a motion to approve bidding and auction procedures for the sale of their assets pursuant to § 363(b) and (f) of the Bankruptcy Code. Bankruptcy Docket No. 907. In an order entered June 8, 2021, Jones approved the bidding and auction procedures proposed by the Bouchard Debtors. *Id.*, ECF No. 956. Jones subsequently entered multiple orders on the basis of sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code approving the sale of specific vessels. *Id.*, ECF Nos. 1193, 1194.

16.     During the Bankruptcy Cases, Jones approved the unopposed interim compensation requests of several estate professionals as well as professionals representing the Official Committee of Unsecured Creditors (the "Committee") pursuant to the Interim Compensation Order and §§ 329 and 330 of the Bankruptcy Code (the "Interim Fee Orders"):*

Berkeley Research Group (Committee financial advisor)     ECF Nos. 979, 1290

---

[4] Section 105(a) of the Bankruptcy Code provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. *See also In re Sadkin*, 36 F.3d 473, 478 (5th Cir. 1994) (section 105(a) permits courts to "fashion such orders as are necessary to further the substantive provisions of the Bankruptcy Code.").

| | |
|---|---|
| Clyde & Co. US LLP (Committee maritime counsel) | ECF Nos. 1110, 1334 |
| Jackson Walker | ECF Nos. 810, 966 |
| Jefferies LLC (Debtors' investment banker) | ECF Nos. 853, 1071, 1360 |
| Kirkland | ECF Nos. 658, 967, 1355 |
| Portage Partners | ECF Nos. 668, 884, 1158 |
| Ropes & Gray LLP (Committee counsel) | ECF Nos. 924, 1289 |

\* All ECF references in the foregoing table are in the Bouchard Bankruptcy.

17.     On June 18, 2021, the Bouchard Debtors filed a proposed plan of reorganization and a disclosure statement *Id.*, ECF Nos. 988, 989. Pursuant to § 1125 of the Bankruptcy Code, Jones conditionally approved the disclosure statement on June 23, 2021, and set a hearing to consider final approval of the disclosure statement and confirmation of the proposed plan for August 5, 2021. Bankruptcy Docket Nos. 1003, 1005. The Bouchard Debtors filed amended proposed plans on July 9, 2021, and August 23, 2021, to address various objections and concerns raised by creditors (the "Plan"). *Id.*, ECF Nos. 1049 and 1293. The confirmation hearing was continued to August 26, 2021.

18.     The Plaintiff and his family affiliates filed a limited objection to the Plan on August 12, 2021. *Id.*, ECF No. 1225. In the objection, the Plaintiff reserved rights regarding the Plan's classification of his claims against the Bouchard Debtors and the scope of the Plan's exculpation provision. *Id.*, ECF No. 1225.

19.     After considering the evidence offered by the parties during the August 26, 2021 confirmation hearing, Jones confirmed the Bouchard Debtors' Plan under §§ 1122–1124, 1126, and 1129 of the Bankruptcy Code (the "Confirmation Order"). Bankruptcy Docket No. 1319. The Plaintiff and his wife timely appealed the limited issue of the scope of the Plan's exculpation

provision. *Id.*, ECF No. 1347. After the parties submitted their briefs, however, the District Court stayed and administratively closed the appeal pending the outcome of the then-pending Fifth Circuit appeal in *NexPoint Advisors, L.P. v. Highland Capital Management L.P. (In re Highland Capital Management, L.P.*, No. 21-10449, 48 F. 4th 419 (5th Cir. 2022), which presented a circuit split concerning exculpation provisions. Bankruptcy Docket No. 1413. After the Fifth Circuit issued its opinion in *NexPoint Advisors*, the District Court remanded the case to the Bankruptcy Court "to allow it to modify the plan, which was approved before *Highland* issued, in accordance with the Fifth Circuit's opinion in *Highland* and this order." *Bouchard v. Bouchard Transp. Co.* (*In re Bouchard Transp. Co.*), No. 21-cv-2937, 2023 WL 1797907, at *3 (S.D. Tex. Feb. 7, 2023)

20.     Upon remand, Bankruptcy Judge Lopez, who replaced Jones as the judge in the Bouchard Bankruptcy cases on October 13, 2023, issued an order conforming the confirmed Plan's exculpation provision. Bankruptcy Docket No. 417.

21.     The Plan provides for (i) the sale of the Bouchard Debtors' assets; (ii) the litigation of any claims held by the Bouchard Debtors; and (iii) the general winddown of the Bouchard Bankruptcy. Bankruptcy Docket No. 1293. All decision-making authority for those actions is vested in the Plan Administrator. *Id*.

22.     To minimize the incurrence of ongoing quarterly fees imposed by the U.S. Trustee, the Bouchard Debtors filed an emergency motion to close all but one of the pending Bankruptcy Cases on September 24, 2021. *Id.*, ECF No. 1379. Jones entered a final decree (the "Final Decree") on September 28, 2021, closing 55 of the 56 Bankruptcy Cases. *Id.*, ECF No. 1389. Case No. 20-34758, *In re Tug Robert J. Bouchard Corporation*, remains open.

23.     Jones subsequently approved uncontested final compensation requests by the following estate and Committee professionals pursuant to §§ 329 and 330 of the Bankruptcy Code, with the orders being entered in Case No. 20-34758 (the "Final Fee Orders"):

| | |
|---|---|
| Berkeley Research Group (Committee financial advisor) | ECF No. 66 |
| Clyde & Co. US LLP (Committee maritime counsel) | ECF No. 65 |
| Jackson Walker | ECF No. 63 |
| Jefferies LLC (Debtors' investment banker) | ECF No. 62 |
| Kirkland | ECF No. 39 |
| Portage Partners | ECF No. 23 |
| Ropes & Gray LLP (Committee counsel) | ECF No. 64 |

24.     On September 27, 2022, the Plan Administrator filed suit on behalf of the Bouchard Debtors against Plaintiff, his wife, Linda Bouchard, and the Morton S. Bouchard III Family Trust. *Tug Robert J. Bouchard, Corp. v. Bouchard*, Ch. 11 Case No. 20-bk-34682, Adv. No. 22-ap-03276 (Bankr. S.D. Tex. Sept. 27, 2022). The complaint asserts claims for (i) breach of fiduciary duty (against the Plaintiff only); and (ii) equitable subordination of claims (against all defendants). *Id.*, ECF No. 1. The litigation remains pending before Bankruptcy Judge Lopez.

<u>**ARGUMENT**</u>

25.     Plaintiff's claims against Jones are barred by clear, longstanding, and binding precedent on judicial immunity. Judges have absolute immunity from civil suits seeking damages. *Mireles v. Waco*, 592 U.S. 9, 11 (1991). This immunity "applies even when the judge is accused of acting maliciously and corruptly," and the immunity extends to allegations of intentional misconduct—"not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with

9

independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967). In other words, the judicial immunity defense recognizes that, in order to safeguard the judicial system generally, even well-pled instances of judicial misconduct cannot survive a motion to dismiss if the defense applies. *See Stump v. Sparkman*, 435 U.S. 349, 363 (1978); *Adams v. McIhany*, 764 F.2d 294, 297–98 (5th Cir. 1985).

26.     "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles*, 592 U.S. at 11. The defense "is a threshold question 'to be resolved as early in the proceedings as possible.'" *Hulsey v. Owens*, 63 F.3d 354, 356 (5th Cir. 1995) (quoting *Boyd v. Biggers,* 31 F.3d 279, 284 (5th Cir.1994)). As Judge Learned Hand explained in *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949), *cert. denied,* 339 U.S. 949 (1950), the justification for this is that "it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." Thus, judicial immunity is appropriately decided under Rule 12(b)(6).

27.     That does not mean, however, that there are no consequences for abuses of authority. All federal judges are subject to complaints for judicial misconduct and potential impeachment, and there are opportunities for litigants to file post-judgment motions, writs of mandamus, or ordinary appeals from orders they contend have been tainted by misconduct. *See, e.g.*, *Adams*, 764 F.2d at 298 (damages against judges unnecessary because of "alternative remedies, such as appeal and impeachment"); *Holloway v. Walker*, 765 F.2d 517, 522 (5th Cir. 1985) (same); *Matter of Roman Catholic Church of Archdiocese of New Orleans*, 101 F.4th 400, 406–08 (5th Cir. 2024) (bankruptcy judge's alleged recusal violation challengeable by Fed. R. Civ.

P. 60(b)(6) motion); *Forrester v. White*, 484 U.S. 219, 227–28 (1988) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 354 (1872)) ("Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability . . . . '[T]o those remedies they must, in such cases, resort.'").

28.     There are only two exceptions to judicial immunity: "(1) lawsuits challenging actions taken outside the judge's judicial capacity; and (2) lawsuits challenging actions taken in the 'complete absence of all jurisdiction.'" *Kemp ex rel. Kemp v. Perkins*, 324 F. App'x 409, 411 (5th Cir. 2009) (citing *Davis v. Tarrant Cnty. Tex.*, 565 F.3d 214, 221 (5th Cir. 2009)). As explained below, neither of these exceptions applies.

**A.     All of Bankruptcy Judge Jones's Alleged Misconduct Constituted Judicial Acts.**

29.     To decide whether Jones enjoys absolute judicial immunity for any of the acts alleged in the Complaint, the Court must look at the nature and function of his acts—not the propriety of the acts themselves—and consider only whether the nature and function of the acts are judicial. *See Mireles*, 502 U.S. at 12–13. In other words, the Court here must ask "whether the challenged act is a function normally performed by a judge." *Kemp*, 324 F. App'x at 411. "Here, as in other contexts, immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester*, 484 U.S. at 227.

30.     The Fifth Circuit has adopted a four-factor test to determine whether a judge's actions were judicial in nature:

(1)     Whether the precise act complained of is a normal judicial function;

(2)     Whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers;

(3)     Whether the controversy centered around a case pending before the court; and

(4)    Whether the acts arose directly out of a visit to the judge in his official capacity.

*Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 222 (5th Cir. 2009); *see also McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972) (formalizing factors). Those factors—sometimes call the *McAlester* factors—must be "broadly construed in favor of immunity," *Davis*, 565 F.3d at 222. "[A]nd it should be born in mind that while the *McAlester* factors will often plainly indicate that immunity is available, there are situations in which immunity must be afforded even though one or more of the *McAlester* factors fails to obtain." *Adams v. McIlany*, 764 F.2d 294, 297 (5th Cir. 1985). "Nor are the factors to be given equal weight in all cases; rather, they should be construed in each case generously to the holder of the immunity and in the light of the policies underlying judicial immunity." *Id.*

31.    Here, few of the allegations in the Plaintiff's Complaint address the events that transpired in the Bouchard Bankruptcy that allegedly led to the Plaintiff's injury. Plaintiff appears to allege that he suffered loss as a result of the Employment Orders, Interim Fee Orders, Final Fee Orders, Governance Order, Confirmation Order, and the Final Decree that Jones issued in the Bouchard Bankruptcy without disclosing his relationship with a partner at the Jackson Walker law firm. *See* Compl., ¶¶ 47–48, 50, 54, 68, 71 & 96.

32.    Application of the *McAlester* factors to the relevant allegations in the Complaint unquestionably shows that the Orders entered by Jones were "judicial in nature." Of the four factors, three are uncontested or inapplicable. There is no dispute that the entry of the orders by Jones occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers (Factor 2) and centered around the Bouchard Bankruptcy pending before the court (Factor 3). And Factor 4, whether the acts arose directly out of a visit to the judge in his official capacity, is inapposite here because all acts taken by Jones occurred in the courtroom in open Court or were directly input

into the official case docket. The analysis thus centers on Factor 1, whether the precise acts complained of—the entry of those Orders—are normal judicial functions.

33.    In determining whether a judge's act is a "normal judicial function," the proper question is whether the judge's act(s) were "the *type* of act" or "function normally performed by a judge." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978) (emphasis added). Whether the "particular act in question" is appropriate or commonly performed by judges is irrelevant. *Mireles*, 502 U.S. at 12–13. For example, in *Stump v. Sparkman*, the Supreme Court found that, broadly construed, ordering the sterilization of a minor child was a judicial act—even though the order in question was a grave abuse of authority and a violation of due process—because "[s]tate judges with general jurisdiction not infrequently are called upon in their official capacity to approve petitions relating to the affairs of minors." *Stump*, 435 U.S. at 358–63. The Supreme Court found that such a broad conception of "normal judicial functions" was necessary because "[i]f judicial immunity [is to] mean[] anything, it means that a judge 'will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Mireles*, 502 U.S. at 12–13 (last alteration original) (quoting *Stump*, 435 U.S. at 362).

34.    It is undeniable that a bankruptcy judge's entry of orders confirming plans, selling estate assets, approving the employment of professionals, and approving professional fees are part of the core judicial functions performed by bankruptcy judges. *See* 28 U.S.C. § 157(b)(1)–(2) (identifying "core proceedings" for bankruptcy judges). Plaintiff's allegation that Jones's orders in the Bouchard Bankruptcy were entered maliciously or as part of a conspiracy does not change the fact that they were judicial acts. *See, e.g.*, *Tomasella on Behalf of Estate of Tomasella v. Kaufman Cnty. Child Support*, No. 22-10760, 2022 WL 17752124, at *3 (5th Cir. Dec. 19, 2022) (affirming the district court's grant of a motion to dismiss on judicial immunity grounds, holding

that the judge "did not lose his judicial immunity for issuing an order that was ultimately reversed in part on appeal," and labeling an argument that the judge lost immunity by entering an "illegal order" as "without merit"). Nor does Jones's failure to disclose an alleged relationship with a Jackson Walker attorney render his actions in the Bouchard Bankruptcy non-judicial—because a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive." *Forrester v. White*, 484 U.S. 219, 227 (1988). "It is a well established rule that where a judge's absolute immunity would protect him from liability for the performance of particular acts, mere allegations that he performed those acts pursuant to a bribe or conspiracy will not be sufficient to avoid the immunity." *Holloway v. Walker*, 765 F.2d 517, 522 (5th Cir. 1985); *see also, e.g.*, *Sparks v. Duval Cnty. Ranch Co.*, 588 F.2d 124, 125–26 & n.2 (5th Cir.) (affirming judicial immunity for similar bribery allegations and collecting other cases where the Fifth Circuit upheld judicial immunity "even when corrupt or otherwise intentionally wrongful judicial acts [were] alleged"), *aff'd in relevant part on reh'g*, 604 F.2d 976, 978 (5th Cir. 1979), *aff'd sub nom. Dennis v. Sparks*, 449 U.S. 24, 27 (1980); *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991) ("The fact that it is alleged that the judge acted pursuant to a conspiracy and committed grave procedural errors is not sufficient to avoid absolute judicial immunity."). Accordingly, the issuance of orders by Jones are judicial acts entitling him to judicial immunity.

35.    Likewise, judges' decisions regarding recusal and disqualification are also judicial acts subject to the immunity defense. Although Plaintiff's complaint casts these decisions as a mere "administrative" function for which judges can be sued, Plaintiff is wrong. As part of their official judicial function in each case, judges must evaluate whether presiding over the matter presents a conflict of interest or creates a conflict or "appearance of impropriety." *See United States v. Jordan*, 49 F.3d 152, 155, 158 (5th Cir. 1995) (noting this is "fundamental to the

judiciary," but ultimately holding that recusal violations are subject to "harmless error" review).

In bankruptcy cases, recusal decisions are made pursuant to Rule 5004 of the Federal Rules of

Bankruptcy procedure, which by its terms applies only to "bankruptcy judge[s]." Rule 5004 in turn

references 28 U.S.C. § 455, which likewise applies only to recusal decisions by "[a]ny justice,

judge, or magistrate judge of the United States." This decision cannot be delegated to

administrative staff. *See* 28 U.S.C. § 455 (providing judge is to "disqualify himself" if the statue

is triggered); *In re City of Houston*, 745 F.2d 925, 927 (5th Cir. 1984) (recusal decisions are

committed to the discretion of the judge). The fact that attorneys and other court officers may have

similar obligations to disclose conflicts of interest does not render Jones's decisions under Rule

5004 and § 455 non-judicial acts.

36.     Moreover, Fifth Circuit and other courts have repeatedly held that a judge's alleged

violation of the disqualification statute cannot be the basis of a lawsuit for civil damages. Here,

the premise of Plaintiff's complaint is that Jones's decision not to disqualify himself (or,

alternatively, not to disclose his relationship with Elizabeth Freedman) were either non-judicial

acts (under the first exception to judicial immunity), and/or that Jones's alleged violation of § 455

divested the bankruptcy court of all jurisdiction over the Bouchard Bankruptcy (under the second

exception to judicial immunity). *See* Complaint ¶¶ 47–48, 50–51, 54, 68, 71 & 96. But Fifth Circuit

precedent forecloses both of these positions. *See Lewis v. City of Waxahachie*, 465 F. App'x 383,

384–86 (5th Cir. 2012) (dismissing claims as "without arguable merit" and "frivolous" because

"[a]ll the acts by [the judges] of which [the plaintiff] complained . . . [including] refusing to

voluntarily recuse themselves [under § 455] . . . were taken in the course of the criminal

proceedings against Lewis; thus, the [district court] judges had at least some subject-matter

jurisdiction."); *Price v. Porter*, No. 09-cv-00176, 2009 WL 1210509, at *4 n.5 (W.D. La. May 1,

2009) ("Courts unanimously have found that a failure to recuse oneself is a judicial act for purposes of absolute judicial immunity."), *aff'd*, 351 F. App'x 925, 927 (5th Cir. 2009); *Kemp ex rel. Kemp v. Perkins*, 324 F. App'x 409, 413 (5th Cir. 2009) (disqualification decisions "are not the types of administrative or ministerial conduct for which judicial immunity is unavailable"); *Hinkle v. Johnston*, 263 F.3d 163 (5th Cir. 2001) (table decision) (dismissing as "without arguable merit and [a]s frivolous" damages claim based on argument "that the judges were biased and should have recused themselves," as such "arguments amount to no more than arguing that the judges' actions were improper").[5]

37.     Again, Plaintiff's allegations about corruption, conspiracy, and self-interest do not change the analysis. Judges are entitled immunity even when their violation of a recusal obligation was allegedly intentional or malicious. *See Aubrey v. D Mag. Partners, L.P.*, No. 19-CV-00056, 2019 WL 2549458, at *4 (N.D. Tex. June 20, 2019) (citing *Kemp*) ("The Fifth Circuit has held that judicial immunity is available for a judge's recusal, and thus allegations of malicious or corrupt intentions behind this judicial act cannot overcome immunity."); *Bonner v. Mitchell*, No. 23-cv-00872, 2023 WL 6307972, at *4 & n.7 (W.D. La. Sept. 7, 2023) (citing *Lewis*, *Price*, *Kemp*, *Hinkle*, and *Amhrein*) ("[D]eciding whether to recuse in the presence of a conflict of interest [is an] act[] normally performed by a judge."), *report and recommendation adopted*, 2023 WL 6317615 (W.D. La. Sept. 27, 2023).[6]

---

[5] *See also Amrhein v. United States*, No. 16-cv-00223, 2017 WL 9251674, at *9 (E.D. Tex. June 23, 2017) (dismissing damages claims against state judges based on failure to recuse), *report and recommendation adopted*, 2017 WL 3886761 (E.D. Tex. Sept. 6, 2017), *aff'd*, 740 F. App'x 65 (5th Cir. 2018); *Blakely v. City of Laurel*, No. 14-cv-00082, 2015 WL 13091648, at *5 (S.D. Miss. Sept. 17, 2015) (citing *Lewis*) (upholding judicial immunity for municipal court judge), *aff'd*, 644 F. App'x 319 (5th Cir. 2016).

[6] Federal courts nationwide are in agreement. *See, e.g.*, *Acres Bonusing, Inc v. Marston*, 17 F.4th 901, 915–16 (9th Cir. 2021) (judge's "initial decision not to recuse, his rulings on procedural

38.     Finally, Plaintiff cannot abrogate judicial immunity by pointing to any (supposedly) non-judicial act allegedly committed by Jones and then claiming that such acts were in some way tied to Plaintiff's alleged harm. *See* Compl. ¶¶ 51 (alleging Jones's "participation in the enterprise consisted of other non-judicial acts, including maintaining the intimate relationship with Freeman"). Instead, so long as any judicial act is in the chain of causation of Plaintiff's supposed harm, judicial immunity applies.

39.     *Holloway* is instructive on this point. Viewed alone, accepting a bribe as alleged in *Holloway*—behavior more egregious than the conflict of interest alleged here—would not be a judicial act. However, the court found that because "none of the harm [that the judge] is alleged to have caused would have come about" "[b]ut for those obviously 'judicial acts'" of "issu[ing] injunctions and plac[ing] the parties before him into receivership . . . it is irrelevant that [the judge] is alleged to have performed those acts pursuant to a bribe or a conspiracy." *Holloway v. Walker*, 765 F.2d 517, 524 (5th Cir. 1985); *see also, e.g.*, *Malina v. Gonzales*, 994 F.2d 1121, 1124–25 (5th Cir. 1993) (finding that while judge committed non-judicial acts when he pulled over and arrested defendant for honking at him while driving, plaintiff could not assert a claim for damages for the resulting contempt citation and jail sentence by the judge).

40.     Even to the extent that Jones allegedly participated in non-judicial acts under the *McAlester* factors, the harm allegedly occasioned by such acts—the alleged decrease of Plaintiff's

---

motions, . . . and his eventual decision to recuse" all subject to judicial immunity); *Teitel v. Capell Howard, P.C.*, No. 17-cv-00017, 2018 WL 525296, at *4 (M.D. Ala. Jan. 23, 2018) (citing *Henderson v. Shineski*, 562 U.S. 428, 435–36 (2011)) (judge immune from claims stemming from alleged violation of § 455); *Broughton v. United States Bankr. Ct., E. Dist. of N. Carolina*, 17-cv-00113, 2017 WL 2955762, at *1 (E.D.N.C. July 11, 2017) (judge's acts after disqualifying himself under § 455 still subject to judicial immunity because "[t]hat statute, however, is not jurisdictional in nature"); *Makere v. Early*, No. 21-cv-00096, 2022 WL 20509771, at *4 (N.D. Fla. June 6, 2022) (no private cause of action for recusal decisions).

17

own recovery or distribution from the Bouchard Debtors' estates, harm to his reputation, and mental anguish *see, e.g*., Compl. ¶ 137—could not have occurred without the orders and decisions that Jones made in his judicial function. Therefore, judicial immunity applies.

**B.     Bankruptcy Judge Jones's Acts Were Not Done in the Clear Absence of All Jurisdiction.**

41.     For judicial immunity purposes, "the term 'jurisdiction' is to be broadly construed" such that "[w]here a judge does not clearly lack all subject-matter jurisdiction, he does not clearly lack *all* jurisdiction." *Holloway*, 765 F.2d at 523. In determining whether an act was taken in clear absence of all jurisdiction, the focus is not on whether the judge's specific act was proper or improper, but on whether the judge had the jurisdiction necessary to perform acts of that kind. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority, but rather he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"); *see also id.* at 357 n.7 (1978) (explaining that "a probate judge, with jurisdiction over only wills and estates[,] . . . try[ing] a criminal case" would fail this prong, but "a judge of a criminal court . . . convict[ing] a defendant of a nonexistent crime" would not). "Where a court has some subject-matter jurisdiction, there is sufficient jurisdiction for immunity purposes." *Adams v. McIlhany*, 764 F.2d 294, 298 (5th Cir. 1985) (citing *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 352 (1871)).

42.     Jones had subject-matter jurisdiction over the Bouchard Bankruptcy under 28 U.S.C. §§ 151, 157, and 1334. Congress assigned to federal district courts original and exclusive jurisdiction of all cases under the Bankruptcy Code. *See* 28 U.S.C. § 1334(a). That category "refers merely to the bankruptcy petition itself, over which district courts (and their bankruptcy units) have original and exclusive jurisdiction." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 92 (5th Cir. 1987). Section 1334 further grants "original but not exclusive jurisdiction of all civil proceedings

arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). In

enacting § 1334(b), "Congress was concerned with the inefficiencies of piecemeal adjudication of

matters affecting the administration of bankruptcies and intended to give federal courts the power

to adjudicate all matters having an effect on the bankruptcy." *In re Wood*, 825 F.2d at 92. Thus, §

1334 "identif[ies] collectively a broad range of matters subject to the bankruptcy jurisdiction of

federal courts." *Id*.

43.     Section 151 of title 28 of the United States Code provides:

> In each judicial district, the bankruptcy judges in regular active
> service shall constitute a unit of the district court to be known as the
> bankruptcy court for that district. Each bankruptcy judge, as a
> judicial officer of the district court, may exercise the authority
> conferred under this chapter with respect to any action, suit, or
> proceeding and may preside alone and hold a regular or special
> session of the court, except as otherwise provided by law or by rule
> or order of the district court.

28 U.S.C. § 151. Section 157 provides that each district court may provide a mechanism for all

bankruptcy cases and proceedings affecting the administration of bankruptcy cases (as examples,

lawsuits related to the bankruptcy case but filed in district court or removed from state court) to be

automatically referred to the bankruptcy judges for the district. 28 U.S.C. § 157(a). Every district

in the country has such a general order referring all bankruptcy and bankruptcy-related cases to

the bankruptcy court. The United States District Court for the Southern District of Texas is no

exception. *See* General Order 2012-6 (S.D. Tex.).

44.     Section 157(b) allows bankruptcy judges to issue final orders in all cases filed under

title 11 and all "core proceedings" arising under title 11 or arising in a case under title 11 that has

been referred to the bankruptcy court. *See* 28 U.S.C. § 157(b)(1). Congress provided a non-

exclusive list of "core proceedings" which includes, as examples: matters concerning the

administration of the bankruptcy estate; allowance or disallowance of claims filed against the

estate; orders with respect to the debtor obtaining credit or selling, leasing, or using property; orders to turn over property of the estate; motions to terminate or modify the automatic stay imposed by § 362(a) of the Bankruptcy Code; determinations of the validity, extent, or priority of liens; confirmations of plans; and other proceedings affecting the liquidation of assets or the adjustment of the debtor-creditor or debtor-equity security holder relationship. *See* 28 U.S.C. § 157(b)(2).

45.     Thus, as the Supreme Court has explained:

> The jurisdictional grant in § 1334(b) was a distinct departure from the jurisdiction conferred under previous Acts, which had been limited to either possession of property by the debtor or consent as a basis for jurisdiction. We agree with the views expressed by the Court of Appeals for the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (1984), that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate," and that the "related to" language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate.

*Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (citations omitted).

46.     No question exists that, in accordance with Congress's bankruptcy jurisdictional regime, Jones had jurisdiction to decide disputes and issue orders in the various proceedings and contested matters in the Bouchard Bankruptcy. Plaintiff's intimations in the Complaint that Jones was disqualified or should have disqualified himself from presiding over the Bankruptcy Cases do not impact the jurisdictional analysis for purposes of judicial immunity. Even if Jones acted in excess of his jurisdiction, he nevertheless had subject-matter jurisdiction to act in the first place and thus is judicially immune from Plaintiff's claims. *See Holloway v. Walker*, 765 F.2d 517, 523–25 (5th Cir. 1985). Indeed, "[t]here is a meaningful distinction between judicial acts which occur in 'excess of jurisdiction'—which receive judicial immunity—and those which take place wholly

lacking jurisdiction—which do not." *Kemp ex rel Kemp v. Perkins*, 324 F. App'x 409, 412–13 (5th Cir. 2009) (citing *Stump*, 435 U.S. at 356–57).

47.     The case law confirms that judges do not lack jurisdiction to act in a case even when disqualification would be mandatory upon a proper application of § 455. *See, e.g.*, *Teitel v. Capell Howard, P.C.*, No. 17-cv-00017, 2018 WL 525296, at *4 (M.D. Ala. Jan. 23, 2018) (citing *Henderson v. Shineski*, 562 U.S. 428, 435–36 (2011) ("[Section] 455 makes no mention that its application deprives the court of subject matter jurisdiction[,] . . . . [and t]he Supreme Court has made clear that a statute does not limit the jurisdictional authority of the district courts unless Congress clearly indicates its intention to do so."); *Roberts v. Wal-Mart Store Stores*, No. 15-CV-00119, 2022 WL 141677, at *2 (W.D. La. Jan. 14, 2022) (§ 455 is not a jurisdictional bar to the entry of orders or judgments, and does not make a judgment "void" for purposes of post-judgment motions), *aff'd sub nom. Roberts v. Wal-Mart Louisiana, L.L.C.*, 54 F.4th 852, 854 (5th Cir. 2022); *see also Stump*, 435 U.S. at 359 ("grave procedural errors" categorically insufficient to abrogate immunity); *Lewis v. City of Waxahachie*, 465 F. App'x 383, 384–86 (5th Cir. 2012) (alleged recusal violations would not deprive court of subject-matter jurisdiction for judicial immunity purposes). Accordingly, none of the judicial actions taken by Jones were done with the complete absence of all jurisdiction, and therefore the second exception to judicial immunity does not apply.

## PRAYER FOR RELIEF

48.     For the foregoing reasons, Jones is entitled to judicial immunity. Accordingly, the Plaintiff's civil action against Jones fails to state a claim for relief and must be dismissed with prejudice. Jones respectfully requests that this Court dismiss the claims asserted in the Complaint against him with prejudice, award fees and costs to Jones, and grant such other relief as to which he may be entitled.

Dated: July 11, 2024.

By: */s/ David Boies*

David Boies (pro hac vice)
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
dboies@bsfllp.com
Telephone: (914) 749-8200

Tyler Ulrich (pro hac vice*)*
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, FL 33131
tulrich@bsfllp.com
Telephone: (305) 539-8400

***Counsel for Defendant David R. Jones***

## CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify, that, on July 11, 2024, a true and correct copy of this document was served to all counsel of record by CM/ECF unless otherwise noted:

Mikell Alan West
Robert W. Clore
BANDAS LAW FIRM, PC
802 N. Carancahua Street, Suite 1400
Corpus Christi, Texas 78401
Telephone: (361) 698-5200
mwest@bandaslawfirm.com
rclore@bandaslawfirm.com

Michael Bagley
THE BAGLEY LAW FIRM
310 Margaret Lane
Del Rio, Texas 78840
Telephone: (830) 422-2970
 thebagleylawfirm@gmail.com

***Counsel for Plaintiff Morton S. Bouchard***

Tom Kirkendall
THE LAW OFFICE OF TOM KIRKENDALL
2 Violetta Ct.
The Woodlands, TX 77381
Telephone: (713) 703-3536
bigtkirk@gmail.com

***Counsel for Elizabeth C. Freeman***

Russell Hardin, Jr.
Jennifer Elizabeth Brevorka
Leah Graham
Emily Smith
**RUSTY HARDIN & ASSOCIATES, LLP**
1401 McKinney Street, Ste. 2250
Houston, TX 77010
Telephone: (713) 652-9000
rhardin@rustyhardin.com
jbrevorka@rustyhardin.com
lgrahm@rustyhardin.com
esmith@rustyhardin.com

***Counsel for Jackson Walker LLP***

John Hueston
HUESTON HENNIGAN LLP
620 Newport Center Drive
Suite 1300
Newport Beach, CA 92660
Telephone: (949) 229-8640
jhueston@hueston.com

Karen Ding
Michael Todisco
HUESTON HENNIGAN LLP
523 W 6th St
Ste Unit 400
Los Angeles, CA 90014
213-788-4597
Email: kding@hueston.com
Email: mtodisco@hueston.com

Warren Crandall
HUESTON HENNIGAN LLP
Hueston Hennigan LLP
1 Little W 12th Street
New York, NY 10014
Telephone: (646) 930-4046
wcrandall@hueston.com

***Counsel for Kirkland & Ellis LLP and Kirkland & Ellis International LLP***

Michael P Lynn
LYNN PINKER HURST &
SCHWEGMANN LLP
2100 Ross Avenue, Suite Ste 2700
Dallas, TX 75201
Telephone: (214) 981-3801
mlynn@lynnllp.com
cakin@lynnllp.com

Duane Loft
Anastasia Cembrovska
John McAdams

Shireen Barday
Pallas Partners (US) LLP
75 Rockefeller Plaza
New York, NY 10019
Telephone: (212) 970-2300
Shireen.Barday@pallasllp.com
Anastasia.Cembrovska@pallasllp.com
John.McAdams@pallasllp.com

***Counsel for Portage Point Partners, LLC
and Matthew Ray***

By: */s/ David Boies*
    David Boies

## **CERTIFICATE OF CONFERENCE**

Because this motion is dispositive, no conference is required under Local Rule CV-7.


By: */s/ David Boies*
      David Boies