IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

_____
                                    )
MORTON S. BOUCHARD, III,            )
INDIVIDUALLY AND AS                 )
CO-TRUSTEE FOR THE MORTON S.        )
BOUCHARD III 2017 FAMILY            )
TRUST,                              )
          Plaintiffs,               )
                                    ) CIVIL ACTION NO.
VS.                                 ) 4:24-CV-693
                                    )
DAVID R. JONES, ELIZABETH           )
CAROL FREEMAN, JACKSON              )
WALKER, LLP, KIRKLAND &             )
ELLIS, LLP, KIRKLAND & ELLIS        )
INTERNATIONAL, LLP, PORTAGE         )
POINT PARTNERS, LLC, AND            )
MATTHEW RAY,                        ) 1:40 P.M.
          Defendants.               )
_____)


FINAL HEARING
BEFORE THE HONORABLE ALIA MOSES
CHIEF UNITED STATES DISTRICT JUDGE
MAY 22, 2025

APPEARANCES:

**FOR PLAINTIFFS:**
MR. MIKELL ALAN WEST
MR. ROBERT CLORE
Bandas Law Firm, PC
802 North Carancahua Street
Suite 1400
Corpus Christi, Texas  78401
(361)698-5200

**FOR DEFENDANT DAVID R. JONES:**
MR. TYLER EVAN ULRICH
Boies Schiller Flexner LLP
100 Southeast Second Street
Suite 2800
Miami, Florida  33131
(305)357-8422

APPEARANCES CONTINUED:

**FOR DEFENDANT ELIZABETH CAROL FREEMAN:**
MR. THOMAS M. KIRKENDALL
Law Office of Tom Kirkendall
2 Violetta Court
The Woodlands, Texas  77381
(713)703-3536

**FOR DEFENDANT JACKSON WALKER, LLP:**
MR. RUSSELL HARDIN, JR.
MS. JENNIFER ELIZABETH BREVORKA
MS. EMILY MCLEMORE SMITH
Rusty Hardin & Associates
1401 McKinney
Suite 2250
Houston, Texas  77010
(713)652-9000

**FOR DEFENDANTS KIRKLAND & ELLIS, LLP AND KIRKLAND & ELLIS INTERNATIONAL, LLP:**
MR. JOHN HUESTON
Hueston Hennigan LLP
620 Newport Center Drive
Suite 1300
Newport Beach, California  92660
(949)229-8640

MR. WARREN CRANDALL
Hueston Hennigan LLP
1 Little West 12th Street
New York, New York  10014
(646)930-4046

**FOR THE TRUSTEE MATTHEW RAY:**
MR. SEAN GORMAN
White & Case LLP
609 Main Street
Suite 2900
Houston, Texas  77002
(713)496-9676

MR. SAMUEL PAUL HERSHEY
White & Case LLP
1221 Avenue of the Americas
New York, New York  10020
(212)819-8200

APPEARANCES CONTINUED:

**ALSO PRESENT:**
MS. STACEY MANELA

**COURT REPORTER:**
Heather Alcaraz, CSR, FCRR, RMR
Official Court Reporter
515 Rusk, Suite 8004
Houston, Texas  77002
(713)250-5584


Proceedings recorded by mechanical stenography, transcript produced by computer.

**I N D E X**

FINAL HEARING

MAY 22, 2025                                                    PAGE

Opening Statement by Mr. West                                    6

Opening Statement by Mr. Clore                                  34

Opening Statement by Mr. Gorman                                 38

Opening Statement by Ms. Brevorka                               45

Opening Statement by Mr. Hueston                                58

Opening Statement by Mr. Kirkendall                             78

Closing Argument by Mr. West                                   115

Closing Argument by Mr. Gorman                                 120

Closing Argument by Ms. Brevorka                               125

Closing Argument by Mr. Hueston                                130

Rebuttal Closing Argument by Mr. West                          135


PLAINTIFF'S WITNESS:

**MORTON S. BOUCHARD, III**
Direct Examination by Mr. West.........................    84
Cross-Examination by Mr. Hershey.......................    95
Cross-Examination by Ms. Brevorka......................   103
Cross-Examination by Mr. Hueston.......................   105
Cross-Examination by Mr. Kirkendall....................   110
Redirect Examination by Mr. West.......................   113

PROCEEDING

THE COURT: Okay. You may be seated.

This is 4:24-CV-693. Announcements by the parties.

MR. HARDIN: Your Honor, Mike West and Robert Clore on behalf of plaintiff.

MR. GORMAN: Your Honor, Sean Gorman and Sam Hershey on behalf of the plan administrator.

MS. BREVORKA: Good afternoon, Chief Judge Moses. Jennifer Brevorka and Rusty Hardin on behalf of Jackson Walker.

THE COURT: Okay.

MR. ULRICH: Good afternoon, Judge. Tyler Ulrich, Boies Schiller, on behalf of David Jones.

THE COURT: Okay. And this is just a hearing on the motion to see who gets to -- whether Mr. Bouchard has standing to proceed on behalf of the debtor.

So opening statements --

MR. KIRKENDALL: Good afternoon, Your Honor. I'm sorry.

THE COURT: Oh, I'm sorry. How are you, Mr. --

MR. KIRKENDALL: Tom Kirkendall on behalf of Elizabeth Freeman.

THE COURT: You're hiding behind the computer.

MR. KIRKENDALL: That's -- that's good for everybody, believe me.

MR. HUESTON: Good afternoon, Your Honor. John

Hueston and Warren Crandall on behalf of Kirkland & Ellis.

THE COURT: Okay.

All right. This is the plaintiff's motion.

Mr. West or Mr. Clore, who's going to have opening statements?

MR. WEST: Your Honor, I'll make an opening statement.

THE COURT: Okay.

MR. WEST: There are -- there are two elements that are before the Court with regard to Mr. Bouchard's standing. There are the claims that we believe he has standing independently and directly, which Mr. Clore can address, and then there's the -- the additional issue of what claims Mr. Bouchard may be entitled to or may be best to bring derivatively.

Now, the -- the initial opposition to these cases has to do with Jackson Walker and Kirkland & Ellis taking the position that, Hey, look, they may get there in different ways, but they say nobody has standing. These claims can't be brought. If they do need to be brought, they need to be brought by Mr. Ray or through the plan administrator.

What was -- what was represented at the last hearing in March was that the plan administrator acknowledged, at least to some extent, a conflict from being able to bring those claims and, really, the floor was open for Mr. Bouchard to seek that standing, and that was the motion that was filed in the

bankruptcy court last -- the end of March, Your Honor.

**THE COURT:** Well, that was the order where the Court did a limited remand for that purpose, but by then the plan administrator -- Portage Point, at that point -- had been dismissed from this case. So then they filed a motion in opposition back in the bankruptcy court, and that's why I took it back and decided I was going to hear it, because this is just going back and forth -- bouncing back and forth, and it's just game-playing.

That's what I mentioned this morning in court. We're done with the games. We're going to make a decision. We're going to do it, and we're going to move forward on whatever the decision may be, but no more game-playing.

**MR. WEST:** Understood, Your Honor. And we believe that we were trying comply with the Court's order in seeking that standing from the bankruptcy court, and so that was --

**THE COURT:** Right. And that's what had happened, and then -- but then there was a motion in opposition to it, which I under- -- I had understood that Portage Point was going to stay out of the fray, but they then filed a motion in opposition, and I think -- they, basically, offered an alternative, I think is what it was.

**MR. WEST:** Correct, Your Honor. So after we filed our motion for derivative standing or -- or statement on standing, we were met with a response of, Hey, you know, it shouldn't be

Mr. Bouchard.  In fact, it may not be Mr. Ray, appropriately, but the Court needs to appoint a -- an independent special administrator who, allegedly, will be independent and will be an air gap or some distance from the conflict that is -- that was acknowledged by Mr. Ray at the hearing in March.

But we believe that that was really kind of a 180-degree turn from where we left this courtroom in March.  So I'd like to focus, first, on Mr. Bouchard's request for standing and the bases for his request for standing and why he should be the party who is granted the standing to pursue these claims, and then respond to -- to the plan administrator's motion and their request, if the Court wants to take that up as well.

Now, the -- the primary case on this issue is the *Louisiana World* case, and there's no case that says that that is inapplicable.  To determine that this case is -- the *Louisiana World* case is not applicable to this situation because it has to deal with, you know, before confirmation or post-confirmation is really distinction without a difference.

The facts underlying these claims that -- Mr. Bouchard's claims that he is attempting to bring against defendants Kirkland & Ellis, Jackson Walker, Jones, and Freeman surround a relationship that was concealed for over two years. The Fifth Circuit has never held that a creditor can only obtain derivative standing post-confirmation if a plan explicitly authorizes it.  That's the response that we're hearing from

Jackson Walker and from Kirkland.

Regardless, the plan in this case does authorize derivative claims to be brought.  In fact, the plan reserves any and all causes of action for the post-effective date debtor, and those causes of action are jus- -- defined as causes of action that are assertible directly or derivatively.  It further states that no entity may rely on the absence of a specific reference in the plan to any particular cause of action as an indication that those claims cannot be brought.  In fact, it's quite the opposite.

So these claims exist.  They are claims that can be brought by the plan administrator or could have been brought by the plan administrator, but undeniably weren't.

Because the plan administrator could have brought these claims, that really undercuts any argument by Jackson Walker or Kirkland & Ellis to the extent that they have a standing to be heard.  I don't understand what interest they have in the Bouchard estate -- Bouchard Transportation estate; certainly have an interest in the case against them not going forward, but whether it -- it is brought by the estate or brought by Mr. Bouchard derivatively, I'm not sure what interest they have or what interest they represent to parties who are interested in that bankruptcy.

Regardless, some of the claims also arose post-confirmation.  We're talking about -- let me step back,

Your Honor.  I apologize.

The -- one of the bars that has been pleaded to Mr. Bouchard bringing these claims is saying that they're not colorable under the *Louisiana World* standard, and the argument that these claims are not colorable is that they were released under the confirmation plan or that they were not retained under the confirmation plan, but again, when you look at the confirmation plan, it does reserve these claims particularly, claims that can be brought derivatively or directly.

The confirmation plan was also entered under the pretences of what was described in the order as reached as the ultimate result of negotiations in good faith by parties with full disclosure and found to be fair and equitable, and we know for a fact that the negotiations that went on in the bankruptcy that predated the enactment of the confirmation plan were done in the absence of full disclosure, with the concealment of this relationship.

And so the release that is being alleged as making these claims not colorable, or the existence of the confirmation plan as making these claims not colorable doesn't survive scrutiny of the fact that that confirmation plan was entered, really, fraudulently and under the absence of any conflict of interest between the judge and the attorneys representing the estate.

It would be grossly inequitable to allow the

conspirators who drafted that release, who drafted the confirmation plan, to use that language to say, Sorry, you know, we -- we wrote this release so airtight that you can't bring these claims and so that they are not colorable.  It just wouldn't withstand any sort of equitable review to allow that plan to stand in the way of Mr. Bouchard bringing these claims.

Now, that gets past the -- the burden of whether or not these claims are colorable.  There's another argument that Jackson Walker raised that I don't think Kirkland raised, was that, Well, these claims aren't colorable because Mr. Bouchard doesn't have standing.  Well, that's the issue before the Court, is whether or not Mr. Bouchard has or can obtain standing, and so that gets into sort of the circular firing squad that the Court referenced at the last hearing, saying that, well, if you don't have standing, you can't bring the claims, and you can't bring the claims if you don't have standing, so you can't get around that colorable standard.

And we believe that Mr. Bouchard's complete absence of knowledge of the relationship, the concealment of that relationship by the parties who drafted the release, who drafted the confirmation plan, indeed, the party on the bench, former Judge Jones, who approved that confirmation plan, undercuts any argument that that release language should bar the claims that Mr. Bouchard is attempting to bring.

In fact, the plan administrator, Mr. Kirkendall, I

believe at the last hearing, said, Hey, look, there may be -- they acknowledge that there may be some valid claims that need to be looked at and need to be investigated and that the -- the -- we believe that the confirmation and -- the release plan and the confirmation shouldn't stand in that way.

THE COURT:  So is part of your argument that it's not a valid confirmation plan?

MR. WEST:  Well, we believe that the -- the extent that it attempts to release claims that are related to the concealed relationship.  It's not our position, necessarily, that the entire confirmation plan needs to be thrown out and started from square one, but to the extent that that release is going to apply to claims that underlie the -- the deception and the misrepresentations and the fraud that led to that release, those claims should be excised and should be allowed to proceed.

We're not asserting that any creditor to the estate should come back and say, Hell -- Hey, well, we didn't -- we didn't get enough, or, We need to undo and start the bankruptcy from square one, but the claims and the damages that stem from the relationship, from the concealment, and from the misrepresentations, those should not be held barred under a plan that was drafted by the defendants.

THE COURT:  And that's what's so difficult about all of these cases, is that -- hypothetically speaking, if there was any fraud at the inception, it would affect every one of these

bankruptcy estates, potentially, and I don't think anybody wants to go back and relitigate everything in all of these bankruptcy estates.  I think there's limited claims.

The problem is that, sometimes, some of the language, if it was void from day one, it voids everything.  So is it void, or is it voidable, or is it just parts that can be excised?

**MR. WEST:**  I'm not sure that the Court needs to address the void versus voidable to respond to Mr. Bouchard's request for standing to bring the claims that he is desiring to bring against these defendants.

Now, to declare the -- the confirmation plan and every action that was taken in Jones's court during the entire ongoing of the Bouchard bankruptcy void, that would be quite a quagmire. And that may be the ultimate mess that -- that the parties and the Court need to address, unfortunately, but in order to address the claims that are asserted against the defendants in Mr. Bouchard's lawsuit, those exist, as the Court recognized at the March hearing, you know -- that the harm happened within the bankruptcy, and maybe the metric of damages relates or stems from actions in the bankruptcy, but the scheme existed outside of that bankruptcy.

And to allow Mr. Bouchard, for his own direct claims and for any claims that may be derivative that he's already alleged, and, if he's granted derivative standing, any claims

that he may be allowed to allege relating to the factual scenario that underlies his complaint -- the relationship, the concealment, the misrepresentations, the misdealings that have been alleged against the defendants -- we're not seeking to necessarily undo everything else if -- if those claims can be adequately addressed without undoing everything else of the confirmation plan and every action of the bankruptcy court.

So getting past the colorable issue, we get to, well, the plan administrator, we kind of understood, from the last hearing, that that -- that box had been checked, Your Honor; that the plan administrator was conflicted or couldn't bring claims or it would be futile to ask the plan administrator to bring any claims because they were -- were alleged to -- although they've been dismissed as defendants in our lawsuit, they were alleged to have participated at the behest of defendants who remain in the -- in the lawsuit.

They are -- as the Court acknowledged this morning, it's a very small bankruptcy bar, you know.  Not just in Houston, but nationwide there are a lot of players who are -- are -- I don't want to say repeat offenders, but repeat participants.  And so to allow an actor, whether or not they have ill intent, who was a part of that -- that -- that network to -- to step in and to have to challenge their -- their everyday colleagues, it puts the plan administrator and attorney -- the attorneys representing the plan administrator in a

situation that -- that generates the appearance of a potential conflict.

And so it would be futile to have asked to -- the plan administrator to pursue those claims, and, in fact, as the Court recognized, the plan administrator, back in March, in this courtroom, said, We probably shouldn't pursue those claims. And so it may be best for a creditor, I think was the language used, or another interested party to step in and request that standing.

There was some discussion about whether or not it should be the -- the creditors' committee, and there was some discussion -- there was some disagreement at the last hearing about, well, was the creditors' committee dissolved? Is it still existent? Well, the creditors' committee has been dissolved, Your Honor. As terms of the confirmation plan, which went into effect September 3rd, 2021, the creditors' committee was dissolved, with the exception of a few carved-out option -- or obligations for the creditors' committee to pursue.

One were final fee applications for committee professionals. Well, the creditors' committee, that was represented by Ropes & Gray, they filed their final fee application on October 18th, 2021. So they're not doing that anymore. They're not around to do that.

For all final fee applications filed with the bankruptcy court, well, Kirkland & Ellis and Jackson Walker,

they filed their final fee applications after confirmation of the plan in October of 2021, and they're the parties who are the professionals -- the bankruptcy professionals who are defendants in this case. And so the plan -- or the creditors' committee, that carve-out, that's no longer applicable.

And any appeals of the confirmation order or other appeal, after Mr. Bouchard's appeal to challenges to the exculpation provision, there were no further appeals to the confirmation order. Now, there probably would have been some objections or some appeals had this -- this relationship been disclosed or some challenges that had to be hashed out at that time, but there were no subsequent appeals of the confirmation order.

So those three carve-outs that were -- reserved the creditors' committee after its dissolution are wholly inapplicable to the claims that Mr. Bouchard has brought and seeks to bring.

And I will step in -- back to the conflict related to -- to the plan administrator and how we don't believe that they're the appropriate person -- or the appropriate entity to bring these claims. It's interesting, some of the language that was used in their motion to appoint an independent special administrator to pursue these claims.

Now, as the Court knows, Mr. Bouchard has an adversary proceeding pending against him in the *Bouchard* bankruptcy. It

was filed in September of 2022 by Kirkland & Ellis and Jackson Walker as signatories on these pleadings, and a -- a tentative resolution was reached in that -- in that case, a settlement that would classify and put a value on Mr. Bouchard's creditor claim. And --

THE COURT: Was that the 3.6 million that was mentioned in March?

MR. WEST: No. Those were related to -- I think the 3.6 million that came up was for professional fees.

THE COURT: Okay.

MR. WEST: Mr. Bouchard had a claim that he valued at $40 million for loans that he made to the Bouchard Transportation Company leading up to the bankruptcy in order to try to keep the company on its feet and to avoid bankruptcy, and there was a dispute and objections to his claim in the -- in the bankruptcy court that had to do with, well, were those loans? Were those equity capital infusions?

There were also claims that were asserted by the -- by the attorneys for Jackson Walker and Kirkland & Ellis against Mr. Bouchard saying, Well, you know, we think that you harmed your own company with relation to your use of the company jet or with relation to certain compensation that you received. And that was filed in September of 2022. Again, after confirmation.

So the confirmation bar and release that applies only to actions taken up to the point of confirmation wouldn't

preclude any claims that Mr. Bouchard has or the estate has as a result of that post-confirmation action by Jackson Walker and Kirkland & Ellis.

And we have alleged that that adversary proceeding was retaliatory and baseless in order to try to drive the final nail in the coffin of Mr. Bouchard's involvement in the case.  As the Court recalls, after he questioned professional fees in February of 2021, he was booted within a few days -- within a week or so.

THE COURT:  Was that based on a motion of any party? I didn't find any motion asking to have him removed.

MR. WEST:  There was no motion, Your Honor --

THE COURT:  It was just sua sponte by the court?

MR. WEST:  It was sua sponte, and it -- it's interesting if you go back and look at the transcript for the February 24th, 2021, hearing, and the February 26th, '21 -- 2021 hearing.  The discussion that was had in March in this case had to do with, Well, the parties were before the court on some -- some DIP financing and some complaints that the financiers had against the operation of the company, and there -- I found it interesting, you know, here four years later, you know, knowing a fuller -- I still don't know the full, but knowing a fuller context of what was going on in that courtroom.

It's an interesting exchange between Judge Jones and some of the attorneys about:  I think I know what you're trying to say to me.  I think I hear you loud and clear.  I'll send

Mr. Bouchard -- you're out.

THE COURT:  No evidence taken?

MR. WEST:  No evidence taken.  No hearing.  It was just sua sponte -- I say no hearing.  There was no motion.  There was no discussion.  It was just, Hey --

THE COURT:  No motion; no evidence; just discussion?

MR. WEST:  Correct.  There was some -- some argument by counsel to the effect that Mr. Bouchard was being an impediment to the bankruptcy proceedings.  There was no evidence offered to support that.  But at the February 26th, 2021, hearing, in an order following that day, but orally announced at the hearing, Mr. Bouchard was removed as CEO.

Now, unfortunately or fortunately, Mr. Bouchard opted not to go away, right, not to -- not to lie down and wait until the result of the bankruptcy came around.  And because he -- he continued to assert his claims, he continued to try to be involved, he continued to offer his assistance when the plan administrator, then the chief restructuring officer and chief executive officer, Matthew Ray, was having trouble running the company, handling a -- a multi-hundred-million-dollar oil and gas shipping barge industry business, and when that help was not accepted, when that help was not welcomed, and when the company continued to flounder and Mr. Bouchard continued to be, really, a thorn in the side of the -- the bankruptcy professionals, they said, Well, you know, what's the next tool that we've got?

We'll file an adversary proceeding against him.

We believe that that was retaliatory and that was designed to attempt to silence him further, and we believe that the complicitness or the -- the acquiescence of the plan administrator in those actions to pursue that derivative -- or that adversary proceeding against Bouchard indicate a -- a conflict that the plan administrator has, and that -- for the reason that that retaliatory -- or the adversary proceeding was retaliatory, it should be looked at in that context when it's alleged that that -- a ongoing adversary proceeding presents a conflict for Mr. Bouchard to represent the interests of the estate.

An interesting note on that is when that was filed -- that adversary proceeding was filed in September of 2022, as I was mentioning, they -- they reached a tentative settlement, and that would resolve the adversary proceeding, that would have resolved the valuation of Mr. Bouchard's claim, that would have resolved the priority of Mr. Bouchard's creditor claim, and that settlement agreement was never consummated. And the reason it wasn't consummated is because when the hearing was held on March 28th, 2023, Mr. Ray failed to appear at that hearing.

And I think the representation that -- that I've received is that it was on advice of counsel that he not appear at that hearing. And I don't know if that was his plan administrator counsel, I don't know if that was an attorney at

Kirkland & Ellis or Jackson Walker, but he was advised not to attend that hearing, and because he didn't attend that hearing, the settlement was never consummated and, in fact, no action has been taken on that adversary proceeding for the last -- over -- over two years, since March of 2023, until March 25th, 2025, when the plan administrator files their motion for an independent special administrator.

They say, We'd like to have the opportunity to have an independent administrator appointed to act on the claims against defendants in this case, the *Bouchard* litigation, and determine whether or not to pursue those, whether to settle them, whether to, you know, potentially settle them for de minimis amount, but we would like the opportunity in trying to prosecute the claims that are pending against Mr. Bouchard.

That's a very interesting choice of words, Your Honor, that they're choosing to act on whether or not the -- the defense in this case, they -- they have acknowledged there may be some valid claims against them, but they want to prosecute Mr. Bouchard.

**THE COURT:** Well, and here's the interesting part: Even those matters that are in the bankruptcy structure of the case are before this Court. None of the bankruptcy judges will hear those. They're -- they're before this Court.

So this -- that is something that I can hear at some point or along with these motions.

**MR. WEST:** And I think we may need to get to the bottom -- may, we will need to get to the bottom of that, eventually, Your Honor, but it's our belief that the -- the roadblocks, the smoke and mirrors that are being thrown up to say, Mr. Bouchard, you can't be the representative to bring these derivative claims on behalf of the estate because we've got an adversary proceeding against you, well, when you look down at it, you've got an adversary proceeding that was filed at -- at an inopportune time to be retaliatory; you've got an adversary proceeding that has been ignored for the last two years, until it becomes useful again for them to attempt to silence Mr. Bouchard.

There has not been any further activity by the creditors' committee since March 28th of 2023. They asked for a transcript of that hearing that resulted in -- in the non-settlement of the adversary proceeding, but since requesting that transcript, there's been no activity by the -- the creditors' committee. There's been little activity by the plan administrator in -- in that case.

Now, Jackson Walker also mentioned, in their briefing that, well, you know, when you look at the facts, the plan administrator has been -- they've been involved in the -- the trustee's matter. They've not been sitting on their hands. Mr. Bouchard doesn't need to act because the plan administrator's been participating.

Well, we went and looked. There were not cites to any documents, to any filings, to any participation by the plan administrator in -- in Jackson Walker's briefing. So we went and looked at it.

The plan administrator filed a four-page joinder -- generic joinder, much like many of the other plan administrators in the 34 cases before this Court, and haven't done much since. There was representations in Jackson Walker's briefings that they had filed a -- they say "submitted," okay? So it may not have appeared on the docket sheet, but I didn't see any witness list or exhibit list filed by the *Bouchard* plan administrator in the -- the miscellaneous fee proceeding that's pending before this Court. So I don't know what that reference by Jackson Walker is to or if it's accurate.

They reference the plan administrator attending depositions, and I believe there were a couple of attorneys. Mr. -- Mr. Green, who was here this morning -- the Court heard from him -- he happens to be representing two other plan administrators: A single individual, David Dunn, who was involved in the 4E and the Basic Energy bankruptcy -- they were there on his behalf, and I guess they made an announcement for Mr. Bouchard, as well, but at the depositions that we have been allowed to obtain copies of -- I think there was discussion this morning that there have been 40-something depositions taken in the -- the fee proceeding case.

Well, there's a protective order that has been presented -- been -- has prevented us from obtaining a number of those depositions, but the ones that we have obtained copies of, there -- there were announcements by an attorney who -- who, I think, in four of the six depositions announced for Broussard [sic] Transportation.  I guess he meant Bouchard Transportation.

Not a single question asked --

THE COURT:  And what was the name of that -- was it Mr. Green that appeared or somebody else?

MR. WEST:  It was Mr. -- I believe it was Mr. Ken Green, Your Honor, that appeared this morning on behalf of David Dunn --

THE COURT:  No, I'm saying at the depositions.

MR. WEST:  It was Mr. Green.  There was also a Prentice.  There was also -- there were a couple -- there was -- either Mr. Green or Mr. Guerrero, I believe, or Mr. Prentice appeared at the -- some of the depositions we've obtained copies of, but --

THE COURT:  On behalf of the plan administrator.

MR. WEST:  On behalf of -- of Dunn, who is a plan administrator for two other bankruptcies --

THE COURT:  But not --

MR. WEST:  -- and also made an announcement as plan administrator --

THE COURT:  But they have --

MR. WEST: -- for Bouchard.

THE COURT: But they were never yet accepted as plan administrator for BTC?

MR. WEST: Well, I don't want to --

THE COURT: I know that their --

MR. WEST: -- confuse the Court. I think I'm getting a little --

THE COURT: I think you're getting ahead of yourself because I know that that's one of the requests, is that maybe Mr. Dunn become the plan administrator in this matter as opposed to Mr. --

MR. WEST: That's Mr. Dundon, and --

THE COURT: Oh, Dundon. I'm sorry. Okay.

MR. WEST: Yeah. So Mr. Dunn is the plan administrator for 4E --

THE COURT: Yeah, 4E --

MR. WEST: -- and Basic --

THE COURT: -- and Basic. Yes, I do know that.

MR. WEST: And so the attorney this morning, Mr. Green, appeared for him.

THE COURT: He's here.

MR. WEST: That is the same attorney who, I understand, represented the -- and may continue to represent the plan administrator, Mr. Ray, in the *Bouchard* case. There's a host of attorneys representing Mr. Ray, and I believe he is one

of them.

And so he attended some depositions.  I don't believe he asked any questions --

**THE COURT:**  I thought -- oh, okay.  The depositions occurred before our March hearing, if I remember correctly, too.

**MR. WEST:**  Yes, Your Honor.

**THE COURT:**  Okay.

**MR. WEST:**  They've been occurring over the last, you know, several months.

**THE COURT:**  But at that point they were parties in this case.  So how were they representing BTC at the depositions?

At that point they had a potential adversarial role to Mr. Bouchard in this matter.

**MR. WEST:**  Your Honor, and -- and I agree, and I was surprised when I read that representation in Jackson Walker's briefings, that they had been -- that Mr. Ray, through his counsel, had been taking an active role in the U.S. Trustee's litigation, because I wasn't aware that they had really been doing anything.  But looking back at the deposition transcripts that I've been able to review, I will, you know, be candid with the Court, there was an announcement made --

**THE COURT:**  Okay.

**MR. WEST:**  -- on behalf of Bouchard Transportation. But, again, no questions were asked.

I haven't seen a witness list or exhibit list.  To say that they have been actively pursuing any claims, I think, is -- is an exaggeration at -- at least.  And so the -- which relates back to the conflict that they acknowledged.  I'm not sure why that representation wasn't made to the Court in March when we were discussing whether or not Mr. Ray would be appropriate or his counsel would be appropriate to pursue the claims that Mr. Bouchard seeks to -- to pursue.

THE COURT:  I thought they represented to the Court that they recognize they wouldn't be appropriate.

MR. WEST:  That's my recollection, Your Honor, as well, and that's my understanding from going back and -- and looking at the transcript a number of times, which is why we were, maybe, as surprised as the Court to have seen the filing on March 27th to appoint the independent special administrator.

I understand the -- the -- the nuance saying, Hey, maybe we are conflicted; we want somebody else to do it.  But the posture in which it was presented, that they -- this independent special administrator would act on the claims against Jackson Walker and Kirkland and Jones and Freeman but, more importantly, wanted to prosecute claims against Mr. Bouchard, I think that belies evidence of a -- an ongoing conflict that really can't be resolved by the inserting of a new individual who happens to be an individual who has served as plan administrator in cases before Judge Jones and been awarded

hundreds of thousands of dollars in fees by Judge Jones.

I can't say that I have any evidence that Mr. Dundon was -- was complicit or knowledgeable of the relationship, but, again, we've got a -- an individual who was part of the --

THE COURT:  I've got to tell you I'm perturbed that Portage Point, then the plan administrator, Mr. Ray, while he was a party in the case, was making an appearance in the trustee case on behalf of BTC.

MR. WEST:  And, Your Honor, I -- I share that.  I want to give him the benefit of the doubt.  Mr. -- Mr. Ray and Portage Point were represented by different counsel in our case than they -- are representing them in the -- the bankruptcies as plan administrator --

THE COURT:  But you're saying Mr. Ray wouldn't have known to tell new counsel that he was a defendant in this case and, therefore, might have a conflict?

MR. WEST:  I -- I share that same concern, Your Honor. I want to give the benefit of doubt, and --

THE COURT:  Okay.  We'll give him --

MR. WEST:  -- that's how I --

THE COURT:  -- the benefit of the doubt.

MR. WEST:  -- that's how I can.  But I don't think that you can escape that conflict, and I don't think that you can escape the fact that you've got the left hand not telling the right hand what it's doing.

THE COURT:  Well, it goes back to the original issues in this case, is a lack of candor and disclosure by counsel and parties.  It goes back to the very issue that started this whole downhill rolling of mess.  Why people can't have candor and full disclosure is beyond me.

MR. WEST:  And, Your Honor, that's exactly why we believe that Mr. Bouchard, as -- as an outsider to the bankruptcy --

THE COURT:  Well, he's not really an outsider.

MR. WEST:  -- industry -- he's -- he's been trapped in and caught up in the quagmire for the last four -- four or five years, Your Honor, you're right.  He's not an outsider, but he is not a player in the bankruptcy industry, certainly not a player in the bankruptcy industry in Houston.

Again, as the Court may recall, in our pleadings there was no tie between Bouchard Transportation Company and Houston.  It's a New York-based company.  Mr. Bouchard splits his time between New York and as a Florida resident, and the only reason that he ended up in Houston was at the recommendation of his attorneys at Kirkland & Ellis because they had --

THE COURT:  I thought the --

MR. WEST:  -- a friendly judge.

THE COURT:  I thought the information at the last hearing was that Kirkland & Ellis had been recommended to him as somebody who could get it done, and that's how he ended up with

them at that point.

MR. WEST:  That's correct.  He -- there was another industry -- contact from the industry that Mr. Bouchard is involved in, said, Hey, we used Kirkland & Ellis; why don't you call them.  And when he spoke to Kirkland & Ellis, Mr. Bennett of Kirkland & Ellis said, Hey, you got to file in Houston; we've got a friendly judge; and you've got to use Jackson Walker.

And Mr. Bouchard said, Hey, you know, why do I need two law firms?  It's a small family owned company.  It may be a multi-hundred-million-dollar company, but it's a family owned business.  The management is small.  Why do I need two law firms?  And the response he got was, We need Jackson Walker.  If you don't get them on board, we're out.

And that's -- that's the -- the stark contrast of Mr. Bouchard as an outsider to the regular bankruptcy practice, if not an outsider to having been trapped here for -- for the last five years in -- in this ongoing quagmire.  For that reason, we believe he's an appropriate person to -- to really cast light onto -- onto the situation.

THE COURT:  So how many witnesses do you have today?

MR. WEST:  We don't have any witnesses today.

THE COURT:  Okay.

MR. WEST:  We believe it's a -- purely a legal matter for the Court to decide on the issue of standing and whether or not Mr. Bouchard should be able to be the --

**THE COURT:**  Well, except that I think the parties are contesting the factual underpinnings of the motions and the responses.

**MR. WEST:**  Well, I -- that's a situation here, Your Honor -- I guess we -- we weren't anticipating a -- an evidentiary hearing with witnesses because we haven't even gotten past a 12(b) motion.

**THE COURT:**  Well, but part of the problem is getting -- getting past some of these issues depends on who has standing to bring the case to begin with.  It would affect some of the Court's findings on the 12(b) motions.

**MR. WEST:**  Your Honor, and I would be happy to put Mr. Bouchard on the stand and question him to provide evidence of the fact that he didn't have knowledge of the relationship between Ms. Freeman and Mr. Jones and the fact that he was -- you know, to support the facts that he was brought to Houston at the recommendation of his Kirkland & Ellis attorneys -- all these matters that are -- that are in our pleadings, if the Court would like to hear that -- that testimony.

**THE COURT:**  I think that would -- I think that would be best, if we took testimony from either or both sides.

**MR. WEST:**  Okay.  Perhaps I can --

**THE COURT:**  What other -- what other matters in terms of opening?

**MR. WEST:**  That's all I've got in terms of opening

statements, Your Honor.  And I -- Mr. Clore is going to discuss the direct portion of the claims because we believe that -- that the issue before the Court is twofold on standing.

It's whether or not Mr. Bouchard has any claims that are independent and direct, in which case the Court doesn't need to grant derivative standing, and then what claims, if any, are derivative, and whether the Court should award -- or not award, but should authorize Mr. Bouchard to have derivative standing to bring those claims.  And before I -- I turn it over to Mr. Clore, I want to explain to the Court that I hope we didn't go beyond the -- the bounds of what the Court had instructed us to do.

When we filed our motion for derivative standing in the bankruptcy court, what we asked for was exactly what we're asking for today, which is acknowledge or identify which claims Mr. Bouchard has direct standing for; identify which claims he has already pleaded that may be derivative, and we request derivative standing for that; and to the extent that there are other claims that the -- the Bouchard Transportation Company estate might have solely related to this factual situation, solely related to the relationship and the misrepresentations and the frauds that have been alleged, we would like derivative standing to bring any other claims that the estate may have related to those factual bases, and we believe that that is -- is prudent and efficient because, number one, we didn't have to

ask for standing twice, and, number two, we don't want to

subject the estate to any sort of res judicata arguments.

If we say, Oh, well, we've got derivative standing to bring the claims Mr. Bouchard has alleged, but there are other all valuable claims that we acknowledge were -- were derivative -- there are lots of claims that we could have brought if we represented Bouchard Transportation Company estate.  We would like to bring all those claims, as well, so that the Court --

THE COURT:  But that was the whole point of the limited remand, was to try to figure out to what extent Mr. Bouchard could represent the estate.

MR. WEST:  Then I think we're on the same page because I wanted to make sure that we hadn't overstepped by asking for that larger derivative standing to bring any related claims that the estate may have if the Court grants derivative standing.

Just some big-picture points:  Again, the confirmation plan was attained by -- by fraud.  The confirmation that is being -- the confirmation plan that is being pleaded by defendants as a bar to recovery was obtained by fraud --

THE COURT:  So doesn't that void the confirmation plan probably?  Possibly?

MR. WEST:  We believe it voids, at the very least, the release of the claims that they're alleging.

THE COURT:  If it was obtained by fraud, the whole

thing was obtained by fraud.

**MR. WEST:**  Well, and that's where we may have to walk the line of void versus voidable.  If the -- if the release is voidable -- the release of the claims that Mr. Bouchard seeks to pursue is voidable and that section is void -- or those portions are void, and Mr. Bouchard is allowed to bring those claims, then that would --

**THE COURT:**  So you want me to sever the portions of the -- the order?

**MR. WEST:**  We want to -- we want to sever or -- or acknowledge that the release that was obtained through fraud doesn't apply to the causes of action that Mr. Bouchard is alleging against the parties who participated in that fraud.

**THE COURT:**  Okay.

**MR. WEST:**  And I'll let Mr. Clore talk about the direct claims.

**THE COURT:**  Okay.

**MR. CLORE:**  May it please the Court.  I got the easy assignment here.  I think my presentation will be much quicker.

We believe there are at least three discrete causes of action or -- or claims that are direct -- or that are indisputably direct and not derivative, starting with the -- Mr. Bouchard's loss of business reputation.

We cited several cases that refer to business reputation damages as direct, and then Kirkland countered with a

few cases that would suggest otherwise, and I think it depends on the facts of the case.  If you -- we're not saying that harm to BTC is harm to Mr. Bouchard as in the *Galindo* case that was before Your Honor.  We're not saying the loss in BT's value is the same as harm to Mr. Bouchard's reputation or that the bankruptcy itself was a harm to Mr. Bouchard's rep- -- reputation.

What we're saying is he suffered direct harm after he -- he contested professional fees and was immediately -- or within a week removed as CEO, attacked, maligned, and then had an adversary proceeding asserted against him alleging that he was jetting around the country and taking his generation -- his generational company.

So those are direct personalized damages that affect him and not the -- not BTC, and they belong to him.

The second discrete damages are legal expenses. Mr. Bouchard had to hire counsel in connection with his removal as CEO, and then also as -- in connection with the adversary proceeding.  As Mr. West discussed, he had -- he negotiated a settlement -- his counsel negotiated a settlement over a period -- several months, which was then sabotaged by Ray on advice of counsel.

And we're not talking about cost as in the costs that were alleged by Mr. Van Deelen inasmuch as Mr. Van Deelen initiated the motion to recuse and brought it himself.  We're --

Mr. Bouchard was on the defensive.  And so as we discussed in some of our responsive briefing, under the tort-of-another, he's able to recoup -- that tort allows him to recoup those damages.

There has been some discussion about, well, the litigation is still pending, and so, therefore, it's not complete, and you can't pursue that cause of action.  They're -- they don't cite any cases for that proposition, and I found at least -- granted, the tort-of-another doctrine is not -- there's not a lot on it.  You can spend a lot of time researching and not find a lot, but I found -- I did find two California cases that reference that doctrine in the context of pending litigation.

One is *Sindell versus Gibson*, and that's at 54 Cal. App. 4th 1457, and that's from the Second Court of Appeals, 1997.  And I'll quote an excerpt from that case.  Quote, the outcome of the pending litigation is relevant only to the amount of plaintiffs' damages.  Plaintiffs have sustained actual injury whether they win or lose.

And then another case, *Roberts versus Ball*, 57 Cal. App. 30 [sic].  That's a 1976 case.

So that -- that gets them nowhere, and so Mr. Bouchard's reputational damages, his legal expenses are -- are direct injuries that we should be able to bring regardless of what this Court decides on derivative standing, which we would urge the Court to -- to grant because, in our view, if

we're not granted derivative standing, nobody's going to give these claims their full attention.

And then, finally, I think Your Honor, at the last hearing in March, was -- was discussing with counsel, you know, is this a hybrid claim.  Do we have a hybrid situation?  And I think, arguably, we do.  We have Mr. Bouchard's 40 million in debts -- sorry, his 40-million debt, which was recognized by Mr. Ray.  That -- that does not flow from a sing- -- his damages there do not flow from a single -- this single bankruptcy.  They flow from a much broader scheme that was arranged by Jones, Freeman, Jackson Walker, and Kirkland.

And so his damages are not simply derivative of a single bankruptcy, but they flow directly out of that larger scheme.  And so, at a bare minimum, we ask the Court to allow us to go forward on our direct damages, and I will --

THE COURT:  You said there were three areas of direct --

MR. CLORE:  Yes, at least three.

THE COURT:  You said loss of business reputation, and then you're saying the attorneys' fees?

MR. CLORE:  Yes.

THE COURT:  And then the $40 million debt?

MR. CLORE:  Correct.

THE COURT:  Okay.  I just want to make sure I had them all down.

Okay.  From the defense side?  Opening.

**MR. GORMAN:**  Your Honor, Sean Gorman for the plan administrator, and the issue before the Court today, which is whether Mr. Bouchard's motion for derivative standing can be granted, is resolved by the confirmation order in the BTC cases entered August 26, 2021.  That order is in place today.  It became final and non-appealable in September of 2021.

The plan expressly provided that the plan administrator, whose job is to implement and protect the plan, is the sole representative of and shall act for the post-effective-date debtor.  That's article Roman numeral 4G.

**THE COURT:**  And that brings me to what happened at the last hearing.  So my question was, at that point, the plan administrator had a conflict.  So who can bring any causes of action on behalf of the estate if the plan administrator is conflicted out?  And at that point the attorneys for Portage Point indicated you could do a limited remand to Judge Lopez and let him decide who would be the person that could bring the claims.

So if -- obviously, there is some wiggle room in terms of that particular order because that was done at the -- at the disclosure of information from the attorney for -- for Portage Point.  So that was the purpose of the limited remand to that court, was to determine who, if anybody -- whether it was Mr. Bouchard or somebody else -- could then continue to

prosecute claims on behalf of the administration other than

Portage Point.

          And then, all of a sudden, they're not happy with it,

and they're contesting the very suggestion they gave this Court.

          **MR. GORMAN:**  Here is my understanding of what

happened --

          **THE COURT:**  I was here.

          **MR. GORMAN:**  I know.  I'm not going to -- I'm --

          **THE COURT:**  And that's exactly -- and that's exactly

why the Court acted the way it did.

          **MR. GORMAN:**  So my understanding is that the attorney

who made that suggestion --

          **THE COURT:**  Uh-huh.

          **MR. GORMAN:**  -- who had been retained by Mr. Ray to

represent Mr. Ray in Mr. Bouchard's district court RICO case --

          **THE COURT:**  That's this one.

          **MR. GORMAN:**  That's -- yes.  He made the comment about

derivative standing, which generally is correct.  What he didn't

understand was that there was a confirmed plan in place in this

case, which --

          **THE COURT:**  He did understand.  He told me it was

before Judge Lopez.

          **MR. GORMAN:**  Okay.  I don't --

          **THE COURT:**  They did understand that, and I understood

that; otherwise, I wouldn't have sent it back on a limited

remand to Judge Lopez.  And, number two, his announcement was for Portage Point, not for Mr. Ray alone.

**MR. GORMAN:**  Well, the -- the plan, the con- -- the confirmed plan --

**THE COURT:**  Uh-huh.

**MR. GORMAN:**  -- exists, and that's what we have to work with, and that confirmed plan provides very specifically for who asserts these claims.  It's the plan administrator, and when Mr. Ray's potential conflict was brought to light, Mr. Ray proposed a solution:  Let's have an independent special administrator do it.  Not me, not Mr. Bouchard, who is disqualified as an insider, who is not allowed to do it under the terms of the plan, let's have the independent special administrator do it.

The case had been remanded by this Court to the bankruptcy court.

**THE COURT:**  Uh-huh.

**MR. GORMAN:**  That motion was filed in the bankruptcy court.

**THE COURT:**  Uh-huh.

**MR. GORMAN:**  Both motions were pending in the bankruptcy court --

**THE COURT:**  And I took it back --

**MR. GORMAN:**  Yes.

**THE COURT:**  -- and that's what we're here to hear.

**MR. GORMAN:**  Exactly.

**THE COURT:**  Right.  That's what we're here to do.

**MR. GORMAN:**  So I think, though, the issue is the -- the solution, which is -- the solution is that neither Mr. Ray nor Mr. Bouchard are responsible for analyzing these claims and deciding whether to bring them.

**THE COURT:**  I don't know about that because part of the problem is this confirmation plan was gotten at a time and in a way that was based on a failure to disclose all of the interested parties and the background information.  So that's part of the problem that concerns the Court, and based on what -- and I don't remember you being here at the March hearing.

**MR. GORMAN:**  I have not been here before.

**THE COURT:**  Okay.  And so from what I understood from the March hearing is problems with Mr. Bouchard's administration as a debtor in possession at that time was that he questioned attorneys' fees, and then, all of a sudden, without a motion, without any evidence, Judge Jones, sua sponte, removed him, which is highly unusual and really, probably, has not happened before in any other bankruptcy case.

And the -- and the issue was, when I asked at that hearing, why, it was because he couldn't meet his -- his obligations, and then it came out that he had met them through January, about two weeks before he got removed.  So it doesn't

really make any sense to this Court why that happened.

And so there are a lot of suspicious actions and activity taken to get to the point where Mr. Bouchard is removed as the person who speaks for the estate and other people are put into place that then become defendants in the case, and now want to suggest who the Court should recognize. And so there are a lot of problems with that for the Court.

MR. GORMAN: Well, that -- what the plan administrator suggests is a third party do it.

THE COURT: Uh-huh.

MR. GORMAN: That would seem to solve all of the conflict issues --

THE COURT: Not for this Court because part of the problem is -- and this is something that I -- I will be very honest with the parties. This is something that has bothered me from day one, is that everybody seems to bring in everybody that they've worked with, and everybody seems to have some interest in that they work together and they cooperate with each other in a manner that may or may not be in the best interest of the estate and the people related to the estate.

Everybody seems to have a special interest in working with each other, and -- and I think that's what led to a lot of the issues in all of these cases from day one, a lack of disclosure and honesty in all of these cases. That really bothers me.

**MR. GORMAN:**  Specifically, with regard to Mr. Dundon --

**THE COURT:**  Uh-huh.

**MR. GORMAN:**  -- he was awarded fees --

**THE COURT:**  Okay.

**MR. GORMAN:**  -- but he was not representing the debtor.  In that case that Mr. Bouchard addresses, Mr. Dundon represented the creditors' committee --

**THE COURT:**  You're saying in the adversary proceeding --

**MR. GORMAN:**  No.

**THE COURT:**  -- or in this one?

**MR. GORMAN:**  Years ago --

**THE COURT:**  Okay.

**MR. GORMAN:**  -- in another case.  Mr. Bouchard said, Well, you know, Mr. Dundon also is part of this whole group, and here's a case where he represented -- my point to the Court is by representing the creditors' committee, that's different than representing the debtor.  The creditors' committee is adverse to the debtor.

**THE COURT:**  Well, and part of the problem, too, is the bankruptcy world is a very small world, so you're going to work with some of the people over and over again whether it's on a -- on a good basis or a bad basis.  You're going to work with each other over and over again, but the problem that led to a lot of

these issues that are now before this Court and have been before this Court for over a year came from the fact that there was -- there was an improper relationship -- improper work by an attorney in a courtroom, and that there's -- there was a personal relationship with the Court, a lack of disclosure from parties.

And so it -- it leaves the very ugly impression that if we don't go outside of this small group of participants, you're not going to have a clean and fair consideration of all the issues.

**MR. GORMAN:**  I understand what the Court is saying. The bottom line, though, as I see it, is that we have a con- -- a -- a final non-appealable order that says something --

**THE COURT:**  But that was basically achieved by -- by fraudulent means for a lack of disclosure.  So the question then becomes whether it survives, and if it does, how much.  And so since I'm here, and I'm not going to be necessarily coming every week, and we need to resolve some matters and I need to take evidence, I'd rather take evidence, and we can resolve all these issues so that it's less time for you in the courtroom, and we can make some findings -- I can make some findings, I can issue some orders, and then we can go forward from there.

**MR. GORMAN:**  So with regard to evidence, Mr. Bouchard did not disclose any witnesses or evidence.  If Mr. Bouchard testifies, we'll cross-examine him --

**THE COURT:** Sure.

**MR. GORMAN:** -- but we would object to his testifying since he wasn't disclosed as a witness. So we have no additional witnesses.

**THE COURT:** Well, you can object, but all you're going to do is you're going to cause this Court to come back.

**MR. GORMAN:** Don't want to do that.

**THE COURT:** And you don't want to do that. That's exactly right.

**MR. GORMAN:** Thank you, Your Honor.

**THE COURT:** Okay. Who else needs to be heard on the defense -- yes, ma'am. Go ahead.

**MS. BREVORKA:** Good afternoon, Chief Judge Moses. It's good to see you again.

**THE COURT:** Good afternoon.

**MS. BREVORKA:** Your Honor, I'd like to address two points that were raised in counsel for Mr. Bouchard's openings --

**THE COURT:** Okay.

**MS. BREVORKA:** -- and in particular is the issue of derivative standing. Mr. West mentioned some cases and discussed *Louisiana World*. I've not heard the -- Mr. Bouchard's counsel, however, address the statutory bar that stands in their way to derivative standing. This is something that both Jackson Walker and Kirkland & Ellis brought up in their original replies

back in the motion to dismiss, in particular paragraph 12 of Jackson Walker's reply, and it's 11- -- or 18, U.S.C., 1123(b), which we cite in our response in the bankruptcy derivative standing.

It's the statute that says the plan at -- upon confirmation controls, and that plan says that the plan administrator is the one who may bring derivative claims.

**THE COURT:** But that presumes that the plan -- that the plan that was confirmed was done so in a fair and equitable manner with full disclosure.

**MS. BREVORKA:** Correct, Your Honor, and -- and --

**THE COURT:** So isn't that what is the underlying issue in all of this?

**MS. BREVORKA:** I'm not sure that it is only in that, that is not something Mr. Bouchard has moved -- he's not moved, under a Rule 60 motion, to reopen and set aside the confirmed plan. He's not argued that in his pleadings to set aside the confirmed plan, and if that issue is brought before and there's arguments that are raised -- but until we arrived here in court today and his counsel said, Well, that may be an issue of void or voidable, the arguments that we were responding to is that, under *Louisiana World*, we have the right to bring derivative claims, and this plan, it is still confirmed. It's still in place. It is the plan that is governing how we respond to things at this point.

**THE COURT:**  So you're saying Rule 60 to reopen what, since it's never -- the case has never been closed.  It's my understanding that it's still an open case even though nobody has done anything on it.

**MS. BREVORKA:**  That's true, Your Honor.  So he's not moved --

**THE COURT:**  How would you do a Rule 60 at that point to reopen?

**MS. BREVORKA:**  You're right, and it's not -- it's -- there is a vehicle -- I mean, I named Rule 60 because it's traditionally the rule that we -- we do to set aside judgments or confirm, but it is -- it is a motion he'd have to make to set aside a confirmed plan that has been confirmed for over 180 days.

And I did not see, in his responsive pleadings, a response to the statutory bar that this confirmed plan delegates the plan administrator, and this is an argument --

**THE COURT:**  And I understand what you're saying --

**MS. BREVORKA:**  Yeah.

**THE COURT:**  -- and I don't disagree with what you're saying, but I think this came up at the last hearing in terms of the plan administrator was conflicted and couldn't be the one to pursue any actions on behalf of the estate.  So that's why we're here.  It's not to negate the plan, so to speak, but to find who would be the appropriate, quote, unquote, person to stand in the

place of the plan administrator.

**MS. BREVORKA:**  Agreed.  And I think the problem I struggle with in responding is also we have no controlling case law that either Mr. Bouchard has pointed to or that we've been able to find other than the Fifth Circuit case law that says after a plan is confirmed, 1123(b) controls --

**THE COURT:**  I know, but you're still missing the point, Ms. Brevorka.  You're saying because there's a plan administrator under a plan, therefore, Mr. Bouchard doesn't have standing.  I get what you're saying, but the whole point was the plan administrator was conflicted out.  Wasn't that Portage Point and Mr. Ray?

**MS. BREVORKA:**  Well, I think --

**THE COURT:**  They were --

**MS. BREVORKA:**  -- they were until you dismissed them, correct.

**THE COURT:**  They were conflicted out, and I think they've even taken the position of, We're out.  That's fine, we're out; not a problem.

So the point today is to figure out who would be the most appropriate plan administrator to pursue those claims, be it Mr. Bouchard or somebody else.  And so it's not a situation of a bar under the plan, it's to see who can step in the place of a plan administrator who's potentially stepped out or conflicted.

**MS. BREVORKA:** Fair. And I think the other case law that controls here is one that we -- both we and Kirkland & Ellis cite to, which is *In Re Cleveland Imaging*, and that is a case that expressly states that *Louisiana World*, on the -- the three-pronged examination that we engage in for derivative standing, applies only to creditors' committee, and it is a case in which that -- the Fifth Circuit examined a group of doctors that brought an adversary lawsuit, and then they pointed to *Louisiana World* saying, This is the case that we're going to rely on why we can bring this.

And the Fifth Circuit said two -- two reasons this doesn't fly. One is you didn't -- you didn't preserve it for appeal, but we're still going to examine it. Second is -- and Judge Smith said, Second reason is that case only allows for derivative claims by creditors' committees.

**THE COURT:** Okay. So what do you do in a case like this where your creditor committee is dissolved and has been inactive for a long time?

**MS. BREVORKA:** And I think -- I think the plan administrator is the best one to speak to that, and they've moved to appoint a special administrator --

**THE COURT:** That's if the Court allows it.

**MS. BREVORKA:** Sure. Of course.

**THE COURT:** Okay. So that's the point here. The point here is let's see who the Court determines is the best

person to move forward as the plan administrator -- or the substitute plan administrator, and then we can go forward from there, whether it's Mr. Bouchard or somebody else.  But that's what we're here to hear in terms of evidence today.

MS. BREVORKA:  Fair.  Thank you, Chief Judge Moses.

The second is the issue of the direct claims, and I would just like to bring the Court back to what is governing all of these motions before you.  That is the complaint that Mr. Bouchard's counsel chose to file, chose not to replead when he -- he -- they received motions to dismiss, and has chose to ride or die with.

And under that, we heard today that they now claim there's three direct claims that are being asserted:  Loss of business reputation, legal expenses, and the $40 million in debt in -- with the bankruptcy.  I -- I didn't hear a single com- -- paragraph from that complaint that the Court could then turn to see where this is pled, and the reality is because it's not there.  And this is something we have grappled with since I -- we've been before you on *Bouchard* now for almost a year.

Let's take legal expenses, number two.  You could see that pled in one paragraph, paragraph 166, as attorneys' fees, and, in fact, in their responsive motion, Mr. Bouchard's counsel concedes, in Footnote 58, that the natural inference is that he has incurred attorneys' fees and that, to that extent, it's not clear, please give us leave to amend.

The $40 million in debt, those were expenses incurred in -- as a purported creditor, which is still undecided, as you know. I direct the Court to the case of *In Re Lockwood Holdings*, which we discuss in our response. In that case, you had a sole shareholder, sole officer, and a creditor who claimed the same thing as Mr. Bouchard, that the harm to the estate, that it damaged him as a creditor.

And what Judge Eskridge here in the Southern district found, it reinforced the bankruptcy's decision. No, that's derivative claim. It's a harm to the estate because, as a creditor, you -- it's a harm to the estate. You're claiming you don't have more money to pay your creditors' bills. That's a derivative claim.

And the last point I'd just make is a loss of business reputation. Again, Your Honor, I direct the Court's attention, if -- if I could, to paragraphs 121, 137, 171, 173, and 203 of the complaint. These are all assertions of harm to business reputation because of the scheme to gin up more attorneys' fees, take them out of the estate, and that was the conspiracy, and that's what ends up harming him. The problem we have here is that, again, the reputational harm that's argued here is derivative to the harm to the estate.

And, Your Honor, you know this. I mean, if -- if they want leave to amend, and they want to come back and try to replead it in a direct way, that's, of course, the Court's

prerogative, but as it's pled in this governing complaint, we have derivative claims here.

And I thank Your Honor for the time, and if you have any other questions, I'm happy to answer.

**THE COURT:** Okay.  So the question here before the Court today is if the Court -- I'm not saying this is what's going to happen, but if the Court were to find that Mr. Bouchard was in the best position to represent the estate, then he would have standing to bring the derivative claims however they're pled or whatever the derivative claims are.

If he's not, then he's in a different position in terms of any claims, whether it's direct or derivative.  Fair statement?

**MS. BREVORKA:** I'm not -- so -- could you repeat yourself?  I'm sorry, that was a bit of a compound.

**THE COURT:** Sure.

**MS. BREVORKA:** Thank you.

**THE COURT:** If the Court were to find that Mr. Bouchard is in the best position to act as the substitute plan administrator, let's assume for a moment --

**MS. BREVORKA:** Sure.

**THE COURT:** -- he could bring all claims, then, on behalf of the estate?

**MS. BREVORKA:** Ah, there's a bit of a caveat there, Your Honor, and -- and we didn't get into this line of cases,

per se, but we do reference a case.  It's called --

THE COURT:  So we're back to circular firing squad --

MS. BREVORKA:  No, I don't think so.

THE COURT:  -- if the Court finds he can't win no matter what.  So it's head -- heads, we win; tails, you lose.

MS. BREVORKA:  I respectfully disagree, Chief Judge Moses.  I --

THE COURT:  So you're telling me the only one that can bring the derivative claims are the plan administrator, and -- again, this is a hypothetical.  If that plan administrator or the substitute to act in the place of a plan administrator is Mr. Bouchard, you're saying, oh, but he still can't do it.

MS. BREVORKA:  I -- it depends, and here's why, if I may.  So let's go with your hypothetical.  You appoint --

THE COURT:  Let's just do the hypothetical.

MS. BREVORKA:  Yeah.  -- Mr. Bouchard.  There is a line of Fifth Circuit cases -- and I believe we talk of two in our reply, *In Re Stockstill* and *In Re S.I. Acquisition, Inc.*, that say, okay, your plan says the plan administrator and creditors can bring claims, but the plan also has to specify the type of claims that can be brought.  It's not just any and all -- all claims come forward to the Court.  And the reason is -- the Fifth Circuit has explained in many opinions is the plan has to detail to some degree the type of claims that can be brought because when creditors agree to the plan, they have to

have an understanding of what claims would the plan administrator later pursue?

The extent to which I -- and frankly, Your Honor, I have not analyzed whether this plan would allow for a RICO claim.  I -- I honestly don't know, but that's the next consideration, if we go with your hypothetical.

**THE COURT:**  But we're not at that point yet, right?

**MS. BREVORKA:**  We're not.  Sure.

**THE COURT:**  Okay.  And so here's the other problem: So part of the complaint seems to be we don't know -- again, hypothetically, if Mr. Bouchard is the substitute plan administrator, we don't know whether he can bring any of these claims because he was improperly removed without a motion or hearing or evidence after he questioned attorneys' fees, and thereafter, as he tried to make his complaints known, steps were taken to basically preclude him from -- from being heard on all of these matters.

So now he's trying to be heard, and we're still trying to preclude him because of the plan that he was fighting all along because he was improperly removed.  So part of the problem with this case is some of the procedural posture in the bank- -- before the bankruptcy court, and part of that is affected by this improper relationship between counsel and the -- the judge. Not improper -- the relationship wasn't improper.  It was the professional relationship in the courtroom that was improper.

It doesn't matter to me what they do outside of court.  That doesn't matter to me.  I'm not trying to imply that.

So we end up going back down that whole rabbit trail.  Let's just start with one thing at a time.  Let's see who would be the appropriate plan administrator to protect any claims that PC- -- BTC may still have.

MS. BREVORKA:  Right.  And, Your Honor, I think that is well outside the bounds of where Jackson Walker's -- we're an interested party, for sure, because the right to pursue derivative claims, but that's really Mr. Gorman's bailiwick.  But --

THE COURT:  Correct.  But --

MS. BREVORKA:  -- to the point of direct claims, which we're back to our 12(b)(1) and 12(b)(6) universe, I just ask the Court -- you know, you are well aware of this.  You wrote the *Van Deelen* opinion that dealt with standing on the same issues.  Let's --

THE COURT:  That was an equity owner as opposed to a creditor, as well.

MS. BREVORKA:  Sure.  And to be fair, the creditor status is still up in the air.  It's disputed whether he's a secured or unsecured creditor, which makes a difference, but in that decision, you -- you had the complaint govern your analysis, and that is what --

THE COURT:  That was a 12(b) -- an order on a 12(b)

matter.

MS. BREVORKA:  And -- and so is our motion to dismiss. So 12(b)(1) --

THE COURT:  Right, but right now we're not hearing your motion to dismiss --

MS. BREVORKA:  Sure.

THE COURT:  -- we're just hearing in terms of who -- and --

MS. BREVORKA:  And --

THE COURT:  -- I get that.  We'll get to the 12(b) at some point for sure.

MS. BREVORKA:  Sure.  And I just wanted to address what was referenced in opening.  Thank you.

THE COURT:  Okay.  So you wanted to say anything else about the direct claims?  I think you were talking about the direct claims.

MS. BREVORKA:  Well, I just -- to the point that I -- the three prongs that were offered today, reputational harm, legal claim -- legal costs and the 40 million in debt, 40 million in debt is a creditor.  That's a harm to the estate. We -- we've discussed that.

Yeah.  The legal fees, you've got one paragraph in the complaint that reference attorneys' fees, 166, and as I mentioned, he's conceded that point in his response, Footnote 58.

And the loss of business reputation that -- I won't belabor the Court with the paragraphs, but, again, it's all intertwined with this idea of the scheme to take attorneys' fees from the estate.

THE COURT:  But is it intertwined because it was a wholly owned family business, and he was the one that spoke on behalf of the entire estate before he was removed?

MS. BREVORKA:  I don't --

THE COURT:  Does that change anything?

MS. BREVORKA:  -- think so.  I don't think so because, again, they keep --

THE COURT:  Maybe not for the creditor committee.

MS. BREVORKA:  Right.  I think the -- the pleading that's been put before you, right -- I mean, you -- we didn't choose to write this pleading.  This is the one we've been given -- is over and over again, it -- and we attach this in our original motion to dismiss reply is a chart in the appendix that shows every claim is based on this scheme to take attorneys' fees that harmed the estate, that harmed creditors.

THE COURT:  Okay.  So the question before the Court today is:  Who gets to assert those claims and how?  Mostly, who gets to assert them?

MS. BREVORKA:  And I would say that's the BTC estate.  So --

THE COURT:  Right.

**MS. BREVORKA:** Thank you, Your Honor.

**THE COURT:** Anybody -- yes, sir?

**MR. HUESTON:** Good afternoon, Your Honor. John Hueston on behalf of Kirkland & Ellis.

I'd like to begin by citing some excerpts of the record that's in the bankruptcy record that I think gives the more fulsome story about why Judge Jones ultimately, on February 26th, removed Mr. Bouchard.

So in the first-day declaration -- this is BK No. 20-34682, docket 79. There's a description of the backdrop that kind of led us to the point of bankruptcy, and that is that there had been an accident in 2017 in which two BTC ships -- where workers lost their lives, and because of that BTC lost its credentialing with a major agency called American Bureau of Shipping, ABS, and because of that, the Coast Guard wasn't going to let the ships operate.

This was causing a liquidity crunch, and this is important backdrop, and it's in the record as I cited it.

So in the first-day hearing on October 22nd, 2020, Your Honor, the AUSA representing the U.S. Coast Guard says that they've had, quote, a lot of issues with the Bouchard company pre-petition and says, quote, we certainly hope the involvement of the CRO and additional professionals will help improve the communication.

And then this continues into the November 17th, 2020,

status conference, which is docket 246-1, pages 11, line 3, to 12, line 1. When Ryan Bennett of Kirkland is describing the challenges they have getting the necessary credentialing from ABS to get the tugs back on the water, Judge Jones asks, quote, do you have a personality issue, or is it just too much history, end quote.

And Mr. Bennett doesn't push Mr. Bouchard under the bus. He says that while there have been some statements about personality, end quote, this bankruptcy is a chance for renaissance. So --

THE COURT: Where would Judge Jones have gotten the impression that there were personality issues?

MR. HUESTON: It was coming up from the AUSA and --

THE COURT: I thought that was --

MR. HUESTON: -- from the Coast Guard.

THE COURT: I thought that was issues between the Coast Guard and --

MR. HUESTON: The company. But the Coast Guard was saying at the hearing, AUSA, that they were hoping to improve the communication.

THE COURT: Right.

MR. HUESTON: I mean, that was with people there --

THE COURT: Correct.

MR. HUESTON: -- which would be Mr. Bouchard in that closely held company.

**THE COURT:** Okay. So the personality conflict wasn't between the attorney and Mr. Bouchard, it was the communication with the Coast Guard?

**MR. HUESTON:** Right. Exactly.

**THE COURT:** Okay.

**MR. HUESTON:** And then on January 20th, 2021 -- this is after BTC sues the Coast Guard and ABS, the credentialing entity, to try to force them to credential BTC's fleet, Judge Jones kicks off the hearing asking the Coast Guard AUSA, quote, is the problem current management, end quote. Counsel for the Coast Guard says, quote, it's part current management, end quote, and part operational history. And he goes on to say people have memories, and people have a hard time getting over past experiences, end quote.

At that hearing -- this is a full month before the February hearing -- there's a long discussion in that transcript, Your Honor, which I commend to the Court -- a long discussion ensues where Judge Jones expressly says that he'll remove management, if that's the problem. The AUSA then says, quote, I've offered, slash, slightly threatened to file a motion with Your Honor asking to remove current management, but he'd heard from others that it wouldn't be sufficient to resolve the problem.

Kirkland steps in and says they found no need to do that. We have a temporary alternative to the ABS credentialing

and at the hearing, then, gives credit to management for getting that alternative credentialing deal done as a rebuttal to that Judge Jones/AUSA discourse, which was moving Mr. Bouchard towards -- towards removal.

So I think this is very, very important for context, Your Honor, because this is a month before this February hearing. You have an AUSA and others suggesting that Mr. Bouchard should be removed. It's a full month before Judge Jones does so. He's engaged in this colloquy --

**THE COURT:** And so why -- why was the Coast Guard being heard in the bankruptcy matter?

**MR. HUESTON:** Because -- I don't -- it's -- they were involved because, I think, the Coast Guard's views as to credentialing was the pathway back to liquidity, right? This was going to be -- the thought was, at the time, if somehow BTC could restore its credentialing -- they had a lot of boats -- this is a matter that shouldn't have gone into bankruptcy.

So that's why the Coast Guard was involved, being questioned, and you had a very hot bench, Judge Jones, asking over and over again: Is it a management issue? Should I remove? And I had the quotes about what the AUSA himself was saying, and you have Kirkland lawyers defending Mr. Bouchard.

So -- now, by the time the February 24th and 2016 [sic] hearings come around, BTC -- there are the additional

items at this point where BTC has missed payroll and is nearing default on its DIP lending agreement.

THE COURT: Okay. So at that point, though, through the end of January -- and I think this came up in the March hearing -- they had met all of their obligations. They had met payroll, and they were -- they were fine up to that point. I think that's what was represented to this Court at the last -- at the March hearing.

MR. HUESTON: And I -- I don't -- I didn't make that representation, so I don't know --

THE COURT: No, you did not. You did not.

MR. HUESTON: Okay. And I don't know if they had, but clearly, you know, I've outlined, you know, very significant issues that the Court was hot on in terms of whether Mr. Bouchard should be --

THE COURT: He was hot based on people that didn't particularly have -- were not part of the bankruptcy. They were outside of the bankruptcy --

MR. HUESTON: Sure.

THE COURT: -- correct?

MR. HUESTON: Well, but that's --

THE COURT: So can I --

MR. HUESTON: Isn't that the whole point here? There's no tainted party, so there were important parties --

THE COURT: What do you mean there were no tainted

parties?  Of course there were tainted parties, just nobody knew they were tainted at the time --

**MR. HUESTON:**  Oh --

**THE COURT:**  -- number one, and, number two, my question -- my question to you is that -- the argument seems to be that Mr. Bouchard doesn't have standing because he's somewhat of an outsider, so to speak, in all of these proceedings since he's no longer the plan administrator or whatever, but yet a lot of these decisions were made based on information from outsiders that had no -- no place in the bankruptcy, so to speak.

They weren't attorneys for any creditor or anybody within the estate.  It was the attorney for the Coast Guard.

**MR. HUESTON:**  Your Honor, what I was responding to is, I think, the Court's appropriate wait a minute, spontaneously it appeared -- I think your impression was suddenly, you know, Mr. Bouchard is on some kind of hot seat without notice and ousted.  The record reflects that there were many inquiries by Judge Jones --

**THE COURT:**  Right.

**MR. HUESTON:**  -- for whatever reason --

**THE COURT:**  But there were no motions and no evidence taken.

**MR. HUESTON:**  Well, there was evidence taken.  He had -- he had the Coast Guard there, and he was asking the questions.

**THE COURT:**  But that wasn't evidence, that was the attorney for the Coast Guard.  That's not evidence under Fifth Circuit language.  Attorney argument is not evidence.

So witnesses were not called, they didn't give testimony under oath, and there was no motion to remove him because it sounds like, to me, from -- at that point, Kirkland & Ellis is still defending him as being the appropriate party --

**MR. HUESTON:**  Sure.

**THE COURT:**  -- to manage this estate.

**MR. HUESTON:**  And they never stopped defending him. That's what the record shows, Your Honor.

And very importantly, after the February 26th hearing where Jones, with these additional items, on his own, without a motion and not by Kirkland or anybody else, removes him, it's important to note, afterwards, Mr. Bouchard immediately retained Akin Gump as counsel.

There were statements on the record afterwards -- and this is at bankruptcy No. 20-34682, docket 604.  If you look at pages 9, line 17, to 13, line 18, there were statements on the record by his counsel about taking -- Mr. Bouchard taking on a very positive and cooperative tone.  There was no mention of professional fee objections or any suggestion that he was wrongfully ousted.

Instead, his counsel, who was there at every subsequent hearing, repeatedly explains, you know, he's working

with others -- Ray and Bennett -- and it's been a productive situation.  And in April of '21, Mr. Bouchard signs a consulting agreement with BTC where he agreed to advise the company.

So I wanted to begin with that to make sure --

THE COURT:  So let me back up for just a second.

MR. HUESTON:  Sure.

THE COURT:  So in April, after all of these complaints, so to speak, by the Coast Guard, et cetera, and Judge -- at the time, Judge Jones questioning the management of the company, there was still an agreement entered into between BTC, the estate, and Mr. Bouchard that he be a consultant for the business.

So if he's such a terrible manager of the business and he's so terrible at all of that, why enter into a consulting agreement with him?

MR. HUESTON:  Your Honor, again --

THE COURT:  Why not just let him run the company or -- or work on behalf of the bankruptcy estate?

MR. HUESTON:  In fact, it was a short-lived agreement, and it didn't work out.  But, again, that's not -- Kirkland didn't have any role in that one way or the other.

THE COURT:  Correct.  I'm just asking --

MR. HUESTON:  Yeah.

THE COURT:  -- generally, though, at some point somebody thought that it would be beneficial and that he did

know what he was doing, and they entered into this agreement.

Whether it was short-lived or not --

MR. HUESTON:  Sure.

THE COURT:  -- they had that -- that idea.  So if it was believed that he had this ability, why remove him at all?

MR. HUESTON:  Well, that's something that Judge --

THE COURT:  Only Judge Jones can --

MR. HUESTON:  -- Jones can answer, and what I tried to do was outline -- I'm not justifying any action, but the storyline really does involve several different predecessor -- predecessor chapters where there were people speaking under oath and answering questions with the judge.

THE COURT:  The attorneys -- the attorneys do not give evidence, Counsel.

MR. HUESTON:  Okay.  They were telling the Court and making representations about their issues, their interactions, and they were being asked whether he should be removed or not, and they were giving opinions on that.  Now, whether Judge Jones should have acted on that or not is a whole separate question I'm not opining on.

THE COURT:  Right.  And just for the record, let's call him former Judge Jones.

MR. HUESTON:  Sure.  Former Judge Jones, of course.

Okay.  Now, with that, let me turn to -- I'll first talk about the three bases that Mr. Bouchard claims are bases

for him to have direct standing.  Your Honor, all his claimed injuries are clearly derivative.  When you look at the relief he is seeking here, disgorgement of Kirkland's fees paid by BTC and damages for his reduced bankruptcy recovery as BTC creditor shareholder, none of that is individual to him.  It's the estate.

He mentions cost -- legal costs.  Well, first of all, he mentioned the $40 million loan obligations, and, in fact, he makes the point for us here.  In the complaint, at paragraph 3, he alleges plaintiff lost tens of millions of dollars, which he had invested through what he claimed was a fire sale of the company's assets, and he alleged the bankruptcy estate was diminished by the fees improperly awarded.

Again, that's all derivative, and when he talks like any other creditor about, I had loans or other issues and I lost it, that's all derivative of the estate.

Legal costs.  Your Honor, that's an easy one because there's not a single allegation in the complaint documenting these supposed expenses and costs.  This was the very same issue that you cited in *Van Deelen*, and you said there -- and it applies here -- a plaintiff cannot seek costs and later decide what those costs are.

He's been talking about an adversary proceeding.  The term -- the word "adversary" and "adversary proceeding" doesn't even appear in the complaint.  It doesn't appear.  So this is

all just argument since then.  That is not a basis for claiming that he has any sort of direct injury.

And then he mentions reputational harm, but, again, this is derivative.  He himself, looking at the operative complaint, calls it business reputational harm, and, again, it hinges on the same injuries to BTC.  By his own telling, defendants were targeting the BTC entity and its coffers when they, as he alleges, removed him as CEO.

And so, in other words, this was a move meant to hurt the company first and foremost, not Mr. Bouchard individually.  First, foremost, and immediate, that's what the case law looks like -- looks at to determine whether one's collateral asserted harms are, in fact, derivative, and, clearly, that's true here.

And, in fact --

THE COURT:  And so today we're here to see whether or not Mr. Bouchard can act as a substitute plan administrator to bring those claims on behalf of BTC.  That's what we're here to do today.

MR. HUESTON:  Okay.  Well, I was addressing --

THE COURT:  You were addressing the 12(b) motion, I think.

MR. HUESTON:  I am, and the standing.  And there was an argument he has basis for direct standing.  He does not, which leads us to:  Does he have derivative standing?  And, Your Honor --

**THE COURT:** So -- but that all goes back to the last hearing we had in terms of who has standing. At that point it was Portage Point as the plan administrator. That's what everybody was telling the Court, but they were conflicted out.

And so the question now: Who can act as a plan administrator to make a decision whether or not to bring any claims or not and what to do in the future?

**MR. HUESTON:** Right. And under -- Your Honor, here our position is under *Louisiana World*, it has to be a creditors' committee. That's what the Fifth Circuit has said.

**THE COURT:** Okay. So what do we do in this particular case where you really don't have one?

**MR. HUESTON:** Well, that's the interesting thing. I notice you said "really don't have one" because there -- there is one, and it has certain lingering -- lingering responsibilities. Now, I'm not the expert, and I think it is worth inquiry by the Court: Can that creditors' committee, which has some lingering duties -- why can't it be charged with re- or expanded responsibility to take on whatever the issues are here so we can get to the next stage, whether they are properly -- if you have a creditors' committee with them, whether there may still be issues moving them forward? That can be a separate item.

I agree with you, the gating issue here for the Court is, is there somebody who can -- who can possibly do this. The

law says it could be a creditors' committee, and that's it.

**THE COURT:** But it's -- could also be a substitute plan administrator, be it Mr. Bouchard or somebody else.

**MR. HUESTON:** According to *Louisiana* -- *Louisiana World*, at this point, it would have to be a creditors' committee.

**THE COURT:** So even Portage Point's -- Point -- Point's substitute administrator wouldn't be acceptable, is what you're saying.

**MR. HUESTON:** I don't think so, Your Honor. I think the Fifth --

**THE COURT:** That is exactly what you're saying. You're saying it's either the creditors' committee or no one.

**MR. HUESTON:** Right. I mean --

**THE COURT:** That's kind of what you're saying based on the --

**MR. HUESTON:** I am, and it's based on -- I want to make sure -- the *Cleveland Imaging* case, as Jackson Walker's counsel -- which is a 2022 case.

**THE COURT:** So --

**MR. HUESTON:** *Louisiana World* permits only creditors' committees to assert derivative standing on behalf of a debtor. That's what it clearly says.

**THE COURT:** Okay. So even the request by -- by counsel to allow -- is it -- let me see, the name of the actual

firm -- to be substituted for Portage Point would be inappropriate?

**MR. HUESTON:**  I -- I believe -- under *Cleveland Imaging* and *Louisiana World*, I think the Fifth Circuit has been clear on that.  It's got to be a creditors' committee.

**THE COURT:**  See, I think we're all back to that same old circular firing squad.  I really do.  Everybody -- somebody brings up a suggestion that somebody else says is not appropriate that somebody else says, well, then the third suggestion is not appropriate, and then we just -- we're going around in circles because, basically, everybody is just trying to spin this top.

**MR. HUESTON:**  Your Honor, I'm just trying to --

**THE COURT:**  We're not spinning it anymore.  We're going to decide who's appropriate in terms of bringing any claims, if there are any, on behalf of BTC because I also have it as part of the estate case -- the trustee case.  I'm sorry, I should say the trustee's case.  I know it's one of the -- the cases that's mentioned in that one.

And so the difference between that case and this one is that I have got to hear even the bankruptcy issues that may remain.  None of the bankruptcy judges will hear it.  They are totally recused on everything having to do with this bankruptcy matter.

So I've got it hear the bankruptcy stuff as well as

this overlaying, overarching civil case.

MR. HUESTON:  Your Honor, and I interpreted the circular firing squad as me just getting up and saying no matter what you suggest, I'm saying it can't happen.

THE COURT:  No --

MR. HUESTON:  I'm just --

THE COURT:  -- I'm not --

MR. HUESTON:  -- suggesting something that --

THE COURT:  I'm not saying --

MR. HUESTON:  -- could happen.

Okay.

THE COURT:  I'm not saying that.  What I'm saying --

MR. HUESTON:  All right.

THE COURT:  -- is you're get -- you're getting up and saying something different from other counsel, who's getting up and saying something different from another counsel.  The bottom line is what everybody on this side of the courtroom wants me to do is just dismiss the case and everybody walk away.  That's kind of what everybody is wanting the Court to find.

MR. HUESTON:  Well, Your Honor, I -- we're here -- we've been arguing --

THE COURT:  I know you're here.

MR. HUESTON:  I can speak on behalf of myself.  I really do not believe, just like with Andy, on there is a basis for this to proceed past a 12(b)(6).  And there is -- if you're

asking my opinion, it would be a creditors' committee could move this forward, but there is an issue here that we have briefed, Your Honor, which is that there is a debtor's release here, and the debtor's release was designed to capture known and unknown, including potential fraud.  And that debtor's release does release anything on behalf of --

THE COURT:  I understand.  But if you don't know what the fraud is, you really can't agree to that.  That would not be appropriate, and in this particular case, the fraud was at the highest level.  When you have the judicial officer that is stamping all of these orders being the one that is the -- part of the architect of the fraudulent conduct, that potentially leads to a sham hearing in all of these matters.

MR. HUESTON:  I understand, Your Honor.

THE COURT:  So that's part of the problem here is you want me to decide this based on what Judge Jones did, but these cases are being brought by what Judge Jones did and Ms. Freeman did.

And so that's the bottom line is y'all can't get out from saying Judge Jones closed this out; he signed an order; we're done because they waived all the fraud.  Well, the judge was part of the fraud.

MR. HUESTON:  Understood, Your Honor.  The attack from Bouchard is on these releases and the plan, and Section 1114 has that 180-day period to challenge fraud --

**THE COURT:** I understand. I'm at the point where I'm --

**MR. HUESTON:** Okay.

**THE COURT:** -- because I'm over the bankruptcy matter is determining whether or not Judge Jones's order should just be wiped out --

**MR. HUESTON:** Right.

**THE COURT:** -- since it's all based on fraud.

**MR. HUESTON:** I -- here's what I -- if I may, for the record, Your Honor, I believe the Fifth Circuit has spoken three separate times in published opinions that bear on this issue. *In Re Lothian Oil*, that's 508 --

**THE COURT:** Are they based on fraud by attorneys and the court?

**MR. HUESTON:** No, not by --

**THE COURT:** That's -- that's a distinguishing factor in this matter, is it not?

**MR. HUESTON:** I would argue it does not -- it is not a distinction with a difference.

**THE COURT:** It is. It is very much a distinction with a difference, Counsel.

**MR. HUESTON:** What I would argue, Your Honor, is with *In Re Lothian Oil*, with *In Re GulfStates Long Term Acute Care of Covington,* and with *In Re Apex Long Term Acute Care*, in each of those instances, there was fraud that was discovered, which

corrupted the processes, people hiding assets, other -- other issues that meant there were not fairly -- people were not treated fairly.

And the courts acknowledged, Look, this may seem unfair, but the bankruptcy code really did a balancing act.  For the purposes of closure, we have this 180-day rule, but government agencies, afterwards -- and, of course, we have the U.S. Trustee here, and Your Honor mentioned the criminal investigation.

It doesn't bind hands there, and so justice can still be met through those channels, but in the civil proceedings, I would submit, Your Honor, those three cases, that law would still apply with equal weight here --

**THE COURT:**  But it doesn't, Counsel, for one reason: Those cases suppose and the bankruptcy code is based on a fair and neutral and impartial judge overseeing the process, which you didn't have here, and that's part of the problem.  What I'm hearing all sides say:  Judge, enforce part of the order, don't let the other part of the order go, but don't just automatically throw it all out, period, is what I hear y'all say.

But the bottom line is a lot of these cases assume you have a fair and impartial judge hearing -- and whether the parties or witness commits perjury is a different situation, but here I don't know that we had that in some of these cases because there was a lack of disclosure, as required by the

bankruptcy code and the law, by the judge, as well as one of the attorneys appearing before the Court.

And so you have a bit of a distinction in that -- in that sense of those three cases. You don't have an impartial judge to oversee and say, yes, this is fair; no, this is not fair. What I've been -- the sense that I've gotten in all of the cases that have come before me, because of these facts, is you've got a bit of a rubber-stamping by the judge in terms of what is being requested depending on who the parties are, and if somebody objects to that, they get steamrolled by the court.

**MR. HUESTON:** Right. Your Honor, my last point here that I would make: The debtor's plan, that wasn't a steamrolled item. 93 percent of the members of the creditors' committee supported it, wanted it, and wanted it to move forward. There was process here.

You are right. This case does involve different facts, but I think, Your Honor, it's -- it's worth, you know, a re-review of those cases. It is another form of fraud, and I believe the code is black and white in terms of what can be done in terms of civil remedies after 180 days. It shall not be reopened as a civil matter that would affect the estate.

**THE COURT:** So -- and so you bring up a good point, Mr. Hueston, because I think everybody is on the same page with -- to one degree. Nobody wants to disrupt the original plan in terms of how the company then proceeded beyond what was

filed with the Court.  A lot of this just stems from attorneys' fees and how people were treated in the process.  It's not so much -- I don't hear either side saying throw out the baby with the bathwater here.

MR. HUESTON:  Right.  And those other three public -- published cases, I -- I believe the facts in at least two of them show, you know, massive hidden assets that resulted in a complete perversion of what happened in the confirmed plan, and the court said, Can't do anything about it after 180 days.

THE COURT:  I get that, but --

MR. HUESTON:  Okay.

THE COURT:  -- but the idea of complete perversion based on money versus justice are completely different.

MR. HUESTON:  Right, Your Honor.  Thank you.

THE COURT:  Yes, sir.  Now, we're not hearing the 12(b) right now.  I'm just --

MR. HUESTON:  Right.

THE COURT:  -- trying to determine if there's an appropriate person who can run with the ball at this point.

MR. HUESTON:  Understood.  Thank you, Your Honor.

THE COURT:  All right.

Yes, sir, Mr. Kirkendall?

Sure.  Come up -- come on up.

MR. KIRKENDALL:  (Inaudible) --

THE REPORTER:  I'm not hearing you, I'm sorry.

**THE COURT:**  He --

**MR. KIRKENDALL:**  I wanted to make -- Tom Kirkendall, again, on behalf of Elizabeth Freeman.

Mr. Hueston, Mr. Gorman, are right.  We're dealing with a confirmation order that is final and non-appealable.  Even if fraud was involved, under 1144 of the bankruptcy code, Mr. Bouchard or any other party would have had to bring a motion to revoke the confirmation order within 180 days.

**THE COURT:**  The problem is this problem wasn't discovered within 180 days.

**MR. KIRKENDALL:**  I understand that, and --

**THE COURT:**  So how does that play into this?

**MR. KIRKENDALL:**  It doesn't matter.  That's the balancing act --

**THE COURT:**  It does matter to this Court.

**MR. KIRKENDALL:**  Well, I understand, Your Honor, but from a statutory standpoint, it -- there are numerous cases that --

**THE COURT:**  Isn't there an equitable provision in the bankruptcy code as well?

**MR. KIRKENDALL:**  Well, it's -- it's interesting, but it's -- I think Mr. Hueston pointed out it's a balancing test.  Congress was basically balancing finality with regard --

**THE COURT:**  Yes.  But that, again, assumes --

**MR. KIRKENDALL:**  -- with the rights of the parties.

THE COURT:  You're right, but that still presupposes that you have a fair and detached neutral judicial officer that can evaluate these matters, and when your judicial officer isn't detached or impartial, then you have a problem.  And so that's what we have in this particular case.

So my question is:  What you're basically saying -- I think -- I think Ms. Brevorka sort of alluded to some of this, that maybe it -- the Rule 60 motion would be more appropriate to reopen some of these matters, but you can't because the -- the bankruptcy case isn't closed.  So the Rule 60 rule -- way isn't a proper vehicle.

But the bottom line is if you don't discover the fraud until after the fact, what you're saying is King's X, tough luck, and I'm saying no, not tough luck.

MR. KIRKENDALL:  It's not me, it's Congress.

THE COURT:  Well, Congress --

MR. KIRKENDALL:  Section -- Section 1144 of the bankruptcy code says that if you're going to revoke a confirmation order for fraud, you got to do it within 180 days --

THE COURT:  Okay.

MR. KIRKENDALL:  -- and that's even if the fraud is --

THE COURT:  I get that, Mr. Kirkendall, but the Court --

MR. KIRKENDALL:  Okay.  And so --

**THE COURT:** -- the Court finds that there could be equitable tolling because of later discovered fraud of this magnitude.  This is not just ordinary fraud.  This is of a different magnitude.

**MR. KIRKENDALL:** And I would -- I would encourage the Court to look into the 1144 cases.

**THE COURT:** Sure.  I will.

**MR. KIRKENDALL:** There have --

**THE COURT:** Eleven what, now?

**MR. KIRKENDALL:** There have been other -- there have been cases that have been decided involving fraud --

**THE COURT:** You said 11 what?

**MR. KIRKENDALL:** 1144 of the bankruptcy code.

**THE COURT:** All right.

**MR. KIRKENDALL:** There have been cases involving fraud discovered afterwards; doesn't make any difference.

But my main point is this --

**THE COURT:** Uh-huh.

**MR. KIRKENDALL:** -- you have very well set out today that you're not comfortable with what you perceive as a conflict of interest with regard to the plan administrator because they were part of the lawsuit and that they were working with the defendants.  That's fair.

Mr. West made the same point when he spoke, but it was interesting because he had his blinders on, and Mr. West refuses

to look at the same or worse conflicts of interest that his client has with being the plan -- with being the plaintiff pursuing these derivative claims.

So my suggestion -- and I haven't suggested this to any of the parties, but my suggestion to the Court is you have the power to appoint a special master either --

THE COURT:  Why do I need to do that?  I can hear it myself.

MR. KIRKENDALL:  Well, no, I didn't mean --

THE COURT:  You're saying a master to determine --

MR. KIRKENDALL:  I didn't mean to hear anything.  I -- you can appoint a special master to make a recommendation of an independent person that the Court is comfortable with --

THE COURT:  I'm going to make that decision, Mr. Kirkendall --

MR. KIRKENDALL:  Okay.

THE COURT:  -- and I'm going to make it after hearing evidence.  I don't need a special master.  I -- I have -- one of the things that I have noticed in all of these hearings is everybody is so quick to want to have me not make any decisions.  Either do a limited remand to the bankruptcy judge; have a special master; but, Judge, we don't want you to hear this matter.  I'm going to hear it, and I'm going to make the decision.

MR. KIRKENDALL:  I wasn't suggesting for the special

master to hear anything.  What I was suggesting a special master for was you expressed a concern that the bankruptcy bar was too clubby to appoint a -- a independent fiduciary to evaluate and pursue the derivative claims in this matter.  All I was trying to say is, okay, either you appoint that person or have a special master make a recommendation to you who it ought to be.

THE COURT:  I'm going to do it today.

MR. KIRKENDALL:  Okay.

THE COURT:  I'm just saying everybody is very quick to want to have me removed as hearing or making any decisions in any of these matters when the whole point of my trip here was to take evidence as to whether or not Mr. Bouchard could or could not stand in as a substitute plan administrator, not any other issues at this point.

But I -- last -- last -- in March -- I keep wanting to say last month.  I forget we're in May.

In March, the recommendation was send it back to Judge Lopez.  When that didn't work, now it's possibly send it to a special master to make a recommendation to the Court who would be the appropriate substitute plan administrator.  I can make those decisions, and I can do them today after hearing evidence.

MR. KIRKENDALL:  You can.

THE COURT:  So we can hear evidence.

MR. KIRKENDALL:  Yeah, you can.  The only reason I

suggested that, Your Honor, is -- is that neither of these parties are conflicted.  They -- they're not appropriate parties as a result of their conflicts.

THE COURT:  I'm not conflicted either.  I can make the decision --

MR. KIRKENDALL:  That's right.

THE COURT:  -- because I'm not conflicted.

MR. KIRKENDALL:  Yeah.  But my point is, is you ought to be the one, then, who is making the -- the recommendation to the plan agent, This is who you hire.

THE COURT:  I intend to make some findings.  I want to hear evidence as to who would be the best person to proceed in the place of the substitute plan administrator -- or the plan administrator.  That's what today is all about.

MR. KIRKENDALL:  Okay.

THE COURT:  Yeah.

MR. KIRKENDALL:  Thank you, Your Honor.

THE COURT:  Yeah.

Okay.  Anybody else want to be heard before we hear from the first witness?

MR. WEST:  Your Honor, if I could respond to a few issues --

THE COURT:  Well, this is opening.  This is not closing yet.  Let's --

MR. WEST:  Certainly, Your Honor.

*Mr. West Direct of Morton S. Bouchard, III*

THE COURT:  Let's call your witness.

Go ahead and call your witness.

MR. WEST:  Your Honor, plaintiff call Mr. Morton Bouchard.

THE COURT:  Okay.  I'm going to kick out Mr. -- I think I can see the witness better there.

*(Sotto voce discussion between the Court and court reporter.)*

MR. WEST:  May I proceed, Your Honor?

THE COURT:  You may.

**MORTON S. BOUCHARD, III, DULY SWORN, TESTIFIED:**

**DIRECT EXAMINATION**

BY MR. WEST:

Q   Mr. Bouchard, can you state your name?

A   Morton S. Bouchard, III.

Q   And what is your relationship to the Bouchard Transportation Company?

THE REPORTER:  I'm sorry, one second.

THE COURT:  We may need to speak a little bit louder because I'm having trouble hearing you.

Well, yeah, we need -- Ms. Mendoza, if you would swear the witness.

*(Witness sworn.)*

THE COURT:  Okay.  Can everybody hear him?  Back here, a little bit?

*Mr. West Direct of Morton S. Bouchard, III*

Just speak up loudly.

**THE WITNESS:** Okay.

**THE COURT:** Okay.

BY MR. WEST:

Q   Mr. Bouchard, can you state your name again?

A   Morton S. Bouchard, III.

Q   And what is your relationship to Bouchard Transportation Company?

A   The president and CEO of the company and fourth generation to own it and run it.

Q   Fourth generation.

When was Bouchard Transportation Company started?

A   1918 by my great-grandfather, Captain Fred Bouchard.

Q   And who has run Bouchard Transportation Company from 1918 until 2021, when you were removed as CEO?

A   It was always ran by a Bouchard family member.  It was Captain Fred Bouchard.  He passed it on to my grandfather, Morton S. Bouchard, Sr., otherwise known as Buster Bouchard in the industry.

He passed it on to my dad, Morton S. Bouchard, Jr., and my father passed it on to myself, Morton S. Bouchard, III.

Q   When did you start working at Bouchard Transportation?

A   Wow.  I started working there when I was in high school as -- in the summers driving the company trucks, delivering supplies to the tugs and barges throughout New York Harbor.

*Mr. West Direct of Morton S. Bouchard, III*

Then, in college, I worked on boats for a full summer.  Went from Montreal to Oswego, New York.

Then, the following summer, I was the port captain, and the following summer, I worked as a night dispatcher filling in for the night dispatchers when they went on vacation.  And then, when I graduated college, I worked in the office dispatching, sales, and going around with my father learning the entire business.

Q    And when did you become the CEO of BTC?

A    I became the president and CEO of Bouchard Transportation in 1990, '91, or '92.  It was just after the Oil Pollution Act of 1990 was passed.  My father had a very hard time with it, of the criminal liability for the men on the boats, and at that time in the company, it was told me that I would have to make the decision what to do with the company because the company would be debt free.

And we always operated the company to invest the profits in new equipment, better equipment, to pass it on to the industry.  But he came up from Florida and led the legislation, and he said he wanted out.  He was selling the company, and we're getting out, and I listened to him.

He's my father, my boss, and I said, "Well, I negotiated this legislation with AWO.  I was on the committee.  I know what's in the legislation.  We can work with it.  Let's just build double hulls.  It's 1990."

*Mr. West Direct of Morton S. Bouchard, III*

Well, we ended up building two double hulls and became the largest double hull operator in the company, and at that point he decided to retire.

Q   And what were your obligations and responsibilities as CEO of BTC?

A   To manage the company in the safest way possible and continue with the plan of the company -- the family of the company to reinvest the profits in new equipment and better equipment to better service our customers.

Q   In your opinion -- well, let me step back a second.

Who -- who owns -- who owned BTC?

A   It was owned by trusts of the family and myself.

Q   Was it a publicly traded company?

A   No.  It was 100 percent private.

Q   And 100 percent private, was that owned by your family?

A   Yeah.  Matter of fact, there was one point in time I wanted to go public, and Lehman Brothers -- a lot of the management at Lehman Brothers lived in a town I did.

So I was thinking of going public, and I flew down to Florida and met with my father about it.  He said, "No way. We're not doing that.  We're not doing it."

And a week later I was in Lehman's office with Joe Gregory, who was the chairman of Lehman, and he said, "We're not going to let you go public.  We'll block this on the street.  You're family owned.  You got a great business.  You're not doing

*Mr. West Direct of Morton S. Bouchard, III*

this," and that went out the window, and we never did it.

So we were 100 percent family owned up until the bankruptcy.

Q    In your opinion, is there anybody who -- who knows Bouchard Transportation Company's business practices and business practice history better than you?

A    No.  There's -- there's nobody.  Matter of fact, as the company grew and got so big, we would do evaluations on the company every two or three years by MPI to make sure that the company was set up to go to my two boys, who were in college, and that we would have enough money to pay the estate taxes in New York, which is in federal.

One section of the last MPI evaluation that was in there -- was two big pages -- was the importance of me remaining in the company and active in the day-to-day operation of the company until my boys came of age, through the vast knowledge of every aspect of the business that I had, from accounting to shipyard to operations to sales to insurance, which is very important also.

Q    When it was determined that Bouchard Transportation Company was going to file bankruptcy, how did you get in contact with Kirkland & Ellis?

A    I called a gentleman named Todd Hornbeck from Hornbeck Offshore Marine, who I knew through the industry, who had filed for bankruptcy prior.  And I said, "You filed for bankruptcy.

*Mr. West Direct of Morton S. Bouchard, III*

Can you give me any recommendations? I'm thinking of doing it. I'm not sure I'm going to do it. I'm getting a lot of recommendations to do it."

And he mentioned Ryan Bennett at Kirkland. He said, "He's -- knows maritime. He's great. He was our guy. Why don't you give him a call."

And I guess it was a day or two later I called Ryan Bennett and told him that -- would he be interested in representing the company if we file for bankruptcy, and what were the steps to do it. And Ryan was very informative, and I made a decision to do it, and he told me that we would file in Texas because he had a judge that knew maritime and was very favorable to maritime and would be an easy bankruptcy, and I said, "Okay. Let's do it."

And then he also said that he had to hire Jackson Walker. I said, "Well, I don't understand why I need two law firms. We're small. It's a family owned business. We don't need two," and he mentioned they had the relationship with Judge Jones.

I said, "Well, this is a new arena for me. I've never been in this. Okay. Let's -- let's get it going."

Q   Where was Bouchard Transportation Company formed?

A   New York.

Q   And at the time that the bankruptcy was filed, where were you a resident?

A   New York.

Q   And was there any explanation or justification given to you

*Mr. West Direct of Morton S. Bouchard, III*

by Mr. Bennett, other than a friendly judge, for filing the Bouchard Transportation Company, a New York-based company -- in filing that bankruptcy in Houston, Texas?

A   He asked me how much business I thought we did in the state of Texas and in Houston.  I said we had a lot of customers down there.  The Gulf Coast fleet floated some vessel discharged on the Houston Ship Channel, so we did a little bit.  And he said, "Okay.  That qualifies enough to file in Texas because we have a favorable judge."

Q   And you mentioned it was -- was it at Mr. Bennett's recommendation that Jackson Walker was also retained?

A   Yes.

Q   Did Mr. Bennett or any attorney at Kirkland & Ellis ever advise you of a relationship between Ms. Freeman and former Judge Jones?

A   No.

Q   Did any attorney at Jackson Walker ever advise you of a relationship between Ms. Freeman or former Judge Jones?

A   No.

Q   Have you ever filed a bankruptcy in Houston before?

A   No.

Q   Have you ever served as a professional in bankruptcy in Houston or elsewhere?

A   No.

Q   Now, you were removed from your role as CEO in February of

*Mr. West Direct of Morton S. Bouchard, III*

2021, right?

**A**   Yes.

**Q**   And there was some discussion today that you contacted Akin Gump after -- after that removal; is that right?

**A**   Well, Ryan Bennett was representing myself and Bouchard Transportation in bankruptcy.  So as it was leading up to that, Ryan Bennett kept telling me I should get another counsel, get another counsel.  And when I was dismissed, a family attorney, Rashad Wareh, had said, "You should look at Akin Gump, Phil Dublin."

So I called Philip and retained him, and Judge Jones said, "That was a smart move, you getting your own attorney."

When Judge Jones removed me, I told Phil I wanted to appeal that decision right away, it was wrong, and he said he wouldn't do it because, "Judge Jones would eat me up and chew me out. He's a litigator.  He's a past litigator, and he'll ruin your legacy.  I'm not going to do it."

At that point I had to go out and get another attorney, and I had got Doug Spelfogel, who was at Foley.  Doug went -- left Foley and went to Mayer Brown.

**Q**   Had you had prior conversations with Judge Jones at the outset of the bankruptcy?

**A**   Yeah.  The day we filed, there was a hearing, and I was in the Melville office in the boardroom with the CFO, and we were on speaker.  And he said, "Mr. Bouchard, I know you and your

*Mr. West Direct of Morton S. Bouchard, III*

reputation is stellar in the oil company.  I know your company, and the company's reputation is stellar in the industry.  This is the easiest bankruptcy to come across my desk.  I expect you to be out of this in no more than a couple months, and let's get the boats up and operating."

I said, "Thank you very much, sir.  I look forward to getting it done."

Q   Was it your intention, throughout the course of the -- the short time that you were in charge of the company during the bankruptcy, to have the company come out of bankruptcy as an operating entity?

A   100 percent.  I even told the vendors that we were coming out 100 percent, and I had a plan that was laid out and being executed by the operation staff, which boats were coming out of first out of layup, and which boats were coming out of second, putting it to the cleaning plant and then shipyards to be inspected by ABS and the Coast Guard, and this plan was being pretty well executed.

And once I was dismissed out of the company, that plan was stopped.  It was shut down by Portage, Matt Ray.  People in the office called me up, and they said, "This is unbelievable."

Matt Ray told them, "We're going to prepare for putting the boats in layup."  They said, "What type of layup?  There's two type of layups, permanent layup or day-to-day layup."

He asked what the differences are.  They explained to him.

*Mr. West Direct of Morton S. Bouchard, III*

He said permanent layup, which meant gas-freeing the boats, getting everything off -- he had no idea what he was doing, and I -- boats just -- everything stopped right there.

Q   Now, your plan to continue the operations of BTC during and, hopefully, coming out of the bankruptcy, in your belief, was that in the best interests of both the company, as well as its employees and creditors?

A   It was the best interest of, yes, all -- the employees, the creditors, and the company, and the employees and the creditors first.  And the plan that I laid out had individual boats being cleaned in a cleaning plant and then inspected by ABS and the Coast Guard, and then put into operation.

I was dealing with the customers on a day-to-day basis, telling them when we would get back in operation because the industry needed us, we were so big.  And if that plan had been followed and executed, we never would have -- we still would have came out of bankruptcy.

Once he dismissed me out, there was no doubt the company was going into liquidation.

Q   Now, you understand that going into bankruptcy and -- and as the -- the post-effective-date debtor Tug Robert J. Bouchard, that continuing entity, they -- there are a number of creditors and interested parties that have been involved in the bankruptcy; is that right?

A   Yes.

*Mr. West Direct of Morton S. Bouchard, III*

Q   You understand that -- that you are one of those creditors, right?

A   Yes.

Q   If -- if the Court appoints you to a plan derivative standing to represent claims derivatively that belong to the Bouchard Transportation Company estate, are you willing and able to subrogate your personal interests to the best interests of the estate and other creditors and other interested parties in the bankruptcy?

A   The best interest of the estate and other parties in the bankruptcy is of my best interest.  These creditors dealt with our family for over 102 years.  They knew me personally.  I know them personally.

I kept telling them, "You're gonna get paid 100 percent, but work with me right now.  I'm telling you right now I'm not walking away from anything.  I put $40 million of my own money back into this company to make sure we weren't walking away."

The day he dismissed me is when these creditors knew they weren't going to get paid 100 percent.

Q   And so if you were appointed to serve as the special independent plan administrator to pursue claims against defendants that are the defendants in the lawsuit that you've brought, are you willing and able to put the best interest of the Bouchard Transportation Company estate over and above your personal interests in the pursuit of those claims?

*Mr. Hershey Cross of Morton S. Bouchard, III*

**A**   Yes.

         **MR. WEST:**  Your Honor, I'll pass the witness.

         **THE COURT:**  Okay.  Do you -- go ahead.  Go ahead.

         **MR. HERSHEY:**  Good afternoon, Your Honor.  Sam Hershey from White & Case for the plan administrator.

                    **CROSS-EXAMINATION**

**BY MR. HERSHEY:**

**Q**   Mr. Bouchard, just how many times have you served as a litigation trustee on behalf of a bankruptcy estate?

**A**   Never.

**Q**   Okay.  How many bankruptcy cases have you been involved in?

**A**   None.

**Q**   Okay.  So your counsel described you as an outsider to the bankruptcy process.  Would you agree with that characterization?

**A**   Not anymore.

**Q**   Okay.  But this is the only bankruptcy case you've ever been involved in, right?

**A**   Hopefully, the last one.

**Q**   Okay.  And to be clear, have you ever witnessed a litigation trustee asserting claims on behalf of a bankruptcy estate?

**A**   No.

**Q**   Okay.  What duties exactly does a litigation trustee owe to the bankruptcy estate?

**A**   I don't know.

**Q**   Okay.  So I take it, then, you haven't given any

*Mr. Hershey Cross of Morton S. Bouchard, III*

consideration to whether you can satisfy the duties that a litigation trustee owes to the bankruptcy estate, right?

**A**   Can you repeat that?

**Q**   I take it, since you don't know what the duties are that a litigation trustee owes to the bankruptcy estate, that you have not given any consideration to whether you could satisfy those duties; is that fair?

**A**   Yes, that's fair.

**Q**   Okay.  Do you know what a conflict of interest is?

**A**   Absolutely.

**Q**   Okay.  What's your understanding is a conflict of interest?

**A**   Conflict of interest is if you make a decision on a proposal or whatever, that you can't look at both sides.  You've got to do what's fair for -- for the -- what's in front of you.

**Q**   Okay.  To -- but to be clear, a conflict of interest arises when a party has an interest that is adverse to -- to another duty that he has; is that correct?

**A**   That's fair enough.

**Q**   Is that your understanding?

**A**   Yes.

**Q**   Okay.  Do you have any understanding of whether the law provides that a party acting as a litigation trustee can have a conflict of interest?

**A**   Can you repeat that?

**Q**   Sure.  I'll reframe it a little.

*Mr. Hershey Cross of Morton S. Bouchard, III*

Do you have any understanding regarding whether the law provides that a party acting as a litigation trustee can have a conflict of interest with a bankruptcy estate that it represents?

A   No, I don't.

Q   Okay.  You understand that, as litigation trustee, you will be directing your counsel -- assuming this is the counsel who represents you in that capacity -- in terms of pursuing the estate claims and causes of action, right?

A   Correct.

Q   Okay.  So what steps do you intend to instruct your counsel to pursue as litigation trustee?

A   It would depend on what -- what came up.  I can't speculate.

Q   Okay.  So I take it, then, you haven't given thought to what steps you might instruct your counsel to pursue in that capacity?

A   I can't speculate because I don't know what would come up.

Q   Okay.  Now, at the time of the debtors' bankruptcy filing, you were the CEO and sole shareholder of the debtors, right?

A   Correct.

Q   Okay.  And while you were CEO and sole shareholder, the debtors filed for bankruptcy, right?

A   Yes.

Q   Okay.  And the debtors lost their American Bureau of Standards accreditation, right?

*Mr. Hershey Cross of Morton S. Bouchard, III*

**A**    Yes.

**Q**    Okay.  Do you have an understanding regarding whether, in your role as CEO and sole shareholder of the debtors, you owed fiduciary duties to the debtors?

**A**    I owed fiduciary responsibilities?

**Q**    Yeah.

**A**    No.

**Q**    Just to be clear, you don't understand whether you owed fiduciary duties, or you believe you did not owe fiduciary duties?

**A**    I don't believe I did --

**Q**    Okay.

**A**    -- if it was -- it was the corporation.

**Q**    Well, you're aware that an adversarial proceeding has been filed against you alleging that you breached fiduciary duties to the debtors, right?

**A**    Correct.

**Q**    Okay.  And that case remains pending, right?

**A**    It was settled.

**Q**    It's your understanding that there is not a pending litigation against you regarding your breach of fiduciary duties?

**A**    No, I don't know that.

**Q**    Okay.  Did you review the lawsuit that was filed against you?

*Mr. Hershey Cross of Morton S. Bouchard, III*

A    Yes.

Q    Okay.  And you understand that lawsuit alleges that you committed waste of corporate assets, right?

A    Alleges.

Q    Yeah.

     Is that yes?

A    Yes.

Q    Okay.  And alleges misuse of corporate funds?

A    Alleges.

Q    Okay.  It alleges mistreatment of employees, right?

A    Alleges.

Q    Okay.  It alleges that you put your personal interests above those of the debtors, right?

A    Alleges.

Q    Okay.  And alleges that, as a result of this conduct, you caused harm to the debtors, right?

A    Alleges.

Q    Okay.  Now, let's be clear.  You, at -- in acting as litigation trustee, you will seek standing to bring estate claims and causes of action, right?

A    Right.

Q    What is your understanding of an estate claim?

A    It's a claim against the estate of Bouchard Transportation.

Q    It's a --

A    Monies --

*Mr. Hershey Cross of Morton S. Bouchard, III*

Q    -- claim --

A    Monies --

Q    -- against --

A    Monies that are owed.

Q    Sorry.  Say that --

         **THE REPORTER:**  I'm sorry?

         **THE WITNESS:**  Monies that are owed.

**BY MR. HERSHEY:**

Q    Okay.  Do you understand that an estate claim is brought on behalf of all creditors of the debtor entity?

A    Yes.

Q    Yeah?  Okay.

     And these are the same creditors on whose behalf this lawsuit against you alleging fiduciary duties was brought, right?

A    I didn't know that.

Q    You didn't understand that the lawsuit brought against you was brought on behalf of the creditors of the debtors?

A    No.

Q    Okay.  Well, just to be clear -- so we spoke for a -- conflicts of interest.

     Is it your position that you really are the proper party to sift the evidence and determine who is at fault for the harm the creditors suffered in these cases?

A    100 percent.

*Mr. Hershey Cross of Morton S. Bouchard, III*

**Q**   Okay.  So to be clear, if you can't find evidence indicating that it wasn't a RICO scheme between Kirkland & Ellis and Jackson Walker that caused harm, but actually your conduct that caused harm to the debtors, are you going to pursue claims against yourself?

**A**   I can't speculate what I'm going to do when things come up.

**Q**   Okay.  But you're the appropriate person to make the decision what to do in that situation when there's evidence of your fault and not Kirkland & Ellis?

**A**   I can't speculate on that.

**Q**   Okay.  Now, you were removed as CEO during the bankruptcy case, right?

**A**   Correct.

**Q**   And it's your position that that removal was improper, right?

**A**   Correct.

**Q**   Is it your position that you are the proper person to look at whether that removal of you as CEO was improper?

**A**   100 percent.

**Q**   Okay.  And it's your position that you are the proper person to determine whether your removal as CEO caused harm to creditors?

**A**   100 percent.

**Q**   Okay.  You know who Matthew Ray is?

**A**   Yes, I do.

*Mr. Hershey Cross of Morton S. Bouchard, III*

Q   You understand he's acting as the plan administrator for the debtors?

A   Yes, I do.

Q   Okay.  And you understand, perhaps, that he owes fiduciary duties to the debtors in that role?

A   Yes.

Q   Okay.  Do you understand that Matthew Ray has recognized a potential conflict that would prevent him from bringing estate claims and causes of action in this case?

A   No.

Q   Okay.  Do you understand that, in recognition of that potential conflict, Mr. Ray has sought to appoint a third party completely uninvolved in these cases to take over that role and bring estate claims and causes of action?

A   No.

Q   Okay.  Do you know who Matthew Dundon is?

A   No.

Q   Okay.  Do you understand that Mr. Dundon has decades of experience in bankruptcy cases?

A   No.

Q   Did you know that he served as a litigation trustee many times before?

A   No.

Q   Okay.  And you're here to present evidence.  Do you have any evidence that Mr. Dundon has any sort of conflict of -- that

*Ms. Brevorka Cross of Morton S. Bouchard, III*

would prevent him from serving as litigation trustee for estate claims and causes of action in this case?

A    I don't know what his experience is, so I can't answer that.

Q    Okay.

        **MR. HERSHEY:**  No further questions.  Thank you.

        **THE COURT:**  Ms. -- Mr. -- who else?  Mr. Hardin or Ms. Brevorka, do you want to ask any questions?

    *(Sotto voce discussion between Mr. Hardin and*

    *Ms. Brevorka.)*

**CROSS-EXAMINATION**

**BY MS. BREVORKA:**

Q    Good afternoon, Mr. Bouchard.

    Could you explain what claims you've made on the underlying bankruptcy proceeding?

A    Claims --

Q    Creditors' claims.

A    -- I have made on behalf of my family?

Q    Yes.

A    For the $40 million of loans that I gave to the company that Matt Ray signed a tax return saying loans to officers that -- that I never got back from attorney fees and damage to my reputation in the industry.

Q    So the -- the claims that you've -- you've entered -- and those are being contested by other creditors.  They've objected to them, right?

*Ms. Brevorka Cross of Morton S. Bouchard, III*

**A**   I don't know that.

**Q**   And have they been settled at this point?

**A**   No.

**Q**   So they're still pending?

**A**   My claims?

**Q**   Yes.

**A**   Yes.

**Q**   Okay.

     **MS. BREVORKA:**   Thank you very much.

     **THE COURT:**   Let me clarify:  Are you saying that's what's pending before the bankruptcy --

     **MS. BREVORKA:**   Correct.

     **THE COURT:**   -- what was -- which, now, I'll have to hear?

     **MS. BREVORKA:**   Correct.

     **THE COURT:**   Okay.  Okay.  Just wanted to double-check.

     **MS. BREVORKA:**   Yes.

**BY MS. BREVORKA:**

**Q**   And I guess, to be clear, so are you aware -- you're aware of the objections that have been raised by other creditors to your assertion that you're a secured creditor?

**A**   No, I'm not.

**Q**   Have your claims been settled in any way, deemed secure or unsecured, at this point?

**A**   They're -- no, they have not.

*Mr. Hueston Cross of Morton S. Bouchard, III*

Q   They're still pending?

A   Yes.

Q   Thank you.

THE COURT:  Okay.  Mr. Hueston?

**CROSS-EXAMINATION**

BY MR. HUESTON:

Q   Good afternoon, Mr. Bouchard.

A   Good afternoon.

Q   I realize you're not going to remember everything about your filed complaint, but just -- hopefully, to speed things up, I'm going to read a paragraph, and tell me if it sounds about right to you.

So paragraph 68 of your complaint states:  (As read) After Chapter 11 cases were filed, with the costs of proceedings mounting, Mr. Bouchard sought to compel Portage Point and BTC's other professionals to submit supporting invoices for his review prior to payment to manage costs, which were spiraling out of control.  This request was rejected out of hand by Bennett of Kirkland & Ellis.

Does that sound about right?

A   That sounds correct.

Q   Okay.  And you heard your attorney represent here, Mr. Clore, that within a week of complaining about professional fees, you were removed.

You would agree with his statement?

*Mr. Hueston Cross of Morton S. Bouchard, III*

A   The time frame, I can't remember, but it was somewhere in that frame, yes.

Q   Okay.  Now, subsequent to that February 26th hearing, you did retain new counsel at Akin Gump, right?

A   Correct.

Q   Okay.  And Akin Gump was on board by the March 2nd hearing that followed, correct?

A   I believe so.  I don't remember 100 percent.

Q   Okay.  And do you recall, at that March 2nd hearing -- and this is at page 11 of the transcript from that hearing, your counsel said -- this is after your removal.

    (As Read) At the end of the day, Your Honor, we're all hopeful that Your Honor's order is going to result in greater transparency, greater cooperation, and a greater focus on the company's emergence.  Hopefully, one is a going concern.

    Do you remember them saying that?

A   Yes, I do.

Q   Okay.  And you'll also remember Akin Gump came on for you by March 2nd.  You didn't fire them until about June 2nd.  Does that sound familiar?  That's what the docket reflects.

A   I don't remember what the exact date was.

Q   Sound about right, about three months, though?

A   I can't say.

Q   Okay.  I'll submit that's what the docket reflects.

A   Okay.

*Mr. Hueston Cross of Morton S. Bouchard, III*

**Q**    And you'll remember that you went through two more changes of counsel after that.

You hired Foley & Lardner for a while.  Do you remember that?

**A**    That was Doug Spelfogel.

**Q**    Okay.  And then you hired Mayer Brown, right?

**A**    Yes.  Doug Spelfogel.

**Q**    Okay.  You followed him through those firms?

**A**    Let me -- let me just explain how that happened.

**Q**    Sure.

**A**    I hired Doug Spelfogel with Foley.  Doug Spelfogel lives on Long Island.  I had a nice relationship with him.

He called me up and said he was moving firms to go to Mayer Brown, and if he [sic] wanted me [sic] to continue representing him [sic], we had to take certain steps.  I said I did.

And he went to Mayer Brown, and he represented me at Mayer Brown with Charles Kelley.

**Q**    Okay.  And you were happy with his representation?

**A**    I wouldn't say happy.

**Q**    You didn't fire him?

**A**    No, but there was a -- a lot of discussions about it with him.

**Q**    Okay.  So --

**A**    You don't just fire attorneys, you know.

**Mr. Hueston Cross of Morton S. Bouchard, III**

Q   Well, you did, sir.  You fired Akin Gump.

A   Well, I fired Akin Gump because he wouldn't appeal Judge Jones's decision because he's afraid of Judge Jones.  He said the guy's going to eat him up.  He -- matter of fact, he said he's like a mobster.

Q   Okay.  And what do you remember -- was it Akin Gump or subsequent counsel who challenged the exculpation clause?  Who did that for you?  That was a challenge to Judge Jones.

A   That was -- the exculpation was done by Doug Spelfogel.

Q   Okay.  And that's -- you chose, with your counsel, to challenge the exculpation clause, right?

A   Correct.

Q   And that's because you asserted that it was overbroad in certain respects, right?

A   Correct.

Q   You did not choose to challenge the debtor's release, did you, sir?

A   I don't remember.

Q   Right.

    You didn't, right?

A   I don't remember.

Q   Okay.  And at no time did Akin Gump or any of the other attorneys, whether they went to Foley or to Mayer Brown later in the succeeding months -- not once, in any subsequent hearing or in any motion, did you, through your attorneys, raise an issue

*Mr. Hueston Cross of Morton S. Bouchard, III*

about Kirkland's fees, did you?

**A**   Yes.  I spoke to them about it all the time.

**Q**   Okay.

**A**   Matter of fact, I said to them these fees are ridiculous.

**Q**   Sir, you can't recall, at any hearing, your attorneys raising any issue about Kirkland's fees, right?

          **THE COURT:**  Counsel, he's not responsible for what the attorneys said.  Why are you impeaching him with something that's not his statement?

          **MR. HUESTON:**  Well, Your Honor, he's the client, and --

          **THE COURT:**  But it's not his statement.

          **MR. HUESTON:**  Okay.  I think -- I'll move on.  That's fine.

**BY MR. HUESTON:**

**Q**   Sir, you do remember, when you were removed on February 26, at that hearing an attorney for Wells Fargo spoke up.  Do you remember that?

**A**   Yes, I do.

**Q**   And Wells Fargo was one of the largest creditors or the largest creditor?

**A**   The only creditor.

**Q**   Okay.  They supported your removal.  Do you remember them saying that?

**A**   Yes, I do.

*Mr. Kirkendall Cross of Morton S. Bouchard, III*

**Q**   Okay.

**THE COURT:**  Mr. Hueston, what hearing was that at?

**MR. HUESTON:**  That's the February 26th hearing.

**THE COURT:**  Okay.

**MR. HUESTON:**  And that's all the questions I have. Thank you.

**THE COURT:**  All right.  Mr. Kirkendall, do you have any questions of this...

**MR. KIRKENDALL:**  Just a couple, Your Honor.

**THE COURT:**  Okay.

### CROSS-EXAMINATION

**BY MR. KIRKENDALL:**

**Q**   Mr. Bouchard, you stated that you recall --

**THE REPORTER:**  I'm sorry, I'm not hearing you.  I'm sorry.

**MR. KIRKENDALL:**  Oh, I'm sorry.

**BY MR. KIRKENDALL:**

**Q**   Good afternoon, sir.

**A**   Good afternoon.

**Q**   You stated that you recall the hearing in which you were -- were removed as the CEO of the debtor, correct?

**A**   Never forget it.

**Q**   Okay.  And you recall the order that was entered removing you, do you not?

**A**   Yes, I do.

*Mr. Kirkendall Cross of Morton S. Bouchard, III*

Q   And -- and for the record, that's docket No. 569 in case No. 20-34682, Bouchard Transportation, Inc.

Do you recall the provision in that order that allowed you to, in the words of -- of Judge Jones, seek appropriate relief with regard to the order?

A   No.

Q   So you don't recall this sentence in the first paragraph -- the first numbered paragraph:  (As Read) For the avoidance of doubt, this order shall be without prejudice to Mr. Bouchard's right to seek appropriate relief from the Court?

A   I do remember that to the con- -- context that it opened it up for if I could appeal it, and when I told Akin Gump I wanted to appeal it, that's when they told me, "Judge Jones would chew me up and spit me out.  He is a litigator.  He will ruin your legacy.  Don't do it," and that's when I went looking for a new counsel.

Q   Okay.  So that's an appeal, but this isn't limited to an appeal.

Did you ever ask Judge Jones for -- that you wanted -- you wanted to be back in management?  Did you ever make any request of Judge Jones --

A   I'm glad -- I'm glad you asked that because it's very important.  Not only -- I didn't ask Judge Jones because I never wanted to approach the bench, but I asked Ryan Bennett several times.  I said, "This is wrong.  You got to get me back in

### Mr. Kirkendall Cross of Morton S. Bouchard, III

charge," and he came back to me every time and said, "I can't represent you anymore.  You're out of the company.  You have nothing to do with it.  I'm not taking your phone calls."

Q   Did you take -- did you get another attorney to make a request of Judge Jones --

A   I got --

Q   -- in that regard?

A   I got Doug Spelfogel.

Q   Did Judge -- Doug Spelfogel do that?

A   At that point it was so far gone, he said we have to concentrate on other areas.

Q   Okay.  So when did you tell Judge Jones that the attorneys' fees were out of hand?

A   I never told Judge Jones directly.  I told Ryan Bennett.

The conversation with Ryan Bennett was very pleasant, and I said to him very clearly -- I said, "Ryan, these fees are getting ridiculous."  I said, "We can't manage these boats back in the water with these fees.  So every Friday, I'd like you to send me an invoice for the week's work for all the professional fees.  By the following Monday, we'll look at it and tell you what we're paying.  What we can't -- we're not going to pay everything 100 percent, but I assure you as I'm alive you're going to get paid 100 percent, as everybody else is, once this company's back up and operational."  He said, "That's not going to work."

*Mr. West Redirect of Morton S. Bouchard, III*

Q   Just so I understand, you -- in answering my question, you never stated to Judge Jones that you were concerned about attorneys' fees?

A   I never spoke to Judge Jones.

Q   Okay.

MR. KIRKENDALL:  Pass the witness, Your Honor.

THE COURT:  Okay.  Any redirect limited to the various crosses?

MR. WEST:  Just a couple questions, Your Honor.

## REDIRECT EXAMINATION

BY MR. WEST:

Q   Mr. Bouchard, you were asked about the -- the status of the adversary proceeding that was filed against you, and you indicated that -- that was settled.  When was that -- that settlement reached?

A   Gotta say, you know, I don't -- I don't remember the date.

Q   Was that settlement set to be presented to Judge Jones for evaluation and approval?

A   Yeah.  It was presented to Judge Jones in the courtroom.  I was on the call, and Judge Jones was pretty upset that Matt Ray was not there.

Matter of fact, his exact words were, "I put Matt Ray in charge of this company.  I threw Mr. Bouchard out of his family owned business, and he's not here to defend why this is good for the estate?  I want him here."

*Mr. West Redirect of Morton S. Bouchard, III*

He broke the hearing up.  We waited for Matt Ray to appear. I sent two e-mails to Judge Jones's clerk asking when are we going to get the dates for Matt Ray to appear so we can get this settled and confirmed, and I never got one response.  And I copied Doug Spelfogel on every e-mail.

Q   To your knowledge, has the plan administrator ever backed out of that settlement -- that proposed settlement?

A   I -- I don't know.

Q   Okay.

MR. WEST:  Pass the witness, Your Honor.

THE COURT:  Okay.  Any recross limited to redirect?

No?  Anybody?

MR. KIRKENDALL:  No, thank you, Your Honor.

THE COURT:  All right.  Nobody.

Okay.  You may step down.

THE WITNESS:  Thank you.

THE COURT:  Any other witnesses?

MR. WEST:  No, Your Honor.

THE COURT:  Okay.  Any witnesses by --

MR. HERSHEY:  No, Your Honor.

THE COURT:  Okay.  Mr. Kirkendall?  Mr. Hueston?

MR. HUESTON:  No, Your Honor.

THE COURT:  All right.  That's the extent of the evidence.

Argument?

**MR. WEST:**  Your Honor, as the Court recognizes, the defendants have an interest in -- in not having this case go forward, whether it is by Mr. Bouchard or whether it's by an independent plan administrator other than Mr. Bouchard. Repeatedly you've heard, Oh, King's X, you know.  Sorry.  We drafted this release so airtight, there's nothing the Court can do.

We believe that the release -- the confirmation plan, the debtor's release, all those documentations that were drafted by Kirkland & Ellis, drafted by Jackson Walker, rubber-stamped by Judge Jones cannot be held to stand in the way of claims that relate to the very fraud that put those documents into place.

I've got a couple -- a case citation here because the Court was -- was presented the question of what -- what can be done?  What can I do?

I think the Court has reached the appropriate conclusion or the correct conclusion that something needs to be done, and the question is who can do it, right, because as we -- we -- I opened with, the plan does reserve any and all causes of action for the post-effective date debtor, and causes of action's designed as -- defined as claims that are assertable directly or indirectly, and the Court heard argument that, well, it didn't reserve these claims.  It didn't reserve claims related to fraud, but the plan actually states that no entity -- and entity, in the plan, is given a definition in the bankruptcy

code, which includes a person, a corporation, anything.

No entity may rely on the absence of a specific reference in the plan to any cause of action as any indication that those causes of action are not available or that the -- the plan administrator will not pursue any causes of action available, and so the plan clearly allows these claims to go forward.

We've heard about how the creditors' committee has been dissolved, and even if it hadn't been, the carve-out provisions that -- that remain for the creditors' committee to operate on have no bearing on the claims that Mr. Bouchard has brought and that Mr. Bouchard seeks to bring.

There was discussion about the bankruptcy code and the 180-day deadline for revocation due to fraud.  I would direct the Court to -- it's a case out of the Bankruptcy District of Arkansas, *In Re Circle K Corp.*, 181 B.R. 457, and it's a bankruptcy in District of Arizona, 1995, that said even setting the 180-day deadline aside, there may be other avenues to provide relief to parties affected by fraud during the Chapter 11 case.  The most likely form of the relief will take is to allow a party injured by fraud to maintain an action for damages caused by the fraud.

That's exactly what Mr. Bouchard has done and what Mr. Bouchard seeks to do on behalf of the Bouchard estate derivatively.

Again, the court can fashion -- this is back to *In Re Circle K Corp.* The court can fashion a remedy that does not upset the confirmed plan, i.e., monetary damages. But I think that if the plan is going to be any impediment, the confirmation plan and the debtor's release therein, it does need to be thrown out as void because there -- there can't be an impediment that is created through the instance of fraud or the instance of concealment, through the instance of misrepresentations to the parties who would have been in a position to object to that plan.

We've asked for leave to -- to replead, and certainly, if Mr. Bouchard is granted derivative standing, we will need to replead to include the -- the claims that he is derivatively entitled to bring, if the Court so allows.

A few items -- I don't want to, you know, speculate or pontificate for too long in front of the Court, but just in response to some of the arguments that were made by counsel earlier this afternoon, there was a reference to the plan. Again, the plan that probably needs to be thrown out because 93 percent of -- of the committee -- or of the creditors, the Court was told, they voted for the plan, but the Court didn't hear how many of those creditors or how many of those interested parties were informed of the relationship or the fraud that underlied the confirmed plan, and I think the answer to that is 0 percent of the creditors were informed of that relationship.

Again, this is a family business. Mr. Bouchard testified that he doesn't believe that there's any individual who understands Bouchard Transportation Company better than him. He's run the company for -- he ran the company for 30 years before he was removed on a pretextual basis by Judge Jones.

It was -- it was telling to me, when Mr. Bouchard testified that, when the case opened, Judge Jones told him, "I know your company. Your reputation is stellar. You're going to be in and out of here."

One of defendants' counsel argued very apologetically for Jones's decision saying, Hey, look we can rely on Judge Jones's -- former Judge Jones's statements and representations. I'm not sure that we can. But he said, Hey, look, Kirkland defended Mr. Bouchard to Judge Jones saying, Hey, look, you know, we need him. He's done a great job on -- on getting things moving in January. Please don't remove him, even though there had been some rumblings that were referenced by counsel in January about the need to remove him or discussion of possibly filing a motion, a motion which never materialized to remove Mr. Bouchard as CEO.

And, again, what happened between January, when Kirkland is advocating for Mr. Bouchard to stay in his role, and February when, all of a sudden, Mr. Bouchard is on the outs? Well, it was that challenge to Kirkland's and the other professionals' fees. What that action by Mr. Bouchard shows is

an interest in preserving the estate.  He had an interest, in February of 2021, to make sure that Bouchard Transportation Company could pay its bills, to make sure that they could pay their employees, to make sure that the company could continue as a going concern, and he was denied that opportunity when he was ousted from the company.

As -- again, if he was such a problem that he had to be removed in February of 2021, as the Court noted, why was he brought back in as a consultant in April of 2021?  There is something that Mr. Ray acknowledged, that counsel acknowledged, that Mr. Bouchard brought a value to the company; to the operations of the company; to the analysis of -- of the company's best interests.

Mr. Bouchard testified that he solely owned the company with his family interests.  He was a fourth generation owner and president and CEO of the company.  He always attempted to operate within the best interests of the company and its employees and its creditors and that, if appointed as a special administrator to pursue claims against the defendants that arise from the factual scenario that brings us all here, he would do so in the best interests of the estate and of the creditors and of all interested parties.

And Mr. Bouchard testified that he would do so over and above and in superior attention over and above his individual claims because what he wants is what he's always

wanted, is the best interests of the Bouchard Transportation Company.

And so, Your Honor, we would ask that the Court grant Mr. Bouchard derivative standing to pursue any claims that may be derivative, whether they've been pleaded in his complaint or whether they can be added to his complaint, because there may be other claims that have not been alleged that are more direct -- more directly derivative of the estate's claims.

Thank you, Your Honor.

**THE COURT:**  Okay.

**MR. GORMAN:**  Your Honor, what the evidence today has established is that Mr. Bouchard cannot possibly be the litigation trustee.  He has a fundamental conflict of interest. He was the CEO when his company filed bankruptcy.  He is a defendant in an adversary proceeding alleging breach of fiduciary duty.  When Mr. Ray was a defendant in an adversary proceeding, Mr. Bouchard said conflict of interest.

Mr. Bouchard filed significant claims against the estate, the -- probably should be subordinated.  Will he do that as litigation trustee?  It is -- as a human, it is simply not possible for anyone in that position to separate the consequences of the conduct of third parties on the liquidity and operations of the estate from the consequences of his own actions.

It is not humanly possible for an insider to also

pursue claims.  This is why the bankruptcy code has limits and guardrails on who is disinterested.

There is no dispute Mr. Bouchard is a former insider; he is a former shareholder; he is a former officer.  He has claims.  He has materially adverse interests against the estate.

He is disqualified under the code to be a litigation trustee, and the code -- you know, one of my colleagues said this was implemented by Congress, and, of course, it is.  It's not a hindrance to achieving justice.  It is Congress's attempt to bring the differing interests to bear; to reach a compromise.

The interests of creditors --

**THE COURT:**  Okay.  So, Counsel, why was he okay as a debtor-in-possession up until February?

**MR. GORMAN:**  A --

**THE COURT:**  If he was -- if he was that conflicted, why was he okay until that point?

**MR. GORMAN:**  I -- I was not there.  I --

**THE COURT:**  I understand, but that's -- your argument is he's conflicted because of all these reasons, which existed when the bankruptcy case was filed, and he was in that position for roughly five months or so.  Why wasn't that an issue then?

**MR. GORMAN:**  Well, he was removed, of course --

**THE COURT:**  He wasn't removed until February of '21.  So until that point, he was the debtor-in-possession and acting in the interest of the bankruptcy estate, correct?

**MR. GORMAN:** He should have been.

**THE COURT:** Okay. So the bottom line is: If he was so interested, why was he allowed to be the debtor-in-possession?

**MR. GORMAN:** Perhaps simply because nobody made an objection, but now we know --

**THE COURT:** Nobody made an objection at the time he was removed, either. There were no motions that were filed.

**MR. GORMAN:** But now we know. His undisputed testimony shows fundamental conflict of interest and the inability -- the lack of experience and skill to be a litigation trustee.

**THE COURT:** Counsel, that does not persuade the Court. The fact that he may not know bankruptcy law doesn't mean he couldn't run a tug boat company, which is what's needed to keep the company going and to help the creditors. It's not so much whether you know the bankruptcy code.

**MR. GORMAN:** Your Honor, I agree, but now, in pursuing claims against third parties, it is totally different than running a tug boat company. It requires a particular kind of knowledge. I, myself, may not be a good litigation trustee. I don't do that.

**THE COURT:** I don't know, you may be.

**MR. GORMAN:** Well -- so --

**THE COURT:** I may not be a good litigation trustee.

**MR. GORMAN:** So my point is that the undisputed evidence, looked at dispassionately, shows that it cannot be Mr. Bouchard.

And then, second, let's remember what we are here for today. It is a narrow issue. It is Mr. Bouchard's motion to have derivative standing to assert his claims that he's already asserted.

**THE COURT:** Well, it actually was to -- for the Court to decide whether or not he could act on behalf of the estate, which is what y'all are arguing that he's not qualified to do.

**MR. GORMAN:** He's not qualified --

**THE COURT:** The -- the derivative standing in terms of whether or not he has standing to proceed with the case is more in the 12(b) motions, is what -- and so I'm separating the two.

**MR. GORMAN:** Right. But what he has asked the Court is to allow him to have derivative standing. He has not asked the Court --

**THE COURT:** But -- yeah. He -- the issue before the Court today was whether or not he can act as a substitute plan administrator. That's what this Court is hearing; is going to decide.

**MR. GORMAN:** That's -- I understand, Your Honor. That's not what Mr. Bouchard's motion asked the Court to consider.

**THE COURT:** That was what we talked about in the March

hearing that was a limited remand to Judge Lopez, which the Court took back, and that's what I'm hearing today.

MR. GORMAN:  The fin- -- the final point I'd make, Your Honor, is that we are all bound by the final and non-appealable confirmation order.  That is the system we live by.

THE COURT:  If it's valid, Counsel.  If it's valid.  Add that caveat.

MR. GORMAN:  I will, and I will also point out Mr. Bouchard has not filed a motion to challenge the order; to void the order.  There has been no testimony that the order was --

THE COURT:  But because y'all -- because, on the one hand, y'all are arguing he doesn't have standing to do all of this because he's not the plan administrator, and you're not letting him be the plan administrator so he can do all of that.  So that's what I'm saying.  This is a circular firing squad kind of argument.

Let him be the plan administrator so he can do all of that.  Oh, no, he can't be plan administrator, so he doesn't have standing to do that.  And because he hasn't done that, we're -- it's a circular argument, Counsel.

MR. GORMAN:  I understand the Court's point.

THE COURT:  So the point is:  Do we want to get to that point or not?  Do we want to get a full and fair hearing

and do what's right for everybody in this case?

Since I'm now presiding over the bankruptcy matter itself -- and I know that there are some matters that I need to take care of in the bankruptcy matter -- why not let's just have a full and fair hearing for everybody?

MR. GORMAN:  And my point today -- final point -- is simply the bankruptcy code and the rules of civil procedure provide guardrails on what orders can be challenged, how they can be challenged, who can be a litigation trustee, and who is disqualified, and I think --

THE COURT:  And at this point --

MR. GORMAN:  -- it is beyond --

THE COURT:  -- the person that should have been disqualified from day one was the judge that signed all those orders --

MR. GORMAN:  Thank you, Your Honor.

THE COURT:  -- and that's part of the problem that we're talking about here, and I think that's kind of the fly in the ointment in all of this, is we start off with that at the very beginning of all of this.

Yes, ma'am.  Go ahead.

MS. BREVORKA:  Just briefly, Your Honor.

I'd like to hone in on a point raised by Your Honor regarding Mr. Bouchard -- Mr. Bouchard's conflict as a creditor and then representing the estate's interest.

You raised a question for Mr. Gorman about timing. Why was it okay for Mr. Bouchard to represent the estate at the start, and then be removed, and then later -- Mr. Bouchard's purported claims as a creditor were lays -- were raised late in the process, July of 2021.

And, in fact, if the Court takes a look at docket --

THE COURT:  That was before the --

MS. BREVORKA:  After --

THE COURT:  -- case was filed?

MS. BREVORKA:  So cases filed in September --

THE COURT:  After his removal.  Okay.  You're right. It was filed in 2020.  So after his removal.

MS. BREVORKA:  2020.

THE COURT:  Right.

MS. BREVORKA:  Removed in late February 2021, and -- and then he amends and -- and brings forth a series of claims in late July of 2021 saying, These things that I've declared in various financial documents as loans to the company, actually they're debts, and I'm a creditor, and I should be secured, and I should leapfrog ahead of others.

And I just, for purposes of the record, in aid to the Court, I direct your attention to document 1150 in the underlying original bankruptcy proceeding, which is Case No. -- I'm just going to get the case for the Court.

THE COURT:  Sure.

**MS. BREVORKA:** -- 20-34682. And that is the supplemental objections of the official committee of unsecured creditors, and this is the document that starts the back-and-forth objections to Mr. Bouchard's claims as creditor -- as a creditor -- a secured creditor, which to this day, as he testified to, are -- are not settled. They're unresolved.

**THE COURT:** Is that what -- was that supposed to be accepted or settled in March of the year that Mr. Ray didn't go to the Court? What that -- is that the issue before --

**MS. BREVORKA:** It is part of the settlement agreement, but there were still objections by creditors at that point. And to that point, if you look at the confirmed plan, document 1293, as Mr. Hueston has pointed it, the creditors' committee does live. It lives on to deal with the disputes over these claims.

Mr. Bouchard is conflicted from representing the interests of the estate in part because he is in conflict with the creditors where --

**THE COURT:** So who represents the creditors?

**MS. BREVORKA:** The -- the creditors' committee, at this point.

**THE COURT:** Okay. Who -- who is that?

**MS. BREVORKA:** I believe it's Greg -- Greg -- I'm looking to the plan administrator counsel, I'm sorry.

Is it -- it's the plan administrator.

THE COURT: Okay. They're conflicted. Isn't that Portage Point? Isn't that Mr. Ray? He's conflicted. He's the one that stepped back.

MS. BREVORKA: And he's asked for -- he's asked for an independent administrator.

THE COURT: I understand. That's what I'm going to decide, who that may be.

MS. BREVORKA: Sure. And my point is, though, Mr. Bouchard is in no better position, though. He is in conflict because he's fighting with other creditors. He cannot represent the interests of the estate impartially because he is trying to assert an interest as far as a creditor's claim, which is at odds with other creditors. And so he fundamentally cannot serve in a -- in a position where he's a disinterested party.

THE COURT: Okay. So let me ask your advice, Counsel. Since there's a step -- this settlement that somehow seems to be out there, correct?

MS. BREVORKA: Correct.

THE COURT: That never was finally accepted by the Court --

MS. BREVORKA: Correct.

THE COURT: -- in March of 2022.

MS. BREVORKA: 2023, I think.

THE COURT: Twenty-three, you're right. It was in 2023, you're right.

So at that point, that is now before this Court. So I need to make a determination if that's an appropriate settlement. What effect would have that on any of this?

**MS. BREVORKA:** Perhaps -- and I will just note for the record, if you look back through the bankruptcy record, that issue of the settlement was continued on the consent of all counsel several times.

**THE COURT:** That's fine.

**MS. BREVORKA:** Yeah.

**THE COURT:** That's okay. That's fine. No problem. But it's still pending?

**MS. BREVORKA:** Correct. It is.

**THE COURT:** So does any of this -- is any of this dependent on me hearing that settlement agreement?

**MS. BREVORKA:** It -- it may be. At this point, Jackson Walker does not have a position on that.

**THE COURT:** Correct.

**MS. BREVORKA:** Yeah. So -- but to our point as far as Mr. Bouchard serving, at this point we -- our position, Jackson Walker, is that he is conflicted because he is at odds with the -- the interests of other creditors. He cannot impartially represent the estate while still fighting over outstanding claims.

The other point I'll bring up, that Mr. Gorman hit upon, is that the bankruptcy code 11, U.S.C., 1104 requires that

a trustee be disinterested.  11, U.S.C., Section 101.14, specifically carves out saying -- defining a disinterested person is that -- is not a creditor, or, B, is not and was not, within two years before the date of filing the petition, a director, officer, or employee of the debtor.

Mr. Bouchard claims to be a creditor, and he also --

THE COURT:  So how was he the debtor-in-possession all those months?

MS. BREVORKA:  He was not the trustee, though.

THE COURT:  Well, because you didn't have a plan at that point, right?

MS. BREVORKA:  Correct.

THE COURT:  It hadn't been confirmed?

MS. BREVORKA:  Correct.

THE COURT:  Okay.

MS. BREVORKA:  And under the code, he can't serve in this position.

Thank you, Your Honor.  I appreciate your time.

THE COURT:  Uh-huh.  That's fine.

Mr. Hueston?

MR. HUESTON:  Briefly, Your Honor, it's our understanding, by looking at the docket, that Ropes & Gray represents the creditors' committee.

THE COURT:  Okay.

MR. HUESTON:  If that's true, I don't think there's

any allegation that they have -- are conflicted in any way, and our position is, consistent with Fifth Circuit law, only a creditors' committee should go forward.  There is a creditors' committee.  There's representation by a firm that has not been implicated.  That would be the right pathway.

I want to address, because it was brought up in argument here, the debtor's release in some of the testimony here.

THE COURT:  Uh-huh.

MR. HUESTON:  Your Honor, it is abundantly clear that at the time of his removal, according to his complaint, he apparently felt that fees were spinning out of control, that the coffers were being looted, and he was removed unfairly.  That was something never raised by him, but most importantly, he had sophisticated counsel who, despite his testimony, well, they didn't want to upset the judge, did challenge the judge.  They challenged the exculpation clause, and, in fact, Judge Jones got reversed on an aspect of that.

What he chose not to, in consultation with sets of counsel, to do is to attack the debtor release, and the debtor release is very, very broad:  Releasing parties from any and all claims, whether known or unknown, including any derivative claims based on or relating to, in any manner, arising from, in whole or in part, the BTC bankruptcy, including, specifically, business and contractual arrangements, which is obviously

contractual arrangements including a law firm.

THE COURT:  Okay.  So let me see if I'm correct.
Correct me if I'm wrong.  The debtor being the estate --

MR. HUESTON:  Right.

THE COURT:  -- represented here by either Kirkland &
Ellis and Jackson Walker, drafting the release with a judge.  Am
I understanding that process correctly?

MR. HUESTON:  Not with the judge.

THE COURT:  Well, I mean, presented to the judge by an
interested party in a personal matter -- way with a judge.

MR. HUESTON:  I think it was -- no.  Well, first of
all, there's --

THE COURT:  Well, she worked on the case.

MR. HUESTON:  Jackson Walker worked on the case --

THE COURT:  And Ms. Freeman worked on the case with
Jackson Walker.  So my question is, the law firms -- not saying
that the law firms did, necessarily, anything wrong,
Mr. Hueston, but the law firms that represented the debtor are
the ones that agreed to this broad release.

MR. HUESTON:  No.  Let me -- a slight correction.
I --

THE COURT:  Okay.

MR. HUESTON:  I'm sure Kirkland was involved in
drafting, and I'm sure Jackson Walker must have weighed in.
Here's the key thing:  It was circulated to all the creditors,

remember?  I mean, all the creditors who were represented -- Wells Fargo and others, they had all their counsel.  All of them said, We're good with this.  Nobody objected.

THE COURT:  Uh-huh.

MR. HUESTON:  So yes, ultimately, a judge, in confirmation, blesses this, but this is the debtor release.

The point I'm making here, Your Honor, in light of that testimony, it's just not credible that he had these attorney fees issues just exploding his skull.  He would have, in fact, complained, and now, years later, well beyond the statutory deadlines, 1144, he had -- through confirmation, through all that, his counsel never raised it.  He had another 180 days; never raised it.

Under the law, it's done.  He cannot challenge that himself now.

THE COURT:  It's done if this Court says it's done, Mr. Hueston.  Now, the circuit can reverse me, but it's not done until I say it's done --

MR. HUESTON:  I --

THE COURT:  -- and, number two, if it was done, why bring adversary proceedings against him?

MR. HUESTON:  Your Honor, on the "it's done" point, I do want to ensure for the record our position is -- and courts have been in your situation before where they've been faced with sympathetic records of --

THE COURT:  This is not --

MR. HUESTON:  -- my goodness --

THE COURT:  This isn't sympathy, Counsel.

MR. HUESTON:  Well -- okay.

THE COURT:  This is fairness --

MR. HUESTON:  Right.

THE COURT:  -- in that there was no impartial judge in the case.  There was no impartial hearing, and there wasn't a clarification of disclosures and relationships.  That's also required by the bankruptcy code, which everybody's trying to use to prevent anybody from going forward, but, also, the attorneys -- an attorney, I should say, didn't comply with the bankruptcy code, and now wants out.

MR. HUESTON:  Your Honor, our view is the Supreme Court case, *Northwest Bank Worthington versus Ahlers*, 485 U.S. 197 at 206 states, "Whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."

And separately, in the Supreme Court in *INS versus Pangilinan*, 486 U.S. 875 at 883: (As Read) Courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law --

THE COURT:  Neither can the attorneys who failed to disclose this conflict of interest with the judge per the bankruptcy code.

**MR. HUESTON:** And --

**THE COURT:** Everybody's sitting here throwing bankruptcy provisions at this coat -- at this Court in terms of preventing equitable outcomes when the attorneys, through one particular attorney, failed to make the appropriate disclosures under the bankruptcy code. So if you want to comply with the bankruptcy code, let's start with the disclosures.

**MR. HUESTON:** Sure. And Kirkland appropriately disclosed everything, and you heard the U.S. Trustee, earlier today, affirm that in their investigation. We didn't do anything wrong there.

What I'm saying, Your Honor, is there is appropriate closure here because of the debtor's release and the expiration of that time.

**THE COURT:** I'm not so sure of that, Counsel.

**MR. HUESTON:** All right. I'll submit on my argument, then. Thank you.

**THE COURT:** Mr. Kirkendall?

**MR. KIRKENDALL:** Mercifully, Your Honor, anything I would have to say would be duplicative. Thank you.

**THE COURT:** So noted. Thank you.

Rebuttal, limited to argument by the defense.

**MR. WEST:** Yes, Your Honor.

I -- I thought it was interesting that the defense brings up limits and guardrails in the posture that we are here

today.

THE COURT:  Well, wasn't the Court supposed to be the limiting guardrail when it was conflicted?

MR. WEST:  Exactly.  Exactly.

THE COURT:  I think everybody understands that I'm very unhappy with the court and the judge at that time.

MR. WEST:  Certainly, Your Honor.

THE COURT:  I think everybody is pretty clear about that.

MR. WEST:  And the arguments that have been put forth that Mr. Bouchard is not qualified, is not capable, I think the Court correctly recognized that -- that there can be a difference of opinion on that because we've got a situation where he was running the company for 30 years.  He was running the company for the first several months of the bankruptcy. After the removal of Mr. Bouchard as CEO, he was brought back in as a consultant.

He's got the capability.  He's got the knowledge. He's got the ability to operate in the best interests of the Bouchard Transportation Company estate --

THE COURT:  But what about Ms. Brevorka said, though? If he's continuing to pursue his claims for the $40 million loan as a creditor, doesn't he now have a conflict with the other creditors that may still be out there?

MR. WEST:  In -- I think it's interesting, Your Honor,

that that -- that settlement sat dormant -- that adversary proceeding sat dormant for two years until Mr. Bouchard sought to obtain derivative standing in this case, and I believe that if the Court addresses that -- that adversary proceeding and that proposed settlement and finds that, hey, you know, that adversary proceeding can be resolved, then that would remove even the cloud of that potential conflict.

But the proposed role that Mr. Bouchard seeks in this case as an independent special administrator is not to replace the plan administrator for how payments to creditors or payments to interested parties are made.  His role that he seeks to pursue in this case as an independent special administrator would be to bring assets into the estate through the litigation of these claims that he has brought both in this lawsuit and the claims that he seeks to bring to the lawsuit, and in that regard, I don't know --

THE COURT:  So are you suggesting co-administrators?

MR. WEST:  Not co-administrators, but Mr. Bouchard be empowered with the ability to bring the claims that he has brought in his lawsuit both independently and derivative claims on behalf of the estate.

THE COURT:  But I thought that's the only way that he could do it, be -- be the administrator of the plan.

MR. WEST:  Your Honor, and I believe that -- I don't -- I don't think, even in Mr. Ray's pleadings to appoint

an independent special administrator, that he volunteered to resign. I think he's saying that the authority as a -- an independent special administrator, in addition to the plan administrator, can be vested in a third party, and Mr. Bouchard has shown the capability and, most importantly, he's shown the willingness to vigorously pursue these claims and would do so in the best interest of the estate, Your Honor.

Thank you.

THE COURT: Okay. So it sounds like, to the Court, that I also need to hear, at some point, any settlement matters in terms of what's still pending out there that -- that was from the hearing of March of 2023.

MR. WEST: That would certainly potentially streamline Your Honor's decision in this case.

THE COURT: Okay.

MR. WEST: And I don't say that, Your Honor, to delay your making a decision on anything.

THE COURT: Okay. No, noted. I'm just -- I'm wondering if -- like I said, since I'm now also, technically, handling the bankruptcy, maybe we need to take care of the underlying bankruptcy -- some bankruptcy matters before we move on to the case that's -- that -- this overarching case, as well, and all of the final arguments, also, in the Rule 12 motions.

Okay. All right. Anything else before we adjourn? I will issue orders.

**MR. WEST:**  No, Your Honor.

**THE COURT:**  Okay.  Anybody else?

Okay.  All right.  You may be excused.

*(Proceedings concluded at 4:21 p.m.)*

-o0o-

I certify that the foregoing is a correct transcript from the record of proceedings in the above matter.

Date:  May 28, 2025

*/s/Heather Alcaraz*
Signature of Court Reporter

**MR. CLORE: [4]** 34/18 37/18 37/21 37/23
**MR. GORMAN: [48]** 5/6 38/2 39/5 39/8 39/11 39/14 39/17 39/23 40/3 40/6 40/18 40/21 40/24 41/1 41/3 41/14 42/8 42/11 43/1 43/4 43/6 43/11 43/13 43/15 44/11 44/23 45/2 45/7 45/10 120/11 121/14 121/17 121/22 122/1 122/5 122/9 122/18 122/24 123/1 123/11 123/15 123/22 124/3 124/9 124/23 125/6 125/12 125/16
**MR. HARDIN: [1]** 5/4
**MR. HERSHEY: [3]** 95/4 103/5 114/20
**MR. HUESTON: [86]** 5/25 58/3 59/13 59/15 59/18 59/22 59/24 60/4 60/6 61/12 62/9 62/12 62/19 62/21 62/23 63/3 63/13 63/20 63/23 64/8 64/10 65/6 65/16 65/19 65/23 66/3 66/6 66/8 66/15 66/23 68/19 68/22 69/8 69/13 70/4 70/10 70/14 70/17 70/21 71/3 71/13 72/2 72/6 72/8 72/10 72/13 72/20 72/23 73/14 73/23 74/3 74/7 74/9 74/15 74/18 74/22 76/11 77/5 77/11 77/14 77/17 77/20 109/10 109/13 110/3 110/5 114/22 130/21 130/25 131/10 132/4 132/8 132/11 132/14 132/20 132/23 133/5 133/19 133/22 134/2 134/4 134/6 134/14 135/1 135/8 135/16
**MR. KIRKENDALL: [36]** 5/17 5/20 5/23 77/24 78/2 78/11 78/13 78/16 78/21 78/25 79/15 79/17 79/22 79/25 80/5 80/8 80/10 80/13

80/15 80/19 81/9 81/11 81/16 81/25 82/8 82/23 82/25 83/6 83/8 83/15 83/17 110/9 110/16 113/6 114/13 135/19
**MR. ULRICH: [1]** 5/11
**MR. WEST: [68]** 6/6 6/8 7/14 7/23 12/8 13/8 17/8 17/11 18/11 18/13 19/3 19/7 22/1 24/10 24/14 24/20 24/23 25/1 25/4 25/6 25/12 25/14 25/17 25/19 25/22 26/6 26/8 26/15 26/24 27/11 28/9 28/17 28/20 28/22 29/6 29/10 29/22 30/2 30/21 30/23 31/4 31/12 31/22 31/25 33/13 33/23 34/2 34/10 34/15 83/21 83/25 84/3 84/9 95/2 113/9 114/10 114/18 115/1 135/23 136/4 136/7 136/10 136/25 137/18 137/24 138/13 138/16 139/1
**MS. BREVORKA: [65]** 5/8 45/13 45/16 45/20 46/11 46/14 47/5 47/9 47/19 48/2 48/13 48/15 49/1 49/19 49/23 50/5 52/14 52/17 52/21 52/24 53/3 53/6 53/13 53/16 54/8 55/7 55/13 55/20 56/2 56/6 56/9 56/12 56/17 57/8 57/10 57/13 57/23 58/1 104/9 104/12 104/15 104/17 125/22 126/8 126/10 126/13 126/15 127/1 127/11 127/20 127/23 128/4 128/8 128/18 128/21 128/23 129/4 129/9 129/12 129/15 129/18 130/9 130/12 130/14 130/16
**THE COURT: [312]**
**THE REPORTER: [4]** 77/25 84/18 100/6 110/14
**THE WITNESS: [3]** 85/2 100/7 114/16

**$40 [8]** 17/12 37/22 50/14 51/1 67/8 94/16 103/19 136/22
**$40 million [8]** 17/12 37/22 50/14 51/1 67/8 94/16 103/19 136/22

**'**

**'21 [3]** 18/15 65/2 121/23
**'91 [1]** 86/11
**'92 [1]** 86/11

**-**

**-- the [1]** 40/3
**-o0o [1]** 139/5

**/**

**/s/Heather [1]** 139/10

**0**

**0 percent [1]** 117/25

**1**

**100 [1]** 1/23
**100 percent [13]** 87/14 87/15 88/2 92/12 92/13 94/14 94/19 100/25 101/19 101/23 106/8 112/22 112/23
**10014 [1]** 2/16
**10020 [1]** 2/23
**101.14 [1]** 130/1
**102 [1]** 94/12
**11 [8]** 46/2 59/1 80/12 105/14 106/10 116/20 129/25 130/1
**1104 [1]** 129/25
**1114 [1]** 73/24
**1123 [2]** 46/2 48/6
**1144 [5]** 78/6 79/17 80/6 80/13 133/11
**1150 [1]** 126/22
**12 [15]** 31/7 31/11 46/1 55/14 55/14 55/25 55/25 56/3 56/10 59/2 68/20 72/25

**12... [3]**  77/16 123/14 138/23
**121 [1]**  51/16
**1221 [1]**  2/23
**1293 [1]**  127/13
**12th [1]**  2/16
**13 [1]**  64/19
**1300 [1]**  2/13
**137 [1]**  51/16
**1400 [1]**  1/20
**1401 [1]**  2/8
**1457 [1]**  36/14
**166 [2]**  50/21 56/23
**17 [1]**  64/19
**171 [1]**  51/16
**173 [1]**  51/16
**17th [1]**  58/25
**18 [2]**  46/2 64/19
**180 [7]**  47/14 76/20 77/9 78/8 78/10 79/19 133/13
**180-day [4]**  73/25 75/6 116/14 116/18
**180-degree [1]**  8/7
**181 [1]**  116/16
**18th [1]**  15/22
**1918 [2]**  85/13 85/14
**197 [1]**  134/16
**1976 [1]**  36/20
**1990 [3]**  86/11 86/12 86/25
**1995 [1]**  116/17
**1997 [1]**  36/15
**1:40 [1]**  1/11

## 2

**20-34682 [1]**  127/1
**2016 [1]**  61/24
**2017 [2]**  1/5 58/12
**2020 [4]**  58/19 58/25 126/12 126/13
**2021 [18]**  15/16 15/22 16/2 18/8 18/15 18/15 19/10 38/6 38/7 60/6 85/15 91/1 119/2 119/8 119/9 126/5 126/15

**2022 [5]**  17/1 17/23 20/14 70/19 128/22
**2023 [6]**  20/21 21/5 22/14 128/23 128/25 138/12
**2025 [4]**  1/15 4/3 21/5 139/9
**203 [1]**  51/16
**206 [1]**  134/16
**20th [1]**  60/6
**212 [1]**  2/24
**22 [2]**  1/15 4/3
**2250 [1]**  2/8
**229-8640 [1]**  2/14
**22nd [1]**  58/19
**246-1 [1]**  59/1
**24th [2]**  18/15 61/24
**250-5584 [1]**  3/6
**25th [1]**  21/5
**26 [2]**  38/6 109/16
**26th [6]**  18/15 19/10 58/8 64/12 106/3 110/3
**27th [1]**  27/15
**28 [1]**  139/9
**2800 [1]**  1/24
**28th [2]**  20/21 22/14
**2900 [1]**  2/20
**2nd [4]**  106/6 106/9 106/19 106/19

## 3

**3.6 million [2]**  17/6 17/9
**30 [3]**  36/20 118/4 136/14
**305 [1]**  1/25
**33131 [1]**  1/24
**34 [1]**  23/7
**34682 [4]**  58/10 64/18 111/2 127/1
**3536 [1]**  2/4
**357-8422 [1]**  1/25
**361 [1]**  1/21
**3rd [1]**  15/16

## 4

**40 million [3]**  37/6 56/19 56/20

**40-million [1]**  37/7
**40-something [1]**  23/24
**4046 [1]**  2/17
**457 [1]**  116/16
**485 [1]**  134/15
**486 [1]**  134/20
**496-9676 [1]**  2/21
**4:21 [1]**  139/4
**4:24-CV-693 [2]**  1/7 5/3
**4E [3]**  23/20 25/15 25/16
**4G [1]**  38/11
**4th [1]**  36/14

## 5

**508 [1]**  74/12
**515 [1]**  3/5
**5200 [1]**  1/21
**54 [1]**  36/13
**5584 [1]**  3/6
**569 [1]**  111/1
**57 [1]**  36/19
**58 [2]**  50/23 56/25

## 6

**60 [6]**  46/16 47/1 47/7 47/10 79/8 79/10
**604 [1]**  64/18
**609 [1]**  2/19
**620 [1]**  2/12
**646 [1]**  2/17
**652-9000 [1]**  2/9
**68 [1]**  105/13
**693 [2]**  1/7 5/3
**698-5200 [1]**  1/21

## 7

**703-3536 [1]**  2/4
**713 [4]**  2/4 2/9 2/21 3/6
**77002 [2]**  2/20 3/5
**77010 [1]**  2/9
**77381 [1]**  2/4
**78401 [1]**  1/20
**79 [1]**  58/10

**8**

**802 [1]** 1/19
**819-8200 [1]** 2/24
**8200 [1]** 2/24
**8422 [1]** 1/25
**8640 [1]** 2/14
**875 [1]** 134/20
**883 [1]** 134/20

**9**

**9000 [1]** 2/9
**92660 [1]** 2/13
**93 percent [2]** 76/13 117/20
**930-4046 [1]** 2/17
**949 [1]** 2/14
**9676 [1]** 2/21

**A**

**ability [3]** 66/5 136/19 137/19
**able [8]** 6/23 26/21 30/25 36/3 36/23 48/5 94/6 94/23
**above [5]** 94/24 99/12 119/24 119/24 139/7
**ABS [6]** 58/15 59/4 60/7 60/25 92/17 93/11
**absence [5]** 9/7 10/16 10/22 11/18 116/2
**Absolutely [1]** 96/10
**abundantly [1]** 131/10
**acceptable [1]** 70/8
**accepted [4]** 19/22 25/2 127/9 128/19
**accident [1]** 58/12
**according [2]** 70/4 131/11
**accounting [1]** 88/17
**accreditation [1]** 97/25
**accurate [1]** 23/14
**achieved [1]** 44/14
**achieving [1]** 121/9
**acknowledge [4]** 12/2 32/15 33/5 34/11
**acknowledged [8]** 6/22 8/5 14/17 21/17 27/4 75/4 119/10 119/10

**acquiescence [1]** 20/4
**Acquisition [1]** 53/18
**across [1]** 92/3
**act [14]** 21/9 21/16 22/24 27/19 38/10 52/19 53/11 68/16 69/5 75/5 78/14 86/11 123/9 123/19
**acted [2]** 39/10 66/19
**acting [5]** 96/22 97/2 99/18 102/1 121/24
**action [25]** 1/7 9/4 9/5 9/5 9/8 13/13 14/7 18/2 21/3 34/12 34/21 36/6 38/15 66/9 97/9 99/20 102/9 102/14 103/2 115/20 116/3 116/4 116/5 116/21 118/25
**action's [1]** 115/21
**actions [6]** 13/21 17/25 20/5 42/2 47/23 120/24
**active [2]** 26/18 88/15
**actively [1]** 27/2
**activity [4]** 22/13 22/17 22/18 42/3
**actor [1]** 14/21
**actual [2]** 36/17 70/25
**actually [4]** 101/3 115/24 123/8 126/18
**Acute [2]** 74/23 74/24
**Add [1]** 124/8
**added [1]** 120/6
**addition [1]** 138/3
**additional [5]** 6/12 45/4 58/23 61/25 64/13
**address [8]** 6/11 13/9 13/16 13/17 45/16 45/23 56/12 131/6
**addressed [1]** 14/6
**addresses [2]** 43/7 137/4
**addressing [2]** 68/19 68/20
**adequately [1]** 14/6
**adjourn [1]** 138/24
**administration [2]** 39/1 41/16
**administrator [104]** 5/7

6/20 6/22 7/4 8/3 9/12 9/13 9/14 11/25 14/9 14/11 14/12 14/24 14/25 15/4 15/5 16/19 16/23 19/18 20/5 20/7 20/25 21/6 21/7 21/9 22/19 22/22 23/3 23/5 23/11 23/15 24/19 24/21 24/24 25/3 25/10 25/15 25/24 27/15 27/19 27/25 28/6 28/13 38/3 38/9 38/14 38/15 40/8 40/11 40/14 42/8 46/7 47/17 47/22 48/1 48/9 48/11 48/21 48/24 49/20 49/21 50/1 50/2 52/20 53/9 53/10 53/11 53/19 54/2 54/12 55/5 63/8 68/16 69/3 69/6 70/3 70/8 80/21 82/13 82/20 83/13 83/14 94/21 95/5 102/1 114/6 115/4 116/5 119/19 123/20 124/15 124/16 124/19 124/20 127/24 127/25 128/5 137/9 137/10 137/12 137/23 138/1 138/3 138/4
**administrator's [2]** 8/11 22/25
**administrators [4]** 23/6 23/19 137/17 137/18
**adversarial [2]** 26/13 98/14
**adversary [27]** 16/24 18/4 20/1 20/6 20/8 20/10 20/14 20/16 21/4 22/7 22/8 22/10 22/16 35/11 35/18 43/9 49/8 67/23 67/24 67/24 113/13 120/15 120/16 133/21 137/1 137/4 137/6
**adverse [3]** 43/19 96/16 121/5
**advice [3]** 20/23 35/22 128/15
**advise [3]** 65/3 90/14 90/17
**advised [1]** 21/1
**advocating [1]** 118/22
**affect [4]** 12/25 31/10 35/14 76/21

**affected [2]** 54/22 116/19
**affirm [1]** 135/10
**afraid [1]** 108/3
**after [27]** 7/23 16/1 16/7 16/15 17/23 18/7 35/8 48/6 54/14 60/7 64/12 65/7 76/20 77/9 79/13 81/17 82/21 86/11 91/4 91/4 105/13 106/11 107/2 126/8 126/11 126/12 136/16
**afternoon [14]** 5/8 5/11 5/17 5/25 45/13 45/15 58/3 95/4 103/12 105/7 105/8 110/18 110/19 117/18
**afterwards [4]** 64/15 64/17 75/7 80/16
**again [31]** 10/7 17/23 22/11 26/25 28/4 29/15 33/17 43/23 43/25 45/14 51/15 51/21 53/10 54/10 57/2 57/11 57/16 61/21 65/16 65/20 67/14 68/3 68/5 78/3 78/24 85/5 117/1 117/19 118/1 118/21 119/7
**against [33]** 8/20 9/19 13/11 13/17 14/4 16/25 17/19 18/19 20/1 20/6 21/9 21/14 21/18 22/7 27/20 27/21 34/13 35/11 94/21 98/15 98/21 98/24 99/23 100/3 100/14 100/17 101/5 113/13 119/19 120/18 121/5 122/19 133/21
**age [1]** 88/16
**agencies [1]** 75/7
**agency [1]** 58/14
**agent [1]** 83/10
**ago [1]** 43/13
**agree [7]** 26/15 53/25 69/24 73/8 95/14 105/25 122/18
**agreed [3]** 48/2 65/3 132/19
**agreement [9]** 20/19 62/2 65/3 65/10 65/15 65/19 66/1

**Ah [1]** 52/24
**ahead [7]** 25/8 45/12 84/2 95/3 95/3 125/21 126/20
**Ahlers [1]** 134/15
**aid [1]** 126/21
**air [2]** 8/4 55/21
**airtight [2]** 11/3 115/6
**Akin [11]** 64/16 91/4 91/9 106/4 106/6 106/18 108/1 108/2 108/6 108/22 111/12
**ALAN [1]** 1/18
**Alcaraz [2]** 3/4 139/10
**ALIA [1]** 1/14
**alive [1]** 112/22
**allegation [2]** 67/18 131/1
**allege [1]** 14/1
**alleged [12]** 10/18 13/25 14/4 14/13 14/15 18/4 20/10 32/22 33/4 35/24 67/12 120/7
**allegedly [1]** 8/3
**alleges [12]** 67/10 68/8 99/2 99/4 99/8 99/9 99/10 99/11 99/12 99/14 99/15 99/17
**alleging [6]** 33/24 34/13 35/11 98/15 100/14 120/15
**allow [9]** 10/25 11/5 13/23 14/21 37/14 54/4 70/25 116/21 123/16
**allowed [7]** 12/15 14/1 23/23 34/6 40/12 111/3 122/3
**allows [5]** 36/3 49/14 49/22 116/6 117/14
**alluded [1]** 79/7
**alone [1]** 40/2
**along [2]** 21/25 54/20
**already [3]** 13/24 32/17 123/6
**alternative [3]** 7/22 60/25 61/2
**although [1]** 14/14
**always [4]** 85/16 86/17

**amend [2]** 50/25 51/24
**amends [1]** 126/16
**American [2]** 58/14 97/24
**Americas [1]** 2/23
**amount [2]** 21/12 36/16
**analysis [2]** 55/24 119/12
**analyzed [1]** 54/4
**analyzing [1]** 41/5
**Andy [1]** 72/24
**announced [2]** 19/11 24/5
**announcement [4]** 23/21 24/23 26/22 40/1
**announcements [2]** 5/3 24/4
**another [15]** 11/8 15/8 30/2 36/2 36/8 36/19 43/15 72/16 76/18 91/7 91/8 91/18 96/16 112/4 133/12
**answer [4]** 52/4 66/8 103/3 117/24
**answering [2]** 66/12 113/1
**anticipating [1]** 31/5
**anybody [10]** 13/1 38/24 58/2 63/11 64/14 83/19 88/4 114/12 134/11 139/2
**anymore [4]** 15/23 71/14 95/15 112/2
**anyone [1]** 120/21
**anything [15]** 26/20 47/4 56/14 57/9 73/6 77/9 81/11 82/1 94/16 116/1 132/17 135/11 135/19 138/17 138/24
**Apex [1]** 74/24
**apologetically [1]** 118/10
**apologize [1]** 10/1
**App [2]** 36/14 36/20
**apparently [1]** 131/12
**appeal [9]** 16/7 16/7 49/13 91/13 108/2 111/12 111/13 111/17 111/18
**appealable [4]** 38/7 44/13 78/5 124/5

**appeals [5]** 16/6 16/8 16/10 16/12 36/14

**appear [6]** 20/21 20/23 67/25 67/25 114/1 114/3

**appearance [2]** 15/1 28/7

**APPEARANCES [3]** 1/16 2/1 3/1

**appeared [6]** 23/10 24/9 24/11 24/17 25/20 63/15

**appearing [1]** 76/2

**appendix [1]** 57/17

**applicable [2]** 8/16 16/5

**application [1]** 15/22

**applications [3]** 15/19 15/24 16/1

**applies [3]** 17/24 49/6 67/21

**apply [3]** 12/13 34/12 75/13

**appoint [11]** 8/2 16/22 27/15 49/21 53/14 81/6 81/12 82/3 82/5 102/12 137/25

**appointed [3]** 21/9 94/20 119/18

**appoints [1]** 94/4

**appreciate [1]** 130/18

**approach [1]** 111/24

**appropriate [26]** 16/20 16/20 27/6 27/7 27/10 30/18 47/25 48/21 55/5 63/14 64/7 71/9 71/10 71/15 73/9 77/19 79/8 82/20 83/2 101/7 111/4 111/10 115/16 129/2 135/5 135/12

**appropriately [2]** 8/1 135/8

**approval [1]** 113/18

**approved [1]** 11/22

**April [3]** 65/2 65/7 119/9

**architect [1]** 73/12

**areas [2]** 37/16 112/11

**aren't [1]** 11/10

**arena [1]** 89/18

**arguably [1]** 37/6

**argue [2]** 74/18 74/22

**argued [3]** 46/17 51/21 118/10

**arguing [3]** 72/21 123/10 124/14

**argument [19]** 9/15 10/4 11/8 11/23 12/6 19/7 47/17 63/5 64/3 68/1 68/23 114/25 115/22 121/18 124/18 124/22 131/7 135/16 135/22

**arguments [6]** 33/2 46/19 46/21 117/17 136/10 138/23

**arise [1]** 119/19

**arises [1]** 96/15

**arising [1]** 131/23

**Arizona [1]** 116/17

**Arkansas [1]** 116/16

**arose [1]** 9/24

**around [7]** 11/17 15/23 19/15 35/12 61/25 71/11 86/7

**arranged [1]** 37/10

**arrangements [2]** 131/25 132/1

**arrived [1]** 46/19

**article [1]** 38/11

**aside [5]** 46/16 46/17 47/11 47/13 116/18

**ask [9]** 14/12 33/1 37/14 55/14 103/7 111/19 111/23 120/3 128/15

**asked [19]** 15/3 22/14 24/7 26/3 26/25 32/14 41/22 66/17 90/4 92/25 111/22 111/24 113/12 117/11 123/15 123/16 123/23 128/4 128/4

**asking [10]** 18/10 32/15 33/14 60/9 60/21 61/20 63/24 65/22 73/1 114/2

**asks [1]** 59/4

**aspect [2]** 88/17 131/18

**assert [6]** 19/16 57/21 57/22 70/22 123/6 128/12

**assertable [1]** 115/21

**asserted [7]** 13/17 17/18 35/11 50/13 68/12 108/13 123/7

**assertible [1]** 9/6

**asserting [2]** 12/16 95/20

**assertion [1]** 104/21

**assertions [1]** 51/17

**asserts [1]** 40/8

**assets [5]** 67/12 75/1 77/7 99/3 137/13

**assignment [1]** 34/19

**assistance [1]** 19/17

**Associates [1]** 2/7

**assume [2]** 52/20 75/21

**assumes [1]** 78/24

**assuming [1]** 97/7

**assure [1]** 112/22

**attach [1]** 57/16

**attack [2]** 73/23 131/20

**attacked [1]** 35/10

**attained [1]** 33/18

**attempt [3]** 20/3 22/11 121/9

**attempted [1]** 119/16

**attempting [2]** 8/20 11/24

**attempts [1]** 12/9

**attend [2]** 21/2 21/2

**attended [1]** 26/2

**attending [1]** 23/15

**attention [4]** 37/2 51/15 119/24 126/22

**attorney [24]** 14/24 20/25 24/4 25/19 25/22 38/22 39/11 44/4 60/2 63/12 64/2 64/3 90/13 90/17 91/8 91/12 91/18 103/21 105/22 109/17 112/4 133/9 134/12 135/5

**attorneys [22]** 10/23 14/25 17/19 18/24 23/16 25/25 29/20 31/17 38/16 63/11 66/13 66/13 74/13 76/2 107/25 108/23 108/25 109/5 109/8 134/12 134/23 135/4

**attorneys' [12]** 37/20 41/18

# A

**attorneys'... [10]** 50/21 50/24 51/18 54/14 56/23 57/3 57/18 77/1 112/12 113/3
**August [1]** 38/6
**August 26 [1]** 38/6
**AUSA [8]** 58/20 59/13 59/19 60/9 60/19 61/3 61/7 61/22
**authority [1]** 138/2
**authorize [2]** 9/2 32/8
**authorizes [1]** 8/25
**automatically [1]** 75/19
**available [2]** 116/4 116/6
**Avenue [1]** 2/23
**avenues [1]** 116/18
**avoid [1]** 17/14
**avoidance [1]** 111/8
**award [2]** 32/7 32/7
**awarded [3]** 27/25 43/4 67/13
**aware [5]** 26/19 55/15 98/14 104/19 104/19
**away [5]** 19/14 72/18 91/14 94/16 94/17
**AWO [1]** 86/23

# B

**B.R [1]** 116/16
**baby [1]** 77/3
**back [47]** 7/6 7/7 7/8 7/8 9/25 12/17 13/2 15/5 16/18 18/14 26/20 27/4 27/12 29/1 29/3 39/25 40/23 45/6 46/1 50/7 51/24 53/2 55/3 55/14 59/4 61/14 65/5 69/1 71/6 82/17 84/24 87/10 93/14 94/17 103/21 111/20 111/25 112/1 112/17 112/24 117/1 119/9 124/2 127/4 128/3 129/5 136/16
**backdrop [2]** 58/10 58/18
**backed [1]** 114/6

**background [1]** 41/10
**bad [1]** 43/24
**bailiwick [1]** 55/10
**balancing [4]** 75/5 78/14 78/22 78/23
**ball [2]** 36/19 77/19
**Bandas [1]** 1/19
**bank [2]** 54/21 134/15
**bankruptcies [2]** 24/21 28/12
**bankruptcy [134]** 7/1 7/6 7/16 9/23 10/14 12/18 13/1 13/2 13/14 13/20 13/21 13/22 14/7 14/18 15/25 16/3 16/25 17/13 17/14 17/16 19/9 19/15 19/24 21/21 21/22 23/20 29/8 29/13 29/14 30/15 32/14 35/6 37/9 37/13 40/16 40/18 40/22 41/21 43/22 46/3 50/15 54/22 58/6 58/11 59/9 61/11 61/18 62/17 62/18 63/10 64/18 65/18 67/4 67/12 71/21 71/22 71/23 71/25 74/4 75/5 75/15 76/1 78/6 78/20 79/10 79/18 80/13 81/21 82/2 88/3 88/21 88/25 88/25 89/9 89/13 89/22 90/3 90/20 90/22 91/6 91/22 92/3 92/10 92/10 93/5 93/17 93/20 93/24 94/9 94/11 95/9 95/11 95/14 95/16 95/20 95/23 96/2 96/5 97/3 97/18 97/22 101/11 102/19 103/14 104/11 115/25 116/13 116/15 116/17 120/14 121/1 121/20 121/25 122/14 122/17 125/2 125/4 125/7 126/23 129/5 129/25 131/24 134/10 134/13 134/17 134/18 134/25 135/3 135/6 135/7 136/15 138/20 138/21 138/21
**bankruptcy's [1]** 51/9

**bar [8]** 1/22 14/18 17/24 33/20 45/23 47/16 48/23 82/2
**bare [1]** 37/14
**barge [1]** 19/21
**barges [1]** 85/25
**barred [1]** 12/21
**bars [1]** 10/2
**based [16]** 18/9 29/17 41/9 41/11 57/18 62/16 63/9 70/15 70/17 73/16 74/8 74/13 75/15 77/13 90/2 131/23
**baseless [1]** 18/5
**bases [4]** 8/9 32/24 66/25 66/25
**Basic [3]** 23/20 25/17 25/18
**basically [6]** 7/21 44/14 54/16 71/11 78/23 79/6
**basis [7]** 43/24 43/24 68/1 68/23 72/24 93/13 118/5
**bathwater [1]** 77/4
**Beach [1]** 2/13
**bear [2]** 74/11 121/10
**bearing [1]** 116/11
**became [3]** 38/7 86/10 87/1
**become [3]** 25/10 42/5 86/9
**becomes [2]** 22/11 44/16
**been [79]** 7/4 9/12 10/2 14/4 14/10 14/14 15/14 16/9 16/10 21/4 22/10 22/13 22/17 22/18 22/22 22/22 22/23 22/25 23/22 23/24 24/1 24/2 26/8 26/17 26/18 26/19 26/21 27/2 27/25 29/10 29/24 30/16 32/22 36/4 39/14 40/15 41/14 44/1 47/2 47/13 48/4 49/17 50/19 57/14 57/15 58/12 59/8 65/1 67/23 71/4 72/21 76/6 80/10 80/11 80/11 80/15 89/18 93/15 93/23 95/11 95/16 98/14 104/2 104/20 104/23 116/9 116/9 117/9 118/17

**been... [10]**  120/5 120/7 122/1 124/11 125/13 130/13 131/4 133/24 133/24 136/10

**before [47]**  1/14 6/9 8/17 11/11 18/17 21/22 21/23 23/7 23/12 26/5 27/25 32/3 32/9 35/4 38/3 39/22 41/14 41/21 41/25 44/1 44/1 46/18 50/8 50/19 52/5 54/22 57/7 57/14 57/20 60/15 61/6 61/8 76/2 76/7 83/19 90/20 102/22 104/11 118/5 123/18 126/7 127/10 129/1 130/4 133/24 138/21 138/24

**begin [3]**  31/10 58/5 65/4

**beginning [1]**  125/20

**behalf [36]**  5/5 5/7 5/9 5/12 5/15 5/20 6/1 22/6 23/21 24/11 24/19 24/20 26/24 28/8 38/15 39/1 47/23 52/23 57/7 58/4 65/18 68/17 70/22 71/16 72/23 73/6 78/3 95/9 95/20 100/10 100/13 100/18 103/17 116/24 123/9 137/21

**behest [1]**  14/15

**behind [1]**  5/22

**being [24]**  6/23 10/18 19/8 22/4 33/19 33/19 41/12 50/13 54/16 61/11 61/19 64/7 66/17 73/11 73/17 76/9 81/2 81/2 92/13 92/17 93/10 103/24 131/13 132/3

**belabor [1]**  57/2

**belief [2]**  22/3 93/5

**belies [1]**  27/22

**believe [37]**  5/24 6/10 7/14 8/6 11/18 12/1 12/4 12/8 16/19 20/2 20/3 23/16 24/10 24/16 25/25 26/2 29/7 30/18 30/23 32/2 32/24 33/23 34/20 53/17 71/3 72/24 74/10 76/19 77/6 98/9 98/11 106/8 115/8 118/2 127/23

**believed [1]**  66/5

**belong [2]**  35/15 94/5

**bench [3]**  11/21 61/20 111/24

**beneficial [1]**  65/25

**benefit [3]**  28/10 28/18 28/21

**Bennett [14]**  30/5 59/2 59/7 65/1 89/4 89/7 90/1 90/13 91/5 91/7 105/18 111/24 112/14 112/15

**Bennett's [1]**  90/10

**best [21]**  6/13 15/7 31/21 42/19 49/20 49/25 52/8 52/19 83/12 93/6 93/8 94/7 94/10 94/11 94/23 119/13 119/17 119/21 120/1 136/19 138/7

**better [7]**  84/6 86/18 87/8 87/9 88/6 118/3 128/9

**between [16]**  10/23 18/23 29/16 29/18 31/15 54/23 59/16 60/2 65/10 71/20 84/7 90/14 90/18 101/2 103/8 118/21

**beyond [5]**  29/5 32/11 76/25 125/12 133/10

**big [4]**  33/17 88/8 88/14 93/15

**big-picture [1]**  33/17

**bills [2]**  51/12 119/3

**bind [1]**  75/10

**bit [7]**  52/15 52/24 76/3 76/8 84/19 84/25 90/7

**BK [1]**  58/9

**black [1]**  76/19

**blesses [1]**  133/6

**blinders [1]**  80/25

**block [1]**  87/24

**board [2]**  30/13 106/6

**boardroom [1]**  91/24

**boat [2]**  122/15 122/20

**boats [11]**  61/17 86/1 86/13

93/3 93/10 112/17

**Boies [2]**  1/23 5/12

**booted [1]**  18/8

**boss [1]**  86/22

**both [8]**  31/21 40/21 45/24 49/2 93/6 96/13 137/14 137/20

**bothered [1]**  42/15

**bothers [1]**  42/25

**bottom [8]**  22/2 22/2 44/12 72/16 73/19 75/21 79/12 122/2

**BOUCHARD [186]**

**Bouchard's [29]**  6/9 8/8 8/20 11/18 13/9 13/18 16/7 17/4 18/6 20/17 20/18 34/23 35/5 35/6 36/22 37/6 38/4 39/15 41/16 45/17 45/22 50/9 50/22 111/9 123/5 123/23 125/24 126/3 127/4

**bouncing [1]**  7/8

**bound [1]**  124/4

**bounds [2]**  32/11 55/8

**box [1]**  14/10

**boys [2]**  88/10 88/16

**breach [2]**  98/21 120/15

**breached [1]**  98/15

**BREVORKA [7]**  2/6 5/9 48/8 79/7 103/7 103/9 136/21

**briefed [1]**  73/2

**briefing [3]**  22/20 23/3 36/2

**briefings [2]**  23/8 26/17

**briefly [2]**  125/22 130/21

**bring [49]**  6/13 6/23 8/20 11/3 11/15 11/16 11/24 13/10 13/11 14/11 14/13 16/17 16/21 22/5 31/10 32/9 32/23 33/4 33/8 33/15 34/6 36/23 38/14 38/18 41/6 42/16 46/7 46/22 49/10 50/7 52/9 52/22 53/9 53/20 54/12 68/17 69/6 76/22 78/7 99/19

**bring... [9]** 102/14 116/12 117/14 121/10 129/24 133/21 137/13 137/15 137/19
**bringing [4]** 10/3 11/6 71/15 102/8
**brings [5]** 38/12 71/8 119/20 126/16 135/25
**broad [2]** 131/21 132/19
**broader [1]** 37/10
**broke [1]** 114/1
**Brothers [2]** 87/17 87/18
**brought [34]** 6/19 6/19 6/19 9/3 9/9 9/12 9/12 9/14 9/20 9/21 10/9 16/16 31/16 33/7 35/25 40/9 45/25 46/18 49/8 53/21 53/25 73/17 94/23 100/9 100/14 100/17 100/18 116/12 119/9 119/11 131/6 136/16 137/14 137/20
**Broussard [1]** 24/5
**Brown [6]** 91/20 107/6 107/14 107/17 107/18 108/23
**BT's [1]** 35/4
**BTC [27]** 25/3 26/11 28/8 35/3 35/15 38/5 55/6 57/23 58/12 58/13 60/7 61/16 61/25 62/1 65/3 65/11 67/3 67/4 68/6 68/7 68/17 71/16 86/9 87/5 87/11 93/4 131/24
**BTC because [1]** 71/16
**BTC could [1]** 61/16
**BTC creditor [1]** 67/4
**BTC during [1]** 93/4
**BTC entity [1]** 68/7
**BTC has [1]** 62/1
**BTC lost [1]** 58/13
**BTC sues [1]** 60/7
**BTC where [1]** 65/3
**BTC's [2]** 60/8 105/15
**build [1]** 86/25
**building [1]** 87/1

**burden [1]** 11/7
**Bureau [2]** 58/14 97/24
**bus [1]** 59/8
**business [23]** 19/21 30/11 34/23 34/24 37/19 50/14 51/14 51/17 57/1 57/6 65/12 65/13 68/5 86/8 87/25 88/5 88/5 88/17 89/16 90/4 113/24 118/1 131/25
**Buster [1]** 85/18

# C

**Cal [2]** 36/13 36/19
**California [2]** 2/13 36/10
**call [7]** 30/5 66/22 84/1 84/2 84/3 89/6 113/20
**called [8]** 53/1 58/14 64/4 88/23 89/7 91/11 92/21 107/13
**calls [2]** 68/5 112/3
**came [12]** 17/9 19/15 41/24 44/2 47/21 62/4 86/19 88/16 93/17 97/13 106/18 112/1
**can't [34]** 6/18 11/3 11/15 11/15 11/16 22/5 27/23 28/2 29/4 36/6 53/4 53/12 69/18 72/4 73/8 73/19 77/9 79/9 96/13 97/13 97/17 101/1 101/6 101/10 103/3 106/1 106/23 109/5 112/1 112/17 112/21 117/6 124/20 130/16
**candid [1]** 26/21
**candor [2]** 29/2 29/4
**cannot [9]** 9/9 67/21 115/11 120/12 123/2 128/10 128/13 129/21 133/14
**capability [2]** 136/18 138/5
**capable [1]** 136/11
**capacity [2]** 97/8 97/16
**capital [1]** 17/17
**captain [3]** 85/13 85/17 86/3
**capture [1]** 73/4
**Carancahua [1]** 1/19
**care [4]** 74/23 74/24 125/4

**CAROL [2]** 1/9 2/2
**carve [3]** 16/5 16/14 116/9
**carve-out [2]** 16/5 116/9
**carve-outs [1]** 16/14
**carved [1]** 15/17
**carved-out [1]** 15/17
**carves [1]** 130/2
**case [98]** 2/19 2/22 7/5 8/13 8/14 8/14 8/15 8/16 9/2 9/19 16/4 17/3 18/6 18/16 21/10 21/17 21/22 22/19 23/25 25/24 26/11 28/7 28/8 28/11 28/15 29/2 31/10 32/5 35/2 35/3 36/15 36/19 36/20 39/15 39/20 40/15 41/21 42/5 43/7 43/15 43/17 47/2 47/3 48/3 48/5 49/1 49/4 49/6 49/9 49/14 49/16 51/3 51/4 53/1 54/21 68/11 69/12 70/18 70/19 71/17 71/17 71/18 71/20 72/1 72/18 73/9 76/16 79/5 79/10 95/5 95/16 98/18 101/12 102/9 103/2 111/1 115/2 115/13 116/15 116/20 118/7 121/20 123/13 125/1 126/9 126/23 126/24 132/13 132/14 132/15 134/8 134/15 137/3 137/9 137/12 138/14 138/22 138/22
**cases [34]** 6/15 12/24 23/7 27/25 34/24 35/1 36/7 36/10 38/5 42/23 42/24 45/21 52/25 53/17 71/19 73/17 75/12 75/15 75/21 75/24 76/4 76/7 76/18 77/6 78/17 80/6 80/11 80/15 95/11 100/24 102/13 102/19 105/14 126/10
**cast [1]** 30/19
**caught [1]** 29/11
**cause [4]** 9/8 36/6 45/6 116/3
**caused [5]** 99/16 101/3

**caused... [3]**  101/4 101/21 116/22
**causes [15]**  9/4 9/5 9/5 34/12 34/20 38/14 97/9 99/20 102/9 102/14 103/2 115/19 115/20 116/4 116/5
**causing [1]**  58/17
**caveat [2]**  52/24 124/8
**Center [1]**  2/12
**CEO [21]**  19/12 35/10 35/18 68/8 85/9 85/15 86/9 86/10 87/4 90/25 97/19 97/21 98/3 101/11 101/18 101/21 110/21 118/20 119/16 120/14 136/16
**certain [4]**  17/22 69/15 107/15 108/14
**certainly [7]**  9/19 29/13 58/22 83/25 117/11 136/7 138/13
**certify [1]**  139/6
**cetera [1]**  65/8
**CFO [1]**  91/24
**chairman [1]**  87/23
**challenge [9]**  14/23 73/25 108/8 108/11 108/16 118/24 124/10 131/16 133/14
**challenged [4]**  108/7 125/8 125/9 131/17
**challenges [3]**  16/7 16/11 59/3
**chance [1]**  59/9
**change [1]**  57/9
**changes [1]**  107/1
**Channel [1]**  90/7
**channels [1]**  75/11
**Chapter [2]**  105/14 116/20
**chapters [1]**  66/11
**characterization [1]**  95/14
**charge [3]**  92/9 112/1 113/23
**charged [1]**  69/18
**Charles [1]**  107/18

**chart [1]**  57/17
**check [1]**  104/16
**checked [1]**  14/10
**chew [2]**  91/15 111/13
**chief [7]**  1/15 5/8 19/18 19/18 45/13 50/5 53/6
**choice [1]**  21/15
**choose [2]**  57/15 108/16
**choosing [1]**  21/16
**chose [5]**  50/9 50/9 50/10 108/10 131/19
**Christi [1]**  1/20
**Circle [2]**  116/16 117/2
**circles [1]**  71/11
**circuit [12]**  8/23 48/5 49/7 49/11 53/17 53/23 64/3 69/10 71/4 74/10 131/2 133/17
**circular [6]**  11/13 53/2 71/7 72/3 124/17 124/22
**circulated [1]**  132/25
**citation [1]**  115/13
**cite [3]**  36/7 46/3 49/3
**cited [3]**  34/24 58/18 67/20
**cites [1]**  23/1
**citing [1]**  58/5
**civil [6]**  1/7 72/1 75/11 76/20 76/21 125/7
**claim [17]**  17/5 17/11 17/15 20/17 20/18 37/5 50/12 51/10 51/13 54/5 56/19 57/18 99/22 99/23 100/1 100/9 128/12
**claimed [3]**  51/5 67/1 67/11
**claiming [2]**  51/11 68/1
**claims [156]**
**clarification [1]**  134/9
**clarify [1]**  104/10
**classify [1]**  17/4
**clause [3]**  108/7 108/11 131/17
**clean [1]**  44/9
**cleaned [1]**  93/11
**cleaning [2]**  92/16 93/11

**clear [12]**  18/25 50/25 50/25 71/5 95/19 96/15 98/8 99/18 100/20 101/1 104/19 131/10 136/8
**clearly [6]**  62/13 67/2 68/13 70/23 112/16 116/6
**clerk [1]**  114/2
**Cleveland [3]**  49/3 70/18 71/3
**client [2]**  81/2 109/10
**CLORE [8]**  1/18 5/4 6/4 6/11 32/1 32/10 34/15 105/23
**closed [3]**  47/2 73/20 79/10
**closely [1]**  59/25
**closing [1]**  83/24
**closure [2]**  75/6 135/13
**cloud [1]**  137/7
**clubby [1]**  82/3
**co [3]**  1/5 137/17 137/18
**co-administrators [2]**  137/17 137/18
**CO-TRUSTEE [1]**  1/5
**Coast [19]**  58/15 58/20 59/15 59/17 59/18 60/3 60/7 60/9 60/11 61/10 61/13 61/19 63/12 63/24 64/2 65/8 90/6 92/17 93/12
**Coast Guard [4]**  63/12 63/24 65/8 93/12
**coat [1]**  135/3
**code [23]**  75/5 75/15 76/1 76/19 78/6 78/20 79/18 80/13 116/1 116/13 121/1 121/6 121/7 122/17 125/7 129/25 130/16 134/10 134/13 134/18 134/25 135/6 135/7
**code -- you [1]**  121/7
**coffers [2]**  68/7 131/13
**coffin [1]**  18/6
**collateral [1]**  68/12
**colleagues [2]**  14/24 121/7
**college [3]**  86/1 86/6 88/10

**colloquy [1]** 61/9
**colorable [9]** 10/4 10/5 10/19 10/20 11/4 11/8 11/10 11/17 14/8
**com [1]** 50/15
**come [12]** 12/17 45/6 51/24 53/22 61/25 76/7 77/23 77/23 92/3 92/10 97/17 101/6
**comfortable [2]** 80/20 81/13
**coming [6]** 44/17 59/13 92/12 92/14 92/15 93/5
**commend [1]** 60/17
**comment [1]** 39/17
**commits [1]** 75/23
**committed [1]** 99/3
**committee [36]** 15/11 15/13 15/14 15/16 15/18 15/19 15/20 16/4 16/15 22/14 22/18 43/8 43/18 43/19 49/6 49/17 57/12 69/10 69/17 69/21 70/1 70/6 70/13 71/5 73/1 76/13 86/23 116/8 116/10 117/20 127/2 127/14 127/20 130/23 131/3 131/4
**committees [2]** 49/15 70/22
**communication [3]** 58/24 59/20 60/2
**company [83]** 17/13 17/14 17/21 17/21 18/19 19/20 19/22 29/16 29/17 30/9 30/10 32/19 33/7 35/13 58/21 59/18 59/25 65/3 65/10 65/17 68/10 76/25 84/17 85/8 85/9 85/12 85/14 85/24 86/14 86/15 86/15 86/17 86/20 87/2 87/6 87/7 87/8 87/13 88/8 88/9 88/10 88/15 88/15 88/20 89/9 89/20 90/2 90/2 92/1 92/1 92/9 92/10 92/19 93/6 93/9 93/18 94/6 94/17 94/24

103/19 112/2 113/23 118/3 118/4 118/4 118/8 119/3 119/4 119/6 119/11 119/12 119/15 119/16 119/17 120/2 120/14 122/15 122/16 122/20 126/18 136/14 136/15 136/20
**company's [6]** 67/12 88/5 92/2 106/15 112/24 119/13
**compel [1]** 105/15
**compensation [1]** 17/22
**complained [1]** 133/10
**complaining [1]** 105/23
**complaint [17]** 14/2 50/8 50/16 51/17 52/1 54/10 55/23 56/23 67/9 67/18 67/25 68/5 105/10 105/13 120/5 120/6 131/11
**complaints [3]** 18/18 54/15 65/8
**complete [4]** 11/18 36/6 77/8 77/12
**completely [2]** 77/13 102/13
**complicit [1]** 28/3
**complicitness [1]** 20/4
**comply [3]** 7/15 134/12 135/6
**compound [1]** 52/15
**compromise [1]** 121/10
**computer [2]** 3/9 5/22
**con [3]** 40/3 44/12 111/11
**concealed [2]** 8/22 12/10
**concealment [5]** 10/16 11/19 12/20 14/3 117/8
**conceded [1]** 56/24
**concedes [1]** 50/23
**concentrate [1]** 112/11
**concern [4]** 28/17 82/2 106/15 119/5
**concerned [1]** 113/2
**concerns [1]** 41/11
**concluded [1]** 139/4
**conclusion [2]** 115/17

115/17
**conduct [4]** 73/12 99/15 101/3 120/22
**conference [1]** 59/1
**confines [1]** 134/18
**confirm [1]** 47/12
**confirmation [44]** 8/17 8/17 8/24 9/25 10/6 10/7 10/8 10/10 10/15 10/19 10/21 11/2 11/21 11/22 12/4 12/5 12/7 12/11 13/12 14/7 15/15 16/1 16/6 16/9 16/12 17/23 17/24 17/25 18/2 33/17 33/18 33/19 33/21 38/5 41/8 46/6 78/5 78/8 79/19 115/8 117/4 124/5 133/6 133/11
**confirmed [17]** 39/19 40/4 40/7 46/9 46/16 46/18 46/23 47/13 47/13 47/16 48/6 77/8 114/4 117/3 117/24 127/13 130/13
**conflict [34]** 6/23 8/4 10/22 15/2 16/18 20/7 20/11 27/4 27/23 28/16 28/23 38/14 40/9 42/12 60/1 80/20 96/9 96/11 96/12 96/15 96/23 97/3 102/8 102/12 102/25 120/13 120/17 122/10 125/24 127/17 128/10 134/24 136/23 137/7
**conflicted [19]** 14/11 27/17 38/16 47/22 48/11 48/17 48/25 69/4 83/2 83/4 83/7 121/15 121/19 127/16 128/1 128/2 129/20 131/1 136/3
**conflicts [3]** 81/1 83/3 100/21
**confuse [1]** 25/6
**Congress [4]** 78/23 79/15 79/16 121/8
**Congress's [1]** 121/9
**connection [2]** 35/17 35/18
**consent [1]** 129/6
**consequences [2]** 120/22

**consequences... [1]** 120/23
**consider [1]** 123/24
**consideration [4]** 44/9 54/6 96/1 96/6
**consistent [1]** 131/2
**conspiracy [1]** 51/19
**conspirators [1]** 11/1
**constitutional [1]** 134/21
**consultant [3]** 65/11 119/9 136/17
**consultation [1]** 131/19
**consulting [2]** 65/2 65/14
**consummated [3]** 20/19 20/20 21/3
**contact [2]** 30/3 88/21
**contacted [1]** 91/3
**contested [2]** 35/9 103/24
**contesting [2]** 31/2 39/4
**context [5]** 18/22 20/9 36/11 61/5 111/11
**continue [6]** 25/23 38/25 87/7 93/4 107/14 119/4
**continued [8]** 2/1 3/1 19/16 19/16 19/17 19/23 19/23 129/6
**continues [1]** 58/25
**continuing [2]** 93/22 136/22
**contractual [2]** 131/25 132/1
**contrast [1]** 30/14
**control [2]** 105/18 131/12
**controlling [1]** 48/3
**controls [3]** 46/6 48/6 49/2
**conversation [1]** 112/15
**conversations [1]** 91/21
**cooperate [1]** 42/18
**cooperation [1]** 106/14
**cooperative [1]** 64/21
**copied [1]** 114/5
**copies [3]** 23/23 24/3 24/17
**Corp [2]** 116/16 117/2
**corporate [2]** 99/3 99/8
**corporation [2]** 98/13 116/1

**Corpus [1]** 1/20
**correct [37]** 7/23 19/7 30/2 37/23 39/18 46/11 48/16 55/12 59/23 62/20 65/22 96/17 97/10 97/20 98/17 101/13 101/16 104/12 104/15 105/21 106/5 106/7 108/12 108/15 110/21 115/17 121/25 128/17 128/18 128/21 129/12 129/17 130/12 130/14 132/2 132/3 139/6
**correction [1]** 132/20
**correctly [3]** 26/5 132/7 136/12
**corrupted [1]** 75/1
**cost [2]** 35/23 67/7
**costs [9]** 35/23 56/19 67/7 67/17 67/19 67/21 67/22 105/14 105/17
**could [30]** 9/12 9/14 29/25 33/6 33/12 38/17 38/18 38/25 50/16 50/20 51/16 52/14 52/22 61/16 70/1 70/2 72/10 73/1 80/1 82/12 82/12 83/21 96/6 103/13 111/12 119/3 119/3 119/4 123/9 137/23
**couldn't [4]** 14/11 41/23 47/22 122/15
**counsel [60]** 19/8 20/23 20/25 26/18 27/7 28/11 28/15 29/2 35/17 35/20 35/22 37/4 45/17 45/23 46/20 50/9 50/22 54/23 60/10 64/16 64/20 64/24 66/14 70/19 70/25 72/15 72/16 74/21 75/14 91/7 91/8 95/13 97/7 97/7 97/11 97/15 106/4 106/11 107/2 108/7 108/10 109/7 111/16 117/17 118/10 118/18 119/10 121/12 122/13 124/7 124/22 127/24 128/15 129/7 131/15

131/20 133/2 133/12 134/3 135/15
**countered [1]** 34/25
**country [1]** 35/12
**couple [6]** 23/16 24/15 92/4 110/9 113/9 115/13
**course [8]** 49/23 51/25 63/1 66/23 75/7 92/8 121/8 121/22
**court [152]**
**Court's [6]** 7/15 31/11 51/15 51/25 63/14 124/23
**courtroom [8]** 8/7 15/6 18/22 44/4 44/20 54/25 72/17 113/19
**courts [5]** 75/4 133/23 134/17 134/20 134/22
**Covington [1]** 74/24
**CRANDALL [2]** 2/15 6/1
**created [1]** 117/7
**credential [1]** 60/8
**credentialing [7]** 58/14 59/3 60/7 60/25 61/2 61/14 61/16
**credible [1]** 133/8
**credit [1]** 61/1
**creditor [30]** 8/23 12/16 15/7 17/4 20/18 49/17 51/2 51/5 51/7 51/11 55/19 55/20 55/22 56/20 57/12 63/11 67/4 67/15 104/21 109/21 109/22 125/24 126/4 126/19 127/5 127/5 127/5 130/3 130/6 136/23
**creditor's [1]** 128/12
**creditors [37]** 53/20 53/25 57/19 93/7 93/9 93/9 93/22 94/1 94/8 94/11 94/18 100/10 100/13 100/18 100/24 101/22 103/24 104/20 109/20 117/20 117/22 117/25 119/18 119/21 121/11 122/16 127/3 127/12 127/18 127/19 128/10 128/13 129/21

**creditors... [4]**  132/25 133/1 136/24 137/10
**creditors' [34]**  15/11 15/13 15/14 15/16 15/18 15/20 16/4 16/15 22/14 22/18 43/8 43/18 43/19 49/6 49/15 51/12 69/9 69/17 69/21 70/1 70/5 70/13 70/21 71/5 73/1 76/13 103/16 116/8 116/10 127/14 127/20 130/23 131/3 131/3
**criminal [2]**  75/8 86/13
**CRO [1]**  58/23
**cross [5]**  44/25 95/6 103/10 105/5 110/11
**CROSS-EXAMINATION [4]**  95/6 103/10 105/5 110/11
**cross-examine [1]**  44/25
**crosses [1]**  113/8
**crunch [1]**  58/17
**CSR [1]**  3/4
**current [3]**  60/10 60/11 60/21
**customers [3]**  87/9 90/5 93/13
**CV [2]**  1/7 5/3

**D**

**dad [1]**  85/20
**damage [1]**  103/21
**damaged [1]**  51/7
**damages [14]**  12/19 13/20 34/25 35/14 35/16 36/3 36/17 36/22 37/8 37/12 37/15 67/4 116/22 117/3
**date [8]**  9/4 38/11 93/21 106/21 113/16 115/20 130/4 139/9
**dates [1]**  114/3
**DAVID [5]**  1/8 1/22 5/12 23/19 24/11
**day [22]**  13/5 19/11 42/16

42/23 58/9 58/10 73/25 75/6 88/15 88/15 89/7 91/23 92/24 92/24 93/13 93/13 94/18 106/12 116/14 116/18 125/14 127/6
**days [8]**  18/8 47/14 76/20 77/9 78/8 78/10 79/20 133/13
**de [1]**  21/12
**deadline [2]**  116/14 116/18
**deadlines [1]**  133/11
**deal [3]**  8/17 61/2 127/15
**dealing [2]**  78/4 93/13
**dealt [2]**  55/16 94/11
**debt [7]**  37/7 37/22 50/14 51/1 56/19 56/20 86/16
**debtor [22]**  5/15 9/4 38/11 41/17 43/7 43/19 43/20 70/22 93/21 100/10 110/21 115/20 121/13 121/24 122/4 130/5 130/7 131/20 131/20 132/3 132/18 133/6
**debtor's [9]**  73/3 73/4 73/5 76/12 108/16 115/9 117/5 131/7 135/13
**debtors [12]**  97/19 97/22 97/24 98/3 98/4 98/16 99/13 99/16 100/18 101/4 102/2 102/5
**debtors' [1]**  97/18
**debts [2]**  37/7 126/19
**decades [1]**  102/18
**deception [1]**  12/13
**decide [8]**  30/24 38/18 67/21 71/15 73/16 123/9 123/21 128/7
**decided [3]**  7/7 80/11 87/3
**decides [1]**  36/24
**deciding [1]**  41/6
**decision [17]**  7/11 7/13 51/9 55/23 69/6 81/14 81/24 83/5 86/15 89/10 91/14 96/12 101/8 108/3 118/11 138/14 138/17

**decisions [4]**  63/9 81/20 82/10 82/21
**declaration [1]**  58/9
**declare [1]**  13/12
**declared [1]**  126/17
**Deelen [4]**  35/24 35/24 55/16 67/20
**deemed [1]**  104/23
**default [1]**  62/2
**defend [1]**  113/24
**defendant [6]**  1/22 2/2 2/5 28/15 120/15 120/16
**defendants [19]**  1/12 2/10 8/21 12/22 13/11 13/17 14/4 14/14 14/16 16/3 21/10 33/20 42/5 68/7 80/23 94/22 94/22 115/2 119/19
**defendants' [1]**  118/10
**defended [1]**  118/14
**defending [3]**  61/23 64/7 64/10
**defense [5]**  21/17 38/1 45/12 135/22 135/24
**defensive [1]**  36/1
**defined [2]**  9/5 115/21
**defining [1]**  130/2
**definition [1]**  115/25
**degree [3]**  8/7 53/24 76/24
**delay [1]**  138/16
**delegates [1]**  47/16
**delivering [1]**  85/24
**denied [1]**  119/5
**depend [1]**  97/13
**dependent [1]**  129/14
**depending [1]**  76/9
**depends [3]**  31/9 35/1 53/13
**deposition [1]**  26/20
**depositions [10]**  23/16 23/22 23/24 24/3 24/5 24/13 24/17 26/2 26/4 26/12
**derivative [60]**  7/24 8/24 9/3 13/24 13/25 20/5 22/6 32/6 32/7 32/8 32/13 32/17 32/18 32/22 33/3 33/6 33/15

**derivative... [43]** 33/16 34/22 36/24 37/1 37/12 38/4 39/18 45/21 45/24 46/3 46/7 46/22 49/5 49/15 51/10 51/13 51/22 52/2 52/9 52/10 52/12 53/9 55/10 67/2 67/14 67/16 68/4 68/13 68/24 70/22 81/3 82/4 94/4 117/12 120/4 120/5 120/8 123/6 123/12 123/16 131/22 137/3 137/20

**derivatively [7]** 6/14 9/6 9/21 10/9 94/5 116/25 117/13

**described [2]** 10/11 95/13

**describing [1]** 59/2

**description [1]** 58/10

**designed [3]** 20/3 73/4 115/21

**desiring [1]** 13/10

**desk [1]** 92/3

**despite [1]** 131/15

**detached [2]** 79/2 79/4

**detail [1]** 53/24

**determination [1]** 129/2

**determine [8]** 8/15 21/10 38/24 68/12 77/18 81/10 100/23 101/21

**determined [1]** 88/20

**determines [1]** 49/25

**determining [1]** 74/5

**didn't [37]** 12/17 12/18 18/10 21/2 23/10 31/14 32/10 32/25 39/18 49/12 49/12 50/15 52/25 57/14 62/9 62/16 64/4 65/20 65/21 75/17 81/9 81/11 82/18 100/16 100/17 106/19 107/21 108/20 111/23 115/23 115/23 117/21 127/9 130/10 131/16 134/12 135/10

**die [1]** 50/11

**difference [7]** 8/18 55/22 71/20 74/19 74/21 80/16 136/13

**differences [1]** 92/25

**different [12]** 6/17 28/11 43/18 52/11 66/10 72/15 72/16 75/23 76/16 77/13 80/4 122/19

**differing [1]** 121/10

**difficult [1]** 12/23

**diminished [1]** 67/13

**DIP [2]** 18/18 62/2

**direct [29]** 13/23 32/2 32/5 32/16 34/16 34/21 34/22 34/25 35/8 35/14 36/23 37/15 37/17 50/6 50/13 51/3 51/15 51/25 52/12 55/13 56/15 56/16 67/1 68/2 68/23 84/12 116/14 120/7 126/22

**directing [1]** 97/7

**directly [7]** 6/11 9/6 10/9 37/13 112/14 115/22 120/8

**director [1]** 130/5

**disagree [2]** 47/20 53/6

**disagreement [1]** 15/12

**discharged [1]** 90/6

**disclose [3]** 41/9 44/24 134/24

**disclosed [3]** 16/11 45/3 135/9

**disclosure [10]** 10/13 10/16 29/2 29/5 38/22 42/24 44/5 44/15 46/10 75/25

**disclosures [3]** 134/9 135/5 135/7

**discourse [1]** 61/3

**discover [1]** 79/12

**discovered [4]** 74/25 78/10 80/2 80/16

**discrete [2]** 34/20 35/16

**discuss [2]** 32/1 51/4

**discussed [4]** 35/19 36/1 45/22 56/21

**discussing [2]** 27/6 37/4

**discussion [14]** 15/10 15/12 18/16 19/5 19/6 23/23 36/4 60/16 60/18 84/7 91/3 103/8 116/13 118/18

**discussions [1]** 107/22

**disgorgement [1]** 67/3

**disinterested [4]** 121/2 128/14 130/1 130/2

**dismiss [6]** 46/1 50/10 56/2 56/5 57/17 72/18

**dismissed [7]** 7/5 14/14 48/15 91/8 92/19 93/18 94/18

**dispassionately [1]** 123/2

**dispatcher [1]** 86/4

**dispatchers [1]** 86/5

**dispatching [1]** 86/6

**dispute [2]** 17/15 121/3

**disputed [1]** 55/21

**disputes [1]** 127/15

**disqualified [4]** 40/12 121/6 125/10 125/14

**disregard [1]** 134/21

**disrupt [1]** 76/24

**dissolution [1]** 16/15

**dissolved [5]** 15/13 15/15 15/17 49/17 116/9

**distance [1]** 8/4

**distinction [4]** 8/18 74/19 74/20 76/3

**distinguishing [1]** 74/16

**district [7]** 1/1 1/1 1/15 39/15 51/8 116/15 116/17

**DIVISION [1]** 1/2

**docket [9]** 23/10 58/10 59/1 64/18 106/20 106/24 111/1 126/6 130/22

**doctors [1]** 49/7

**doctrine [2]** 36/8 36/11

**document [3]** 126/22 127/3 127/13

**documentations [1]** 115/9

**documenting [1]** 67/18

**documents [3]** 23/2 115/12

**documents... [1]**  126/18
**does [24]**  9/2 10/8 37/8 44/16 57/9 61/9 66/10 68/23 68/24 73/5 74/18 76/16 78/12 78/15 95/22 105/20 106/19 115/19 117/2 117/5 122/13 127/14 129/13 129/16
**doesn't [24]**  10/20 11/11 22/24 32/5 33/21 34/12 41/25 48/9 49/12 55/1 55/2 59/7 63/6 67/24 67/25 75/10 75/14 78/13 80/16 118/2 122/14 124/14 124/20 136/23
**doing [9]**  15/22 26/20 28/25 66/1 87/21 87/21 87/25 89/1 93/2
**dollar [2]**  19/20 30/10
**dollars [2]**  28/1 67/10
**don't -- I [1]**  62/9
**done [24]**  7/11 10/15 23/7 29/25 38/21 46/9 47/4 61/2 73/21 76/19 92/7 108/9 115/15 115/18 116/23 118/15 124/21 133/14 133/16 133/16 133/17 133/18 133/20 133/22
**dormant [2]**  137/1 137/2
**double [4]**  86/25 87/1 87/2 104/16
**double-check [1]**  104/16
**doubt [5]**  28/10 28/18 28/21 93/18 111/9
**Doug [10]**  91/19 91/19 107/5 107/7 107/11 107/11 108/9 112/8 112/9 114/5
**down [8]**  19/14 22/8 37/25 55/3 87/19 90/5 92/20 114/15
**downhill [1]**  29/4
**drafted [8]**  11/1 11/1 11/20 11/20 12/22 115/6 115/9

**drafting [2]**  132/6 132/24
**drive [2]**  2/12 18/5
**driving [1]**  85/24
**Dublin [1]**  91/10
**due [1]**  116/14
**DULY [1]**  84/11
**Dundon [9]**  25/12 25/13 28/2 43/2 43/7 43/16 102/16 102/18 102/25
**Dunn [5]**  23/19 24/12 24/20 25/10 25/14
**duplicative [1]**  135/20
**during [5]**  13/13 92/9 93/4 101/11 116/19
**duties [12]**  69/18 95/22 96/1 96/4 96/7 98/4 98/9 98/10 98/15 98/22 100/14 102/5
**duty [2]**  96/17 120/16

## E

**e-mail [1]**  114/5
**e-mails [1]**  114/2
**each [4]**  42/18 42/22 43/24 74/24
**earlier [2]**  117/18 135/9
**easiest [1]**  92/3
**easy [3]**  34/18 67/17 89/13
**eat [2]**  91/15 108/4
**effect [3]**  15/16 19/8 129/3
**effective [4]**  9/4 38/11 93/21 115/20
**efficient [1]**  32/25
**either [11]**  24/16 31/21 48/4 70/13 77/3 81/6 81/21 82/5 83/4 122/8 132/5
**elements [1]**  6/8
**Eleven [1]**  80/9
**ELIZABETH [5]**  1/8 2/2 2/6 5/20 78/3
**ELLIS [30]**  1/10 1/10 2/10 2/10 6/1 6/16 8/21 9/16 15/25 17/1 17/19 18/3 21/1 29/20 29/24 30/4 30/5 30/6 31/17 45/25 49/3 58/4 64/7

**115/10**  88/22 90/13 101/2 101/9 105/19 115/10 132/6
**else [18]**  14/5 14/6 24/9 27/17 38/25 45/11 48/22 50/3 56/14 64/14 70/3 71/8 71/9 83/19 103/6 112/23 138/24 139/2
**elsewhere [1]**  90/23
**emergence [1]**  106/15
**EMILY [1]**  2/7
**employee [1]**  130/5
**employees [6]**  93/7 93/8 93/9 99/10 119/4 119/18
**empowered [1]**  137/19
**enactment [1]**  10/15
**encourage [1]**  80/5
**end [9]**  7/1 55/3 59/6 59/9 60/10 60/12 60/14 62/4 106/12
**ended [3]**  29/19 29/25 87/1
**ends [1]**  51/20
**Energy [1]**  23/20
**enforce [1]**  75/18
**engage [1]**  49/5
**engaged [1]**  61/9
**enough [4]**  12/18 88/11 90/8 96/18
**ensues [1]**  60/18
**ensure [1]**  133/23
**enter [1]**  65/14
**entered [7]**  10/10 10/21 38/6 65/10 66/1 103/23 110/23
**entire [4]**  12/11 13/13 57/7 86/7
**entitled [2]**  6/13 117/14
**entity [10]**  9/7 16/20 60/8 68/7 92/11 93/22 100/10 115/24 115/25 116/2
**equal [1]**  75/13
**equipment [4]**  86/18 86/18 87/8 87/9
**equitable [7]**  10/13 11/5 46/9 78/19 80/2 134/16

equitable... [1]  135/4
equity [3]  17/17 55/18 134/20
escape [2]  28/23 28/24
Eskridge [1]  51/8
established [1]  120/12
estate [77]  9/18 9/18 9/20 10/24 12/16 18/1 20/12 22/6 32/20 32/23 33/2 33/8 33/12 33/16 38/15 42/4 42/20 42/20 47/23 51/6 51/10 51/11 51/19 51/22 52/8 52/23 56/20 57/4 57/7 57/19 57/23 63/12 64/9 65/11 65/18 67/6 67/12 67/16 71/17 76/21 88/11 94/6 94/8 94/10 94/24 95/9 95/20 95/23 96/2 96/5 97/3 97/9 99/19 99/22 99/23 100/9 102/8 102/14 103/1 113/25 116/24 119/1 119/21 120/19 120/23 121/5 121/25 123/9 126/2 127/17 128/11 129/22 132/3 136/20 137/13 137/21 138/7
estate's [2]  120/8 125/25
estates [2]  13/1 13/3
et [1]  65/8
et cetera [1]  65/8
evaluate [2]  79/3 82/3
evaluation [2]  88/13 113/18
evaluations [1]  88/8
EVAN [1]  1/22
even [16]  21/21 31/6 47/3 48/18 67/25 70/7 70/24 71/21 78/6 79/22 92/12 116/9 116/17 118/16 137/7 137/25
eventually [1]  22/3
ever [9]  90/13 90/17 90/20 90/22 95/16 95/19 111/19 111/20 114/6
every [11]  12/25 13/12 14/7 44/17 57/18 64/24 88/9 88/16 112/1 112/18 114/5
everybody [20]  5/23 42/16 42/16 42/17 42/21 69/4 71/7 71/11 72/17 72/18 72/19 76/23 81/20 82/9 84/24 112/23 125/1 125/5 136/5 136/8
everybody's [2]  134/10 135/2
everyday [1]  14/24
everything [10]  13/2 13/5 14/5 14/6 71/23 93/2 93/3 105/9 112/22 135/9
evidence [33]  19/2 19/3 19/6 19/9 27/22 28/2 31/13 41/19 44/19 44/19 44/23 44/24 50/4 54/14 63/21 63/23 64/1 64/2 64/3 66/14 81/18 82/12 82/22 82/24 83/12 100/23 101/1 101/8 102/24 102/25 114/24 120/11 123/2
evidentiary [1]  31/6
exact [2]  106/21 113/22
exactly [12]  29/6 32/14 39/9 39/9 41/1 45/9 60/4 70/12 95/22 116/23 136/4 136/4
exaggeration [1]  27/3
examination [7]  49/5 84/12 95/6 103/10 105/5 110/11 113/10
examine [2]  44/25 49/13
examined [1]  49/7
except [1]  31/1
exception [1]  15/17
excerpt [1]  36/15
excerpts [1]  58/5
exchange [1]  18/23
excised [2]  12/15 13/7
exculpation [5]  16/8 108/7 108/9 108/11 131/17
excused [1]  139/3
executed [3]  92/14 92/18 93/16
executive [1]  19/19
exercised [1]  134/17
exhibit [2]  23/11 27/1
exist [2]  9/11 13/18
existed [2]  13/21 121/19
existence [1]  10/19
existent [1]  15/14
exists [1]  40/6
expanded [1]  69/19
expect [1]  92/3
expenses [6]  35/16 36/22 50/14 50/20 51/1 67/19
experience [3]  102/19 103/3 122/11
experiences [1]  60/14
expert [1]  69/16
expiration [1]  135/13
explain [3]  32/10 103/13 107/9
explained [2]  53/23 92/25
explains [1]  64/25
explanation [1]  89/25
explicitly [1]  8/24
exploding [1]  133/9
expressed [1]  82/2
expressly [3]  38/8 49/4 60/18
extent [9]  6/23 9/16 12/8 12/12 32/18 33/11 50/24 54/3 114/23

F

faced [1]  133/24
fact [27]  8/1 9/3 9/9 10/14 10/21 11/25 15/4 21/3 28/24 31/14 31/15 44/2 50/22 65/19 67/8 68/13 68/14 79/13 87/16 88/7 108/4 109/4 113/22 122/14 126/6 131/17 133/10
factor [1]  74/16
facts [7]  8/19 22/21 31/16 35/2 76/7 76/17 77/6
factual [5]  14/1 31/2 32/20

**factual... [2]** 32/24 119/20
**failed [3]** 20/21 134/23 135/5
**failure [1]** 41/9
**fair [19]** 10/13 44/9 46/9 49/1 50/5 52/12 55/20 75/15 75/22 76/5 76/6 79/2 80/23 96/7 96/8 96/14 96/18 124/25 125/5
**fairly [2]** 75/2 75/3
**fairness [1]** 134/5
**faith [1]** 10/12
**familiar [1]** 106/20
**family [17]** 1/5 30/9 30/10 57/6 85/16 87/7 87/12 87/15 87/25 88/2 89/16 91/8 94/12 103/17 113/23 118/1 119/15
**far [3]** 112/10 128/12 129/18
**Fargo [3]** 109/17 109/20 133/2
**fashion [2]** 117/1 117/2
**father [5]** 85/21 86/7 86/12 86/22 87/20
**fault [2]** 100/23 101/9
**favorable [2]** 89/12 90/9
**FCRR [1]** 3/4
**February [19]** 18/7 18/15 18/15 19/10 58/8 60/16 61/6 61/24 64/12 90/25 106/3 109/16 110/3 118/23 119/2 119/8 121/13 121/23 126/15
**February 2021 [1]** 126/15
**February 24th [2]** 18/15 61/24
**February 26 [1]** 109/16
**February 26th [5]** 19/10 58/8 64/12 106/3 110/3
**federal [1]** 88/12
**fee [7]** 15/19 15/21 15/24 16/1 23/12 23/25 64/22
**fees [31]** 17/9 18/7 28/1 35/9 37/20 41/18 43/4 50/21

50/24 51/18 54/14 56/22 56/23 57/3 57/19 67/3 67/13 77/2 103/21 105/24 109/1 109/4 109/6 112/13 112/16 112/18 112/20 113/3 118/25 131/12 133/9
**feet [1]** 17/14
**felt [1]** 131/12
**few [5]** 15/17 18/8 35/1 83/21 117/15
**fiduciary [10]** 82/3 98/4 98/5 98/9 98/9 98/15 98/21 100/14 102/4 120/16
**Fifth [12]** 8/23 48/5 49/7 49/11 53/17 53/23 64/3 69/10 70/11 71/4 74/10 131/2
**Fifth Circuit [10]** 8/23 48/5 49/7 49/11 53/17 53/23 64/3 69/10 71/4 131/2
**fighting [3]** 54/19 128/10 129/22
**figure [2]** 33/11 48/20
**file [8]** 20/1 30/6 50/9 60/20 88/21 89/9 89/11 90/8
**filed [37]** 6/25 7/5 7/20 7/23 15/21 15/24 16/1 17/1 17/23 20/13 20/14 22/8 23/5 23/9 23/11 32/13 40/18 77/1 88/24 88/25 89/22 90/20 91/23 97/22 98/15 98/24 105/10 105/14 113/13 120/14 120/18 121/20 122/8 124/10 126/9 126/10 126/12
**files [1]** 21/6
**filing [6]** 27/14 90/1 90/3 97/18 118/19 130/4
**filings [1]** 23/2
**filling [1]** 86/4
**fin [1]** 124/3
**final [14]** 1/14 4/2 15/19 15/21 15/24 16/1 18/5 38/7 44/13 78/5 124/3 124/4 125/6 138/23

**finality [1]** 78/23
**finally [2]** 37/3 128/19
**financial [1]** 126/18
**financiers [1]** 18/18
**financing [1]** 18/18
**find [9]** 18/10 36/10 36/10 47/24 48/5 52/7 52/18 72/19 101/1
**findings [4]** 31/11 44/21 44/21 83/11
**finds [3]** 53/4 80/1 137/5
**fine [6]** 48/18 62/6 109/14 129/8 129/10 130/19
**fire [4]** 67/11 106/19 107/21 107/25
**fired [2]** 108/1 108/2
**firing [5]** 11/13 53/2 71/7 72/3 124/17
**firm [4]** 1/19 71/1 131/4 132/1
**firms [8]** 30/9 30/12 89/15 107/8 107/13 132/16 132/17 132/18
**first [14]** 8/8 58/9 58/19 66/24 67/7 68/10 68/11 83/20 92/15 93/10 111/7 111/8 132/11 136/15
**first-day [2]** 58/9 58/19
**five [3]** 29/12 30/17 121/21
**fleet [2]** 60/8 90/6
**flew [1]** 87/19
**Flexner [1]** 1/23
**floated [1]** 90/6
**floor [1]** 6/24
**Florida [4]** 1/24 29/18 86/19 87/20
**flounder [1]** 19/23
**flow [4]** 37/8 37/9 37/10 37/13
**fly [2]** 49/12 125/18
**focus [2]** 8/8 106/14
**Foley [5]** 91/19 91/20 107/3 107/11 108/23
**followed [3]** 93/16 106/7

**followed... [1]** 107/8
**following [4]** 19/11 86/3 86/4 112/20
**Footnote [2]** 50/23 56/25
**force [1]** 60/8
**foregoing [1]** 139/6
**foremost [2]** 68/10 68/11
**forget [2]** 82/16 110/22
**form [2]** 76/18 116/20
**formed [1]** 89/20
**former [9]** 11/21 66/22 66/23 90/14 90/18 118/12 121/3 121/4 121/4
**forth [5]** 7/8 7/8 126/16 127/4 136/10
**fortunately [1]** 19/13
**forward [15]** 7/12 9/20 37/15 44/22 50/1 50/2 53/22 69/22 73/2 76/14 92/6 115/3 116/7 131/3 134/11
**found [6]** 10/13 18/19 36/7 36/10 51/9 60/24
**four [5]** 18/20 23/5 24/5 29/11 29/11
**four-page [1]** 23/5
**fourth [3]** 85/9 85/11 119/15
**frame [2]** 106/1 106/2
**frankly [1]** 54/3
**fraud [34]** 12/14 12/25 33/18 33/20 33/25 34/1 34/11 34/13 73/5 73/8 73/9 73/21 73/22 73/25 74/8 74/13 74/25 76/18 78/6 79/12 79/19 79/22 80/2 80/3 80/11 80/15 115/12 115/24 116/14 116/19 116/21 116/22 117/7 117/23
**frauds [1]** 32/22
**fraudulent [2]** 44/15 73/12
**fraudulently [1]** 10/22
**fray [1]** 7/20
**Fred [2]** 85/13 85/17

**free [1]** 86/16
**freeing [1]** 93/1
**FREEMAN [12]** 1/9 2/2 5/21 8/21 27/20 31/15 37/11 73/17 78/3 90/14 90/18 132/15
**Friday [1]** 112/18
**friendly [3]** 29/22 30/7 90/1
**front [2]** 96/14 117/16
**full [11]** 10/13 10/16 18/21 29/4 37/2 46/10 60/15 61/8 86/1 124/25 125/5
**fuller [2]** 18/21 18/21
**fuller -- I [1]** 18/21
**fulsome [1]** 58/7
**fundamental [2]** 120/13 122/10
**fundamentally [1]** 128/13
**funds [1]** 99/8
**further [5]** 9/6 16/8 20/3 22/13 103/5
**futile [2]** 14/12 15/3
**future [1]** 69/7

## G

**Galindo [1]** 35/3
**game [2]** 7/9 7/13
**game-playing [2]** 7/9 7/13
**games [1]** 7/11
**gap [1]** 8/4
**gas [2]** 19/21 93/1
**gas-freeing [1]** 93/1
**gating [1]** 69/24
**gave [2]** 39/4 103/19
**generally [2]** 39/18 65/24
**generates [1]** 15/1
**generation [4]** 35/12 85/9 85/11 119/15
**generational [1]** 35/13
**generic [1]** 23/6
**gentleman [1]** 88/23
**gets [6]** 5/14 11/7 11/13 36/21 57/21 57/22
**getting [18]** 14/8 25/6 25/8 31/9 31/9 59/3 60/13 61/1

72/3 72/14 72/15 86/20 89/2 91/12 92/7 93/2 112/17 118/16
**Gibson [1]** 36/13
**gin [1]** 51/18
**give [9]** 28/10 28/18 28/19 37/1 50/25 64/4 66/13 89/1 89/6
**given [6]** 57/16 89/25 95/25 96/6 97/14 115/25
**gives [2]** 58/6 61/1
**giving [1]** 66/18
**glad [2]** 111/22 111/22
**goes [4]** 29/1 29/3 60/12 69/1
**going [65]** 6/4 7/7 7/8 7/11 7/12 7/12 7/19 9/19 12/13 18/22 27/12 32/1 37/1 39/8 43/22 43/24 44/9 44/17 45/5 45/6 49/9 49/13 52/7 55/3 58/15 61/15 71/10 71/15 79/18 81/14 81/17 81/23 81/23 82/7 84/5 86/7 87/19 87/23 88/21 89/2 89/19 91/17 92/22 93/19 93/20 94/19 101/4 101/6 105/9 105/11 106/13 106/15 108/4 112/21 112/23 112/24 114/3 117/4 118/8 119/5 122/16 123/20 126/24 128/6 134/11
**gone [2]** 61/17 112/10
**gonna [1]** 94/14
**good [22]** 5/8 5/11 5/17 5/23 5/25 10/12 43/24 45/13 45/14 45/15 58/3 76/22 95/4 103/12 105/7 105/8 110/18 110/19 113/24 122/21 122/25 133/3
**goodness [1]** 134/2
**GORMAN [6]** 2/18 5/6 38/2 78/4 126/1 129/24
**Gorman's [1]** 55/10
**got [36]** 19/25 22/7 22/8 22/9 28/4 28/5 28/24 30/6

**got... [28]** 30/7 30/7 30/12 31/25 33/3 34/18 41/25 56/22 71/5 71/21 71/25 76/8 79/19 87/25 88/8 91/19 96/13 103/21 111/25 112/6 112/8 114/4 115/13 131/17 136/13 136/18 136/18 136/19
**Gotta [1]** 113/16
**gotten [4]** 31/7 41/8 59/11 76/6
**govern [1]** 55/23
**governing [3]** 46/24 50/7 52/1
**government [1]** 75/7
**graduated [1]** 86/6
**grandfather [2]** 85/13 85/17
**grant [3]** 32/6 36/25 120/3
**granted [6]** 8/10 13/25 36/8 37/1 38/5 117/12
**grants [1]** 33/16
**grappled [1]** 50/18
**Gray [2]** 15/21 130/22
**great [4]** 85/13 87/25 89/5 118/15
**great-grandfather [1]** 85/13
**greater [3]** 106/13 106/14 106/14
**Green [6]** 23/17 24/9 24/11 24/14 24/16 25/20
**Greg [2]** 127/23 127/23
**Gregory [1]** 87/22
**grew [1]** 88/8
**grossly [1]** 10/25
**group [3]** 43/16 44/8 49/7
**Guard [17]** 58/15 58/20 59/15 59/17 59/18 60/3 60/7 60/9 60/11 61/10 61/19 63/12 63/24 64/2 65/8 92/17 93/12
**Guard's [1]** 61/13

**guardrail [1]** 136/3
**guardrails [3]** 121/2 125/8 135/25
**Guerrero [1]** 24/16
**guess [5]** 23/21 24/6 31/5 89/7 104/19
**Gulf [1]** 90/6
**GulfStates [1]** 74/23
**Gump [11]** 64/16 91/4 91/9 106/4 106/6 106/18 108/1 108/2 108/6 108/22 111/12
**guy [1]** 89/5
**guy's [1]** 108/4

## H

**hadn't [3]** 33/14 116/9 130/13
**hand [5]** 28/24 28/25 105/18 112/13 124/14
**handling [2]** 19/20 138/20
**hands [2]** 22/23 75/10
**happen [3]** 52/7 72/4 72/10
**happened [9]** 7/17 13/19 38/12 39/6 41/20 42/1 77/8 107/9 118/21
**happens [2]** 23/18 27/24
**happy [5]** 31/12 39/3 52/4 107/19 107/20
**Harbor [1]** 85/25
**hard [2]** 60/13 86/12
**HARDIN [5]** 2/6 2/7 5/9 103/6 103/8
**harm [21]** 13/19 35/2 35/3 35/5 35/6 35/8 51/6 51/10 51/11 51/17 51/21 51/22 56/19 56/20 68/3 68/5 99/16 100/23 101/3 101/4 101/21
**harmed [3]** 17/20 57/19 57/19
**harming [1]** 51/20
**harms [1]** 68/13
**hashed [1]** 16/11
**hasn't [1]** 124/21
**have [171]**
**haven't [6]** 23/7 27/1 31/6

81/4 95/25 97/14
**having [5]** 19/19 30/16 71/23 84/20 115/2
**he [231]**
**he'd [2]** 47/12 60/21
**he'll [2]** 60/18 91/16
**he's [55]** 13/24 13/25 25/21 29/9 29/10 29/10 29/12 30/18 36/2 46/15 46/17 47/5 52/11 52/11 54/18 55/21 56/24 61/9 63/6 63/8 64/25 65/13 65/14 67/23 86/22 89/5 89/5 91/16 91/16 102/1 108/3 108/5 109/7 109/10 113/24 118/4 118/15 119/25 121/19 123/6 123/10 123/11 124/15 128/2 128/2 128/4 128/4 128/10 128/14 136/18 136/18 136/19 136/22 138/2 138/5
**head [1]** 53/5
**heads [1]** 53/5
**hear [25]** 7/7 18/25 21/23 21/24 31/19 40/25 50/4 50/15 71/21 71/22 71/25 75/20 77/3 81/7 81/11 81/22 81/23 82/1 82/24 83/12 83/19 84/24 104/14 117/22 138/10
**heard [15]** 9/17 23/17 45/11 45/22 50/12 54/16 54/18 60/22 61/11 83/19 105/22 115/5 115/22 116/8 135/9
**hearing [77]** 1/14 4/2 5/13 6/21 8/5 8/25 11/14 12/1 13/19 14/10 15/12 18/15 18/16 19/3 19/4 19/11 19/12 20/20 20/21 20/24 21/2 21/2 22/15 26/5 29/24 31/6 37/4 38/13 41/13 41/16 41/23 47/21 54/14 56/4 56/7 58/19 59/19 60/9 60/15 60/16 61/1 61/7 62/5 62/8 64/12 64/25 69/2 73/13 75/18 75/22

**hearing... [27]**  77/15 77/25 81/17 82/10 82/21 84/20 91/23 106/3 106/6 106/9 106/10 108/24 109/5 109/17 110/2 110/3 110/14 110/20 114/1 123/20 124/1 124/2 124/25 125/5 129/14 134/8 138/12

**hearings [2]**  61/25 81/19

**Heather [2]**  3/4 139/10

**held [5]**  8/23 12/21 20/20 59/25 115/11

**Hell [1]**  12/17

**help [4]**  19/21 19/22 58/23 122/16

**Hennigan [2]**  2/12 2/15

**here [64]**  18/20 23/17 25/21 30/16 31/4 34/19 39/5 39/7 40/25 41/2 41/12 41/14 44/17 46/19 47/24 49/2 49/24 49/25 50/4 51/8 51/20 51/21 52/2 52/5 62/23 67/3 67/9 67/21 68/13 68/15 68/17 69/8 69/20 69/24 72/20 72/22 73/2 73/3 73/15 75/8 75/13 75/17 75/24 76/11 76/15 77/4 82/11 84/24 102/24 105/22 113/24 113/25 115/13 118/9 119/20 123/4 125/18 131/7 131/8 132/5 133/7 135/2 135/13 135/25

**here's [6]**  21/20 43/17 53/13 54/9 74/9 132/25

**HERSHEY [3]**  2/22 5/6 95/4

**hey [13]**  6/17 7/25 12/1 12/17 19/5 27/16 30/4 30/6 30/8 118/11 118/13 118/14 137/5

**hidden [1]**  77/7

**hiding [2]**  5/22 75/1

**high [1]**  85/23

**highest [1]**  73/10

**highly [1]**  41/20

**him [59]**  16/25 18/10 20/1 20/3 23/18 25/20 28/10 28/19 29/24 31/13 35/11 35/15 35/15 36/3 38/18 41/19 44/25 51/7 51/20 54/16 54/19 64/5 64/7 64/10 64/14 65/15 65/17 66/5 66/22 67/1 67/5 68/8 84/24 86/21 89/6 89/8 91/11 92/25 102/8 103/1 107/8 107/12 107/15 107/21 107/23 108/4 109/8 112/16 113/25 118/3 118/7 118/15 118/16 118/18 123/16 124/16 124/19 131/14 133/21

**himself [4]**  35/25 61/22 68/4 133/15

**hindrance [1]**  121/9

**hinges [1]**  68/6

**hire [3]**  35/17 83/10 89/14

**hired [3]**  107/3 107/6 107/11

**his [65]**  8/9 13/23 14/2 17/15 19/16 19/17 20/24 23/21 26/17 27/7 29/17 29/19 31/17 35/12 35/12 35/17 35/20 36/22 37/7 37/8 37/12 40/1 41/23 41/23 45/2 46/17 46/20 47/15 54/15 56/24 64/13 64/20 64/24 67/1 67/4 68/6 80/25 81/1 103/3 105/16 105/25 107/19 109/9 109/12 113/22 113/23 118/22 119/15 119/24 120/5 120/6 120/14 120/23 122/9 123/6 126/11 126/12 131/11 131/11 131/15 133/9 133/12 136/22 137/11 137/20

**history [3]**  59/5 60/12 88/6

**hit [1]**  129/24

**Holdings [1]**  51/4

**hone [1]**  125/23

**honest [1]**  42/15

**honestly [1]**  54/5

**honesty [1]**  42/24

**Honor [110]**  5/4 5/6 5/17 5/25 6/6 7/1 7/14 7/23 10/1 14/10 15/15 18/11 21/15 22/3 24/11 26/6 26/15 27/11 28/9 28/17 29/6 29/12 31/5 31/12 32/1 35/4 37/3 38/2 45/10 45/16 46/11 47/5 51/15 51/23 52/3 52/25 54/3 55/7 58/1 58/3 58/20 60/17 60/21 61/6 63/13 64/11 65/16 67/1 67/17 68/25 69/8 70/10 71/13 72/2 72/20 73/3 73/14 73/23 74/10 74/22 75/8 75/12 76/11 76/17 77/14 77/20 78/16 83/1 83/17 83/21 83/25 84/3 84/9 95/2 95/4 106/12 109/10 110/9 113/6 113/9 114/10 114/13 114/18 114/20 114/22 115/1 120/3 120/9 120/11 122/18 123/22 124/4 125/16 125/22 125/23 130/18 130/21 131/10 133/7 133/22 134/14 135/12 135/19 135/23 136/7 136/25 137/24 138/7 138/16 139/1

**Honor's [2]**  106/13 138/14

**HONORABLE [1]**  1/14

**hope [2]**  32/10 58/22

**hopeful [1]**  106/13

**hopefully [4]**  93/5 95/18 105/10 106/15

**hoping [1]**  59/19

**Hornbeck [2]**  88/23 88/23

**host [1]**  25/25

**hot [4]**  61/20 62/14 62/16 63/16

**HOUSTON [15]**  1/2 2/9 2/20 3/5 14/19 29/14 29/16 29/19 30/6 31/16 90/3 90/5 90/7 90/20 90/23

**however [2]**  45/23 52/9
**HUESTON [15]**  2/11 2/12
 2/15 6/1 58/4 76/23 78/4
 78/22 105/4 110/2 114/21
 127/14 130/20 132/18
 133/17
**huh [10]**  39/13 40/5 40/17
 40/20 42/10 43/3 80/18
 130/19 131/9 133/4
**hull [1]**  87/2
**hulls [2]**  86/25 87/1
**human [1]**  120/20
**humanly [1]**  120/25
**hundred [2]**  19/20 30/10
**hundreds [1]**  28/1
**hurt [1]**  68/9
**hybrid [2]**  37/5 37/5
**hypothetical [4]**  53/10
 53/14 53/15 54/6
**hypothetically [2]**  12/24
 54/11

**I**

**I -- I [3]**  28/9 54/5 62/9
**I -- it [1]**  53/13
**I -- the [1]**  56/18
**I -- we're [1]**  72/20
**I under [1]**  7/19
**I'd [8]**  8/8 44/19 45/16
 51/14 58/5 112/18 124/3
 125/23
**I'll [12]**  6/6 18/25 34/15
 36/15 66/24 95/2 96/25
 104/13 106/24 109/13
 129/24 135/16
**I'm [90]**  5/17 5/19 9/21 13/8
 24/13 25/6 25/13 27/4 28/5
 39/8 39/8 44/17 44/17 46/14
 52/4 52/6 52/14 52/15 55/2
 65/22 66/9 66/20 69/16
 71/13 71/17 72/4 72/6 72/7
 72/9 72/12 72/12 74/1 74/2
 74/4 75/17 77/16 77/25

77/25 79/14 81/14 81/17
81/23 81/23 82/7 82/9 83/4
83/7 84/5 84/18 84/20 89/1
89/2 89/2 89/2 91/17 94/15
94/15 100/6 101/6 104/22
105/10 110/14 110/14
110/14 110/16 111/22
111/22 112/3 112/22 118/13
123/14 124/2 124/17 125/2
126/19 126/24 127/23
127/24 128/6 132/2 132/3
132/23 132/24 133/7 135/12
135/15 136/5 138/18 138/18
138/19
**I've [13]**  20/22 26/21 28/5
 31/25 45/22 60/20 62/13
 71/25 76/6 76/6 89/18
 115/13 126/17
**i.e [1]**  117/3
**idea [4]**  57/3 66/4 77/12
 93/2
**identify [2]**  32/15 32/16
**ignored [1]**  22/10
**III [6]**  1/4 1/5 84/11 84/15
 85/6 85/21
**ill [1]**  14/22
**Imaging [3]**  49/3 70/18 71/4
**immediate [1]**  68/11
**immediately [2]**  35/9 64/15
**impartial [6]**  75/16 75/22
 76/4 79/4 134/7 134/8
**impartially [2]**  128/11
 129/21
**impeaching [1]**  109/8
**impediment [3]**  19/9 117/4
 117/6
**implement [1]**  38/9
**implemented [1]**  121/8
**implicated [1]**  131/5
**imply [1]**  55/2
**importance [1]**  88/14
**important [6]**  58/18 61/5
 62/24 64/15 88/18 111/23
**importantly [4]**  27/21

64/12 131/14 138/5
**impression [3]**  44/7 59/12
 63/15
**improper [8]**  44/3 44/3
 54/23 54/24 54/24 54/25
 101/14 101/18
**improperly [3]**  54/13 54/20
 67/13
**improve [2]**  58/23 59/19
**inability [1]**  122/11
**inactive [1]**  49/18
**inapplicable [2]**  8/15 16/16
**inappropriate [1]**  71/2
**inasmuch [1]**  35/24
**Inaudible [1]**  77/24
**Inc [2]**  53/18 111/2
**inception [1]**  12/25
**include [1]**  117/13
**includes [1]**  116/1
**including [4]**  73/5 131/22
 131/24 132/1
**incurred [2]**  50/24 51/1
**indeed [1]**  11/21
**independent [19]**  8/2 8/3
 16/22 21/7 21/9 27/15 27/19
 32/5 40/10 40/13 81/13 82/3
 94/21 115/4 128/5 137/9
 137/12 138/1 138/3
**independently [2]**  6/11
 137/20
**indicate [1]**  20/6
**indicated [2]**  38/17 113/14
**indicating [1]**  101/1
**indication [2]**  9/8 116/3
**indirectly [1]**  115/22
**indisputably [1]**  34/22
**individual [8]**  23/19 27/24
 27/24 28/4 67/5 93/10 118/2
 119/25
**individually [2]**  1/4 68/10
**industry [12]**  19/21 29/10
 29/13 29/14 30/3 30/3 85/19
 86/18 88/24 92/2 93/15
 103/22

**I**

**inequitable [1]** 10/25
**inference [1]** 50/23
**information [4]** 29/23 38/22 41/10 63/9
**informative [1]** 89/10
**informed [2]** 117/23 117/25
**infusions [1]** 17/17
**initial [1]** 6/15
**initiated [1]** 35/25
**injured [1]** 116/21
**injuries [3]** 36/23 67/2 68/6
**injury [2]** 36/17 68/2
**inopportune [1]** 22/9
**inquiries [1]** 63/17
**inquiry [1]** 69/17
**INS [1]** 134/19
**inserting [1]** 27/23
**insider [3]** 40/12 120/25 121/3
**inspected [2]** 92/17 93/11
**instance [3]** 117/7 117/7 117/8
**instances [1]** 74/25
**Instead [1]** 64/24
**instruct [2]** 97/11 97/15
**instructed [1]** 32/11
**insurance [1]** 88/18
**intend [2]** 83/11 97/11
**intent [1]** 14/22
**intention [1]** 92/8
**interactions [1]** 66/16
**interest [33]** 9/17 9/19 9/21 9/22 10/23 42/17 42/19 42/21 80/21 81/1 93/8 94/10 94/11 94/23 96/9 96/11 96/12 96/15 96/16 96/23 97/3 100/21 115/2 119/1 119/1 120/13 120/17 121/25 122/10 125/25 128/12 134/24 138/7
**interested [12]** 9/23 15/8 41/10 55/9 89/8 93/23 94/8 117/22 119/22 122/3 132/10

137/11
**interesting [12]** 16/21 18/14 18/20 18/23 20/13 21/15 21/20 69/13 78/21 80/25 135/24 136/25
**interests [18]** 20/11 93/6 94/7 94/7 94/25 99/12 119/13 119/15 119/17 119/21 120/1 121/5 121/10 121/11 127/17 128/11 129/21 136/19
**INTERNATIONAL [2]** 1/10 2/11
**interpreted [1]** 72/2
**intertwined [2]** 57/3 57/5
**invest [1]** 86/17
**invested [1]** 67/11
**investigated [1]** 12/3
**investigation [2]** 75/9 135/10
**invoice [1]** 112/19
**invoices [1]** 105/16
**involve [2]** 66/10 76/16
**involved [11]** 19/17 22/22 23/20 30/4 61/13 61/19 78/6 93/23 95/11 95/17 132/23
**involvement [2]** 18/6 58/22
**involving [2]** 80/11 80/15
**Island [1]** 107/12
**isn't [10]** 46/12 62/23 78/19 79/3 79/10 79/10 111/17 128/1 128/2 134/3
**issue [30]** 6/12 8/13 11/11 14/8 29/3 30/24 32/3 38/3 41/3 41/22 44/21 45/20 46/12 46/18 46/20 50/6 59/5 61/21 67/19 69/24 73/2 74/11 108/25 109/6 121/21 123/5 123/18 127/10 129/6 138/25
**issues [21]** 29/1 31/9 42/12 42/23 44/1 44/10 44/20 55/16 58/21 59/12 59/16 62/14 66/16 67/15 69/19

69/22 71/21 75/2 82/14 83/22 133/9
**item [2]** 69/23 76/13
**items [3]** 62/1 64/13 117/15
**its [10]** 16/15 17/14 58/13 61/16 62/2 68/7 93/6 119/3 119/17 119/18
**itself [2]** 35/6 125/3

**J**

**JACKSON [37]** 1/9 2/5 5/9 6/16 8/21 9/1 9/15 11/9 15/25 17/1 17/19 18/2 21/1 22/20 23/3 23/8 23/13 26/16 27/20 30/7 30/12 37/11 45/24 46/2 55/8 70/18 89/14 90/11 90/17 101/3 115/10 129/16 129/19 132/6 132/14 132/16 132/24
**January [6]** 41/25 60/6 62/4 118/16 118/18 118/21
**January 20th [1]** 60/6
**JENNIFER [2]** 2/6 5/9
**jet [1]** 17/21
**jetting [1]** 35/12
**job [2]** 38/9 118/15
**Joe [1]** 87/22
**JOHN [3]** 2/11 5/25 58/3
**joinder [2]** 23/5 23/6
**JONES [58]** 1/8 1/22 5/12 8/21 11/22 18/23 27/20 27/25 28/1 31/15 37/10 41/19 58/7 59/4 59/11 60/9 60/18 61/3 61/9 61/20 63/18 64/13 65/9 66/7 66/8 66/18 66/22 66/23 73/16 73/17 73/20 89/17 90/15 90/18 91/11 91/13 91/15 91/21 108/3 108/8 111/4 111/13 111/19 111/21 111/23 112/5 112/12 112/14 113/2 113/4 113/17 113/19 113/20 115/11 118/5 118/7 118/14 131/17
**Jones's [7]** 13/13 74/5 108/3

**J**

**Jones's... [4]** 114/2 118/11 118/12 118/12

**Jones/AUSA [1]** 61/3

**JR [2]** 2/6 85/20

**judge [98]** 1/15 5/8 5/11 10/23 11/22 18/23 27/25 28/1 29/22 30/7 38/17 39/22 40/1 41/19 45/13 49/14 50/5 51/8 53/7 54/23 58/7 59/4 59/11 60/9 60/18 61/3 61/9 61/20 63/18 65/9 65/9 66/6 66/7 66/12 66/18 66/22 66/23 73/16 73/17 73/20 73/21 74/5 75/16 75/18 75/22 76/1 76/5 76/8 81/21 81/22 82/18 89/12 89/17 90/1 90/9 90/15 90/18 91/11 91/13 91/15 91/21 108/2 108/3 108/8 111/4 111/13 111/19 111/21 111/23 112/5 112/9 112/12 112/14 113/2 113/4 113/17 113/19 113/20 114/2 115/11 118/5 118/7 118/12 118/12 118/14 124/1 125/14 131/16 131/16 131/17 132/6 132/8 132/9 132/10 133/5 134/7 134/24 136/6

**Judge Eskridge [1]** 51/8

**judges [2]** 21/22 71/22

**judgments [1]** 47/11

**judicata [1]** 33/2

**judicial [3]** 73/10 79/2 79/3

**July [2]** 126/5 126/17

**June [1]** 106/19

**June 2nd [1]** 106/19

**jus [1]** 9/5

**just [64]** 5/13 7/7 7/8 11/4 13/6 14/18 18/12 19/4 19/5 19/6 33/17 37/24 50/7 51/14 53/15 53/21 55/4 55/14 56/7 56/12 56/17 59/5 63/1 65/5 65/17 65/22 66/21 68/1

71/10 71/11 71/12 72/3 72/6 72/18 72/24 74/5 75/19 77/1 77/16 80/3 82/9 85/1 86/11 86/24 93/3 95/8 98/8 100/20 104/16 105/10 107/9 107/25 110/9 113/1 113/9 117/16 125/4 125/22 126/21 126/24 129/4 133/8 133/9 138/18

**justice [3]** 75/10 77/13 121/9

**justification [1]** 89/25

**justifying [1]** 66/9

**K**

**keep [4]** 17/14 57/11 82/15 122/15

**Kelley [1]** 107/18

**Ken [1]** 24/10

**kept [2]** 91/7 94/14

**key [1]** 132/25

**kick [1]** 84/5

**kicks [1]** 60/9

**kind [9]** 8/6 14/9 58/11 63/16 70/15 72/19 122/20 124/17 125/18

**King's [2]** 79/13 115/5

**KIRKENDALL [11]** 2/2 2/3 5/20 11/25 77/22 78/2 79/23 81/15 110/7 114/21 135/18

**KIRKLAND [45]** 1/9 1/10 2/10 2/10 6/1 6/16 8/21 9/1 9/16 11/9 15/25 17/1 17/19 18/3 21/1 27/20 29/20 29/24 30/4 30/5 30/6 31/17 34/25 37/11 45/25 49/2 58/4 59/2 60/24 61/23 64/6 64/14 65/20 88/22 89/4 90/13 101/2 101/9 105/19 115/10 118/14 118/22 132/5 132/23 135/8

**Kirkland's [4]** 67/3 109/1 109/6 118/24

**knew [5]** 63/1 88/24 89/12 94/12 94/18

**know [79]** 7/25 8/17 10/13 11/2 13/19 14/18 17/20 18/20 18/20 18/21 18/24 19/25 20/24 20/25 21/12 22/21 23/13 25/5 25/9 25/18 26/9 26/21 30/8 31/16 37/4 39/8 41/7 43/16 48/7 51/3 51/23 54/5 54/10 54/12 55/15 62/10 62/12 62/13 62/13 63/15 64/25 66/1 71/18 72/22 73/7 75/24 76/17 77/7 86/23 91/25 92/1 94/12 95/24 96/4 96/9 97/17 98/23 100/16 101/24 102/16 102/21 103/3 104/1 107/25 113/16 114/8 115/5 117/15 118/8 118/15 121/7 122/6 122/9 122/14 122/17 122/23 125/3 137/5 137/16

**knowing [2]** 18/20 18/21

**knowledge [6]** 11/19 31/14 88/16 114/6 122/21 136/18

**knowledgeable [1]** 28/3

**known [5]** 28/15 54/15 73/4 85/18 131/22

**knows [3]** 16/24 88/4 89/5

**L**

**lack [6]** 29/2 42/23 44/5 44/15 75/25 122/11

**laid [2]** 92/13 93/10

**language [6]** 11/2 11/23 13/4 15/7 16/21 64/3

**Lardner [1]** 107/3

**larger [2]** 33/15 37/13

**largest [3]** 87/2 109/20 109/21

**last [24]** 6/21 7/1 11/14 12/1 14/9 15/12 21/4 22/10 26/8 29/11 29/23 30/17 37/3 38/13 47/21 51/14 62/7 69/1 76/11 82/15 82/15 82/16 88/13 95/18

**late [3]** 126/4 126/15 126/17

**later [9]** 18/20 54/2 67/21

**later... [6]** 80/2 87/22 89/7 108/23 126/3 133/10
**law [22]** 1/19 2/3 30/9 30/11 48/4 48/5 49/1 68/11 70/1 75/12 76/1 89/15 96/21 97/1 122/14 131/2 132/1 132/16 132/17 132/18 133/14 134/22
**lawsuit [13]** 13/18 14/14 14/16 49/8 80/22 94/22 98/24 99/2 100/14 100/17 137/14 137/15 137/20
**lawyers [1]** 61/23
**lays [1]** 126/4
**layup [6]** 92/15 92/23 92/23 92/24 92/24 93/1
**layups [1]** 92/24
**leading [2]** 17/13 91/6
**leads [2]** 68/24 73/13
**leapfrog [1]** 126/20
**learning [1]** 86/7
**least [7]** 6/22 27/3 33/23 34/20 36/8 37/18 77/6
**leave [3]** 50/25 51/24 117/11
**leaves [1]** 44/7
**led [5]** 12/14 42/22 43/25 58/11 86/19
**left [3]** 8/7 28/24 91/19
**legacy [2]** 91/17 111/15
**legal [10]** 30/23 35/16 36/22 50/14 50/20 56/19 56/19 56/22 67/7 67/17
**legislation [3]** 86/19 86/23 86/24
**Lehman [3]** 87/17 87/18 87/23
**Lehman's [1]** 87/22
**lending [1]** 62/2
**less [1]** 44/20
**let [18]** 9/25 34/15 38/18 58/16 65/5 65/17 66/24 70/25 75/19 87/10 87/24

104/10 107/9 107/9 124/19 128/15 132/2 132/20
**let's [22]** 40/10 40/13 49/25 50/20 52/20 53/14 53/15 55/4 55/4 55/17 66/21 83/24 84/1 86/24 89/13 89/19 89/19 92/4 99/18 123/4 125/4 135/7
**letting [1]** 124/16
**level [1]** 73/10
**liability [1]** 86/13
**lie [1]** 19/14
**light [3]** 30/19 40/9 133/7
**like [20]** 8/8 21/8 21/13 23/6 31/19 32/22 33/8 45/16 49/16 50/7 58/5 64/6 67/14 68/12 72/24 108/5 112/18 125/23 138/9 138/19
**likely [1]** 116/20
**limited [12]** 7/3 13/3 33/11 38/17 38/23 39/25 81/21 111/17 113/7 114/11 124/1 135/22
**limiting [1]** 136/3
**limits [2]** 121/1 135/25
**line [13]** 34/3 44/12 52/25 53/17 59/1 59/2 64/19 64/19 72/17 73/19 75/21 79/12 122/2
**line 1 [1]** 59/2
**line 17 [1]** 64/19
**line 18 [1]** 64/19
**line 3 [1]** 59/1
**lingering [3]** 69/15 69/15 69/18
**liquidation [1]** 93/19
**liquidity [3]** 58/17 61/14 120/22
**list [4]** 23/11 23/11 27/1 27/1
**listened [1]** 86/21
**litigation [26]** 21/10 26/19 36/5 36/12 36/16 95/9 95/19 95/22 96/2 96/5 96/22 97/2

97/6 97/12 98/21 99/19 102/21 103/1 120/13 120/20 121/6 122/11 122/21 122/25 125/9 137/13
**litigator [3]** 91/16 91/16 111/14
**little [7]** 2/16 22/18 25/7 84/19 84/25 90/7 96/25
**live [2]** 124/5 127/15
**lived [3]** 65/19 66/2 87/18
**lives [3]** 58/13 107/11 127/15
**LLC [1]** 1/11
**LLP [11]** 1/9 1/10 1/10 1/23 2/5 2/10 2/11 2/12 2/15 2/19 2/22
**loan [2]** 67/8 136/22
**loans [6]** 17/12 17/16 67/15 103/19 103/20 126/18
**Lockwood [1]** 51/3
**long [7]** 49/18 60/16 60/17 74/23 74/24 107/12 117/16
**longer [2]** 16/5 63/8
**look [22]** 6/17 10/7 12/1 18/14 22/7 22/21 64/18 67/2 75/4 80/6 81/1 91/9 92/6 96/13 101/17 112/20 118/11 118/14 118/15 126/6 127/13 129/5
**looked [5]** 12/3 20/9 23/1 23/4 123/2
**looking [6]** 26/20 27/13 68/4 111/15 127/24 130/22
**looks [2]** 68/11 68/12
**looted [1]** 131/13
**Lopez [5]** 38/17 39/22 40/1 82/18 124/1
**lose [2]** 36/18 53/5
**loss [6]** 34/23 35/4 37/19 50/13 51/14 57/1
**lost [5]** 58/13 58/13 67/10 67/15 97/24
**lot [17]** 14/19 36/9 36/9 36/10 42/2 42/7 42/22 43/25

# L

**lot... [9]** 58/21 61/16 63/8 75/21 77/1 87/17 89/2 90/5 107/22
**Lothian [2]** 74/12 74/23
**lots [1]** 33/6
**loud [1]** 18/25
**louder [1]** 84/19
**loudly [1]** 85/1
**Louisiana [12]** 8/14 8/15 10/4 45/22 46/22 49/4 49/9 69/9 70/4 70/4 70/21 71/4
**luck [2]** 79/14 79/14

# M

**ma'am [2]** 45/12 125/21
**made [16]** 17/12 23/21 24/23 26/22 27/5 39/12 39/17 63/9 80/24 89/10 103/13 103/17 117/17 122/5 122/7 137/11
**magnitude [2]** 80/3 80/4
**mail [1]** 114/5
**mails [1]** 114/2
**main [2]** 2/19 80/17
**maintain [1]** 116/21
**major [1]** 58/14
**make [40]** 6/6 7/11 33/14 37/24 42/1 44/21 44/21 47/12 51/14 54/15 62/9 65/4 69/6 70/18 76/12 78/2 80/16 81/12 81/14 81/17 81/20 81/23 82/6 82/19 82/21 83/4 83/11 86/14 88/9 94/17 96/12 101/7 111/20 112/4 119/2 119/3 119/4 124/3 129/2 135/5
**makes [2]** 55/22 67/9
**making [8]** 10/18 10/20 28/7 66/16 82/10 83/9 133/7 138/17
**maligned [1]** 35/10
**manage [4]** 64/9 87/6 105/17 112/17

**management [10]** 30/11 60/10 60/11 60/19 60/21 61/1 61/21 65/9 87/17 111/20
**manager [1]** 65/13
**MANELA [1]** 3/2
**manner [3]** 42/19 46/10 131/23
**many [9]** 23/6 30/20 53/23 63/17 95/8 95/11 102/21 117/22 117/22
**March [29]** 6/22 7/1 8/5 8/7 13/19 15/5 17/7 18/16 20/21 21/5 21/5 22/14 26/5 27/5 27/15 37/4 41/12 41/16 62/4 62/8 82/15 82/17 106/6 106/9 106/19 123/25 127/9 128/22 138/12
**March 25th [1]** 21/5
**March 27th [1]** 27/15
**March 28th [2]** 20/21 22/14
**March 2nd [3]** 106/6 106/9 106/19
**Marine [1]** 88/24
**maritime [3]** 89/5 89/12 89/12
**massive [1]** 77/7
**master [9]** 81/6 81/10 81/12 81/18 81/22 82/1 82/1 82/6 82/19
**materialized [1]** 118/19
**materially [1]** 121/5
**Matt [7]** 92/20 92/22 103/20 113/20 113/22 114/1 114/3
**matter [28]** 22/23 25/10 26/14 30/23 53/5 55/1 55/2 56/1 61/11 61/17 71/24 72/3 74/4 74/17 76/21 78/13 78/15 81/23 82/4 87/16 88/7 108/4 109/4 113/22 125/2 125/4 132/10 139/7
**matters [12]** 21/21 31/18 31/23 44/18 54/17 73/13

79/3 79/9 82/11 125/3 138/10 138/21
**MATTHEW [6]** 1/11 2/18 19/19 101/24 102/7 102/16
**may [55]** 1/15 4/3 5/2 6/13 6/13 6/17 7/13 8/1 9/7 12/1 12/2 13/15 13/24 14/1 15/7 21/17 22/1 22/2 23/9 25/23 29/15 30/9 32/17 32/23 33/16 34/2 34/18 42/19 42/19 46/7 46/20 53/14 55/6 69/22 71/21 74/9 75/4 82/16 84/9 84/10 84/19 114/15 116/2 116/18 120/4 120/6 122/14 122/21 122/23 122/25 128/7 129/15 136/24 139/3 139/9
**maybe [7]** 13/20 25/9 27/14 27/17 57/12 79/8 138/20
**Mayer [6]** 91/20 107/6 107/14 107/17 107/17 108/23
**McKinney [1]** 2/8
**MCLEMORE [1]** 2/7
**mean [11]** 47/10 51/23 57/14 59/22 62/25 70/14 81/9 81/11 122/14 132/9 133/1
**means [1]** 44/15
**meant [4]** 24/6 68/9 75/2 93/1
**mechanical [1]** 3/8
**meet [1]** 41/23
**Melville [1]** 91/24
**member [1]** 85/16
**members [1]** 76/13
**memories [1]** 60/13
**men [1]** 86/13
**Mendoza [1]** 84/21
**mention [1]** 64/21
**mentioned [11]** 7/10 17/7 22/20 45/21 56/24 67/8 71/19 75/8 89/4 89/17 90/10
**mentioning [1]** 20/15

**mentions [2]** 67/7 68/3
**Mercifully [1]** 135/19
**mess [2]** 13/15 29/4
**met [6]** 7/25 41/24 62/5 62/5 75/11 87/20
**metric [1]** 13/20
**Miami [1]** 1/24
**might [3]** 28/16 32/20 97/15
**Mike [1]** 5/4
**MIKELL [1]** 1/18
**million [16]** 17/6 17/9 17/12 19/20 30/10 37/6 37/7 37/22 50/14 51/1 56/19 56/20 67/8 94/16 103/19 136/22
**millions [1]** 67/10
**minimis [1]** 21/12
**minimum [1]** 37/14
**minute [1]** 63/14
**mirrors [1]** 22/4
**miscellaneous [1]** 23/12
**misdealings [1]** 14/3
**misrepresentations [5]** 12/14 12/21 14/3 32/21 117/8
**missed [1]** 62/1
**missing [1]** 48/7
**mistreatment [1]** 99/10
**misuse [1]** 99/8
**mobster [1]** 108/5
**moment [1]** 52/20
**Monday [1]** 112/20
**monetary [1]** 117/3
**money [4]** 51/12 77/13 88/11 94/16
**Monies [4]** 99/25 100/2 100/4 100/7
**month [4]** 60/15 61/6 61/8 82/16
**months [8]** 26/9 35/21 92/4 106/22 108/24 121/21 130/8 136/15
**Montreal [1]** 86/2
**more [12]** 7/13 27/21 51/12

51/18 58/7 79/8 92/4 107/1 120/7 120/8 123/13 134/21
**morning [6]** 7/10 14/17 23/17 23/24 24/11 25/19
**MORTON [9]** 1/4 1/5 84/3 84/11 84/15 85/6 85/18 85/20 85/21
**MOSES [5]** 1/14 5/8 45/13 50/5 53/7
**most [4]** 48/21 116/20 131/14 138/5
**Mostly [1]** 57/21
**motion [41]** 5/14 6/3 6/25 7/5 7/18 7/20 7/24 8/11 16/22 18/9 18/10 18/11 19/4 19/6 21/6 31/7 32/13 35/25 38/4 40/18 41/18 46/1 46/16 47/12 50/22 54/13 56/2 56/5 57/17 60/20 64/5 64/14 68/20 78/7 79/8 108/25 118/19 118/19 123/5 123/23 124/10
**motions [10]** 21/25 31/2 31/11 40/21 50/8 50/10 63/21 122/8 123/14 138/23
**mounting [1]** 105/15
**move [8]** 7/12 50/1 68/9 73/1 76/14 91/12 109/13 138/21
**moved [4]** 46/15 46/15 47/6 49/21
**moving [4]** 61/3 69/22 107/13 118/16
**MPI [2]** 88/9 88/13
**MR [23]** 1/18 1/18 1/22 2/2 2/6 2/11 2/15 2/18 2/22 5/19 6/24 23/17 25/11 26/17 28/10 28/14 33/4 55/10 84/5 103/6 114/21 120/12 133/17
**Mr. [241]**
**Mr. -- I [1]** 24/10
**Mr. Bennett [4]** 30/5 59/7 90/1 90/13
**Mr. Bennett's [1]** 90/10

**Mr. Bouchard [131]** 5/14 6/13 8/1 9/21 10/3 11/6 11/10 11/12 11/24 13/23 16/16 16/24 17/11 17/20 18/1 19/1 19/8 19/12 19/13 19/23 20/11 21/14 21/19 22/5 22/12 22/24 23/22 26/14 27/8 27/22 29/7 29/17 30/3 30/8 30/15 30/25 31/13 32/4 32/8 32/16 33/12 34/4 34/6 34/12 35/3 35/17 36/1 38/25 40/11 41/5 42/3 43/7 43/15 44/23 44/24 46/15 48/4 48/9 48/22 50/3 51/6 52/7 52/19 53/12 53/16 54/11 58/8 59/7 59/24 60/2 61/3 61/8 61/23 62/15 63/6 63/16 64/15 64/20 65/2 65/11 66/25 68/10 68/16 70/3 78/7 82/12 84/14 85/5 91/25 95/8 103/12 105/7 105/15 110/13 113/12 113/23 115/3 115/4 116/11 116/12 116/23 116/24 117/12 118/1 118/6 118/14 118/20 118/22 118/23 118/25 119/11 119/14 119/23 120/4 120/17 120/18 121/3 123/3 124/10 125/24 126/2 127/16 128/9 129/19 130/6 136/11 136/16 137/2 137/8 137/18 138/4
**Mr. Bouchard's [29]** 6/9 8/8 8/20 11/18 13/9 13/18 16/7 17/4 18/6 20/17 20/18 34/23 35/5 35/6 36/22 37/6 38/4 39/15 41/16 45/17 45/22 50/9 50/22 111/9 123/5 123/23 125/24 126/3 127/4
**Mr. Clore [6]** 6/4 6/11 32/1 32/10 34/15 105/23
**Mr. Dundon [7]** 25/12 28/2 43/2 43/7 43/16 102/18

**M**

**Mr. Dundon... [1]** 102/25
**Mr. Dunn [2]** 25/10 25/14
**Mr. Gorman [3]** 78/4 126/1 129/24
**Mr. Green [5]** 23/17 24/9 24/14 24/16 25/20
**Mr. Guerrero [1]** 24/16
**Mr. Hardin [2]** 103/6 103/8
**Mr. Hueston [8]** 76/23 78/4 78/22 105/4 110/2 127/14 130/20 132/18
**Mr. Jones [1]** 31/15
**Mr. Ken [1]** 24/10
**Mr. Kirkendall [7]** 11/25 77/22 79/23 81/15 110/7 114/21 135/18
**Mr. Morton [1]** 84/3
**Mr. Prentice [1]** 24/16
**Mr. Ray [21]** 6/20 8/1 8/5 20/21 25/24 25/25 27/6 28/6 28/10 37/8 39/14 39/15 40/2 40/9 41/4 48/12 102/12 119/10 120/16 127/9 128/2
**Mr. Ray's [2]** 40/9 137/25
**Mr. Van [2]** 35/24 35/24
**Mr. West [5]** 6/4 35/19 45/21 80/24 80/25
**MS [5]** 2/6 2/7 3/2 84/21 103/6
**Ms. [10]** 31/15 48/8 73/17 79/7 90/14 90/18 103/7 103/9 132/15 136/21
**Ms. Brevorka [5]** 48/8 79/7 103/7 103/9 136/21
**Ms. Freeman [5]** 31/15 73/17 90/14 90/18 132/15
**much [12]** 23/6 23/7 34/19 37/10 44/16 59/5 74/20 77/3 90/4 92/6 104/9 122/16
**multi [2]** 19/20 30/10
**multi-hundred-million-dollar [2]** 19/20 30/10
**must [2]** 132/24 134/17

**my [43]** 27/11 27/12 34/19 38/13 39/5 39/11 43/17 47/2 63/4 63/5 73/1 76/11 79/6 80/17 81/4 81/5 82/11 83/8 85/13 85/17 85/20 85/20 86/7 86/12 86/22 86/22 87/20 88/10 88/16 92/3 94/11 94/16 103/17 103/21 104/5 113/1 121/7 123/1 125/6 128/8 132/16 134/2 135/16
**myself [6]** 72/23 81/8 85/21 87/12 91/5 122/21

**N**

**nail [1]** 18/5
**name [4]** 24/8 70/25 84/14 85/5
**named [2]** 47/10 88/23
**narrow [1]** 123/5
**nationwide [1]** 14/19
**natural [1]** 50/23
**nearing [1]** 62/1
**necessarily [4]** 12/10 14/5 44/17 132/17
**necessary [1]** 59/3
**need [30]** 6/19 6/19 12/2 12/3 12/18 13/16 22/1 22/2 22/24 30/8 30/11 30/12 32/5 44/18 44/18 60/24 81/7 81/18 84/19 84/21 89/15 89/16 117/5 117/12 118/15 118/18 125/3 129/2 138/10 138/20
**needed [2]** 93/15 122/15
**needs [6]** 8/2 12/11 13/8 45/11 115/17 117/19
**negate [1]** 47/24
**negotiated [3]** 35/19 35/20 86/22
**negotiations [2]** 10/12 10/14
**neither [3]** 41/4 83/1 134/23
**network [1]** 14/22
**neutral [2]** 75/16 79/2

**never [23]** 8/23 20/19 21/3 25/2 47/2 47/2 64/10 88/1 89/18 93/16 95/10 103/21 110/22 111/23 112/14 113/2 113/4 114/4 118/19 128/19 131/14 133/12 133/13
**never -- the [1]** 47/2
**new [19]** 2/16 2/16 2/23 2/23 27/23 28/15 29/17 29/18 85/25 86/2 86/18 87/8 88/12 89/18 89/21 89/24 90/2 106/4 111/15
**New York [6]** 29/18 85/25 86/2 88/12 89/21 89/24
**New York-based [2]** 29/17 90/2
**Newport [2]** 2/12 2/13
**next [3]** 19/25 54/5 69/20
**nice [1]** 107/12
**night [2]** 86/4 86/5
**no [96]** 1/7 7/13 8/14 9/7 16/5 16/8 16/12 17/8 18/11 19/2 19/3 19/3 19/4 19/4 19/5 19/6 19/6 19/9 21/3 22/17 24/13 26/25 29/16 43/11 45/3 48/3 51/9 53/3 53/4 60/24 62/11 62/24 62/25 63/8 63/10 63/10 63/21 63/21 64/5 64/21 70/13 72/3 72/5 74/15 76/5 79/14 81/9 87/14 87/20 88/7 90/16 90/19 90/21 90/24 92/4 93/2 93/18 95/21 97/5 98/7 98/23 100/19 102/10 102/15 102/17 102/20 102/23 103/5 104/3 104/22 104/25 107/22 108/22 111/6 114/12 114/13 114/18 114/20 114/22 115/24 116/2 116/11 121/3 122/8 124/11 124/20 126/23 128/9 129/10 132/11 132/20 134/7 134/8 134/21 138/18 139/1
**No. [4]** 58/10 64/18 111/1

**No.... [1]** 111/2
**No. 20-34682 [3]** 58/10 64/18 111/2
**No. 569 [1]** 111/1
**nobody [9]** 6/18 47/3 63/1 76/24 88/7 114/14 122/5 122/7 133/3
**nobody's [1]** 37/1
**non [5]** 22/16 38/7 44/13 78/5 124/5
**non-appealable [4]** 38/7 44/13 78/5 124/5
**non-settlement [1]** 22/16
**none [4]** 21/22 67/5 71/22 95/12
**North [1]** 1/19
**Northwest [1]** 134/15
**not [230]**
**note [3]** 20/13 64/15 129/4
**noted [3]** 119/8 135/21 138/18
**nothing [2]** 112/3 115/6
**notice [2]** 63/16 69/14
**noticed [1]** 81/19
**November [1]** 58/25
**November 17th [1]** 58/25
**now [44]** 6/15 8/13 11/7 13/12 16/9 16/24 19/13 22/20 42/5 44/1 50/12 50/19 54/18 56/4 61/24 66/18 66/24 69/5 69/16 77/15 77/16 80/9 82/18 90/25 93/4 93/20 94/15 94/15 97/18 99/18 101/11 104/13 106/3 122/6 122/9 122/18 125/2 129/1 133/10 133/15 133/17 134/13 136/23 138/19
**nowhere [1]** 36/21
**nuance [1]** 27/16
**number [10]** 24/2 27/13 32/25 33/1 40/1 50/20 63/4 63/4 93/22 133/20
**numbered [1]** 111/8

**numeral [1]** 38/1
**numerous [1]** 78/17

# O

**o0o [1]** 139/5
**oath [2]** 64/5 66/11
**object [3]** 45/2 45/5 117/9
**objected [2]** 103/24 133/3
**objection [2]** 122/6 122/7
**objections [7]** 16/10 17/15 64/22 104/20 127/2 127/4 127/12
**objects [1]** 76/10
**obligations [5]** 15/18 41/24 62/5 67/8 87/4
**obtain [4]** 8/23 11/12 23/23 137/3
**obtained [6]** 24/3 24/17 33/20 33/25 34/1 34/11
**obtaining [1]** 24/2
**obviously [2]** 38/20 131/25
**occurred [1]** 26/5
**occurring [1]** 26/8
**October [3]** 15/22 16/2 58/19
**October 18th [1]** 15/22
**October 22nd [1]** 58/19
**odds [2]** 128/13 129/20
**off [3]** 60/9 93/2 125/19
**offenders [1]** 14/20
**offer [1]** 19/17
**offered [4]** 7/21 19/10 56/18 60/20
**office [5]** 2/3 86/6 87/22 91/24 92/21
**officer [8]** 19/18 19/19 51/5 73/10 79/2 79/3 121/4 130/5
**officers [1]** 103/20
**official [2]** 3/4 127/2
**Offshore [1]** 88/24
**oh [9]** 5/19 25/13 26/4 33/3 53/12 63/3 110/16 115/5 124/20
**oil [5]** 19/20 74/12 74/23 86/11 92/1

**ointment [1]** 125/19
**old [1]** 71/7
**once [4]** 92/19 93/18 108/24 112/23
**one [55]** 10/2 12/12 12/19 12/25 13/5 15/19 25/9 25/25 32/25 36/13 39/16 42/16 42/23 43/12 46/7 47/22 49/2 49/12 49/20 50/21 53/8 55/4 56/22 57/6 57/15 63/4 65/21 67/17 69/12 69/14 69/15 70/13 71/18 71/19 71/20 73/11 75/14 76/1 76/24 81/18 83/9 84/18 87/16 88/13 94/1 95/18 106/15 109/20 114/4 118/10 121/7 124/13 125/14 128/3 135/4
**one's [1]** 68/12
**ones [2]** 24/3 132/19
**ongoing [4]** 13/13 20/10 27/22 30/17
**only [17]** 8/23 17/24 29/18 36/16 46/14 49/6 49/14 53/8 66/7 70/21 82/25 95/16 109/22 111/23 131/2 134/17 137/22
**open [2]** 6/24 47/3
**opened [3]** 111/11 115/19 118/7
**opening [8]** 5/16 6/4 6/6 31/24 31/25 38/1 56/13 83/23
**openings [1]** 45/18
**operate [4]** 58/16 116/11 119/17 136/19
**operated [1]** 86/17
**operating [2]** 92/5 92/11
**operation [5]** 18/19 88/15 92/14 93/12 93/14
**operational [2]** 60/12 112/24
**operations [4]** 88/18 93/4 119/12 120/23
**operative [1]** 68/4

**operator [1]** 87/2
**opining [1]** 66/20
**opinion [5]** 55/16 73/1 87/10 88/4 136/13
**opinions [3]** 53/23 66/18 74/11
**opportunity [3]** 21/8 21/13 119/5
**opposed [2]** 25/10 55/18
**opposite [1]** 9/10
**opposition [4]** 6/15 7/6 7/18 7/21
**opted [1]** 19/13
**option [1]** 15/17
**orally [1]** 19/11
**order [33]** 7/2 7/15 10/11 13/16 16/6 16/9 16/13 17/13 18/5 19/11 24/1 34/9 38/5 38/6 38/21 44/13 55/25 73/20 74/5 75/18 75/19 78/5 78/8 79/19 106/13 110/23 111/3 111/5 111/9 124/5 124/10 124/11 124/11
**orders [5]** 44/22 73/11 125/8 125/15 138/25
**ordinary [1]** 80/3
**original [5]** 29/1 45/25 57/17 76/24 126/23
**Oswego [1]** 86/2
**other [50]** 16/6 23/6 23/18 24/21 31/23 31/23 32/19 32/23 33/4 39/1 41/21 42/4 42/18 42/22 43/25 48/5 49/1 52/4 54/9 65/21 67/15 67/15 68/9 72/15 75/1 75/1 75/19 77/5 78/7 80/10 82/13 90/1 94/8 94/8 94/10 103/24 104/20 105/16 108/22 112/11 114/17 115/4 116/18 118/24 120/7 128/10 128/13 129/21 129/24 136/23
**others [5]** 60/22 61/7 65/1 126/20 133/2

**otherwise [3]** 35/1 39/25 85/18
**ought [2]** 82/6 83/8
**our [28]** 7/23 12/10 14/14 22/3 26/5 28/11 29/15 31/18 32/13 36/2 36/25 37/15 46/3 51/4 53/18 55/14 56/2 57/16 69/9 87/9 89/5 94/12 129/18 129/19 130/21 131/2 133/23 134/14
**ousted [3]** 63/17 64/23 119/6
**out [64]** 7/20 12/11 15/17 16/5 16/11 19/1 30/13 33/11 37/13 38/16 41/24 48/11 48/17 48/18 48/19 48/20 48/24 51/19 65/20 69/4 73/19 73/20 74/6 75/20 77/3 78/22 80/19 84/5 86/20 86/21 88/1 91/15 91/18 92/4 92/10 92/13 92/13 92/14 92/15 92/15 92/19 93/5 93/10 93/17 93/18 105/17 105/18 111/14 112/2 112/13 113/23 114/7 116/9 116/15 117/6 117/19 118/9 124/9 128/17 130/2 131/12 134/13 136/24 138/11
**outcome [1]** 36/16
**outcomes [1]** 135/4
**outline [1]** 66/9
**outlined [1]** 62/13
**outs [2]** 16/14 118/23
**outset [1]** 91/22
**outside [5]** 13/21 44/8 55/1 55/8 62/18
**outsider [7]** 29/7 29/9 29/12 30/15 30/16 63/7 95/13
**outsiders [1]** 63/9
**outstanding [1]** 129/22
**over [26]** 8/22 21/4 21/5 26/8 32/9 35/20 43/23 43/23 43/25 43/25 44/2 47/13 57/16 57/16 60/13 61/21

61/21 74/4 94/12 94/24 102/13 119/23 119/24 125/2 127/15 129/22
**overarching [2]** 72/1 138/22
**overbroad [1]** 108/13
**overlaying [1]** 72/1
**oversee [1]** 76/5
**overseeing [1]** 75/16
**overstepped [1]** 33/14
**owe [2]** 95/22 98/9
**owed [5]** 98/3 98/5 98/8 100/4 100/7
**owes [3]** 96/2 96/5 102/4
**own [8]** 13/23 17/21 64/13 68/6 85/10 91/12 94/16 120/23
**owned [11]** 30/9 30/10 57/6 87/11 87/12 87/15 87/25 88/2 89/16 113/24 119/14
**owner [2]** 55/18 119/16
**owns [1]** 87/11

## P

**p.m [2]** 1/11 139/4
**page [5]** 4/3 23/5 33/13 76/23 106/10
**page 11 [1]** 106/10
**pages [3]** 59/1 64/19 88/14
**pages 11 [1]** 59/1
**pages 9 [1]** 64/19
**paid [4]** 67/3 94/14 94/19 112/23
**Pangilinan [1]** 134/20
**paragraph [10]** 46/1 50/16 50/21 50/21 56/22 67/9 105/11 105/13 111/7 111/8
**paragraph 12 [1]** 46/1
**paragraph 166 [1]** 50/21
**paragraph 3 [1]** 67/9
**paragraph 68 [1]** 105/13
**paragraphs [2]** 51/16 57/2
**part [28]** 12/6 14/22 21/20 28/4 31/8 41/7 41/11 42/13 43/16 43/21 54/10 54/20

**part... [16]**  54/22 60/11 60/12 62/17 71/17 73/11 73/15 73/22 75/17 75/18 75/19 80/22 125/17 127/11 127/17 131/24

**participants [2]**  14/21 44/8

**participated [2]**  14/15 34/13

**participating [1]**  22/25

**participation [1]**  23/2

**particular [9]**  9/8 38/21 45/20 46/1 69/11 73/9 79/5 122/20 135/5

**particularly [2]**  10/8 62/17

**parties [34]**  5/3 9/22 10/12 11/20 13/15 16/2 18/17 26/10 29/3 31/1 34/13 41/10 42/15 44/6 62/24 63/1 63/1 75/23 76/9 78/25 81/5 83/2 83/2 93/23 94/8 94/10 116/19 117/9 117/23 119/22 120/22 122/19 131/21 137/11

**PARTNERS [1]**  1/11

**parts [1]**  13/6

**party [19]**  8/10 11/21 15/8 18/9 28/7 42/9 55/9 62/24 64/7 78/7 96/16 96/22 97/2 100/22 102/12 116/21 128/14 132/10 138/4

**pass [4]**  86/18 95/2 113/6 114/10

**passed [4]**  85/17 85/20 85/21 86/12

**past [7]**  11/7 14/8 31/7 31/9 60/14 72/25 91/16

**pathway [2]**  61/14 131/5

**PAUL [1]**  2/22

**pay [5]**  51/12 88/11 112/21 119/3 119/3

**paying [1]**  112/21

**payment [1]**  105/17

**payments [2]**  137/10

**payroll [2]**  62/1 62/6

**PC [2]**  1/19 55/6

**pending [14]**  16/25 21/14 23/12 36/5 36/11 36/16 40/21 98/18 98/20 104/4 104/11 105/1 129/11 138/11

**people [13]**  29/4 42/4 42/20 43/23 59/22 60/13 60/13 62/16 66/11 75/1 75/2 77/2 92/20

**per [2]**  53/1 134/24

**perceive [1]**  80/20

**percent [16]**  76/13 87/14 87/15 88/2 92/12 92/13 94/14 94/19 100/25 101/19 101/23 106/8 112/22 112/23 117/20 117/25

**perhaps [4]**  31/22 102/4 122/5 129/4

**period [3]**  35/21 73/25 75/20

**perjury [1]**  75/23

**permanent [2]**  92/24 93/1

**permits [1]**  70/21

**person [16]**  16/20 30/18 38/18 42/4 47/25 50/1 77/19 81/13 82/5 83/12 101/7 101/17 101/20 116/1 125/13 130/3

**personal [5]**  44/5 94/7 94/25 99/12 132/10

**personality [4]**  59/5 59/9 59/12 60/1

**personalized [1]**  35/14

**personally [2]**  94/12 94/13

**persuade [1]**  122/13

**perturbed [1]**  28/5

**perversion [2]**  77/8 77/12

**petition [2]**  58/22 130/4

**Phil [2]**  91/9 91/13

**Philip [1]**  91/11

**phone [1]**  112/3

**picture [1]**  33/17

**place [10]**  28/6 30/19 42/5 46/24 48/1 48/23 53/11 63/10 83/13 115/12

**plaintiff [5]**  5/5 67/10 67/21 81/2 84/3

**plaintiff's [2]**  4/16 6/3

**Plaintiffs [3]**  1/6 1/17 36/17

**plaintiffs' [1]**  36/17

**plan [177]**

**plant [2]**  92/16 93/11

**play [1]**  78/12

**player [2]**  29/13 29/14

**players [1]**  14/19

**playing [2]**  7/9 7/13

**pleaded [4]**  10/2 32/17 33/19 120/5

**pleading [2]**  57/13 57/15

**pleadings [6]**  17/2 29/15 31/18 46/17 47/15 137/25

**pleasant [1]**  112/15

**please [3]**  34/18 50/25 118/16

**pled [4]**  50/17 50/21 52/1 52/10

**point [89]**  1/11 7/4 7/4 7/19 17/25 21/25 26/10 26/13 28/6 28/11 30/1 33/10 38/13 38/16 38/17 38/23 39/2 40/2 42/3 43/17 46/25 47/7 48/8 48/10 48/12 48/20 49/24 49/25 51/14 54/7 55/13 56/11 56/17 56/24 58/11 62/1 62/3 62/6 62/23 64/6 65/24 67/9 69/2 69/3 70/5 70/7 71/1 74/1 76/11 76/22 77/19 80/17 80/24 82/11 82/14 83/8 87/2 87/16 91/18 104/2 104/24 105/15 112/10 121/16 121/24 123/1 124/3 124/9 124/23 124/24 124/25 125/6 125/6 125/11 125/23 127/12 127/13 127/21 128/2 128/8 129/1 129/15 129/18 129/19 129/24 130/11 133/7

**point... [2]** 133/22 138/10
**Point's [2]** 70/7 70/8
**pointed [4]** 48/4 49/8 78/22 127/14
**points [2]** 33/17 45/17
**Pollution [1]** 86/11
**pontificate [1]** 117/16
**port [1]** 86/3
**PORTAGE [16]** 1/10 7/4 7/19 28/6 28/11 38/16 38/22 39/2 40/2 48/11 69/3 70/7 71/1 92/20 105/15 128/2
**portion [1]** 32/2
**portions [2]** 34/5 34/8
**position [21]** 6/17 12/10 48/18 52/8 52/11 52/19 69/9 100/22 101/14 101/17 101/20 117/9 120/21 121/20 128/9 128/14 129/16 129/19 130/17 131/2 133/23
**positive [1]** 64/21
**possession [5]** 41/17 121/13 121/24 122/4 130/7
**possible [3]** 87/6 120/21 120/25
**possibly [5]** 33/22 69/25 82/18 118/19 120/12
**post [8]** 8/17 8/24 9/4 9/25 18/2 38/11 93/21 115/20
**post-confirmation [4]** 8/17 8/24 9/25 18/2
**post-effective [2]** 9/4 115/20
**post-effective-date [2]** 38/11 93/21
**posture [3]** 27/18 54/21 135/25
**potential [7]** 15/1 26/13 40/9 73/5 102/8 102/12 137/7
**potentially [5]** 13/1 21/12 48/24 73/12 138/13
**power [1]** 81/6

**powers [1]** 134/16
**practice [2]** 30/15 88/6
**practices [1]** 88/5
**pre [1]** 58/22
**pre-petition [1]** 58/22
**preclude [3]** 18/1 54/16 54/19
**predated [1]** 10/15
**predecessor [2]** 66/10 66/11
**prejudice [1]** 111/9
**Prentice [2]** 24/15 24/16
**prepare [1]** 92/22
**prerogative [1]** 52/1
**present [2]** 3/2 102/24
**presentation [1]** 34/19
**presented [6]** 24/2 27/18 113/17 113/19 115/14 132/9
**presents [1]** 20/10
**preserve [1]** 49/12
**preserving [1]** 119/1
**president [3]** 85/9 86/10 119/16
**presiding [1]** 125/2
**presumes [1]** 46/8
**presupposes [1]** 79/1
**pretences [1]** 10/11
**pretextual [1]** 118/5
**pretty [3]** 92/18 113/20 136/8
**prevent [3]** 102/8 103/1 134/11
**prevented [1]** 24/2
**preventing [1]** 135/4
**primary [1]** 8/13
**prior [3]** 88/25 91/21 105/17
**priority [1]** 20/18
**private [2]** 87/14 87/15
**probably [6]** 15/6 16/9 33/22 41/20 117/19 120/19
**problem [23]** 13/4 31/8 41/8 41/11 42/14 43/21 43/25 48/2 48/19 51/20 54/9 54/20 60/10 60/19 60/23

73/15 75/17 78/9 78/9 79/4 119/7 125/17 129/10
**problems [2]** 41/16 42/7
**procedural [1]** 54/21
**procedure [1]** 125/7
**proceed [6]** 5/15 12/15 72/25 83/12 84/9 123/13
**proceeded [1]** 76/25
**proceeding [30]** 4/21 16/25 18/4 20/1 20/6 20/8 20/10 20/14 20/16 21/4 22/7 22/8 22/10 22/16 23/12 23/25 35/11 35/19 43/10 67/23 67/24 98/14 103/14 113/13 120/15 120/17 126/23 137/2 137/4 137/6
**proceedings [8]** 3/8 19/9 63/7 75/11 105/14 133/21 139/4 139/7
**process [6]** 75/16 76/15 77/2 95/14 126/5 132/7
**processes [1]** 75/1
**produced [1]** 3/9
**productive [1]** 65/1
**professional [8]** 17/9 18/7 35/9 54/25 64/22 90/22 105/23 112/19
**professionals [6]** 15/20 16/3 16/3 19/24 58/23 105/16
**professionals' [1]** 118/25
**profits [2]** 86/17 87/8
**pronged [1]** 49/5
**prongs [1]** 56/18
**proper [4]** 79/11 100/22 101/17 101/20
**properly [1]** 69/21
**proposal [1]** 96/12
**proposed [4]** 40/10 114/7 137/5 137/8
**proposition [1]** 36/7
**prosecute [4]** 21/13 21/18 27/21 39/1
**protect [2]** 38/9 55/5
**protective [1]** 24/1

Case 4:24-cv-00693   Document 95   Filed 06/12/25 in TXSD   Page 170 of 182

**provide [3]** 31/13 116/19 125/8
**provided [1]** 38/8
**provides [3]** 40/7 96/22 97/2
**provision [3]** 16/8 78/19 111/3
**provisions [3]** 116/10 134/22 135/3
**prudent [1]** 32/25
**public [4]** 77/5 87/17 87/19 87/24
**publicly [1]** 87/13
**published [2]** 74/11 77/6
**purely [1]** 30/23
**purported [2]** 51/2 126/4
**purpose [2]** 7/3 38/23
**purposes [2]** 75/6 126/21
**pursue [27]** 8/10 15/4 15/6 15/18 16/23 20/5 21/11 27/7 27/8 34/5 36/6 47/23 48/21 54/2 55/9 82/4 94/21 97/12 97/15 101/4 116/5 119/19 120/4 121/1 136/22 137/12 138/6
**pursuing [4]** 27/2 81/3 97/8 122/18
**pursuit [1]** 94/25
**push [1]** 59/7
**put [11]** 17/4 31/12 42/4 57/14 93/12 94/16 94/23 99/12 113/22 115/12 136/10
**puts [1]** 14/24
**putting [2]** 92/16 92/22

## Q

**quagmire [3]** 13/14 29/11 30/17
**qualified [3]** 123/10 123/11 136/11
**qualifies [1]** 90/8
**question [16]** 24/7 31/13 38/13 44/15 52/5 57/20 63/5

63/5 66/19 69/5 79/6 113/1 115/14 115/18 126/1 132/16
**questioned [4]** 18/7 41/17 54/14 61/20
**questioning [1]** 65/9
**questions [10]** 26/3 26/25 52/4 63/25 66/12 103/5 103/7 110/5 110/8 113/9
**quick [2]** 81/20 82/9
**quicker [1]** 34/19
**quite [2]** 9/9 13/14
**quote [14]** 36/15 36/15 47/25 58/21 58/22 59/4 59/6 59/9 60/10 60/10 60/11 60/12 60/14 60/20
**quotes [1]** 61/22

## R

**rabbit [1]** 55/3
**raise [1]** 108/25
**raised [11]** 11/9 11/9 45/17 46/19 104/20 125/23 126/1 126/4 131/14 133/12 133/13
**raising [1]** 109/6
**ran [2]** 85/16 118/4
**Rashad [1]** 91/9
**rather [1]** 44/19
**RAY [37]** 1/11 2/18 6/20 8/1 8/5 19/19 20/21 25/24 25/25 26/17 27/6 28/6 28/10 28/14 35/21 37/8 39/14 39/15 40/2 40/9 41/4 48/12 65/1 92/20 92/22 101/24 102/7 102/12 103/20 113/20 113/22 114/1 114/3 119/10 120/16 127/9 128/2
**Ray's [2]** 40/9 137/25
**re [12]** 49/3 51/3 53/18 53/18 69/19 74/12 74/23 74/23 74/24 76/18 116/16 117/1
**re-review [1]** 76/18
**reach [1]** 121/10
**reached [5]** 10/11 17/3 20/15 113/15 115/16

**read [6]** 26/16 105/11 105/13 106/12 111/8 134/20
**reality [1]** 50/17
**realize [1]** 105/9
**really [22]** 6/24 8/6 8/18 9/15 10/22 19/23 26/19 27/23 29/9 30/18 41/20 42/1 42/24 55/10 66/10 69/12 69/14 71/7 72/24 73/8 75/5 100/22
**reason [9]** 20/8 20/19 29/18 30/18 49/14 53/22 63/20 75/14 82/25
**reasons [2]** 49/11 121/19
**rebuttal [2]** 61/2 135/22
**recall [8]** 29/15 106/9 109/5 110/13 110/20 110/23 111/3 111/7
**recalls [1]** 18/7
**received [3]** 17/22 20/23 50/10
**recognition [1]** 102/11
**recognize [2]** 27/10 42/6
**recognized [5]** 13/18 15/5 37/7 102/7 136/12
**recognizes [1]** 115/1
**recollection [1]** 27/11
**recommendation [8]** 29/19 31/17 81/12 82/6 82/17 82/19 83/9 90/11
**recommendations [2]** 89/1 89/3
**recommended [1]** 29/24
**record [15]** 58/6 58/6 58/18 63/17 64/11 64/17 64/20 66/21 74/10 111/1 126/21 129/5 129/5 133/23 139/7
**recorded [1]** 3/8
**records [1]** 133/25
**recoup [2]** 36/3 36/3
**recovery [2]** 33/20 67/4
**recross [1]** 114/11
**recuse [1]** 35/25
**recused [1]** 71/23

**redirect [3]** 113/7 113/10 114/11
**reduced [1]** 67/4
**refer [1]** 34/24
**reference [8]** 9/7 23/13 23/15 36/11 53/1 56/23 116/3 117/18
**referenced [3]** 11/14 56/13 118/17
**reflects [3]** 63/17 106/20 106/24
**reframe [1]** 96/25
**refuses [1]** 80/25
**regard [8]** 6/9 43/1 44/23 78/23 80/21 111/5 112/7 137/16
**regarding [4]** 97/1 98/2 98/21 125/24
**regardless [3]** 9/2 9/24 36/23
**regular [1]** 30/15
**reinforced [1]** 51/9
**reinvest [1]** 87/8
**rejected [1]** 105/18
**relate [1]** 115/12
**related [9]** 12/9 16/18 17/8 32/20 32/21 32/24 33/15 42/20 115/24
**relates [2]** 13/20 27/3
**relating [2]** 14/1 131/23
**relation [2]** 17/21 17/22
**relationship [24]** 8/22 10/17 11/19 11/20 12/10 12/20 14/2 16/10 28/3 31/14 32/21 44/3 44/5 54/23 54/24 54/25 84/16 85/7 89/17 90/14 90/18 107/12 117/23 117/25
**relationships [1]** 134/9
**release [30]** 10/18 11/1 11/3 11/20 11/23 12/4 12/9 12/12 12/14 17/24 33/24 34/3 34/4 34/11 73/3 73/4 73/5 73/6 108/16 115/6 115/8 115/9

117/5 131/7 131/20 131/21 132/6 132/19 133/6 135/13
**released [1]** 10/5
**releases [1]** 73/24
**Releasing [1]** 131/21
**relevant [1]** 36/16
**relief [5]** 67/2 111/4 111/10 116/19 116/20
**relitigate [1]** 13/2
**rely [4]** 9/7 49/10 116/2 118/11
**remain [4]** 14/16 71/22 116/10 134/16
**remaining [1]** 88/14
**remains [1]** 98/18
**remand [7]** 7/3 33/11 38/17 38/23 40/1 81/21 124/1
**remanded [1]** 40/15
**remedies [1]** 76/20
**remedy [1]** 117/2
**remember [20]** 26/5 41/12 105/9 106/1 106/8 106/16 106/18 106/21 107/1 107/3 108/6 108/18 108/21 109/16 109/18 109/23 111/11 113/16 123/4 133/1
**removal [12]** 35/17 61/4 91/4 101/14 101/18 101/21 106/11 109/23 126/11 126/12 131/11 136/16
**remove [9]** 60/19 60/21 61/22 64/5 66/5 118/16 118/18 118/20 137/6
**removed [29]** 18/10 19/12 35/10 41/19 41/25 42/3 54/13 54/20 57/7 58/8 61/8 66/17 68/8 82/10 85/15 90/25 91/13 101/11 105/24 109/16 110/21 118/5 119/8 121/22 121/23 122/8 126/3 126/15 131/13
**removes [1]** 64/14
**removing [1]** 110/23
**renaissance [1]** 59/10

scope [4] 46/16 47/1 47/8 79/9
**reopened [1]** 76/21
**rep [1]** 35/6
**repeat [5]** 14/20 14/20 52/14 96/3 96/24
**repeatedly [2]** 64/25 115/5
**replace [1]** 137/9
**replead [4]** 50/9 51/25 117/11 117/13
**replies [1]** 45/25
**reply [3]** 46/2 53/18 57/17
**reporter [4]** 3/3 3/4 84/8 139/10
**represent [12]** 9/22 20/11 25/23 33/12 39/15 52/8 94/5 105/22 112/2 126/2 128/11 129/22
**representation [6]** 20/22 26/16 27/5 62/10 107/19 131/4
**representations [3]** 23/8 66/16 118/13
**representative [2]** 22/5 38/10
**represented [13]** 6/21 15/21 25/23 27/9 28/11 33/7 43/8 43/17 62/7 107/17 132/5 132/18 133/1
**representing [15]** 10/23 14/25 23/18 25/25 26/11 28/12 43/6 43/18 43/19 58/20 89/8 91/5 107/15 125/25 127/16
**represents [4]** 97/4 97/8 127/19 130/23
**reputation [13]** 34/23 34/25 35/5 35/7 37/19 50/14 51/15 51/18 57/1 92/1 92/2 103/22 118/8
**reputational [5]** 36/22 51/21 56/18 68/3 68/5
**request [10]** 8/8 8/9 8/12 13/10 15/8 32/17 70/24

**request... [3]** 105/18 111/20 112/5
**requested [1]** 76/9
**requesting [1]** 22/16
**requests [1]** 25/9
**required [2]** 75/25 134/10
**requirements [1]** 134/21
**requires [2]** 122/20 129/25
**res [1]** 33/2
**researching [1]** 36/9
**reserve [4]** 10/8 115/19 115/23 115/23
**reserved [1]** 16/14
**reserves [1]** 9/3
**resident [2]** 29/18 89/23
**resign [1]** 138/2
**resolution [1]** 17/3
**resolve [4]** 20/16 44/18 44/19 60/22
**resolved [5]** 20/17 20/18 27/23 38/5 137/6
**respectfully [1]** 53/6
**respects [1]** 108/14
**respond [4]** 8/11 13/9 46/24 83/21
**responding [3]** 46/21 48/3 63/13
**response [9]** 7/25 8/25 30/12 46/3 47/16 51/4 56/24 114/4 117/17
**responses [1]** 31/3
**responsibilities [3]** 69/16 87/4 98/5
**responsibility [1]** 69/19
**responsible [2]** 41/5 109/7
**responsive [3]** 36/2 47/15 50/22
**restore [1]** 61/16
**restructuring [1]** 19/18
**result [6]** 10/12 18/2 19/15 83/3 99/15 106/13
**resulted [2]** 22/15 77/7
**retain [1]** 106/4

**retained [5]** 10/6 29/14 64/15 90/11 91/11
**retaliatory [5]** 18/5 20/2 20/8 20/9 22/9
**retire [1]** 87/3
**return [1]** 103/20
**reverse [1]** 133/17
**reversed [1]** 131/18
**review [5]** 11/5 26/21 76/18 98/24 105/16
**revocation [1]** 116/14
**revoke [2]** 78/8 79/18
**RICO [3]** 39/15 54/4 101/2
**ride [1]** 50/11
**ridiculous [2]** 109/4 112/17
**right [91]** 6/3 7/17 19/14 28/25 29/12 41/2 45/9 46/22 47/9 54/7 55/7 55/9 56/4 56/4 57/13 57/14 57/25 59/21 60/4 61/14 63/19 66/21 69/8 70/14 72/13 74/7 76/11 76/16 77/5 77/14 77/16 77/17 77/21 78/4 79/1 80/14 83/6 91/1 91/4 91/14 93/3 93/24 94/2 94/15 94/15 95/17 96/2 97/9 97/19 97/22 97/25 98/16 98/18 99/3 99/10 99/13 99/16 99/20 99/21 100/15 101/12 101/15 103/25 105/11 105/20 106/4 106/22 107/6 108/11 108/14 108/19 108/20 109/6 110/7 111/10 114/14 114/23 115/18 123/15 125/1 126/11 126/14 128/24 128/25 130/11 131/5 132/4 134/6 135/16 138/24 139/3
**rights [1]** 78/25
**RMR [1]** 3/4
**roadblocks [1]** 22/4
**ROBERT [3]** 1/18 5/4 93/21
**Roberts [1]** 36/19
**role [10]** 26/13 26/18 65/21

90/25 98/3 102/5 102/13 118/22 137/8 137/11
**rolling [1]** 29/4
**Roman [1]** 38/11
**room [1]** 38/20
**Ropes [2]** 15/21 130/22
**roughly [1]** 121/21
**rubber [2]** 76/8 115/10
**rubber-stamped [1]** 115/10
**rubber-stamping [1]** 76/8
**ruin [2]** 91/16 111/14
**rule [10]** 46/16 47/1 47/7 47/10 47/11 75/6 79/8 79/10 79/10 138/23
**Rule 60 [6]** 46/16 47/1 47/7 47/10 79/8 79/10
**rules [1]** 125/7
**rumblings [1]** 118/17
**run [6]** 65/17 77/19 85/10 85/14 118/4 122/15
**running [4]** 19/19 122/20 136/14 136/14
**Rusk [1]** 3/5
**RUSSELL [1]** 2/6
**Rusty [2]** 2/7 5/9
**Ryan [10]** 59/2 89/4 89/7 89/10 91/5 91/7 111/24 112/14 112/15 112/16

## S

**S.I [1]** 53/18
**sabotaged [1]** 35/21
**safest [1]** 87/6
**said [58]** 12/1 15/6 19/25 30/4 30/6 30/8 37/16 37/19 43/15 46/20 49/11 49/14 67/20 69/10 69/14 77/9 80/12 86/19 86/22 87/20 87/23 88/25 89/4 89/13 89/14 89/15 89/18 90/5 90/7 91/9 91/11 91/14 91/25 92/6 92/21 92/23 93/1 106/11 107/13 107/15 108/3 108/4 109/4 109/8 111/25 112/1 112/10 112/16 112/16

**said... [9]** 112/17 112/24 116/17 118/13 120/17 121/7 133/3 136/21 138/19

**sale [1]** 67/11

**sales [2]** 86/7 88/18

**Sam [2]** 5/6 95/4

**same [13]** 25/22 28/17 33/13 35/5 51/6 55/16 67/19 68/6 71/6 76/23 80/24 81/1 100/13

**SAMUEL [1]** 2/22

**sat [2]** 137/1 137/2

**satisfy [2]** 96/1 96/6

**say [30]** 6/18 11/2 12/17 14/20 18/25 19/4 21/8 22/5 23/9 27/1 28/2 33/3 53/19 56/14 57/23 60/12 71/18 75/18 75/20 76/5 82/5 82/16 100/5 106/23 107/20 113/16 133/18 134/12 135/20 138/16

**saying [52]** 10/3 11/14 17/20 24/13 27/16 28/14 35/2 35/4 35/8 37/20 43/9 44/11 47/1 47/18 47/21 48/8 48/10 49/9 52/6 53/12 59/19 61/23 70/9 70/12 70/13 70/15 72/3 72/4 72/9 72/12 72/12 72/15 72/16 73/20 77/3 79/6 79/13 79/14 81/10 82/9 103/20 104/10 106/16 109/24 118/11 118/14 124/17 126/17 130/2 132/16 135/12 138/2

**says [19]** 8/14 44/13 46/5 46/6 48/5 53/19 58/20 58/22 59/8 60/11 60/18 60/19 60/24 70/1 70/23 71/8 71/9 79/18 133/16

**scenario [2]** 14/2 119/20

**scheme [7]** 13/21 37/10 37/14 51/18 57/3 57/18 101/2

**Schiller [2]** 1/23 5/12

**school [1]** 85/23

**scrutiny [1]** 10/21

**se [1]** 53/1

**SEAN [3]** 2/18 5/6 38/2

**seat [1]** 63/16

**seated [1]** 5/2

**second [11]** 1/23 35/16 36/14 49/13 49/14 50/6 65/5 84/18 87/10 92/15 123/4

**section [6]** 34/5 73/24 79/17 79/17 88/13 130/1

**Section 101.14 [1]** 130/1

**Section 1114 [1]** 73/24

**Section 1144 [1]** 79/17

**secure [1]** 104/23

**secured [4]** 55/22 104/21 126/19 127/5

**see [15]** 5/14 23/10 44/12 45/14 47/15 48/23 49/25 50/17 50/20 55/4 68/15 70/25 71/6 84/6 132/2

**seek [5]** 6/24 67/21 99/19 111/4 111/10

**seeking [3]** 7/15 14/4 67/3

**seeks [8]** 16/17 27/8 34/4 116/12 116/24 137/8 137/11 137/15

**seem [2]** 42/11 75/4

**seems [6]** 42/16 42/17 42/21 54/10 63/5 128/16

**seen [2]** 27/1 27/14

**selling [1]** 86/20

**send [4]** 18/25 82/17 82/18 112/19

**sense [3]** 42/1 76/4 76/6

**sent [2]** 39/25 114/2

**sentence [1]** 111/7

**separate [4]** 66/19 69/23 74/11 120/21

**separately [1]** 134/19

**separating [1]** 123/14

**September [6]** 15/16 17/1 17/23 20/14 38/7 126/10

**September 3rd [1]** 15/16

**series [1]** 126/16

**serve [3]** 94/20 128/14 130/16

**served [4]** 27/24 90/22 95/8 102/21

**service [1]** 87/9

**serving [2]** 103/1 129/19

**set [7]** 46/16 46/17 47/11 47/12 80/19 88/10 113/17

**sets [1]** 131/19

**setting [1]** 116/17

**settle [2]** 21/11 21/12

**settled [7]** 98/19 104/2 104/23 113/14 114/4 127/6 127/9

**settlement [19]** 17/3 20/15 20/19 21/3 22/16 35/20 35/20 113/15 113/17 114/7 114/7 127/11 128/16 129/3 129/6 129/14 137/1 137/5 138/10

**sever [2]** 34/8 34/10

**several [7]** 26/9 34/24 35/21 66/10 111/24 129/7 136/15

**shall [3]** 38/10 76/20 111/9

**sham [1]** 73/13

**share [2]** 28/9 28/17

**shareholder [6]** 51/5 67/5 97/19 97/21 98/3 121/4

**she [1]** 132/13

**sheet [1]** 23/10

**Ship [1]** 90/7

**shipping [2]** 19/21 58/15

**ships [2]** 58/12 58/16

**shipyard [1]** 88/17

**shipyards [1]** 92/16

**short [3]** 65/19 66/2 92/9

**short-lived [2]** 65/19 66/2

**should [29]** 8/9 11/23 12/15 12/15 12/17 12/21 15/11 20/9 30/25 32/7 32/8 36/23 42/6 61/8 61/21 62/15 66/17 66/19 71/18 74/5 91/7 91/9

**should... [7]** 120/19 122/1 125/13 126/19 126/20 131/3 134/12

**shouldn't [4]** 7/25 12/5 15/6 61/17

**show [1]** 77/7

**shown [2]** 138/5 138/5

**shows [5]** 57/18 64/11 118/25 122/10 123/2

**shut [1]** 92/20

**sic [6]** 24/6 36/20 61/25 107/14 107/14 107/15

**side [4]** 19/24 38/1 72/17 77/3

**sides [3]** 31/21 75/18 96/13

**sift [1]** 100/23

**signatories [1]** 17/2

**Signature [1]** 139/10

**signed [3]** 73/20 103/20 125/14

**significant [2]** 62/13 120/18

**signs [1]** 65/2

**silence [2]** 20/3 22/12

**simply [4]** 37/12 120/20 122/5 125/7

**since [15]** 21/5 22/14 22/16 23/7 44/17 45/3 47/2 50/18 63/7 68/1 74/8 96/4 125/2 128/16 138/19

**Sindell [1]** 36/13

**sing [1]** 37/8

**single [7]** 23/19 24/7 37/9 37/9 37/13 50/15 67/18

**sir [9]** 58/2 77/15 77/22 92/6 108/1 108/17 109/5 109/16 110/18

**sitting [2]** 22/23 135/2

**situation [12]** 8/16 15/1 30/19 31/4 32/20 37/5 48/22 65/2 75/23 101/8 133/24 136/13

**six [1]** 24/5

**skill [1]** 122/11

**skull [1]** 133/9

**slash [1]** 60/20

**slight [1]** 132/20

**slightly [1]** 60/20

**small [6]** 14/18 30/9 30/11 43/22 44/8 89/16

**smart [1]** 91/12

**SMITH [2]** 2/7 49/14

**smoke [1]** 22/4

**sole [6]** 38/10 51/5 51/5 97/19 97/21 98/3

**solely [3]** 32/20 32/21 119/14

**solution [3]** 40/10 41/4 41/4

**solve [1]** 42/11

**some [55]** 6/23 8/4 9/24 12/2 13/4 15/10 15/11 15/12 16/9 16/10 16/11 16/21 18/17 18/18 18/18 18/24 19/7 19/7 21/18 21/24 24/17 26/2 31/9 31/10 33/17 36/2 36/4 38/20 42/17 43/23 44/18 44/21 44/21 44/22 45/21 53/24 54/21 56/11 58/5 59/8 63/16 65/24 69/18 75/24 79/7 79/9 83/11 90/6 91/3 117/17 118/17 125/3 131/7 138/10 138/21

**somebody [13]** 24/9 27/17 29/25 38/25 48/22 50/3 65/25 69/25 70/3 71/7 71/8 71/9 76/10

**somehow [2]** 61/15 128/16

**something [16]** 21/24 23/24 42/14 42/15 44/13 45/24 46/15 50/18 66/6 72/8 72/15 72/16 109/8 115/17 119/10 131/14

**sometimes [1]** 13/4

**somewhat [1]** 63/6

**somewhere [1]** 106/1

**sophisticated [1]** 131/15

**sorry [16]** 5/18 5/19 11/2 25/13 37/7 52/15 71/17

77/25 84/18 100/5 100/6 110/14 110/15 110/16 115/5 127/24

**sort [6]** 11/5 11/13 33/2 68/2 79/7 102/25

**Sotto [2]** 84/7 103/8

**sought [3]** 102/12 105/15 137/2

**sound [3]** 105/20 106/20 106/22

**sounds [4]** 64/6 105/11 105/21 138/9

**Southeast [1]** 1/23

**SOUTHERN [2]** 1/1 51/8

**speak [8]** 47/24 49/20 63/7 63/10 65/8 72/23 84/19 85/1

**speaker [1]** 91/25

**speaking [2]** 12/24 66/11

**speaks [1]** 42/4

**special [23]** 8/2 16/22 21/7 27/15 27/19 40/10 40/13 42/21 49/21 81/6 81/12 81/18 81/22 81/25 82/1 82/6 82/19 94/20 119/18 137/9 137/12 138/1 138/3

**specific [2]** 9/7 116/2

**specifically [4]** 40/7 43/1 130/2 131/24

**specify [1]** 53/20

**speculate [5]** 97/13 97/17 101/6 101/10 117/15

**speed [1]** 105/10

**Spelfogel [9]** 91/19 107/5 107/7 107/11 107/11 108/9 112/8 112/9 114/5

**spend [1]** 36/9

**spin [1]** 71/12

**spinning [2]** 71/14 131/12

**spiraling [1]** 105/17

**spit [1]** 111/14

**splits [1]** 29/17

**spoke [7]** 30/5 57/6 80/24 100/20 109/2 109/17 113/4

**spoken [1]** 74/10

**spontaneously [1]**  63/14
**sponte [4]**  18/12 18/13 19/4 41/19
**squad [5]**  11/13 53/2 71/7 72/3 124/17
**square [2]**  12/12 12/19
**Sr [1]**  85/18
**STACEY [1]**  3/2
**staff [1]**  92/14
**stage [1]**  69/20
**stamped [1]**  115/10
**stamping [2]**  73/11 76/8
**stand [6]**  11/6 12/5 31/13 47/25 82/13 115/11
**standard [2]**  10/4 11/17
**Standards [1]**  97/25
**standing [62]**  5/14 6/9 6/10 6/18 6/25 7/16 7/24 7/24 8/8 8/9 8/10 8/24 9/17 11/11 11/12 11/15 11/16 13/10 13/25 15/9 30/24 31/10 32/3 32/6 32/8 32/13 32/16 32/18 32/23 33/1 33/3 33/15 33/16 36/24 37/1 38/4 39/18 45/21 45/24 46/4 48/10 49/6 52/9 55/16 63/6 67/1 68/22 68/23 68/24 69/2 70/22 94/5 99/19 117/12 120/4 123/6 123/12 123/13 123/16 124/14 124/21 137/3
**standpoint [1]**  78/17
**stands [1]**  45/23
**stark [1]**  30/14
**start [6]**  12/18 55/4 85/22 125/19 126/3 135/7
**started [4]**  12/12 29/3 85/12 85/23
**starting [1]**  34/22
**starts [1]**  127/3
**state [3]**  84/14 85/5 90/4
**stated [3]**  110/13 110/20 113/2
**statement [6]**  6/6 7/24

**statements [7]**  5/16 6/5 32/1 59/8 64/17 64/19 118/12
**states [7]**  1/1 1/15 9/6 49/4 105/13 115/24 134/16
**status [3]**  55/21 59/1 113/12
**statute [1]**  46/5
**statutory [5]**  45/23 47/16 78/17 133/11 134/21
**stay [2]**  7/20 118/22
**steamrolled [2]**  76/10 76/12
**stellar [3]**  92/1 92/2 118/8
**stem [1]**  12/19
**stems [2]**  13/20 77/1
**stenography [1]**  3/8
**step [8]**  9/25 14/23 15/8 16/18 48/23 87/10 114/15 128/16
**stepped [2]**  48/24 128/3
**steps [6]**  54/15 60/24 89/9 97/11 97/15 107/15
**still [27]**  15/14 18/21 36/5 46/23 46/23 47/3 48/7 49/13 51/2 53/12 54/18 55/6 55/21 64/7 65/10 69/22 75/10 75/13 79/1 93/16 104/4 105/1 127/12 129/11 129/22 136/24 138/11
**Stockstill [1]**  53/18
**stopped [3]**  64/10 92/20 93/3
**story [1]**  58/7
**storyline [1]**  66/10
**streamline [1]**  138/13
**street [5]**  1/19 1/23 2/16 2/19 87/24
**structure [1]**  21/21
**struggle [1]**  48/3
**stuff [1]**  71/25
**sua [4]**  18/12 18/13 19/4 41/19
**subject [1]**  33/2
**submit [4]**  75/12 105/16 106/24 135/16

**subordinated [1]**  120/19
**subrogate [1]**  94/7
**subsequent [5]**  16/12 64/25 106/3 108/7 108/24
**substitute [11]**  50/2 52/19 53/11 54/11 68/16 70/2 70/8 82/13 82/20 83/13 123/19
**substituted [1]**  71/1
**succeeding [1]**  108/24
**such [2]**  65/13 119/7
**sudden [3]**  39/3 41/18 118/23
**suddenly [1]**  63/15
**sues [1]**  60/7
**suffered [2]**  35/8 100/24
**sufficient [1]**  60/22
**suggest [3]**  35/1 42/6 72/4
**suggested [2]**  81/4 83/1
**suggesting [5]**  61/7 72/8 81/25 82/1 137/17
**suggestion [7]**  39/4 39/12 64/22 71/8 71/10 81/4 81/5
**suggests [1]**  42/9
**Suite [6]**  1/20 1/24 2/8 2/13 2/20 3/5
**summer [3]**  86/1 86/3 86/4
**summers [1]**  85/24
**superior [1]**  119/24
**supplemental [1]**  127/2
**supplies [1]**  85/25
**support [2]**  19/10 31/16
**supported [2]**  76/14 109/23
**supporting [1]**  105/16
**suppose [1]**  75/15
**supposed [3]**  67/19 127/8 136/2
**Supreme [2]**  134/14 134/19
**sure [40]**  9/21 13/8 27/4 33/14 37/24 45/1 46/14 49/23 52/16 52/21 54/8 55/9 55/20 56/6 56/11 56/12 62/19 64/8 65/4 65/6 66/3 66/23 70/18 77/23 80/7 88/9

**S**

**sure... [14]**  89/2 94/17 96/25 107/10 118/13 119/2 119/3 119/4 126/25 128/8 132/23 132/24 135/8 135/15
**surprised [2]**  26/16 27/14
**surround [1]**  8/22
**survive [1]**  10/20
**survives [1]**  44/16
**suspicious [1]**  42/2
**sustained [1]**  36/17
**swear [1]**  84/21
**sworn [2]**  84/11 84/23
**sympathetic [1]**  133/25
**sympathy [1]**  134/3
**system [1]**  124/5

**T**

**tails [1]**  53/5
**tainted [4]**  62/24 62/25 63/1 63/2
**take [18]**  8/12 44/18 44/19 50/20 51/19 57/3 57/18 69/19 82/12 95/25 96/4 97/14 102/13 107/15 112/4 116/20 125/4 138/20
**taken [11]**  13/13 17/25 19/2 19/3 21/4 23/24 42/3 48/18 54/16 63/22 63/23
**takes [1]**  126/6
**taking [6]**  6/16 26/18 35/12 64/20 64/20 112/3
**talk [3]**  34/15 53/17 66/25
**talked [1]**  123/25
**talking [5]**  9/25 35/23 56/15 67/23 125/18
**talks [1]**  67/14
**targeting [1]**  68/7
**tax [1]**  103/20
**taxes [1]**  88/11
**technically [1]**  138/19
**tell [5]**  28/5 28/15 105/11 112/12 112/20
**telling [10]**  28/24 53/8

66/15 68/6 69/4 91/7 93/14 94/14 94/15 118/6
**temporary [1]**  60/25
**tens [1]**  67/10
**tentative [2]**  17/2 20/15
**term [3]**  67/24 74/23 74/24
**terms [20]**  15/15 31/23 31/25 38/20 40/13 47/21 50/4 52/12 56/7 62/14 69/2 71/15 76/8 76/19 76/20 76/25 97/8 123/12 135/3 138/11
**terrible [2]**  65/13 65/14
**test [1]**  78/22
**testified [6]**  84/11 118/2 118/7 119/14 119/23 127/6
**testifies [1]**  44/25
**testifying [1]**  45/2
**testimony [8]**  31/19 31/21 64/5 122/10 124/11 131/7 131/15 133/8
**TEXAS [10]**  1/1 1/20 2/4 2/9 2/20 3/5 89/11 90/3 90/5 90/8
**than [11]**  28/12 39/1 43/18 48/5 88/6 90/1 92/4 115/4 118/3 122/19 134/22
**thank [23]**  45/10 50/5 52/3 52/17 56/13 58/1 77/14 77/20 83/17 92/6 103/5 104/9 105/3 110/6 114/13 114/16 120/9 125/16 130/18 135/17 135/20 135/21 138/8
**that [895]**
**that -- the [1]**  63/5
**that's [127]**  5/23 5/23 7/6 7/10 7/17 8/25 11/11 12/23 16/5 21/15 23/12 25/9 25/12 27/11 27/12 28/20 28/22 29/6 29/25 30/2 30/14 30/14 31/4 31/25 34/2 36/13 36/14 36/20 38/11 39/9 39/9 39/16 39/17 40/6 40/25 41/2 41/10 42/22 43/18 45/8 47/5 47/23

48/18 49/22 49/24 50/3 51/9 51/12 51/20 51/21 51/25 54/5 55/10 56/20 57/14 57/23 58/6 60/19 61/19 62/7 62/21 64/2 64/11 65/20 66/6 67/14 67/16 67/17 68/11 68/13 68/17 69/3 69/10 69/13 70/1 70/15 70/23 71/19 72/18 73/15 73/19 74/12 74/16 74/16 75/17 78/13 79/4 79/22 80/23 83/6 83/14 96/8 96/18 104/10 106/20 106/24 108/10 108/13 109/9 109/13 110/3 110/5 111/1 111/13 111/15 111/17 112/24 114/23 116/23 121/18 123/20 123/22 123/23 124/2 124/17 125/17 125/18 128/6 129/2 129/8 129/10 129/10 130/19 130/25 134/9 137/22 138/22
**their [23]**  8/12 14/23 14/23 15/21 16/1 16/22 21/6 22/20 22/23 25/5 37/2 45/23 45/25 50/22 58/13 62/5 66/16 66/16 83/3 97/24 119/4 133/2 135/10
**them [33]**  9/19 21/11 21/12 21/18 22/11 26/1 28/12 30/1 30/5 30/13 36/21 37/24 41/6 41/24 48/15 51/19 57/22 60/8 69/21 69/22 77/7 82/21 92/22 93/14 94/13 94/14 103/25 106/16 106/19 109/2 109/4 109/23 133/2
**then [62]**  6/12 7/3 7/5 7/18 7/18 7/20 8/11 19/18 28/6 32/6 33/13 34/7 34/25 35/10 35/18 35/21 36/19 37/3 37/20 37/22 38/25 39/3 41/18 41/24 42/5 44/15 44/22 49/8 50/2 50/16 52/8 52/11 52/22 58/25 60/6 60/19 61/1 68/1 68/3 71/9

**T**

**then... [22]** 71/10 76/25 79/4 83/9 86/1 86/3 86/5 89/14 92/16 93/11 93/12 95/25 97/14 107/6 121/21 123/4 125/25 126/3 126/3 126/16 135/17 137/6

**there's [29]** 6/12 8/14 11/8 13/3 22/17 22/18 24/1 25/24 36/8 44/4 46/18 48/8 50/13 52/24 58/10 60/16 62/24 67/18 77/18 88/7 88/7 92/23 101/8 115/6 118/2 128/16 130/25 131/4 132/12

**thereafter [1]** 54/15

**therefore [3]** 28/16 36/5 48/9

**therein [1]** 117/5

**these [72]** 6/15 6/18 8/10 8/19 9/11 9/15 10/3 10/5 10/8 10/19 10/20 11/4 11/6 11/8 11/10 12/24 12/25 13/2 13/11 16/21 16/23 17/2 21/25 22/6 31/9 31/18 37/2 40/8 41/5 42/23 42/24 44/1 44/19 50/8 51/17 54/12 54/17 63/7 63/9 64/13 65/7 67/19 73/11 73/13 73/16 73/24 75/21 75/24 76/7 79/3 79/9 81/3 81/19 82/11 83/1 94/11 94/18 100/13 100/24 102/13 109/4 112/16 112/17 112/18 115/23 116/6 121/19 126/17 127/15 133/8 137/14 138/6

**they [121]** 6/17 6/18 6/19 6/19 7/5 7/20 7/21 9/11 9/16 9/17 9/22 9/22 10/5 10/6 11/4 12/2 14/13 14/15 14/17 14/21 15/21 16/1 19/24 20/15 20/15 21/8 21/17 21/17 21/18 22/14 23/9 23/9 23/15 23/20 23/21 24/25 25/2 26/10 26/11 26/13

26/17 26/19 27/3 27/4 27/9 27/10 27/10 27/18 28/12 29/20 35/15 36/7 36/18 37/9 37/13 39/4 39/24 42/18 42/18 48/14 48/15 48/17 49/8 50/10 50/12 51/23 51/24 53/25 55/1 57/11 59/3 59/19 60/24 61/12 61/16 62/5 62/5 62/6 62/6 62/12 62/17 63/2 63/11 64/4 64/10 66/1 66/4 66/15 66/17 66/18 68/8 69/4 69/20 71/22 73/21 74/13 76/10 80/21 80/22 83/2 86/5 89/17 92/21 92/23 92/25 93/22 94/12 94/18 104/2 104/25 108/23 109/23 111/13 117/21 119/3 120/6 125/8 131/1 131/15 131/16 133/2

**they're [20]** 10/3 15/22 15/23 16/2 16/20 21/16 21/23 21/23 33/24 36/6 39/3 39/4 52/9 83/2 104/4 104/25 105/1 126/19 127/6 128/1

**they've [11]** 14/14 22/22 22/23 26/8 42/17 48/18 49/20 58/21 103/24 120/5 133/24

**thing [5]** 34/1 51/6 55/4 69/13 132/25

**things [6]** 46/25 81/19 101/6 105/10 118/16 126/17

**think [77]** 7/21 7/22 11/9 13/1 13/3 15/7 17/8 17/20 18/24 18/25 20/22 22/1 23/23 24/5 25/6 25/8 27/2 27/22 28/22 28/23 31/1 31/20 31/20 33/13 34/19 35/1 37/3 37/6 41/3 42/22 47/21 48/2 48/13 48/17 49/1 49/19 49/19 53/3 55/7 56/15 57/10 57/10 57/13 58/6 61/5 61/13 62/4 62/7 63/14 63/15 68/21 69/16 70/10 70/10

71/4 71/6 76/17 76/23 78/22 79/7 79/7 84/6 109/13 115/16 117/3 117/24 125/10 125/18 128/23 130/25 132/11 136/5 136/8 136/11 136/25 137/25 138/2

**thinking [2]** 87/19 89/1

**third [6]** 42/9 71/9 102/12 120/22 122/19 138/4

**this [218]**

**THOMAS [1]** 2/2

**thorn [1]** 19/24

**those [51]** 6/23 9/5 9/9 12/15 12/21 13/18 14/5 15/4 15/6 16/14 17/8 17/16 17/17 20/5 21/11 21/21 21/23 24/3 32/9 32/24 33/8 34/5 34/6 35/14 36/3 48/21 51/1 57/21 67/22 68/17 74/25 75/11 75/12 75/15 76/4 76/18 77/5 82/21 94/1 94/25 96/6 99/13 103/24 107/8 115/9 115/12 116/4 117/22 117/22 125/14 130/8

**though [11]** 41/3 44/12 47/3 62/3 65/24 106/22 118/17 128/8 128/9 130/9 136/21

**thought [12]** 26/4 27/9 29/21 29/23 59/14 59/16 61/15 65/25 90/4 97/14 135/24 137/22

**thousands [1]** 28/1

**threatened [1]** 60/20

**three [15]** 16/14 34/20 37/16 37/18 49/5 50/13 56/18 66/25 74/10 75/12 76/4 77/5 88/9 106/22 128/24

**three-pronged [1]** 49/5

**threw [1]** 113/23

**through [19]** 6/20 26/17 34/11 41/24 62/3 67/11 75/11 88/16 88/24 107/1 107/8 108/25 117/7 117/8

through... [5] 129/5 133/11 133/12 135/4 137/13
throughout [2] 85/25 92/8
throw [2] 75/20 77/3
throwing [1] 135/2
thrown [4] 12/11 22/4 117/5 117/19
tie [1] 29/16
time [30] 16/12 22/9 29/17 36/9 41/8 41/17 44/20 49/18 52/3 55/4 60/13 61/15 61/24 63/2 65/9 86/12 86/13 87/16 89/22 92/9 97/18 106/1 108/22 109/2 112/1 122/7 130/18 131/11 135/14 136/6
times [6] 27/13 74/11 95/8 102/22 111/25 129/7
timing [1] 126/1
today [26] 30/20 30/21 32/15 38/3 38/6 46/20 48/20 50/4 50/12 52/6 56/18 57/21 68/15 68/18 80/19 82/7 82/21 83/14 91/3 120/11 123/5 123/19 124/2 125/6 135/10 136/1
Todd [1] 88/23
together [1] 42/18
told [13] 39/21 86/14 89/8 89/11 91/13 92/12 92/22 111/12 111/13 112/14 112/14 117/21 118/7
tolling [1] 80/2
Tom [3] 2/3 5/20 78/2
tone [1] 64/21
too [5] 26/5 43/21 59/5 82/2 117/16
took [4] 7/6 31/21 40/23 124/2
tool [1] 19/25
top [1] 71/12
tort [3] 36/2 36/3 36/8
totally [2] 71/23 122/19
tough [2] 79/13 79/14

towards [2] 61/4 61/4
town [1] 87/18
traded [1] 87/13
traditionally [1] 47/11
trail [1] 55/3
transcript [8] 3/8 18/14 22/15 22/17 27/13 60/17 106/10 139/6
transcripts [1] 26/20
transparency [1] 106/14
Transportation [27] 9/18 17/13 24/6 24/6 26/24 29/16 32/19 33/7 84/16 85/7 85/12 85/14 85/22 86/10 88/5 88/20 89/20 90/2 91/6 94/6 94/24 99/23 111/2 118/3 119/2 120/1 136/20
trapped [2] 29/10 30/16
treated [2] 75/3 77/2
tried [2] 54/15 66/8
trip [1] 82/11
trouble [2] 19/19 84/20
trucks [1] 85/24
true [3] 47/5 68/13 130/25
TRUST [1] 1/6
trustee [27] 1/5 2/18 28/7 71/17 75/8 95/9 95/20 95/22 96/2 96/5 96/22 97/2 97/6 97/12 99/19 102/21 103/1 120/13 120/20 121/7 122/12 122/21 122/25 125/9 130/1 130/9 135/9
trustee's [3] 22/23 26/18 71/18
trusts [1] 87/12
try [6] 17/14 18/5 19/16 33/11 51/24 60/8
trying [12] 7/15 18/24 21/13 54/18 54/18 55/2 71/11 71/13 77/18 82/4 128/12 134/10
tug [3] 93/21 122/15 122/20
tugs [2] 59/4 85/25
turn [4] 8/7 32/9 50/16

Twenty [1] 128/24
Twenty-three [1] 128/24
twice [1] 33/1
two [34] 6/8 8/22 21/5 22/11 23/18 24/21 30/9 30/11 33/1 36/10 40/1 41/25 45/16 49/11 49/11 50/20 53/17 58/12 63/4 77/6 87/1 88/9 88/10 88/14 89/7 89/15 89/16 92/23 107/1 114/2 123/14 130/4 133/20 137/2
twofold [1] 32/3
TYLER [2] 1/22 5/11
type [4] 53/21 53/24 92/23 92/24

## U

U.S [6] 26/18 58/20 75/8 134/15 134/20 135/9
U.S.C [3] 46/2 129/25 130/1
ugly [1] 44/7
Uh [10] 39/13 40/5 40/17 40/20 42/10 43/3 80/18 130/19 131/9 133/4
Uh-huh [10] 39/13 40/5 40/17 40/20 42/10 43/3 80/18 130/19 131/9 133/4
ULRICH [2] 1/22 5/11
ultimate [2] 10/12 13/15
ultimately [2] 58/7 133/5
unbelievable [1] 92/21
undecided [1] 51/2
undeniably [1] 9/13
under [26] 7/19 10/4 10/6 10/6 10/10 10/22 12/21 36/2 40/12 46/16 46/22 48/9 48/23 50/12 59/7 64/2 64/5 66/11 69/8 69/9 71/3 78/6 121/6 130/16 133/14 135/6
undercuts [2] 9/15 11/22
underlie [1] 12/13
underlied [1] 117/24
underlies [1] 14/2
underlying [5] 8/19 46/12

**underlying...** [3] 103/13 126/23 138/21
**underpinnings** [1] 31/2
**understand** [31] 9/17 25/23 27/16 39/19 39/21 39/24 44/11 47/18 73/7 73/14 74/1 78/11 78/16 89/15 93/20 94/1 97/6 98/8 99/2 100/9 100/17 102/1 102/4 102/7 102/11 102/18 113/1 121/18 123/22 124/23 128/6
**understanding** [14] 27/12 39/5 39/11 47/3 54/1 96/11 96/19 96/21 97/1 98/2 98/20 99/22 130/22 132/7
**understands** [2] 118/3 136/5
**understood** [7] 7/14 7/19 14/9 39/24 41/15 73/23 77/20
**undisputed** [2] 122/9 123/1
**undo** [2] 12/18 14/5
**undoing** [1] 14/6
**unfair** [1] 75/5
**unfairly** [1] 131/13
**unfortunately** [2] 13/16 19/13
**unhappy** [1] 136/6
**uninvolved** [1] 102/13
**UNITED** [2] 1/1 1/15
**universe** [1] 55/14
**unknown** [2] 73/4 131/22
**unquote** [1] 47/25
**unresolved** [1] 127/7
**unsecured** [3] 55/22 104/24 127/2
**until** [16] 19/14 21/5 22/11 46/19 48/15 79/13 85/15 88/2 88/16 106/19 121/13 121/16 121/23 121/24 133/18 137/2
**unusual** [1] 41/20
**up** [49] 8/12 17/9 17/13

17/25 22/4 29/11 29/19 29/25 45/25 47/21 51/18 51/20 55/3 55/21 59/13 62/4 62/6 65/5 71/8 72/3 72/14 72/15 76/22 77/23 77/23 85/1 86/19 87/1 88/2 88/10 91/6 91/15 92/5 92/21 97/13 97/17 101/6 105/10 107/13 108/4 109/17 111/12 111/14 112/24 114/1 121/13 129/24 131/6 135/25
**upon** [2] 46/5 129/25
**upset** [3] 113/20 117/3 131/16
**urge** [1] 36/25
**us** [9] 24/2 32/11 37/14 50/25 58/11 67/9 68/24 93/15 119/20
**use** [4] 11/2 17/21 30/7 134/10
**used** [3] 15/7 16/22 30/4
**useful** [1] 22/11

**V**

**vacation** [1] 86/5
**valid** [5] 12/2 12/7 21/18 124/7 124/7
**valuable** [1] 33/5
**valuation** [1] 20/17
**value** [3] 17/4 35/4 119/11
**valued** [1] 17/11
**Van** [4] 35/24 35/24 55/16 67/20
**various** [2] 113/7 126/18
**vast** [1] 88/16
**vehicle** [2] 47/10 79/11
**vendors** [1] 92/12
**versus** [7] 13/9 34/3 36/13 36/19 77/13 134/15 134/19
**very** [34] 14/18 21/15 29/3 33/23 39/4 40/7 42/14 43/22 44/7 61/5 61/5 61/20 62/13 64/12 64/21 67/19 74/20 80/19 82/9 86/12 88/18 89/10 89/12 92/6 104/9

115/12 118/10 125/20 131/21 131/21 136/6
**vessel** [1] 90/6
**vested** [1] 138/4
**view** [2] 36/25 134/14
**views** [1] 61/13
**vigorously** [1] 138/6
**Violetta** [1] 2/3
**voce** [2] 84/7 103/8
**void** [11] 13/5 13/6 13/9 13/14 33/21 34/3 34/5 34/6 46/20 117/6 124/11
**voidable** [6] 13/6 13/9 34/3 34/4 34/5 46/21
**voids** [2] 13/5 33/23
**volunteered** [1] 138/1
**voted** [1] 117/21
**VS** [1] 1/7

**W**

**wait** [2] 19/14 63/14
**waited** [1] 114/1
**waived** [1] 73/21
**walk** [2] 34/2 72/18
**WALKER** [31] 1/9 2/5 5/9 6/16 8/21 9/1 9/16 11/9 15/25 17/2 17/19 18/2 21/1 22/20 23/14 27/20 30/7 30/12 37/11 45/25 89/14 90/11 90/17 101/3 115/10 129/16 129/20 132/6 132/14 132/16 132/24
**Walker's** [6] 23/3 23/8 26/16 46/2 55/8 70/18
**walking** [2] 94/16 94/17
**want** [33] 14/20 21/18 25/4 27/17 28/9 28/18 32/10 33/1 34/8 34/10 34/10 37/24 42/5 45/7 45/8 51/24 51/24 70/17 73/16 81/20 81/22 82/10 83/11 83/19 103/7 113/25 117/15 124/24 124/25 131/6 131/16 133/23 135/6
**wanted** [18] 27/21 33/14

**wanted... [16]** 56/12 56/14 65/4 76/14 76/14 78/2 86/20 87/16 91/13 104/16 107/14 111/12 111/19 111/20 111/24 120/1

**wanting [2]** 72/19 82/15

**wants [6]** 8/12 13/1 72/17 76/24 119/25 134/13

**Wareh [1]** 91/9

**WARREN [2]** 2/15 6/1

**wasn't [17]** 20/20 26/19 27/5 45/3 48/11 54/24 58/15 60/1 64/1 76/12 78/9 81/25 101/2 121/21 121/23 134/8 136/2

**waste [1]** 99/3

**water [2]** 59/4 112/18

**way [15]** 11/6 12/5 39/10 41/9 45/24 51/25 65/21 79/10 87/6 87/20 104/23 115/11 131/1 132/10 137/22

**ways [1]** 6/17

**we [181]**

**We'd [1]** 21/8

**we'll [6]** 20/1 28/19 44/25 56/10 87/24 112/20

**we're [56]** 7/10 7/11 7/11 7/12 8/25 9/25 12/16 14/4 30/13 32/14 33/13 35/2 35/4 35/8 35/23 35/25 37/1 40/25 41/2 47/23 48/18 48/19 49/9 49/13 50/4 53/2 54/7 54/8 54/18 55/8 55/14 56/4 56/7 68/15 68/17 71/6 71/10 71/14 71/14 72/20 73/21 77/15 78/4 82/16 86/20 87/21 87/21 87/23 89/16 92/22 106/12 112/21 112/21 124/22 125/18 133/3

**we've [14]** 19/25 22/6 24/17 28/4 30/6 33/3 48/4 50/19 56/21 57/15 72/21 116/8 117/11 136/13

**week [5]** 18/8 35/10 44/18 87/22 105/23

**week's [1]** 112/19

**weeks [1]** 41/25

**weighed [1]** 132/24

**weight [1]** 75/13

**welcomed [1]** 19/22

**well [90]** 7/2 8/12 11/10 11/11 11/14 12/8 12/17 14/8 15/13 15/14 15/20 15/25 17/16 17/20 18/17 19/25 21/20 22/7 22/21 23/1 23/22 24/1 25/4 27/12 29/1 29/9 31/1 31/4 31/8 33/3 33/8 34/2 36/4 40/3 42/8 43/16 43/21 45/5 46/20 48/13 55/8 55/15 55/19 56/17 62/21 63/23 66/6 67/7 68/19 69/13 71/9 71/25 72/20 73/21 76/1 78/16 78/20 78/21 79/16 80/19 81/9 83/23 84/21 86/22 87/1 87/10 89/15 89/18 91/5 92/18 93/6 98/14 100/20 108/1 108/2 109/10 115/22 118/24 121/22 122/24 123/8 130/10 131/15 132/9 132/11 132/13 133/10 134/4 136/2 138/22

**Wells [3]** 109/17 109/20 133/2

**went [13]** 10/14 15/16 23/1 23/3 86/1 86/5 88/1 91/19 91/20 107/1 107/17 108/23 111/15

**were [116]** 7/15 7/25 10/5 10/6 10/15 14/13 14/13 14/15 15/19 16/8 16/12 16/14 17/8 17/16 17/17 17/18 17/18 18/17 23/1 23/16 23/20 24/4 24/15 25/2 26/10 26/11 26/25 27/6 27/14 28/11 33/5 33/5 35/24 37/16 40/21 45/17 46/21 48/14 48/15 48/17 51/1 52/7

**week [5]** 18/8 35/10 44/18 52/18 54/15 56/15 56/18 59/12 59/19 61/12 62/6 62/6 62/17 62/17 62/24 62/25 63/1 63/2 63/9 63/17 63/21 64/4 64/17 64/19 66/11 66/15 66/17 66/18 68/7 68/20 69/4 75/2 75/2 77/2 80/22 80/22 85/15 87/4 88/2 88/10 89/9 89/22 90/25 91/24 92/9 92/12 92/14 92/15 93/15 94/20 97/19 97/21 101/11 105/14 105/17 105/24 107/19 109/16 110/20 110/21 112/13 113/2 113/12 113/22 115/9 117/17 117/23 117/25 118/17 122/8 122/8 126/4 126/4 127/12 131/12 131/13 133/1

**weren't [5]** 9/13 31/5 63/11 94/17 94/19

**WEST [8]** 1/18 2/16 5/4 6/4 35/19 45/21 80/24 80/25

**what's [11]** 12/23 19/25 52/6 86/24 96/11 96/14 96/14 104/11 122/15 125/1 138/11

**whatever [7]** 7/12 52/10 63/8 63/20 69/19 96/13 134/16

**whether [55]** 5/14 9/20 11/7 11/12 14/21 15/10 21/11 21/11 21/11 21/16 27/6 30/24 32/4 32/7 36/18 38/4 38/24 41/6 43/23 44/16 50/3 52/12 54/4 54/12 55/21 62/14 66/2 66/17 66/18 68/12 68/15 69/6 69/20 69/22 74/5 75/22 82/12 96/1 96/6 96/21 97/1 98/2 98/8 101/18 101/21 108/23 115/3 115/3 120/5 120/6 122/17 123/9 123/13 123/19 131/22

**which [57]** 6/11 7/18 15/15 27/3 27/13 27/18 32/5 32/15

**which... [49]** 32/15 32/16 35/21 36/24 37/7 38/3 39/18 39/20 41/4 41/20 46/3 49/3 49/7 51/2 51/4 54/3 55/13 55/22 58/12 59/1 59/24 60/17 61/3 67/10 68/24 69/18 70/19 73/3 74/25 75/16 88/12 88/18 92/14 92/15 93/1 104/13 105/17 110/20 116/1 118/19 121/19 122/15 123/10 124/1 126/23 127/5 128/12 131/25 134/10

**while [5]** 28/6 59/8 97/21 107/3 129/22

**white [4]** 2/19 2/22 76/19 95/5

**who [90]** 5/14 8/3 8/10 9/22 11/1 11/1 11/20 11/20 11/22 14/16 14/19 14/22 16/2 16/3 23/17 23/19 24/4 24/4 24/20 25/22 27/24 27/24 28/4 29/25 31/9 34/13 38/14 38/18 38/24 39/12 39/14 40/8 40/11 40/12 42/4 42/6 45/11 46/7 47/24 48/20 48/23 49/25 51/5 55/4 56/7 57/21 57/21 64/24 69/2 69/5 69/25 69/25 76/9 77/19 82/6 82/19 83/9 83/10 83/12 85/14 87/11 87/11 87/11 87/23 88/4 88/4 88/10 88/24 88/24 91/19 97/7 100/23 101/24 102/16 103/6 108/7 108/7 115/18 117/9 118/3 121/2 125/9 125/9 127/19 127/22 127/22 128/7 131/15 133/1 134/23

**who's [4]** 6/4 48/24 71/15 72/15

**whole [10]** 29/3 33/10 33/25 43/16 48/10 55/3 62/23 66/19 82/11 131/24

**wholly [2]** 16/15 57/6

**whose [2]** 38/9 100/13

**why [37]** 7/6 8/9 27/4 27/13 29/4 29/6 30/4 30/8 30/11 39/10 41/23 42/1 47/23 49/10 53/13 58/7 61/10 61/10 61/19 65/14 65/17 66/5 69/18 81/7 89/5 89/15 109/8 113/24 119/8 121/1 121/12 121/16 121/21 122/3 125/4 126/2 133/20

**wiggle [1]** 38/20

**will [23]** 8/3 8/3 16/18 21/22 22/2 26/21 34/19 37/15 42/14 58/23 71/22 80/7 97/6 99/19 111/14 116/5 116/20 117/12 120/19 124/9 124/9 129/4 138/25

**willing [2]** 94/6 94/23

**willingness [1]** 138/6

**win [3]** 36/18 53/4 53/5

**window [1]** 88/1

**wiped [1]** 74/6

**within [12]** 13/19 18/8 18/8 35/10 63/12 78/8 78/10 79/19 105/23 119/17 130/4 134/17

**without [8]** 8/18 14/6 41/18 41/19 54/13 63/16 64/13 111/9

**withstand [1]** 11/5

**witness [14]** 4/16 23/10 27/1 45/3 75/23 83/20 84/1 84/2 84/6 84/22 84/23 95/2 113/6 114/10

**witnessed [1]** 95/19

**witnesses [8]** 30/20 30/21 31/6 44/24 45/4 64/4 114/17 114/19

**won't [1]** 57/1

**wondering [1]** 138/19

**Woodlands [1]** 2/4

**word [1]** 67/24

**words [4]** 21/15 68/9 111/4 113/22

**work [12]** 40/7 42/18 43/22 43/24 44/3 65/18 65/20 82/18 86/24 94/15 112/19 112/25

**worked [7]** 42/17 86/1 86/4 86/6 132/13 132/14 132/15

**workers [1]** 58/13

**working [5]** 42/21 64/25 80/22 85/22 85/23

**world [13]** 8/14 8/16 10/4 43/22 43/22 45/22 46/22 49/4 49/9 69/9 70/5 70/21 71/4

**worse [1]** 81/1

**worth [2]** 69/17 76/17

**Worthington [1]** 134/15

**would [88]** 10/25 12/25 13/14 14/12 15/3 16/9 17/4 20/16 20/16 20/17 21/13 27/6 27/7 27/19 31/10 31/12 31/19 31/20 31/20 32/22 33/8 34/7 35/1 36/25 38/18 42/11 45/2 47/7 47/25 48/20 50/7 52/8 54/1 54/4 55/4 57/23 59/11 59/24 65/25 70/5 71/1 73/1 73/8 74/18 74/22 75/12 75/12 76/12 76/21 78/7 79/8 80/5 80/5 82/20 83/12 84/21 86/14 86/15 88/8 88/11 89/8 89/11 89/13 91/15 93/14 93/16 93/16 95/14 97/13 97/17 102/8 103/1 105/25 111/13 116/14 117/9 119/20 119/23 120/3 129/3 131/5 133/9 135/20 135/20 137/6 137/13 138/6 138/13

**wouldn't [10]** 11/5 17/25 27/10 28/14 39/25 60/22 70/8 91/14 107/20 108/2

**Wow [1]** 85/23

**write [1]** 57/15

**wrong [5]** 91/14 111/25 132/3 132/17 135/11

**W**

**wrongfully [1]** 64/23
**wrote [2]** 11/3 55/15

**Y**

**y'all [5]** 73/19 75/20 123/10
124/13 124/14
**yeah [20]** 25/14 25/16 47/19
53/16 56/22 65/23 82/25
83/8 83/16 83/18 84/21
87/16 91/23 98/6 99/5
100/12 113/19 123/18 129/9
129/18
**year [3]** 44/2 50/19 127/9
**years [14]** 8/22 18/20 21/5
22/11 29/12 30/17 43/13
88/9 94/12 118/4 130/4
133/10 136/14 137/2
**yes [44]** 25/18 26/6 37/18
37/21 39/17 40/24 45/12
58/2 76/5 77/15 77/22 78/24
90/12 91/2 93/8 93/25 94/3
95/1 96/8 96/20 97/23 98/1
99/1 99/6 99/7 100/11
101/25 102/3 102/6 103/18
104/6 104/7 104/17 105/2
106/2 106/17 107/7 109/2
109/19 109/25 110/25
125/21 133/5 135/23
**yet [4]** 25/2 54/7 63/8 83/24
**York [12]** 2/16 2/16 2/23
2/23 29/17 29/18 85/25 86/2
88/12 89/21 89/24 90/2
**you [345]**
**you'll [2]** 106/18 107/1
**you're [53]** 5/22 18/24 19/1
25/8 28/14 29/12 37/20 43/9
43/22 43/24 44/9 45/5 45/6
47/1 47/9 47/18 47/20 48/7
48/8 48/10 51/11 53/8 53/12
70/9 70/12 70/13 70/15
72/14 72/14 72/22 72/25
79/1 79/6 79/13 79/18 80/20
81/10 87/24 87/25 94/14
98/14 101/7 102/24 104/19
104/21 105/9 112/2 112/22
118/8 124/15 126/11 128/24
128/25
**you've [13]** 22/8 22/9 28/24
30/7 56/22 76/8 94/22 95/16
96/13 103/13 103/23 103/23
115/5
**your [184]**
**Your Honor [101]** 5/4 5/17
6/6 7/1 7/14 7/23 10/1 14/10
18/11 21/15 22/3 26/6 26/15
27/11 28/9 28/17 29/6 29/12
31/5 31/12 32/1 35/4 37/3
38/2 45/10 45/16 46/11 47/5
51/15 51/23 52/3 52/25 54/3
55/7 58/1 58/3 58/20 60/17
60/21 61/6 63/13 64/11
65/16 67/1 67/17 68/25 69/8
70/10 71/13 72/2 72/20 73/3
73/14 73/23 74/10 74/22
75/8 75/12 76/11 76/17
77/14 77/20 78/16 83/1
83/17 83/21 83/25 84/3 95/2
106/12 109/10 110/9 113/6
113/9 114/10 114/18 114/20
115/1 120/3 120/9 120/11
122/18 123/22 124/4 125/16
125/22 125/23 130/18
130/21 131/10 133/7 133/22
134/14 135/12 135/19
135/23 136/25 137/24 138/7
138/16 139/1
**Your Honor's [2]** 106/13
138/14
**yourself [3]** 25/8 52/15
101/5