FILED
August 17, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: JM
DEPUTY

United States District Court
Southern District of Texas
ENTERED
August 17, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **Morton S. Bouchard, III, individually and as Co-Trustee for the Morton S. Bouchard III 2017 Family Trust,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:24-CV-0693-AM** |
| | § | |
| **David R. Jones; Elizabeth Carol Freeman; Jackson Walker, LLP; and Kirkland & Ellis International, LLP;** | § | |
| **Defendants.** | § | |

# <u>ORDER</u>

Before the Court is Plaintiff Morton S. Bouchard's Complaint [ECF No. 1]; Defendant Elizabeth Carol Freeman's Motion to Dismiss [ECF No. 18]; Defendant Kirkland & Ellis International, LLP's Motion to Dismiss [ECF No. 19]; Defendant Jackson Walker, LLP's Motion to Dismiss [ECF No. 21]; and Defendant David R. Jones's Motion to Dismiss [ECF No. 44]. Two hearings were held on the pending motions, on March 4, 2025, and May 22, 2025. The Court now **ORDERS** the parties to brief why the order confirming the chapter 11 plan should not be revoked in the underlying bankruptcy.

## I. Background

Those cloaked in judicial robes are entrusted with the sanctity of the courts, ensuring all those who come before the nation's tribunals receive fair and impartial adjudications. This case and those related to it raise one of the most serious allegations one can make against those on the bench and representing clients before a court: judicial impropriety. The judges currently sitting in the Southern District of Texas, who are engaged in the fair and impartial administration of justice daily, are now needlessly embroiled in a scandal, not of their own creation, but due to their former

colleague's indecorous behavior. These same fair and impartial judges asked this Court to sit in designation and restore the public's confidence in judicial integrity and impartiality. *See, e.g.*, *Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir. 1980) ("A district court is obliged to take measures against unethical conduct occurring in connection with any proceeding before it."). This Court's designation is a warning from the Southern District of Texas: judicial impropriety, whether actual or only in appearance, is not tolerated.

The parties, however, appear to not heed the warning. They show absolute indifference as to whether the alleged judicial misconduct in this case decimates the underlying bankruptcy's legitimacy. The parties flagrantly disregard the possibility that the claimed scheme, implemented far before the underlying bankruptcy was filed, created a faulty foundation on which this entire case may precariously rest. Nothing demonstrates this flagrant disregard more than the fight over Bouchard's standing.

For nearly two years, the parties have battled over Bouchard's standing to bring this case. The Defendants contend, among other things, that Bouchard brings derivative claims on behalf of the bankruptcy estate rather than himself. (*See, e.g.*, ECF No. 19 at 22–23.) According to the Defendants, the confirmation plan, which Defendant David R. Jones approved as the sitting bankruptcy judge, reserves these claims "to the BTC estate," and, as a result, Bouchard "lacks prudential standing to assert derivative claims arising from injuries to the debtor or its estate, including claims base[d] on fraud on the court." (ECF No. 18 at 12.) The Defendants implore this Court to act as a rubber stamp, accepting the confirmation plan's terms and disposing of this case, all while ignoring the elephant in the courtroom: the Plaintiff claims the bankruptcy court ***itself*** schemed with the Defendants to perpetrate bankruptcy fraud, which implicates the validity of the confirmation plan—the very mechanism on which the Defendants rely to prevent an appropriate

review of the parties' and judicial officer's conduct. (*See, e.g.*, ECF No. 1 at 3.) Assuming Bouchard's well-pleaded facts are true, which the Court must at this stage accept, any reliance on the confirmation plan to bar this case would make this Court an implicit collaborator. The Court declines the invitation.

## II. DISCUSSION

It is well known that under 11 U.S.C. § 1144, a court may revoke a confirmation order "procured by fraud" before 180 days after the date of entry. The threshold issue in this case is whether "procured by fraud" in § 1144 covers fraud ***by*** the court, rather than just fraud ***on*** the court. Congress did not define "procured by fraud," but most courts interpret the phrase to mean fraud *on* the court, not fraud *by* the court. This interpretation aligns with the plain language of the statute. The dictionary definition of "procure" means "to get possession of (something); to obtain (something) by particular care and effort." *Procure*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/procure (last visited July 31, 2026). The definition requires an object of procurement, e.g., a court order. The court necessarily must be separate from the entities doing the "procuring," as the fraud is used to procure a court order *from* the court. Legislative history further bolsters this plain-meaning interpretation. *See, e.g.*, *In re Michelson*, 141 B.R. 715, 724 (Bankr. E.D. Cal. 1992) (discussing the history of the phrase "procured by fraud" from the Bankruptcy Act of 1898 and Bankruptcy Code of 1978 and confirming that "a fraud upon the court is at the heart of 'procured by fraud' as that term is used at section 1144"); *see also Delligatti v. United States*, 604 U.S. 423, 438 (2025) ("[T]he [plain meaning] definition is almost always closely related to the ordinary meaning of the word being defined." (quoting A. SCALIA & B. GARNER, READING LAW 228 (2012))). Bouchard's judicial participation allegation—

the fraud ***by*** the court—seemingly places this case outside the scope of § 1144, even though it is alleged that the attorneys and possibly others participated in the questionable conduct.

The Court thus finds itself faced with a set of facts not contemplated by § 1144. *See, e.g.*, *First Union Nat. Bank of Fla. v. Perdido Motel Grp., Inc.*, 142 B.R. 460, 464 (N.D. Ala. 1992) ("[P]rocured by fraud . . . is thus fraud *directed* at the bankruptcy court[.]" (emphasis added)); *see also In re Motors Liquidation Co.*, 462 B.R. 494, 507 (Bankr. S.D.N.Y. 2012) ("[T]he fraud [alleged in a revocation proceeding] must be on the *Court*, and not directed at anyone else or floating in the air."). Bouchard alleges that Defendant Jones, the presiding bankruptcy judge, was part and parcel of the alleged troublesome bankruptcy scheme. The Court believes this serious accusation warrants careful consideration, especially considering the ongoing investigations and other cases into the alleged scheme. Even more concerning, however, are the Defendants' attempts to sweep these allegations under the rug and continuously rely on a confirmation plan potentially riddled with decisions resulting from judicial impropriety and possible collusion between the then-presiding judge and the attorneys. The Defendants urge this Court to take any other possible action imaginable (e.g., appoint an independent special plan administrator, appoint a special master, resurrect the creditors' committee, etc.) *except* consider the confirmation plan's validity.

Put differently, the Defendants place this Court in an extremely tenuous position whereby the fraud Bouchard raises may potentially block his case from moving forward. According to the Defendants, not only does Bouchard not have standing, but should he somehow manage to obtain standing, the bankruptcy orders, such as the confirmation plan and the debtor's release, protect the Defendants from liability. (*See* ECF Nos. 73 at 131; 95 at 73.) The Court finds itself caught in a circular firing squad of the Defendants' own creation, and at the head of the firing squad, according

to Bouchard, is Defendant Jones—the very judge that approved the orders preventing review of this case.

If these allegations are proven, and if this Court accepts the Defendants' arguments and dismisses this case, then the Court becomes complicit in the alleged scheme, which was further facilitated by David R. Jones's removal of Bouchard as the representative of the bankruptcy estate at a hearing for which Bouchard had not received notice and did not have a fair process to defend himself from claims of his inadequacy to serve as the sole representative for the debtor-in-possession. He was entitled to speak to counsel and be present at the hearings; yet both processes were denied to him.[1] Such blatant disregard for the ethics of the judicial profession troubles this Court and sows distrust in the underlying bankruptcy.[2] For this reason, the Court finds it necessary to consider whether it should exercise the equitable powers provided within 11 U.S.C. § 105. Under § 105, a court may *sua sponte* take "any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105; *see also* 2 COLLIER ON BANKRUPTCY ¶ 105.01 (16th ed.) ("Section 105 gives the bankruptcy court the power to fill in gaps and further the statutory mandates of Congress in an efficient manner."). Given that § 1144 does not contemplate fraud *by* the court, and because this

[1] Courts take due process concerns seriously. The Southern District of New York recently vacated a confirmation order in part, concluding that a bankruptcy court cannot fairly cut off the future legal rights of people who were not yet known, were not notified, and had no chance to be heard. *See, e.g.*, *In re Voyager Digit. Holdings, Inc.*, No. 22-10943, 2026 WL 2241168 (S.D.N.Y. Aug. 4, 2026) ("None of those provisions, however, specifically grants the Bankruptcy Court broad, sweeping power to prospectively immunize persons, entities, and future transactions whose identities and details are not, and could not at the time the Exculpation Provision was approved, have been part of the record before the Bankruptcy Court.").

[2] Defendant Jones boasted at this hearing about his ability to wield judicial power through a "hammer unlike any hammer anyone has ever seen[,]" and tells former Defendant Ray—the then-financial advisor in the underlying bankruptcy—not to worry because he is "willing to go to great lengths to encase [Ray] within the judicial immunity from which [Jones] benefits." (*In re Bouchard Transp. Co., et al.*, 20-34682 (Bankr. S.D. Tex. Sept. 28, 2020), (ECF No. 591 at 10–13.))

Court refuses to be complicit with the alleged scheme, this Court finds it prudent to consider exercising its equitable authority under § 105 to revoke the order of confirmation.

The Court is fully aware of the delicate balancing act required when revoking an order of confirmation, especially in this case, given the company's total dissolution and how much time has passed since the plan was confirmed. *In re ECI Pharms. LLC*, 669 B.R. 617, 624 (Bankr. S.D. Fla. 2025) ("Section 1144 exists to balance the need for finality in reorganization plans against providing a limited basis to 'unscramble the egg' of a confirmed chapter 11 plan if a party discovers and timely raises fraud in its procurement."). And while the Court recognizes the paramount need for finality, that need does not overcome the severity of misconduct alleged between the presiding judge and attorneys that may have infected this bankruptcy and the complex bankruptcy system from the start. *In re Michelson*, 141 B.R. at 720 ("The requirement that [a] court exercise its *independent judgment* has persisted since the days of equity receiverships, continuing through reorganizations under Bankruptcy Act § 77B, and into the 1978 Bankruptcy Code." (emphasis added)).

### III. Conclusion

IT IS THEREFORE **ORDERED** that for this case to proceed, the parties must—within **four weeks** from entry of this Order—brief **in 15 pages or less, inclusive of exhibits and attachments**: 1) whether any remedy other than revocation exists that would sufficiently remedy the fraud alleged to have occurred in this case; 2) whether any mechanisms exist that may be used to protect innocent third parties who acquired rights in good-faith reliance on the confirmation order; and 3) the extent to which the doctrine of equitable mootness should have any bearing on the Court's decisions.

IT IS FURTHER **ORDERED** that the parties file **a joint report within 30 days** from the signing of this order providing the status of any and all pertinent and pending matters in the underlying bankruptcy.

SIGNED and ENTERED on this 17th day of August 2026.

ALIA MOSES
Chief United States District Judge